UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| YELENA RUDERMAN,<br><br>               Plaintiff,<br><br>      v.<br><br>LAW OFFICE OF YURIY PRAKHIN, P.C.<br>and YURIY PRAKHIN, in both his individual<br>and professional capacities,<br><br>               Defendants. | Civil Action No.: 1:19-cv-2987<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Yelena Ruderman, by and through her attorneys, Faruqi & Faruqi, LLP, hereby alleges as follows against Defendants Law Office of Yuriy Prakhin, P.C. (the "Firm") and Yuriy Prakhin (together, "Defendants"):

## NATURE OF THE CLAIMS

*"I don't know how you'll handle cases with your condition."*

*"I'm a business man.  I don't see how this is worth it for me."*

1. Plaintiff spent the first five years of her legal career at the Firm, working her way up from an entry-level role to become one of Mr. Prakhin's most trusted Associates.

2. When she left the Firm in 2017 for another opportunity, Mr. Prakhin quickly recruited her back, praising the quality of her work.

3. However, everything changed when Plaintiff disclosed to Mr. Prakhin that she suffered from Leber's hereditary optic neuropathy, a rare medical condition that rendered her legally blind.

4. Just weeks after Plaintiff's disclosure, Mr. Prakhin terminated her employment for the express reason that she suffered from a disability.

1

5. Indeed, with no evidence that her performance had actually suffered, Mr. Prakhin told Plaintiff that he was firing her because he could not fathom how she would be able to continue handling her cases "with [her] condition."

6. As he went on to explain, "I'm a business man. I don't see how this is worth it for me."

7. To redress these egregious wrongs, Plaintiff brings claims for violations of the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, *et seq.* ("NYCHRL").

## JURISDICTION AND VENUE

8. Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiff's rights under the ADA.

9. Pursuant to 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over Plaintiff's related claims arising under State and City law.

10. Pursuant to 28 U.S.C. § 1391, venue is proper because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District.

## ADMINISTRATIVE PREREQUISITES

11. Prior to filing this Complaint, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging, *inter alia*, discrimination in violation of the ADA.

12. On or around April 24, 2019, the EEOC issued Plaintiff a Notice of Right to Sue.

13. Fewer than 90 days have passed since Plaintiff received her Notice of Right to Sue from the EEOC.

14. Any and all other prerequisites to the filing of this action have been met.

## PARTIES

**A.    Plaintiff Yelena Ruderman**

15. Plaintiff is a resident of the City of New York and was employed by Defendants from in or around September 2012 through in or around February 2017, and again from in or around May 2018 through on or around December 14, 2018.

16. At all relevant times, Plaintiff was an "employee" within the meaning of all relevant statutes and regulations.

**B.    Defendant Law Office of Yuriy Prakhin, P.C.**

17. The Firm is a domestic professional corporation with its principal place of business located at 1883 86th Street, Brooklyn, New York 11214.

18. At all relevant times, the Firm was an "employer" within the meaning of all relevant statutes and regulations.

**C.    Defendant Yuriy Prakhin**

19. Mr. Prakhin is a resident of the City of New York and the principal of the Firm.

20. At all relevant times, Mr. Prakhin established, implemented, disseminated, and controlled the Firm's employment policies applicable to Plaintiff.

21. At all relevant times, Mr. Prakhin controlled and directed the terms and conditions of Plaintiff's employment.

22. At all relevant times, Mr. Prakhin maintained and exercised the power to hire, fire, discipline, and promote Plaintiff.

23. At all relevant times, Mr. Prakhin was an "employer" within the meaning of all relevant statutes and regulations.

## FACTS

### A. Background

24. In September 2012, Defendants hired Plaintiff as an Associate.

25. Despite having limited legal experience, Plaintiff proved to be an incredibly fast learner, quickly cementing herself as one of the Firm's top attorneys.

26. This is supported by a history of annual raises and bonuses, as well numerous mid-year, merit-based, raises awarded to Plaintiff by Defendants.

27. By early 2016, Plaintiff's salary had more than doubled and Defendants had agreed to pay Plaintiff 5% of the Firm's fees on all judgments or settlements she obtained – an undeniable testament to her strong performance and value to the Firm.

28. In February 2017, Plaintiff informed Mr. Prakhin that she was leaving the Firm for another opportunity.

29. Mr. Prakhin expressed his disappointment and told Plaintiff that she would always have a job at the Firm if she ever wanted to return.

30. Sure enough, in May 2018, Mr. Prakhin recruited Plaintiff back to the Firm.

31. Mr. Prakhin was effusive in his praise of Plaintiff and enticed her back by offering a significant salary increase, a robust caseload, and two paralegals to support her.

