**FARUQI & FARUQI LLP**
ATTORNEYS AT LAW

NEW YORK     CALIFORNIA     DELAWARE     GEORGIA     PENNSYLVANIA

VIA ECF                                                                                                April 29, 2020

The Honorable Roanne L. Mann
United States District Court
Eastern District of New York
225 Cadman Plaza East, Courtroom #13C-S
Brooklyn, New York 11201

      Re:     *Yelena Ruderman v. Law Office of Yuriy Prakhin, P.C., et al.*, 19-cv-2987 (RJD)(RLM)

Dear Judge Mann:

     We represent Plaintiff Yelena Ruderman in the above-referenced action and write in opposition to Defendants' motion to compel Plaintiff to execute HIPAA-compliant authorizations for the release of her medical records (ECF No. 25) and in further support of Plaintiff's motion to compel Defendants' compliance with the parties' Protocol for the Disclosure, Search, and Production of Electronic Systems and Electronically Stored Information, or "ESI" (the "ESI Protocol").  *See* ECF No. 24.

**I.**    **Plaintiff Has Produced All Medical Records Concerning Her Disability and Mental Health, Thereby Obviating the Need for HIPAA-Compliant Authorizations**

     By way of background, on November 5, 2019, Defendants requested production of all medical records concerning Plaintiff's disability and mental health.  Plaintiff produced all medical records responsive to Defendants' requests and assured Defendants that she will supplement her production if and when new records are generated.  On February 11, 2020, the parties met and conferred and agreed that it was unnecessary and duplicative for Plaintiff to execute HIPAA-compliant authorizations, as Plaintiff had already satisfied her discovery obligations.  Accordingly, Defendants withdrew their request for HIPAA-compliant authorizations.  *See* Plaintiff's Ex. B at 3-4, ECF No. 24-2.

     Because this detail is omitted from Defendants' letter, we should be clear that Plaintiff has responded to Defendants each time they raised any discovery-related issues and has at all times met and conferred in good faith.  On April 16, 2020, Defendants sent Plaintiff correspondence related to this HIPAA issue and invited Plaintiff to meet and confer by May 1, 2020.  *See* Defendants' Ex. J at 4, ECF No. 25-10.  Rather than confer with Plaintiff in good faith, Defendants have opted to move the Court prematurely to compel Plaintiff's compliance with a discovery demand that has been withdrawn and seeks the production of records that Plaintiff has already produced.

     Plaintiff acknowledges that she has put both her disability and mental health at issue in this matter.  It is for this reason that she obtained all medical records concerning her disability and mental health and has produced the same to Defendants.  Defendants do not dispute that Plaintiff has made a complete production; they merely contend, without justification, that they are entitled to HIPAA-compliant authorizations for the release of these exact same records from Plaintiff's healthcare providers.  Other than noting that Plaintiff's disability and mental health records are at issue – which is not in dispute – Defendants offer no rationale for demanding HIPAA-compliant authorizations with Plaintiff's medical records already in hand.

     Moreover, it is axiomatic that a party need only "produce documents as they are kept in the usual course of business[.]" Fed. R. Civ. P. 34(b)(2)(E)(i).  In other words, the Federal Rules Civil Procedure do not mandate any particular form of production.  This of course extends to the production of medical records.  *See Connolly v. Peerless Ins. Co.*, No. 10-cv-789(ADS)(WDW), 2011 WL

Case 1:19-cv-02987-CBA-LB   Document 26   Filed 04/29/20   Page 2 of 3 PageID #: 207



Page 2

13305348, at *5 (E.D.N.Y. Apr. 22, 2011) ("[T]he Court cannot find[] an inherent right for a party to directly receive medical records from a third party pursuant to a subpoena and HIPAA-compliant authorization.") (cited with approval by Defendants).

The case law Defendants cite in their letter only further supports this conclusion. While Defendants misleadingly claim otherwise, the court in *Connolly* did not hold that HIPAA-compliant authorizations are required even where a plaintiff produces all medical records. *See id*. at *6. In fact, the *Connolly* court reached the exact opposite conclusion: "Peerless has not shown that production of Connolly's pharmaceutical records pursuant to a HIPAA-compliant authorization is necessary where Connolly has obtained and produced the documents . . . . Furthermore, Peerless has not demonstrated a right to receive the documents directly through a subpoena or HIPAA-compliant authorization." *Id.* Further, *Morris v. Sequa Corp.*, a decision from the Northern District of Alabama, is inapposite here, as the plaintiff in that case acknowledged that he did not produce all relevant medical records. *See* 275 F.R.D. 562, 568-69 (N.D. Ala. 2011). Defendants' motion is both unjustified and without legal support. Therefore, it should be denied in its entirety.

