PUTNEY, TWOMBLY, HALL & HIRSON LLP

DANIEL F. MURPHY, JR.
THOMAS A. MARTIN
JAMES E. McGRATH, III
CHRISTOPHER M. HOULIHAN
MARY ELLEN DONNELLY
GEOFFREY H. WARD
PHILIP H. KALBAN
JEROME P. COLEMAN
BARBARA M. MAISTO
MICHAEL D. YIM

ESTABLISHED 1866
COUNSELORS AT LAW
521 FIFTH AVENUE
NEW YORK, NEW YORK 10175
(212) 682-0020
TELEFAX: (212) 682-9380
PUTNEYLAW.COM

328 NEWMAN SPRINGS ROAD
RED BANK, NEW JERSEY 07701
(732) 379-6020
TELEFAX: (732) 345-9444

1225 FRANKLIN AVENUE, SUITE 200
GARDEN CITY, NY 11530
(516) 746-0070
TELEFAX: (516) 746-0599

COUNSEL
CHARLES J. GROPPE
THOMAS M. LAMBERTI
ANDREA HYDE
BRIEN D. WARD
WILLIAM M. POLLAK

January 26, 2021

**Via ECF**
The Honorable Roanne L. Mann
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:  **Yelena Ruderman v. Law Office of Yuriy Prakhin, P.C., et al.**
> **E.D.N.Y. Case No. 19-cv-02987 (RJD) (RLM)**

Dear Magistrate Judge Mann:

As Your Honor is aware, this firm represents Defendants, Law Office of Yuriy Prakhin (the "Firm") and Yuriy Prakhin, Esq. ("Mr. Prakhin) (collectively, "Defendants") in the above-referenced action. We write in opposition to Plaintiff's motion to compel, seeking: (1) *in camera* review of all the documents on Defendants' privilege log; (2) production of all documents concerning a *sua sponte* investigation in 2015 by the Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts (the "Grievance Committee"); (3) production of over a thousand pages of irrelevant SAGA records containing confidential client information; and (4) an additional, unnecessary search of Defendants' internal messaging system ("IM system").

Defendants have produced 13,152 pages of documents, searched over 550 recordings, produced witnesses for six depositions, and hired two technology experts to conduct discovery searches to respond to Plaintiff's overbroad, burdensome, and disproportionate demands for discovery. Despite Defendants' good faith compliance with their discovery obligations, Plaintiff

Hon. Roanne L. Mann
January 26, 2021
Page 2

continues to seek to unduly burden and impose additional costs on Defendants with unreasonable demands for discovery which are not necessary or proportional to the prosecution or defense of this litigation.  The unreasonableness of Plaintiff's position is demonstrated by the fact that Plaintiff has refused Defendants' many offers of compromise to resolve these issues.  For these reasons and as explained in detail below, Plaintiff's motion to compel should be denied in its entirety.

### I. Defendants Have Properly Withheld the Communications on their Privilege Log

Defendants' Privilege Log identifies communications between the Firm's employees and Mr. Prakhin created at the direction of counsel to aid in Defendants' defense against this action, and communications with non-testifying experts.  Disregarding this Court's request in its January 13, 2021, Electronic Order that Plaintiff "limit the number of documents for which she is seeking in camera inspection," Plaintiff has requested that all communications on Defendants' Privilege Log be reviewed by this Court.  As Defendants have properly withheld the at-issue communications as privileged, an *in camera* inspection of such communications is unnecessary.

#### A. The Communications Between Firm Employees and Mr. Prakhin Are Privileged

The communications listed on Defendants' Privilege Log between Mr. Prakhin and two of his employees are properly designated as privileged communications.  Communications among employees of a corporate defendant may be privileged if such communications are made, at the direction of counsel, to gather information to aid the corporate defendant's counsel in providing representation in an ongoing litigation. *See Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58 (S.D.N.Y. 2010); *Carter v. Cornell University*, 173 F.R.D. 92 (S.D.N.Y. 1997).  In *Gucci America Inc.*, the Court held that communications between a non-attorney employee and his supervisor, Gucci's in-house counsel, were privileged as the communications concerned the employee's efforts to gather information and documentation for an ongoing litigation at the instruction of

Hon. Roanne L. Mann
January 26, 2021
Page 3

Gucci's outside counsel. *See Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. at 58-71. Furthermore, in *Carter*, the Court held that interviews and communications among a corporate defendant's employees to gather information after litigation commenced, at the instruction of outside counsel to aid counsel in the corporate defendant's legal representation, were privileged. *Carter*, 173 F.R.D. at 94-95. Applying these holdings, the at-issue communications between Mr. Prakhin and employees are privileged.

