F&F LLP
FARUQI & FARUQI

NEW YORK    CALIFORNIA    DELAWARE    GEORGIA    PENNSYLVANIA

March 24, 2021

**VIA ECF**

The Honorable Raymond J. Dearie
U.S. District Court – E.D.N.Y.
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  <u>Ruderman v. Law Office of Yuriy Prakhin, P.C., et al.</u>, No. 1:19-cv-02987(RJD)(RLM)

Dear Judge Dearie:

      We represent Plaintiff Yelena Ruderman ("Plaintiff") and write in opposition to Defendants' request for a pre-motion conference regarding their anticipated motion for summary judgment. *See* ECF No. 60. By way of background, Plaintiff, an attorney, brings claims against Defendants Law Office of Yuriy Prakhin, P.C. (the "Firm") and Yuriy Prakhin ("Prakhin") (together, "Defendants") for disability discrimination under federal, State, and City law. In September 2018, Plaintiff's vision began deteriorating gradually. On November 26, 2018, Plaintiff was diagnosed with Leber's hereditary optic neuropathy ("LHON"), a genetic disorder that causes sudden, acute loss of central (as opposed to peripheral) vision. Plaintiff disclosed her diagnosis to Defendants on November 28, 2018. Defendants terminated Plaintiff's employment 16 days later, on December 14, 2018.

      As detailed below, Plaintiff will easily be able to establish all elements of her claims for disability discrimination. Frankly, it is difficult to fathom a case less appropriate for pre-trial dismissal. Accordingly, the Court should deny Defendants leave to move for summary judgment, as any such motion would be futile.

**I.**    **<u>Plaintiff Will Be Able to Establish Her Wrongful Termination Claims at Trial</u>**

      Defendants dispute only two elements of Plaintiff's wrongful termination claim: (i) that Plaintiff was qualified for her position; and (ii) that she can establish an inference of discrimination. *See Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020) (reciting elements of prima facie case). As outlined below, Plaintiff easily satisfies both of these elements. At minimum, there are clear material disputes of fact rendering summary judgment inappropriate.

      **A.**    **Plaintiff Was Qualified for Her Position**

      To adequately allege her disability discrimination claims, Plaintiff must plead that she was "otherwise qualified" for her position, meaning that she could "'perform the essential functions of the employment position' at issue 'with or without reasonable accommodation.'" *Frilando v. N.Y. City Transit Auth.*, No. 18-cv-5204 (JSR), 2021 WL 119639, at *4 (S.D.N.Y. Jan. 13, 2021) (quoting 42 U.S.C. §§ 12111(8), 12112(a)).

      Defendants cannot credibly dispute that Plaintiff was able to perform the essential functions of her position. Plaintiff worked for Defendants for approximately five years, receiving consistent raises along the way, before leaving for another law firm. *See* Ex. 1 ("Plaintiff Dep.") at 105:3-23. In early 2018, Prakhin recruited Plaintiff back to the Firm. *See id.* at 135:12-138:20. Within just a few months of Plaintiff's hire, Prakhin assigned to her over 100 additional cases, on top of those she was already managing, in anticipation of the departure of Managing Attorney Irene Gabo ("Gabo") from the Firm (*see* Ex. 2 ("Prakhin Dep.") at 222:4-224:18; Ex. 3 ("Gabo Dep.") at 53:14-54:10)— an unmistakable acknowledgement of Plaintiff's qualification for her role.

      Contrary to Defendants' assertion, Plaintiff was not on probation when she returned to the Firm in 2018 and was immediately provided with health insurance benefits and other benefits of non-probationary employees. Plaintiff Dep. at 145:22-146:15; Ex. 4 ("Raskin Dep.") at 108:21-24; Ex. 5

("Firm Handbook") at 15.  Moreover, Defendants list myriad performance issues from which Plaintiff supposedly suffered (*see* ECF No. 60 at 1-2); however, they have produced little to no evidence to support these bald assertions.  While Prakhin claims to have met with Plaintiff on three occasions to discuss her performance prior to firing her (*see* Prakhin Dep. at 213:9-218:22), there is no record of any such meetings (*see id.*) and Plaintiff disputes having had any discussions with Prakhin or anyone else about her alleged poor performance.  Plaintiff Dep. at 174:25-175:3.  Further, no other witness corroborated the occurrence of these meetings and Gabo, who worked closely with Prakhin to supervise Plaintiff, testified unequivocally that Prakhin never expressed any dissatisfaction with Plaintiff's work.  *See* Gabo Dep. at 51:6-52:8.  Notably, every non-employee of the Firm who has offered testimony in this matter has unequivocally denied that Plaintiff's performance was anything but exceptional, both before and after the tragic loss of her vision.  *See id.* at 46:2-14; Ex. 6 (Decl. of Steven Korytny); Ex. 7 (Decl. of Nicholas Serlin).

