**FARUQI & FARUQI**

NEW YORK    CALIFORNIA    DELAWARE    GEORGIA    PENNSYLVANIA

**VIA ECF**                                                                              March 30, 2021

The Honorable Roanne L. Mann
United States District Court – E.D.N.Y.
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  *Ruderman v. Law Office of Yuriy Prakhin, P.C., et al.*, No. 1:19-cv-02987(RJD)(RLM)

Dear Judge Mann:

      We represent Plaintiff Yelena Ruderman ("Plaintiff") in the above-referenced action and write in opposition to Defendants' request to subpoena AT&T for the release of Plaintiff's cell phone records after discovery has been ***closed for 2.5 months***. *See* ECF No. 63.

### I.  Brief Factual Background

      Defendants first served Plaintiff with notice of a subpoena to T-Mobile on January 8, 2021 (*see* Ex. A)—ten days before the close of discovery. *See* Court's November 3, 2020 Order. The same day, the parties met and conferred and Plaintiff objected to the subpoena, explaining, *inter alia*, that the subpoena is overly intrusive, violates Plaintiff's and non-parties' privacy rights, and seeks records that do not exist, are completely irrelevant, and have absolutely no probative value in this case. *See* Ex. B. Over objection, Defendants served the subpoena on January 12, 2021.

      On February 5, 2021, defense counsel informed Plaintiff's counsel that they received a response to the subpoena wherein T-Mobile notified them that AT&T was Plaintiff's cell phone provider and that the requested records "are in the possession of AT&T." Ex. C. Plaintiff repeatedly requested (over six different times) that Defendants produce the T-Mobile communication. *See* Ex. D at 1-4; Ex. E at 2. Defendants repeatedly refused, before finally sending the communication one month later—on March 4, 2021. Ex. F (attachment to email).[1] Notably, contrary to defense counsel's representations (Ex. C), T-Mobile's response in no way states that the requested records are in AT&T's possession (Ex. F). In fact, the majority of the requested records do not exist.

      On March 8, 2021, shortly after receiving the requested communication from T-Mobile, Plaintiff's counsel promptly informed defense counsel that Plaintiff does not consent to the subpoena of AT&T. Ex. G. At no time did Plaintiff's counsel contend that AT&T was not Plaintiff's cell phone service provider, as falsely stated in Defendants' submission. *See* ECF No. 63 at 2. Further, at no point during discovery have Defendants asked Plaintiff—whether through a written request, deposition, or even in a meet-and-confer among counsel—to identify her cell phone service provider.

### II.  Defendants' Have Not Established Good Cause for Their Request

      In order to justify modifying the Court's scheduling order 2.5 months after the close of discovery, Defendants must establish "good cause" to support such modification. Fed. R. Civ. P. 16(b)(4). "'The requisite good cause is based on factors such as the diligence *vel non* of the party requesting an extension, bad faith *vel non* of the party opposing such extension, the phase of the litigation and prior knowledge of and notice to the parties.'" *Vilkhu v. City of N.Y.*, No. 06-CV-2095 (CPS)(JO), 2007 WL 2713340, at *5 (E.D.N.Y. Sept. 13, 2007).[2] Despite having all information they

---

[1] The Court has Ordered that Plaintiff show cause why the communication from T-Mobile claiming not to be Plaintiff's cell phone provider should not be produced. *See* Court's March 26, 2021 Order. This communication was sent to Defendants' counsel, not Plaintiff's counsel. Defendants had the obligation to produce this communication, not Plaintiff. After over six requests to produce, Defendants finally produced this communication on March 4, 2021, approximately one month after it was provided to them.

[2] Defendants argue that their subpoena should be considered timely merely because they subpoenaed the wrong provider prior to the close of discovery. This is wrong. "Neither law nor logic supports that result." *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2016 WL 2766654, at *1 (S.D.N.Y. May 12, 2016) Rather, "a party's service of a similar subpoena before the discovery cut-off should be considered as one factor in the 'good cause' analysis—along with the party's diligence[.]" *Id.*



requested and ample time to subpoena Plaintiff's cell phone records, Defendants waited until the eleventh hour—or, better put, after the twelfth hour—to seek leave of the Court to do so. Defendants have been anything but diligent. Therefore, leave should be denied.