32. Within a few months of Plaintiff's hire, Defendants asked her to take over half of a departing partner's case load, thus speaking even further to the high esteem in which Defendants held her at the time.

**B.      Plaintiff's Loss of Her Vision**

33.     In early September 2018, Plaintiff began to notice that her vision was growing blurry.

34.     A few weeks later, at which point her vision was continuing to deteriorate, Plaintiff disclosed the issue to one of her co-workers, the Firm's managing attorney, and Irene Raskin, the Firm's Office Manager and *de facto* head of Human Resources – and subsequently scheduled a doctor's visit.

35.     Ms. Raskin advised Plaintiff not to tell Mr. Prakhin about her medical condition, claiming that the news would "stress him out."

36.     Throughout the ensuing weeks, there was no slowdown in Plaintiff's work.

37.     On the contrary, Plaintiff continued to handle court appearances, depositions, motion practice, and all other responsibilities in her cases.

38.     While losing her vision, of course, presented new challenges, it had no impact on Plaintiff's production, even as her caseload continually increased.

39.     In early October 2018, Plaintiff took approximately one week of unpaid leave to visit additional doctors and have diagnostic tests run to determine the cause of her deteriorating vision.

40.     At this point, Plaintiff had no choice but to disclose to Mr. Prakhin that she was suffering from a sudden loss of vision, the cause of which was yet unknown.

41.     Mr. Prakhin approved Plaintiff's unpaid leave, yet still asked her to work from home and cover depositions while she was out of the office.

42.     Plaintiff happily obliged, completing all work that was assigned to her.

43. When she returned to work, Plaintiff continued to handle all responsibilities in her cases without issue.

44. However, Plaintiff's eyesight continued to worsen.

45. Accordingly, shortly before Thanksgiving 2018, Plaintiff took an additional five days of unpaid leave to be admitted to the hospital.

**C.     Plaintiff's Diagnosis and Disclosure of the Same to Defendants**

46. On or around November 26, 2018, Plaintiff was diagnosed with Leber's hereditary optic neuropathy ("LHON"), a genetic disorder that causes sudden, acute loss of central (as opposed to peripheral) vision.

47. On November 28, 2018, Plaintiff disclosed her disability to Mr. Prakhin.

48. Plaintiff explained that there is no known cure for LHON, in response to which Mr. Prakhin asked how she would be able to work.

49. Plaintiff reminded Mr. Prakhin that her vision had begun deteriorating nearly three months earlier and that, since then, she had been handling all of her responsibilities without incident.

50. Plaintiff specifically asked whether Mr. Prakhin had seen any change or decline in the quality of her work, to which Mr. Prakhin honestly replied: "No, I have not seen any."

51. Plaintiff further assured Mr. Prakhin that her diagnosis would have no impact on her work going forward, just as it had not impacted her work up to that point.

52. Notably, just days after Plaintiff disclosed her disability, Mr. Prakhin began interviewing experienced attorneys to replace her.

**D.     Defendants' Refusal to Provide Reasonable Accommodations Or Engage In An Interactive Process**

53.     Shortly after disclosing her disability, Plaintiff informed Mr. Prakhin that she had been researching specialized glasses, computer software, and other tools that assist the visually impaired with reading and writing.

54.     Plaintiff inquired about purchasing these tools as a reasonable accommodation for her disability.

55.     Defendants declined to provide any such accommodations and never offered to provide any alternative accommodations of any kind.

56.     Indeed, Defendants engaged in no interactive process whatsoever.

57.     Plaintiff also inquired about purchasing a speech recognition software called Dragon.

58.     Defendants again declined Plaintiff's request and similarly refused to discuss alternative accommodations or otherwise engage in an interactive process.

59.     When Plaintiff asked Defendants to order certain additional supplies for her, such as a magnifying glass to assist her in reading hard copy documents, Defendants again refused.

60.     Plaintiff also asked Mr. Prakhin directly for various other accommodations, to which he consistently responded: "Let's see what happens" and refused to discuss the matter further.

61.     After multiple failed attempts to obtain any accommodations at all from Defendants, Plaintiff purchased, at her own expense, specialized glasses made by OrCam, a screen reading computer software called JAWS, as well as a magnifying glass.

62.     Plaintiff provided Defendants with a breakdown of the costs for each of the devices that she purchased.

63. Defendants refused to reimburse Plaintiff for any of these costs and never offered her any additional or alternative accommodations.