## II.   The Court Should Order Defendants' Compliance with the ESI Protocol

In opposition to Plaintiff's motion to compel, Defendants seize on Plaintiff's efforts to work with them cooperatively in order to mischaracterize the history of parties' negotiations. As Defendants acknowledge, the parties agreed to the ESI Protocol on November 7, 2019. Thereafter, Defendants produced Plaintiff's emails in a form which all parties agree cannot be opened, viewed, or used in any way. Defendants agreed to re-produce these emails in usable form but never did. On March 6, 2020, after completely failing to comply with the ESI Protocol for four months, Defendants suddenly objected to its scope. *See* Defendants' Ex. C, ECF No. 25-3. In the hopes of finally obtaining Defendants' compliance, Plaintiff offered modest revisions to the search terms while expressly reserving the right to seek enforcement of the parties existing agreement. *See* Defendants' Ex. D, ECF No. 25-4.

At the parties' March 19, 2020 meet-and-confer, the parties reconfirmed the ESI Protocol and agreed that: (1) Defendants would re-produce Plaintiff's emails in non-native form with Bates stamps; (2) counsel would confer with Defendants about a stipulation regarding Plaintiff's recruitment and if such was provided, then the start period of the ESI search would be May 1, 2018, rather than February 1, 2018; (3) any ESI search must extend to the present; and (4) if during the course of Defendants' ESI production a particular term yields an unreasonably large number of hits, a hit report would be shared, and the parties would work cooperatively to revise such a term. *See* Plaintiff's Exs. E & F, ECF Nos. 24-5, 24-6. Plaintiff never invited Defendants to renegotiate the ESI Protocol or its terms absent a hit report and never agreed that Defendants should hold off on producing ESI for any reason.

Since that time, Defendants have still refused to re-produce Plaintiff's emails in usable form and have again reneged on their agreements and discovery obligations. Now, Defendants again seek to limit their ESI to Plaintiff's first date of employment, without providing the stipulation previously discussed. Plaintiff alleges that Defendants recruited her back to the Firm because she is a strong performer and was a valuable member of the Firm. Defendants specifically denied this allegation at the parties' initial conference before this Court and other times thereafter. This bears on the core issue in the case: whether Defendants' abrupt termination of Plaintiff's employment was based on her performance or her disability. Unless Defendants stipulate to having recruited Plaintiff back, which they have apparently refused to do, the ESI Protocol should be designed to capture this discovery.



Moreover, despite previously agreeing (multiple times) that any ESI search should extend to the present, Defendants now – for the very first time – claim that the search should be cut off as of March 4, 2019. This issue has been long resolved and reconfirmed at the parties' March 19, 2020 meet-and-confer. Indeed, Defendants did not even seek to revisit this issue in their subsequent attempt to edit the ESI Protocol (*see* Defendants' Ex. E, ECF No. 25-5). Defendants now claim that "any" ESI postdating their notice of Plaintiff's claims is necessarily privileged. This does not hold water. Surely, Defendants and other employees covered by the ESI Protocol discussed Plaintiff's performance, disability, and/or termination with people other than their counsel after Defendants received Plaintiff's pre-litigation correspondence. Such communications are not privileged and are indeed discoverable.

Defendants similarly seek to impose unreasonably narrow search terms without identifying any legitimate issue with the terms in the existing ESI Protocol. For example, Defendants take issue with the terms "paralegal!" "work! comp!" "fir!" and "ill!" because such terms should be connected to "Plaintiff's name or initials." ECF No. 25 at 2. However, these exact terms are already connected to Plaintiff's name or initials in the existing ESI Protocol. *See* Plaintiff's Ex. A at 6-7, ECF No. 24-1. Before finalizing the ESI Protocol, Defendants went through each term and generated a hit report for terms they deemed problematic. The parties conferred and agreed to connect those specified terms to Plaintiff's name or initials. The remaining terms were deemed sufficiently specific and narrowly tailored to not be so tied. Thus, the ESI Protocol already states what Defendants suggest regarding these terms as well as the remaining terms, all of which they previously examined and agreed to.

Additionally, Defendants' claim that they "anticipate[] hiring an independent vendor to conduct the ESI search" is both concerning and underscores the need for a Court-appointed ESI vendor. Defendants represented for months that their search was already underway and have refused to respond to interrogatories regarding the details of their search. That they have not yet retained an ESI vendor only reinforces Plaintiff's concern that they do not intend to conduct a complete search.

Finally, Defendants must bear the costs of their ESI search. It is well-established that the responding party presumptively "must bear the expense of complying with discovery requests[.]" *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978) (cited with approval by Defendants). Defendants do not offer any argument as to why this presumption should not apply here, nor can they. In *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 322 (S.D.N.Y. 2003), Judge Scheindlin established a seven-factor test for determining whether cost-shifting should be imposed. These factors overwhelmingly weigh in Plaintiff's favor: (1) the parties have agreed to a specifically tailored ESI Protocol that, per Defendants' prior counsel, did not yield excessive hits; (2) the ESI in question is not available from other sources; (3) Defendants are far more capable of covering the costs than Plaintiff; and (4) the ESI is crucially important to the litigation, as it will likely be the main source of document discovery. Two of the three remaining factors concern the total costs, which Defendants cannot even provide as they have not retained an ESI vendor. Only the seventh and "least important" factor – the relative benefits of production to the parties – arguably weighs against Plaintiff. *Id.* at 323. For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's motion to compel.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

Innessa M. Huot

Cc:   Counsel of Record (*via* ECF)