Here, Mr. Prakhin, an attorney and President of the Firm, communicated with two Firm employees, pursuant to directions from outside counsel, to gather information and documentation to assist in the litigation and defense of Plaintiff's action. Significantly, these communications all occurred with Mr. Prakhin <u>after</u> Plaintiff commenced this action against Defendants and during the discovery period. (*See* ECF No. 47, Ex. 1). As explained to Plaintiff during the parties' meet-and-confers, as a business entity, the Firm must use employees to gather information and documentation to aid its defense as it is unable to do so itself. As such, the holdings of *Gucci America, Inc.* and *Carter* are directly on point and support Defendants' assertion of privilege over the at-issue communications.

Plaintiff's unfounded assertion that these communications are "customarily prepared in the Defendants' ordinary course of business" is undermined by the fact that no similar communications were created during Plaintiff's employment, and these communications were created months and years after Plaintiff's termination to specifically assist in the defense of Plaintiff's action. As these communications between Mr. Prakhin and two employees were generated to assist in gathering information and documents for Defendants' defense, and would not have been created but for Plaintiff's action, these communications are privileged. *See Gov't Employees Ins. Co. v. Saco*, No. CV 2012-5633, 2014 WL 12834838 (E.D.N.Y. Sept. 30, 2014)

("Unless the privilege is overcome, it bars discovery where a document was created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation.") (internal quotations omitted).

Moreover, the caselaw cited by Plaintiff is readily distinguishable from the facts here. *See, e.g., von Bulow by Auersperg v. von Bulow*, 811 F.2d 136 (2d Cir. 1987) (holding that notes regarding a criminal trial taken by an individual previously employed as a paralegal were not privileged); *Medina v. Buther*, No. 15-cv-1955, 2018 WL 4383098 (S.D.N.Y. Aug. 22, 2018) (holding that employees' e-mails discussing a patient's medical treatment plan and the performance of their own job duties before the commencement of any litigation were not privileged). Most significantly, unlike the cases cited by Plaintiff, the at-issue communications in this matter involve the gathering of information and documents in response to and because of Plaintiff's action, and do not involve an internal investigation conducted before the filing of this litigation. *Cf. Cicel (Beijing) Science & Technology Co., Ltd. v. Misonix, Inc.*, 331 F.R.D. 218 (E.D.N.Y. 2019) (concerning documents about a manufacturer's internal investigation of conduct by a distributor before the commencement of the breach of contract action); *Koumoulis v. Independent Financial Marketing Group, Inc.*, 295 F.R.D. 28 (E.D.N.Y. 2013) (concerning communications regarding a corporate client's internal investigation which were generated while plaintiff was still employed with the corporate client and before the commencement of any litigation).

Additionally, the holding *In re Rivastigmine Patent Litigation*, 237 F.R.D. 69 (S.D.N.Y. 2006), does not support Plaintiff's contentions. In *Rivastigmine*, the Court found that communications by non-attorney employees of the corporate plaintiff were privileged because the employees were acting under the supervision of the corporate plaintiff's in-house counsel at the time of the communications. *Id.* at 79-82 (noting that "[c]ommunications among non-attorneys in

Hon. Roanne L. Mann
January 26, 2021
Page 5

a corporation may be privileged if made at the direction of counsel, to gather information to aid counsel in providing legal services"). This is analogous to the communications at-issue here as the Firm's employees gathered information and documents, requested by outside counsel, to assist in the provision of legal services to Defendants, and these employees were supervised by Mr. Prakhin, an attorney at the Firm, when the communications were made. In a desperate attempt to find support for her position, Plaintiff cites a portion of the *Rivastigmine* holding which does not discuss a scenario similar to this dispute. *See id*. at 83 (discussing documents plaintiff designated as privileged but failed to identify any individuals involved in the communications). Thus, the relevant, analogous portions of the *Rivastigmine* holding support Defendants' withholding of the at-issue communications as privileged.