Defendants cite Plaintiff's alleged failure to enter sufficient case notes in a program called "SAGA," which they will undoubtedly claim formed the primary basis for her termination.  However, contemporaneous emails reflect that all attorneys throughout the Firm failed to enter SAGA notes regularly.  *See* Exs. 8 - 12.  Gabo confirmed this fact at her deposition, and further testified that failure to enter SAGA notes would be an invalid and unprecedented basis on which to fire an attorney.  *See* Gabo Dep. at 69:9-81:3; *see also DeCintio v. Westchester Cty. Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987) (discrimination may be proven by evidence of "disparate treatment of fellow employees who engaged in similar conduct").

Even assuming *arguendo* that Defendants could prove that Plaintiff performed poorly, they would still be unable to prove that she was not qualified to perform her job duties with or without a reasonable accommodation.  Defendants fired Plaintiff two weeks after she disclosed her LHON diagnosis, without engaging in any interactive process or providing her an opportunity to explore devices to assist her.  Indeed, Plaintiff testified that with the help of magnifying devices and computer software, she is capable of performing all job duties for which she was responsible for at the Firm.  *See* Plaintiff Dep. at 224:3-228:3; *see also McMillan v. City of N.Y.*, 711 F.3d 120, 127 (2d Cir. 2013) ("'It is enough for the plaintiff to suggest the existence of a plausible accommodation'" that would have allowed her to perform her essential job functions, "'the costs of which, facially, do not clearly exceed its benefits.'").  Defendants have no evidence to refute this, which is fatal to their argument.

### B. Defendants Terminated Plaintiff Specifically Because of Her Disability

Plaintiff has amassed far more evidence than is required to prove that her termination was motivated by discriminatory animus.  Indeed, upon terminating Plaintiff, Prakhin specifically told her that he would be happy to rehire her if her disability somehow improved.  ECF No. 1 at 9.

As detailed above, Defendants' stated reasons for firing Plaintiff are unworthy of credence, and Prakhin fired Plaintiff two weeks after she disclosed to him that she had been diagnosed with LHON.  These facts alone support an inference of discrimination.  *See, e.g., Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981) (a plaintiff may establish pretext "by showing that the employer's proffered explanation is unworthy of credence"); *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (three-week temporal proximity is alone "sufficiently short to make a prima facie showing of causation").

Further, Prakhin admitted at his deposition that his decision to fire Plaintiff was motivated at least in part by Plaintiff's absences from work to seek medical treatment for her disability.  *See* Prakhin Dep. at 276:13-19.  In an audio recording produced by Defendants, the Firm's Office Manager, Irene Raskin ("Raskin") told Prakhin that Plaintiff was out of the office seeking medical treatment, in response to which Prakhin said, "I'm going to have to start looking … well actually, I'm already looking."—an obvious allusion to firing Plaintiff and searching for her replacement.  *See* Ex. 13 (transcript of audio recording, translated from Russian to English).

Page 3

Additionally, shortly before firing Plaintiff and two days after she disclosed her diagnosis, Defendants pressured her to go out on short-term disability, as evidenced by an email referencing disability forms Defendants sent her (*see* Ex. 14) and a recorded conversation wherein Prakhin told Plaintiff shortly before her termination, "[M]ost likely we expect to file disability because I don't know any other way." Ex. 15 (transcript of audio recording, translated from Russian to English). *Turner v. Eastconn Reg'l Educ. Serv. Ctr.*, No. 3:12-cv-788(VLB), 2013 WL 1092907, at *3 (D. Conn. Mar. 15, 2013) (plaintiff stated prima facie case of discrimination where employer "would not make reasonable accommodations and instead forced her to take FMLA leave").