As Defendants acknowledge, they did not serve notice of the T-Mobile subpoena until ten days before the close of discovery, and did not even notify Plaintiff of their desire to subpoena a second entity, AT&T, until February 5, 2021—two weeks after discovery had closed—despite being informed in February 2020 (one year prior) that Plaintiff was not in possession of cell phone records. *See* ECF No. 49 at 1 (summarizing previous communications among counsel on this subject). This alone warrants denial of Defendants' request. Indeed, courts have consistently held that, where a party "is aware of the existence of documents before the close of discovery and issues discovery requests subsequent to the discovery deadline, the discovery requests should be denied." *In re Health Mgmt., Inc.*, No. CV 96-0889(ADS), 1999 WL 33594132, at *5 (E.D.N.Y. Sept. 25, 1999) (collecting seven cases within the Second Circuit).

Defendants attempt to justify their untimely request by claiming they acted diligently and trying to push blame for their delay on Plaintiff's counsel. However, Plaintiff's counsel has responded promptly to all inquiries regarding both the T-Mobile and AT&T subpoenas, and met and conferred with defense counsel multiple times. In fact, Defendants themselves admitted that they, rather than Plaintiff, delayed in responding to communications regarding the subpoena. Ex. D at 1 ("***We have delayed responding to your email*** . . .") (emphasis added). Defendants are squarely to blame for the lateness of their request, which is the result of their own dormancy and failure to seek necessary information from Plaintiff in discovery.

Plaintiff's counsel notified defense counsel more than a year ago that Plaintiff was not in possession of 2018 cell phone records (*see* ECF No. 49 at 1), yet Defendants did not take action until the eve of the parties' discovery close. Moreover, defense counsel deposed Plaintiff in September 2020 and questioned her regarding: (1) her hours worked; (2) out-of-office work; (3) Defendants' personal cell phone use policy; and (4) providing notice to Defendants regarding her medical condition and absences from work—*i.e.*, each of the four issues for which Defendants claim the subpoenaed documents are purportedly relevant.[3] Defendants have clearly intended to raise defenses on these subjects for months, yet they still did not pursue the subpoena until the close of discovery.

In fact, Defendants did not even ask Plaintiff to identify her cell phone service provider at her deposition, nor did they request that she do so at any time thereafter. Rather, they seemingly guessed that T-Mobile was the correct provider and issued a subpoena. As evidenced by the report attached to their submission, it appears Defendants waited until February 5, 2021—weeks after the close of discovery—to try to ascertain Plaintiff's provider. *See* Ex. H (highlighted "Current Date" of the report recorded as "February 5, 2021") (attached to Defendants' letter motion as Exhibit B).

Finally, even though Plaintiff requested the T-Mobile communication over six times (Ex. D at 1-4; Ex. E at 2), Defendants waited an entire month before finally providing it on March 4, 2021 (Ex. F). After receiving the communication, Plaintiff promptly confirmed her opposition to the subpoena on March 8, 2021. *See* Ex. G. Still, Defendants waited nearly three more weeks before raising this issue with the Court. *See generally* ECF No. 63.

The decision in *Four M Corp. v. Guiliano*, No. 89 Civ. 5275(KTD), 1991 WL 44840, at *1 (S.D.N.Y. Mar. 27, 1991) is instructive. There, the court quashed a third-party subpoena served after the close of discovery, even though (unlike in the instant matter) the plaintiff had withheld relevant discovery. As the court explained, "there was sufficient information available to defendant prior to the discovery cut-off to demonstrate a basis for the [ ] discovery. . . . Accordingly, defendant's decision not to seek third-party discovery . . . during the discovery period will not be disturbed." *Id.* Similarly, here, Defendants have known that Plaintiff lost her cell phone for over a year, and had already developed the theories they now seek to support as of Plaintiff's deposition in September 2020. Nevertheless, they waited until the close of discovery to act. This is inexcusable and in no way warrants delaying summary judgment and trial even further.

---

[3] As discussed *infra* § III, there is no need for additional discovery on these topics, as the relevant facts are beyond any credible dispute and will not be uncovered further by documents in AT&T's possession.



### III. Defendants' Subpoena Seeks Useless, Irrelevant Discovery, and Will Only Waste the Parties' and the Court's Time

Defendants argue that records in AT&T's possession are relevant to four issues in this case: (1) whether Defendants' timesheets accurately reflect Plaintiff's hours worked; (2) whether Plaintiff performed work outside of the office; (3) whether Plaintiff violated Defendants' personal cell phone use policy; and (4) whether Plaintiff contacted Defendants' Office Manager Irene Raskin ("Raskin") regarding her medical condition and absences from work. *See* ECF No. 63 at 3. None of these purported factual issues justifies reopening discovery well over two months after it has closed.