64. Defendants further informed Plaintiff that she would be personally responsible for any additional IT costs that were involved in the installation of JAWS, as well as any IT related issues that may arise as a result of the use of the program.

65. Plaintiff also paid out-of-pocket for additional transportation costs, such as taxi fares, that she required as she was learning to adapt to life with LHON.

66. Over the following weeks, Mr. Prakhin checked in with Plaintiff regularly regarding her eyesight.

67. Indeed, Mr. Prakhin repeatedly asked Plaintiff how she was handling her cases.

68. Mr. Prakhin also frequently asked Plaintiff, more generally, what tasks she was able to complete now that she had lost much of her vision.

69. Plaintiff's answer, in sum and substance, was always the same: "Everything." Plaintiff always emphasized that she was handling all of her cases well and was able to complete all tasks required of her.

70. As Plaintiff conveyed to Mr. Prakhin countless times, she remained fully capable of managing all of her cases despite the additional hurdles presented by LHON.

71. Defendants had no legitimate, non-discriminatory reason to believe otherwise.

**E.** **Defendants' Unlawful Termination of Plaintiff's Employment**

72. On December 14, 2018, Mr. Prakhin asked Plaintiff to have a seat in his office.

73. Almost immediately, Mr. Prakhin offered to "give" Plaintiff unemployment or allow her to go out on disability leave.

8

74. Confused, Plaintiff explained that she had no interest in quitting her job or taking an extended leave.

75. Plaintiff then asked Mr. Prakhin, "Are you firing me?"

76. Mr. Prakhin responded, "I don't have a choice. I don't know how you'll handle cases with your condition."

77. Plaintiff pushed back, again reminding Mr. Prakhin that there had been no issues in her cases to date.

78. Plaintiff asked Mr. Prakhin whether he had noticed any decline in her performance.

79. Mr. Prakhin admitted that he had not seen any decline in the quality of Plaintiff's work and was unaware of any performance deficiencies. Mr. Prakhin further admitted that he never even had a reason to go through and check Plaintiff's cases.

80. Rather, as Mr. Prakhin explained, he was worried about unspecified potential performance issues in the future.

81. As he put it, "I'm a business man. I don't see how this is worth it for me."

82. Further, Mr. Prakhin made clear that while he was, in fact, firing Plaintiff, he would be happy to hire her back if her untreatable condition somehow improved.

83. These comments by Mr. Prakhin reveal that Defendants' decision had nothing whatsoever to do with the quality of Plaintiff's work.

84. Rather, Defendants fired Plaintiff based solely on unfounded prejudices about her disability.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF THE ADA: DISCRIMINATION

85. Plaintiff hereby repeats and reallege the foregoing allegations as if set forth fully herein.

86. During the full statutory period, Plaintiff was protected by the provisions of the ADA, 42 U.S.C. §§ 12101, *et seq.*, and all applicable regulations thereunder.

87. As described above, Defendants were aware that Plaintiff suffered from recognized disabilities, including, *inter alia*, LHON, which has caused the loss of her vision.

88. By the actions described above, among others, Defendants discriminated against Plaintiff based on her recognized disabilities by, *inter alia*, terminating her employment.

89. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of compensatory damages.

90. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer, emotional distress for which she is entitled to an award of compensatory damages.

91. Defendants' unlawful and discriminatory actions were intentional, done with malice, and showed a deliberate, willful, wanton, and/or reckless indifference to Plaintiff's rights under the ADA, thereby entitling her to an award of punitive damages.

92. Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

### SECOND CAUSE OF ACTION
### VIOLATIONS OF THE ADA: REASONABLE ACCOMMODATIONS

93. Plaintiff hereby repeats and reallege the foregoing allegations as if set forth fully herein.

94. During the full statutory period, Plaintiff was protected by the provisions of the ADA, 42 U.S.C. §§ 12101, *et seq.*, and all applicable regulations thereunder.

95. As described above, Defendants were aware that Plaintiff suffered from recognized disabilities, including, *inter alia*, LHON, which has caused the loss of her vision.

96. By the actions described above, among others, Defendants failed to provide Plaintiff reasonable accommodations in connection with her disability or engage in an interactive process regarding the same.

97. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of compensatory damages.

98. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer, emotional distress for which she is entitled to an award of compensatory damages.

99. Defendants' unlawful and discriminatory actions were intentional, done with malice, and showed a deliberate, willful, wanton, and/or reckless indifference to Plaintiff's rights under the ADA, thereby entitling her to an award of punitive damages.

100. Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF THE NYSHRL: DISCRIMINATION

101. Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

102. During the full statutory period, Plaintiff was protected by the provisions of the NYSHRL, N.Y. Exec. Law §§ 290, *et seq.*, and all applicable regulations thereunder.

103. As described above, Defendants were aware that Plaintiff suffered from recognized disabilities, including, *inter alia*, LHON, which has caused the loss of her vision.

104. By the actions described above, among others, Defendants discriminated against Plaintiff based on her recognized disabilities by, *inter alia*, terminating her employment.

105. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of compensatory damages.

106. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, emotional distress for which she is entitled to an award of compensatory damages.

**FOURTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYSHRL: REASONABLE ACCOMMODATIONS**

107. Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

108. During the full statutory period, Plaintiff was protected by the provisions of the NYSHRL, N.Y. Exec. Law §§ 290, *et seq.*, and all applicable regulations thereunder.

109. As described above, Defendants were aware that Plaintiff suffered from recognized disabilities, including, *inter alia*, LHON, which has caused the loss of her vision.

110. By the actions described above, among others, Defendants failed to provide Plaintiff reasonable accommodations in connection with her disability or engage in an interactive process regarding the same.

111. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of compensatory damages.

112. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, emotional distress for which she is entitled to an award of compensatory damages.

## FIFTH CAUSE OF ACTION
## VIOLATIONS OF THE NYCHRL: DISCRIMINATION

113. Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

114. During the full statutory period, Plaintiff was protected by the provisions of the NYCHRL, N.Y.C. Admin. Code §§ 8-101, *et seq.*, and all applicable regulations thereunder.

115. As described above, Defendants were aware that Plaintiff suffered from recognized disabilities, including, *inter alia*, LHON, which has caused the loss of her vision.

116. By the actions described above, among others, Defendants discriminated against Plaintiff based on her recognized disabilities by, *inter alia*, terminating her employment.

117. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of compensatory damages.

118. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, emotional distress for which she is entitled to an award of compensatory damages.

119. Defendants' unlawful and discriminatory actions were intentional, done with malice, and showed a deliberate, willful, wanton, and/or reckless indifference to Plaintiff's rights under the NYCHRL, thereby entitling her to an award of punitive damages.

120. Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

## SIXTH CAUSE OF ACTION
## VIOLATIONS OF THE NYCHRL: REASONABLE ACCOMMODATIONS

121. Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

122. During the full statutory period, Plaintiff was protected by the provisions of the NYCHRL, N.Y.C. Admin. Code §§ 8-101, *et seq.*, and all applicable regulations thereunder.

123. As described above, Defendants were aware that Plaintiff suffered from recognized disabilities, including, *inter alia*, LHON, which has caused the loss of her vision.

124. By the actions described above, among others, Defendants failed to provide Plaintiff reasonable accommodations in connection with her disability or engage in an interactive process regarding the same.

125. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of compensatory damages.

126. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, emotional distress for which she is entitled to an award of compensatory damages.

127. Defendants' unlawful and discriminatory actions were intentional, done with malice, and showed a deliberate, willful, wanton, and/or reckless indifference to Plaintiff's rights under the NYCHRL, thereby entitling her to an award of punitive damages.

128. Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Declare that the practices complained of herein are unlawful under applicable federal, State, and City law;

B. Grant an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C. Grant Plaintiff an award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate her for her economic damages;

D. Grant Plaintiff an award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate her for all non-monetary and/or compensatory damages she has suffered, including, without limitation, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

E. Grant Plaintiff an award of damages in an amount to be determined at trial, plus prejudgment interest, for any and all other monetary and/or non-monetary losses she has suffered;

F. Grant Plaintiff an award of punitive damages in an amount to be determined at trial;

G. Grant Plaintiff an award of reasonable attorneys' fees to the greatest extent permitted by law;

H. Grant Plaintiff an award of reasonable costs that she has incurred in this action, including, without limitation, expert witness fees;

I. Grant Plaintiff all other available damages to the greatest extent permitted by law; and

J. Grant such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues of fact and damages.

Dated: May 20, 2019　　　　　　　　　　**FARUQI & FARUQI, LLP**

By: */s/ Innessa M. Huot*
　　Innessa Melamed Huot
　　Alex J. Hartzband
　　Patrick J. Collopy

　　685 Third Avenue, 26th Floor
　　New York, New York 10017
　　Telephone: 212-983-9330

                                         Facsimile: 212-983-9331
                                         ihuot@faruqilaw.com
                                         ahartzband@faruqilaw.com
                                         pcollopy@faruqilaw.com

*Attorneys for Plaintiff*