Contrary to Plaintiff's assertions, Defendants have not waived any privilege concerning these communications. The deposition testimony of Mr. Prakhin, Irene Raskin, Office Manager, and Erica Larssen, Paralegal, does not support Plaintiff's claim that the at-issue communications are not privileged or that Defendants' have waived their privilege claim. First, Defendants' counsel objected on a continuing basis to all questions concerning Mr. Prakhin's communications with employees as privileged and advised against the disclosure of the contents of privileged conservations. (*See* Ex. A, Prakhin's 30(b)(6) Dep. at 21:24-24:1; Ex. B, Larssen Dep. at 41:15-44:12). Second, the deposition testimony establishes Mr. Prakhin and employees communicated to gather documents and information for discovery and in defense of this litigation, but does not disclose the contents of these communications. (*See* Ex. A, Prakhin's 30(b)(6) Dep. at 25:2-26:21; 34:14-35:6; Ex. C, Raskin Dep. at 30:5-17, 32:3-14). The other conversations Mr. Prakhin had with employees concerning this litigation were not in the presence or at the direction of counsel and, therefore, were not privileged. As Defendants have not waived their privilege claim over

Hon. Roanne L. Mann
January 26, 2021
Page 6

communications concerning the gathering information in defense of this litigation, Defendants withholding of such communications is proper.

Defendants have also not sought to use their privilege designations as "a shield and a sword." This metaphor is used in circumstances where a party "'partially disclose[d] privileged communications or affirmatively [relied] on privileged communications to support its claim or defense and then shield[s] the underlying communications from scrutiny by the opposing party.'" *In re Sims*, 534 F.3d 117 (2d Cir. 2008) (quoting *In re Grand Jury Proceedings,* 219 F.3d 175, 182 (2d Cir.2000)) (both cases cited by Plaintiff). Defendants have not done so. Defendants have not produced privileged communications, created after Plaintiff commenced this action, between Mr. Prakhin and Firm employees concerning the gathering of information and documents to assist in the outside counsel's provision of legal services. Indeed, Plaintiff has not identified any such production. Thus, Defendants have properly designated and withheld their privileged communications.

### B. The Communications with Experts Are Privileged

Defendants' communications with non-testifying experts are privileged. Rule 26 provides that "a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial" unless the requesting party demonstrates "exceptional circumstances" warranting disclosure. Fed. R. Civ. Pro. 26(b)(4)(D) (emphasis added). Indeed, it is well established that a party's communications with non-testifying experts are protected from disclosure. *See, e.g.*, *Williams v. Bridgeport Music, Inc.*, 300 F.R.D. 120, 122-124 (S.D.N.Y. 2014) (holding that the non-testifying expert privilege protects all facts known and opinions held by a consulting expert); *J.T. Eaton & Co. v. Atlantic Paste &*

Hon. Roanne L. Mann
January 26, 2021
Page 7

*Glue Co.*, No. 84-cv-4438, 1987 WL 17084 *4 (E.D.N.Y. Aug. 31, 1987) (holding that a company's communications with a technical consultant regarding the litigation were privileged under the work product doctrine). Accordingly, Defendants have withheld communications with non-testifying experts as privileged.

      Plaintiff contends that Defendants' designations are improper because Defendants have not retained these experts yet. Defendants have not made final determinations regarding which experts to retain as there is additional time for the parties to conduct expert discovery. To date, Defendants have been focused on responding to Plaintiff's voluminous discovery demands. Nevertheless, Defendants have properly offered to produce to Plaintiff any communications with experts listed on the Privilege Log that Defendants do not ultimately retain. *See Moore U.S.A. Inc. v. Standard Register Co.*, 206 F.R.D. 72 (W.D.N.Y. 2001) ("While it is true that Moore has not yet designated Chemir Labs as a testifying or a non-testifying expert, neither has the court entered a scheduling order regarding a deadline for the disclosure of the parties' respective trial experts. Until the court sets a date by which Moore must decide whether to identify Chemir Labs as one of its trial experts, Moore is entitled to the protection afforded by Rule 26(b)(4)(B).") (internal quotations and alterations omitted); *see also Nikkal Indus., Ltd. v. Salton, Inc.*, 689 F. Supp. 187, 192 (S.D.N.Y. 1988) (cited by Plaintiff) (requiring the production preliminary communications with an expert <u>after</u> the party hired a different expert, never retained the at-issue expert, and informed the at-issue expert that another individual had been hired instead). Accordingly, Defendants have properly designed their communications with non-testifying experts as privileged.