Finally, the fact that Defendants staffed Plaintiff on over 100 cases previously run by Gabo, the former Managing Attorney, in early October, only to fire her approximately ten weeks later—and two weeks after she disclosed that she had been diagnosed with LHON, which has no known cure—undoubtedly supports a finding of animus. *See, e.g.*, *Ibok v. Sec. Indus. Auto. Corp.*, 369 F. App'x 210, 213 (2d Cir. 2010) (the fact that "evaluations of the plaintiff post-dating the protected activity contradict earlier evaluations" may serve as evidence of pretext). Indeed, Defendants' vesting of Plaintiff with additional responsibilities after four months of employment directly contradicts their claim that Plaintiff was terrible at her job from the moment they rehired her. *See Cruse v. G & J USA Publ'g*, 96 F. Supp. 2d 320, 329 (S.D.N.Y. 2000) ("To establish pretext and thereby successfully oppose summary judgment, a plaintiff may demonstrate weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered . . . reason for its action.").

## II. Plaintiff Requested and Was Denied Several Reasonable Accommodations

During her employment, Plaintiff requested that Defendants reasonably accommodate her by providing five different devices to assist her with her vision impairment: (i) a magnifying glass; (ii) a full-page magnifier; (iii) a speech-to-text dictation device called Dragon; (iv) OrCam glasses, which read text aloud to the user; (v) and JAWS, a program that reads text aloud from a computer screen. *See* Plaintiff Dep. at 211:19-215:19.

Defendants provided Plaintiff with a magnifying glass that was already in their possession, but denied the remaining four accommodations. Indeed, Plaintiff purchased a full-page magnifier herself and was never reimbursed. *See id.* at 213:10-214:19, 252:24-253:12. Plaintiff asked Defendants multiple times to provide her with Dragon, which the Firm previously purchased for another employee, but received no response. *See id.* at 214:22-216:16. Similarly, Plaintiff purchased OrCam for herself and Defendants refused to reimburse her. *See id.* at 216:17-217:8. Lastly, Plaintiff attempted to have JAWS installed on her Firm computer, but Prakhin intervened and discouraged her from doing so. *See id.* at 222:14-224:17. Prakhin claims to have authorized the Firm's IT consultant, Alexander Pusachev ("Pusachev") to install JAWS (*see* Prakhin Dep. at 260:17-261:19); however, Pusachev has no recollection of installing software on Plaintiff's computer or discussing the same with Prakhin. *See* Ex. 16 ("Pusachev Dep.") at 107:4-108:14.

Rather than address these facts, Defendants protest that they were not required to provide Plaintiff any accommodation at all because she did not submit medical documentation concerning her lost vision, as if doing so is supposedly "required under the law[.]" *See* ECF No. 60 at 3. "Defendant[s'] argument misstates the law. Plaintiff is not required, as part of [her] *prima facie* case for failure to provide reasonable accommodation, to demonstrate that [she] provided medical documentation supporting [her] requested accommodation." *Rotger v. Montefiore Med. Ctr.*, No. 1:15-cv-7783-GHW, 2019 WL 1429556, at *10 (S.D.N.Y. Mar. 29, 2019). While Defendants were "entitled to request that [Plaintiff] provide documentation of [her] disability" (*Zito v. Donahoe*, 915 F. Supp. 2d 440, 448 (S.D.N.Y. 2012)), it is far from clear that any such request was made. Indeed, while Prakhin and Raskin claim to have made such requests (*see* Prakhin Dep. at 131:25-133:22; Raskin Dep. at 129:2-132:22), not a single document, recording, or correspondence has been produced to support this assertion. On the other hand, Plaintiff denies having ever received such a request, and Gabo similarly denied that either Prakhin or Raskin ever requested medical documentation from Plaintiff. *See* Plaintiff Dep. at 205:14-206:13; Gabo Dep. at 103:9-104:4.

685 Third Avenue  New York, NY 10017  Phone: 212.983.9330  Fax: 212.983.9331  EmployeeRightsCounsel.com  FaruqiLaw.com



\*          \*          \*

  Plaintiff submits that this case is riddled with questions of material fact that must be decided by a trier of fact.  As such, Plaintiff respectfully requests that the Court deny Defendants' request for a pre-motion conference.  We thank the Court for its time and attention to this matter.

                 Respectfully submitted,

                 Innessa M. Huot

Cc:  Counsel of Record (*via* ECF)