As an initial matter, as has been communicated to defense counsel multiple times, AT&T does not store text messages. No such records exist. AT&T also does not store GPS data or Internet IP data for more than 90 days; thereby making Defendants' requested 2018 records likewise non-existent. The only 2018 records AT&T may have are call logs and cell site location data – which are completely irrelevant and have no probative value in this case. *See* Ex. I at 1.

First, there is no dispute that the timesheets generated by Defendants' time-clocking system do not reflect Plaintiff's hours worked. As Yuriy Prakhin ("Prakhin") testified, "this is a machine that we use mostly for paralegals, not for attorneys. But attorneys use this punch-in machine as well, but, however, it [does] not reflect the real hours they work." Ex. J ("Prakhin Dep.") at 303:9-20.

Second, there is no dispute that Plaintiff performed work outside of the office. *See id.* at 165:11-19 (Plaintiff handled depositions, court appearances, and mediations all over New York City). However, Defendants have confirmed and reconfirmed that they do not have a record of the locations or addresses of Plaintiff's work-related activities. *See* Ex. I at 1. As such, cell site data – which only provides a general radius of Plaintiff's potential whereabouts, and thus cannot be used to pinpoint her at specific addresses – has no probative value. Indeed, this data will not reveal whether Plaintiff was conducting work-related activities while out of the office. *Id.* Moreover, Defendants offer no basis to believe Plaintiff was doing anything but work or visiting doctors when she was out of the office—they merely hope to unearth potential impeachment material. This does not render the subpoenaed documents relevant. *See Davidson Pipe Co. v. Laventhol & Horwath*, 120 F.R.D. 455, 463 (S.D.N.Y. 1988) ("To justify an inquiry into facts relevant solely to credibility, the party seeking discovery must [] have a factual basis for believing that prior acts of deception will be revealed.").

Third, documents from AT&T will shed no light on whether Plaintiff violated Defendants' cell phone policy, which requires only that employees "exercise discretion" and discourages only "personal," as opposed to professional, cell phone use. Ex. K at D11927. Plaintiff regularly communicated with clients, adversaries, negotiators, investigators, court reporters, and experts via cell phone. Defendants already confirmed that they do not have a comprehensive list of such work-related phone numbers. *See* Ex. I at 1. As such, call logs, which only show outgoing and incoming calls, without a comprehensive list of work-related phone numbers, have absolutely no probative value. Moreover, Defendants again offer no factual predicate for their belief that Plaintiff may have violated the cell phone policy. Rather, Defendants' subpoena is based on "nothing more than speculative hope that useful impeachment material will be unearthed" and, as such, is improper. *Surles v. Air France*, No. 00 Civ. 5004(RMB)(FM), 2001 WL 815522, at *4 (S.D.N.Y. July 19, 2001).

Fourth, it is similarly beyond dispute that Plaintiff did, in fact, inform Defendants that she would be out of the office to obtain medical treatment, as evidenced by recorded and transcribed phone calls wherein Prakhin asks Raskin for Plaintiff's whereabouts. *See, e.g.*, Ex. L ("She had a 2 o'clock appointment with the doctor."); Ex. M (Plaintiff was with her father "in the hospital" and had "her own appointments today and tomorrow."); Ex. N ("[S]he's doing some kind of IV."); Ex. O (Plaintiff was at an EBT and finished her doctor's appointment at 4:30); Ex. P ("Lena's at the doctor's in the morning."). Notably, Defendants have failed to produce records from Raskin's cell phone, which they should easily be able to obtain and would provide the discovery they seek. *See Warnke v. CVS Corp.*, 265 F.R.D. 64, 70 (E.D.N.Y. 2010) (granting motion to quash where subpoenaing party could "obtain the information from less intrusive means").

As such, the requested records are irrelevant and unnecessary. Further, the only records in AT&T possession—cell site and call logs—will offer no new information on Plaintiff's work, her requests for accommodations, the discrimination she endured, or any other issue relevant in this case.



Page 4

\*   \*   \*

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' request in its entirety. We thank the Court for its time and attention to this matter.

Respectfully submitted,

Innessa M. Huot

Cc: Counsel of Record (*via* ECF)