Hon. Roanne L. Mann
January 26, 2021
Page 8

### II. Plaintiff Has Failed to Justify Her Demand for the Production of Further Documentation Regarding The Grievance Committee's 2015 Investigation

In Plaintiff's Fourth Set of Requests for the Production of Documents, Plaintiff demanded that Defendants produce "[a]ll documents, communications, and electronically stored information concerning any allegations, complaints, grievances, investigations, and/or findings of unethical conduct by Defendants or any current or former employees of Defendants," including by any grievance committee. (Ex. D, Request Nos. 54-56). Defendants objected to this request on the grounds that these requests were duplicative, overboard, unlimited in temporal scope, and sought irrelevant discovery disproportionate to the needs of this litigation. (Ex. E). Subject to and without waiving these objections, Defendants produced the final determination by the Grievance Committee. (Ex. F). Plaintiff's request for further documentation regarding the Grievance Committee's investigation and determination in 2015 is improper as such documentation is irrelevant to the claims and defenses in this litigation, and simply an attempt by Plaintiff to find inadmissible extrinsic evidence intended to harass and/or embarrass Mr. Prakhin.

The Grievance Committee's investigation in 2015 concerned the recording of telephone conversations at the Firm. (*See* Ex. F). The specific details of this investigation are not relevant to Plaintiff's disability discrimination claim. Moreover, Mr. Prakhin's deposition testimony about the Grievance Committee's investigation and determination is consistent with the Grievance Committee's determination that "no breach of the Rules of Professional Conduct" occurred. (*See id.*; Ex. G, Prakhin Dep. 323:11-325:24). The Grievance Committee's investigation cannot, therefore, be used to attack Mr. Prakhin's propensity for truthfulness. *See Davidson Pipe Co. v. Laventhol and Horwath*, 120 F.R.D. 455, 463 (S.D.N.Y. 1988) (cited by Plaintiff) ("[W]here a

prior incident of deception is considered unimportant or excusable, it may have no impact on the credibility of a witness' trial testimony.").

Moreover, Plaintiff has failed to justify her request for further documentation regarding this issue. Plaintiff's analysis seems to conflate multiple theories as a "prior bad act" to justify this fishing expedition. If Plaintiff considers the "prior bad act" to be the recording of the Firm's phone calls, the existence of this practice is not in dispute. Defendants have already produced phone recordings relevant to this matter from the Firm and Mr. Prakhin truthfully testified about this practice at his deposition. Plaintiff is not requesting further information about this practice during Plaintiff's employment. If Plaintiff considers the "prior bad act" to be the Grievance Committee's *sua sponte* investigation, Defendants are unsure how an investigation constitutes an act of deception perpetrated by Defendants and implicates Defendants' credibility, particularly when Mr. Prakhin admitted that the investigation occurred and accurately testified about the investigation at his deposition and the Committee determined that no unethical conduct occurred. Finally, if Plaintiff is simply hoping to uncover some inconsistent statement or act of deception, from more than five years ago, to use solely for impeachment, such fishing expedition is not permissible. *See Davidson Pipe*, 120 F.R.D. at 463 ("It would obviously be intolerable for the party seeking disclosure to embark on an examination of every statement ever made by a witness in the hope of unearthing a falsehood . . . To justify an inquiry into facts relevant solely to credibility, the party seeking discovery must therefore have a factual basis for believing that prior acts of deception will be revealed.") (internal citations omitted). Accordingly, this Court should deny Plaintiff's unjustified demand for irrelevant discovery regarding the Grievance Committee's 2015 investigation and determination.

Hon. Roanne L. Mann
January 26, 2021
Page 10

### III.  Defendants Have Satisfied Their Discovery Obligations With Respect to SAGA Records

Plaintiff's overbroad request for irrelevant, confidential client information and refusal to compromise with Defendants during their numerous attempts to confer on this issue demonstrates Plaintiff's true intention for these demands is to harass and impose costly burdens on Defendants. As Defendants have met their discovery obligations concerning all relevant SAGA records, Plaintiff's motion to compel should be denied.

In Plaintiff's Fourth Set of Requests for the Production of Documents, Plaintiff demanded that Defendants produce "[a]ll documents, communications, and/or electronically stored information concerning all Saga entries made by attorneys employed by Defendants from September 1, 2012, through February 28, 2017, and May 1, 2018, through December 14, 2018, including, without limitation, the more "complete" and "detailed" Saga notes Defendants previously produced for Plaintiff." (Ex. D).  Defendants objected to this request on the grounds that it was unduly burdensome, overboard in temporal scope, requested the production of wholly irrelevant confidential client information, and was disproportionate to the needs of this litigation. (Ex. E).  In particular, Defendants explained that to obtain the requested SAGA entries, each entry must be individually selected, opened, and printed from the SAGA program.  In or around July 2020, Defendants produced records from SAGA listing every entry by Defendants' attorneys from June 18, 2018, through December 14, 2018, totaling 236 pages.  (Ex. H).  Given the number of SAGA entries requested, and the time-consuming and tedious processes for obtaining the requested entries, Plaintiff's demand was unduly burdensome and disproportionate to the needs of this litigation.

Hon. Roanne L. Mann
January 26, 2021
Page 11

Plaintiff claims that the requested SAGA records are necessary for Plaintiff to compare the quality and robustness of her entries to others. First, as Mr. Prakhin testified at his deposition, Plaintiff's performance was unsatisfactory not because of the content of the SAGA entries, but because of her failure to make those entries. (*See* ECF No. 47 at 10-11, quoting Prakhin's deposition testimony). This is evidenced by the documents already produced by Defendants which list the entries each attorney created, including Plaintiff, between June 18, 2018, through December 14, 2018. (*Compare* Ex. H *with* Ex. I). Second, Defendants offered multiple compromises to mitigate the undue burden on Defendants while providing Plaintiff with the documents she requested. Defendants offered to produce a sampling of the complete SAGA records for one or two attorneys from June 18, 2018 (undisputed date Plaintiff commenced work for the Firm) through December 14, 2018 (undisputed date Plaintiff was terminated from the Firm). Plaintiff rejected this compromise. Defendants offered to provide copies of all SAGA records for all attorneys from June 18, 2018, through December 14, 2018, at Plaintiff's expense. Once again, Plaintiff rejected this compromise. Third, Defendants obtained the complete SAGA records for all attorneys from June 18, 2018, through December 14, 2018, and have made such documents available for Plaintiff's inspection, copying, and scanning at Defendants' counsel's office as of January 15, 2021. Plaintiff then filed this motion to compel on January 19, 2021.

Plaintiff's motion to compel should be denied as Defendants have produced or made available for inspection the SAGA records for all attorneys during the relevant time period. Rule 34 provides that a party may serve a request within the scope of Rule 26(b) "to produce and permit the requesting party or its representative to inspect, copy, test, or sample" documents within the responding party's possession, custody, or control. Fed. R. Civ. Pro. 34. It is well established that the responding party may make discovery available for the requesting party's inspection, and "the

Hon. Roanne L. Mann
January 26, 2021
Page 12

responsibility for bearing the costs attendant to copying responsive documents rests upon the requesting party." *Agerbrink v. Model Serv. LLC*, No. 14-cv-7841, 2017 WL 933095, at *5 (S.D.N.Y. Mar. 8, 2017); *Balance Point Divorce Funding, LLC v. Scrantom*, 305 F.R.D. 67, 74 (S.D.N.Y. 2015) ("[A] party is not required to make copies of documents or ESI for the requesting party. The producing party has the option of producing materials for inspection by the requesting party and the requesting party need not request copies of the documents produced."). Defendants have provided Plaintiff with copies of all of Plaintiff's SAGA records and provided 236 pages of SAGA records for other attorneys. Defendants have also made over a thousand pages of the SAGA entries by all attorneys from June 18, 2018, through December 14, 2018, available for Plaintiff's inspection. As Defendants have satisfied their discovery obligations to produce and make available for inspection relevant documents in this matter, Plaintiff's motion to compel should be denied.

The inspection of documents at the office of Defendants' counsel is safe and proportional to the needs of the case. Defendants and Defendants' counsel are small law firms that simply do not have the capacity to handle Plaintiff's onerous and unnecessary demand for copies of all discovery documents, particularly in light of the burdensome discovery already produced. Additionally, having Plaintiff inspect and make copies only of the documents she actually requires protects the Firm's clients and reduces the risks associated with electronically distributing this personal, confidential information. Moreover, Plaintiff insisted that her deposition be conducted in-person despite the health and safety risks involved with indoor, unmasked gatherings during the COVID-19 pandemic. Unlike a deposition, the inspection of documents does not necessitate the removal of masks, and Plaintiff and/or her representatives can be accommodated with a separate

Hon. Roanne L. Mann
January 26, 2021
Page 13

conference room safely distanced from others. As the relevant SAGA records may be safely inspected, scanned, or copied by Plaintiff, her motion to compel should be denied.

Finally, Plaintiff's request for all of her SAGA entries from 2012 through 2017 should be denied. The quantity or quality of Plaintiff's SAGA entries during her first period of employment with the Firm is not relevant to the claims and defenses in this litigation. Moreover, Plaintiff's demand for five years of records containing wholly irrelevant, confidential client information is disproportionate to the needs of the case and simply another attempt by Plaintiff to impose undue burden and expense on Defendants. Accordingly, the Court should deny Plaintiff's demand for any SAGA records prior to June 18, 2018.

### IV. Defendants' Technology Consultant Conducted A Complete Search Of The Firm's IM System

Defendants have complied with the ESI Protocol in all respects and have produced all non-privileged, relevant, and responsive messages from the Firm's IM System. Defendants should not be required to bear the burden of conducting additional ESI searches simply because Plaintiff wishes to conduct another fishing expedition and has not thoroughly reviewed the documents Defendants' have already produced.

In or around July 2020, Defendants produced approximately 129 pages of messages from the Firm's IM system. (Ex. J). A review of this production demonstrates that the messages were obtained from multiple accounts and contain the search terms listed in the ESI Protocol. *See, e.g.*, D1982 and D02070-D02071 (conversation between Ruderman and Larssen containing the search term "JAWS"); D01977-D01979 and D02060-D02061 (conversation between Belous and Larssen containing the search term "Yelena"); D01983-D01984 and D02064-D02065 (conversation between Belous and Larssen containing the search term "Yelena"); D01961 and D1986-D1987

Hon. Roanne L. Mann
January 26, 2021
Page 14

(conversation between Prakhin and Larssen containing search terms "Yelena" and "Case!"). Plaintiff has not, and cannot, identify any indication that any relevant IM messages are missing. As Defendants' produced the non-privileged, relevant IM messages generated by the search of the Firm's IM system in accordance with the ESI Protocol, Plaintiff's motion to compel an additional search of the Firm's messaging system should be denied.

Moreover, Defendants have produced evidence demonstrating that Mr. Pusachev conducted searches according to the ESI Protocol, including the Firm's IM system. At his deposition, Mr. Pusachev did not recall whether he searched the Firm's IM system. (Ex. K, Pusachev Dep. at 49:2-11, 81:5-19). In response to Plaintiff's Fourth Set of Requests for the Production of Documents, Defendants produced the invoices received from Mr. Pusachev, dated May 5, 2020, and July 6, 2020, detailing the expenses Defendants' incurred for Mr. Pusachev's search of the Firm's emails and IM system. (Exs. D, L). Defendants also produced the checks issued to Mr. Pusachev, dated June 9, 2020, and August 17, 2020. (Ex. L). After refreshing his recollection as to his search of the Firm's IM system, Mr. Pusachev completed an errata sheet clarifying his deposition testimony and submitted an additional affidavit describing his search of the Firm's emails, Mr. Prakhin's emails, and the IM system using the ESI Protocol. (Exs. M, N). Additionally, the difference in time required to conduct the searches is reasonable given Mr. Pusachev's testimony regarding the process required and challenges faced in obtaining the emails and converting thousands of emails into PDF format. (Ex. K, Pusachev Dep. at 46:7-63:5; Ex. O). Thus, in addition to producing all non-privileged, relevant, and responsive IM messages in accordance with the ESI Protocol, Defendants have also produced evidence that Mr. Pusachev conducted the search.

Hon. Roanne L. Mann
January 26, 2021
Page 15

Given the evidence demonstrating that Defendants complied with the ESI Protocol, particularly the fact that Defendants produced 129 pages of relevant and responsive messages, Plaintiff's demand for an additional search of Defendant's IM system at Defendants' expense should be denied.

\*   \*   \*

In light of the foregoing, Plaintiff's motion to compel should be denied in its entirety. Defendants have produced 13,152 pages of discovery in response to Plaintiff's demands. Plaintiff's unreasonable demands for further discovery in the hopes of finding favorable evidence should not be entertained. Defendants have worked diligently and in good faith to resolve these discovery issues while balancing the burdens on the parties. As Defendants have satisfied their discovery obligations and properly withheld privileged communications, this Court should deny Plaintiff's motion to Compel in its entirety. Thank you for Your Honor's consideration of this matter.

    Respectfully submitted,

    /s/ MED

    Mary Ellen Donnelly
    Nicole E. Price

cc:  Counsel of Record (via ECF)