**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**YELENA RUDERMAN,**

                              **Plaintiff,**

     **- against -**

**LAW OFFICE OF YURIY PRAKHIN,**
**P.C., and YURIY PRAKHIN, ESQ.** *in both*
*his individual and professional capacities*,

                              **Defendants.**

**Case No. 19-cv-02987 (RJD) (RLM)**

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT**

Bond, Schoeneck & King, PLLC
600 Third Avenue, 22nd Floor
New York, New York  10016-1915
Telephone:  (646) 253-2300

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 2

ARGUMENT ......................................................................................................................... 6

POINT I
THE STANDARD FOR A MOTION FOR SUMMARY JUDGMENT ................................. 6

POINT II
PLAINTIFF CANNOT ESTABLISH A CLAIM OF DISABILITY DISCRIMINATION ....... 7

    A.   Plaintiff Cannot Establish A Prima Facie Case ........................................................ 8

        1.   Defendants did not have Notice of a Disability ............................. 9
        2.   Plaintiff Failed to Perform the Essential Functions of her Job ..................... 9
        3.   No Inference of Discrimination Arises from Plaintiff's Termination ........ 13

    B.   Defendants' Terminated Plaintiff's Employment Based on Legitimate,
       Non-Discriminatory Reasons ................................................................................ 16

    C.   Plaintiff cannot Establish that her Termination Based on Poor Work
       Performance is Pretextual .................................................................................... 17

POINT III
PLAINTIFF'S FAILURE TO ACCOMMODATE CLAIMS
ARE FATALLY DEFICIENT AND MUST BE DISMISSED ................................................ 19

    A.   Defendants Provided Plaintiff with Reasonable Accommodations ...................... 19

    B.   Defendants did not Refuse to Provide Reasonable Accommodations .................. 20

    C.   Defendants Engaged in the Interactive Process with Plaintiff ............................. 22

    D.   Plaintiff Failed to Provide Defendants with Adequate Information ...................... 24

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Abdu–Brisson v. Delta Air Lines, Inc.*,
  239 F.3d 456 (2d Cir.2001) ....................................................................................7

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ..............................................................................................7

*Aquinas v. Fed. Express Corp.*,
  940 F. Supp. 73 (S.D.N.Y. 1996) .........................................................................10

*Bronzini v. Classic Sec. LLC*,
  2009 WL 102140 (S.D.N.Y. 2009) .......................................................................17

*Carlton v. Mystic Transp., Inc.*,
  202 F.3d 129 (2d Cir. 2000) ..................................................................................8

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ..............................................................................................7

*Chambers v. TRM Copy Ctrs. Corp.*,
  43 F.3d 29 (2d Cir. 1994) ....................................................................................14

*Ciullo v. Yellow Book, USA, Inc.*,
  2012 WL 2676080 (E.D.N.Y. 2012) ....................................................................20

*Davis v. N.Y.C Health & Hosps. Corp.*,
  508 F. App'x 26 (2d Cir. 2013) ...........................................................................14

*Durick v. N.Y.C. Dept. of Educ.*,
  2016 WL 4385908 (E.D.N.Y. 2016) ....................................................................23

*Fagan v. United Int'l Ins. Co.*,
  128 F. Supp. 2d 182 (S.D.N.Y. 2001) ...................................................................9

*Fall v. N.Y.S. United Teachers*,
  289 Fed. Appx. 419 (2d Cir. 2008) ......................................................................16

*Francis v. Wyckoff Heights Med. Ctr.*
  177 F. Supp. 3rd 754, 767 (E.D.N.Y 2016) ...........................................................8

*Frantti v. New York*,
  414 F. Supp. 3d 257 (N.D.N.Y. 2019), *aff'd sub nom.*, 2021 WL 864706 (2d
  Cir. Mar. 9, 2021) ...............................................................................................24

*Frilando v. N.Y.C. Transit Auth.*,
   2021 WL 119639 (S.D.N.Y. 2021).........................................................................22

*Hernandez v. Int'l Shoppes, LLC*,
   100 F. Supp. 3d 232 (E.D.N.Y. 2015) ...............................................................17

*House v. Wackenhut Servs.*,
   2012 WL 4017334 (S.D.N.Y. 2012)...................................................................17

*Jackan v. N.Y.S. Dep't of Labor*,
   205 F.3d 562 (2d Cir. 2000)................................................................................23

*Jones v. N.Y.C. Transit Auth.*,
   2020 WL 1550582 (E.D.N.Y. Mar. 31, 2020), *aff'd sub nom.*, 2021 WL
   864694 (2d Cir. Mar. 9, 2021) ..............................................................................8

*Kalekiristos v. CTF Hotel Mgmt. Corp.*,
   958 F. Supp. 641 (D.D.C.1997), *aff'd*, 132 F.3d 1481, 1997 WL 812530 (D.C.
   Cir.1997) ...............................................................................................................9

*Lazzari v. N.Y.C. Dep't of Parks & Recreation*,
   751 Fed. Appx. 100 (2d Cir. 2018) ....................................................................19

*Lewis v. N.Y.C. Police Dep't*,
   908 F. Supp. 2d 313 (E.D.N.Y. 2012), *aff'd sub nom.*, 537 F. App'x 11 (2d
   Cir. 2013) ............................................................................................................10

*MacEntee v. IBM*,
   783 F. Supp. 2d 434 (S.D.N.Y. 2011)..................................................................9

*Macropoulous v. Metro. Life Ins. Co.*,
   2018 WL 1508564 (S.D.N.Y. 2018) ...................................................................16

*McBride v. BIC Consumer Prods. Mfg. Co.*,
   583 F.3d 92 (2d Cir. 2009)..............................................................................7, 10

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973)...............................................................................................7

*McPherson v. New York City Department of Education*,
   457 F.3d 211 (2d Cir. 2006)................................................................................16

*Meyer v. McDonald*,
   241 F. Supp. 3d 379 (E.D.N.Y. 2017) ...............................................................15

*Moore v. Time Warner GRC*
   9, 18 F.Supp.2d 257 (W.D.N.Y. 1998) ...............................................................9

*Noll v. IBM Corp.*,
   787 F.3d 89 (2d Cir. 2015) ............................................................................................... 19, 21

*Nuchman v. City of New York*,
   639 Fed. Appx. 48 (2d Cir. 2016) ........................................................................................... 21

*Pacenza v. IBM Corp.*,
   2009 WL 890060 (S.D.N.Y. 2009), *aff'd*, 363 F. App'x 128 (2d Cir. 2010) ........................... 9

*Paluh v. HSBC Bank USA*,
   409 F. Supp. 2d 178 (W.D.N.Y. 2006) ................................................................................... 13

*Pierce v. Highland Falls-Fort Montgomery Cent. Sch. Dist.*,
   2011 WL 4526520 (S.D.N.Y. 2011) ....................................................................................... 10

*R.G. Grp., Inc. v. Horn & Hardart Co.*,
   751 F.2d 69 (2d Cir. 1984) ........................................................................................................ 7

*Raspardo v. Carlone*,
   770 F.3d 97 (2d Cir.2014) ......................................................................................................... 8

*Romanello v. Intesa Sanpaolo S.P.A.*,
   97 A.D.3d 449, 949 N.Y.S.2d 345 (1st Dep't 2012), *aff'd as modified*, 22
   N.Y.3d 881 (2013) ................................................................................................................... 23

*Shepheard v. N.Y.C. Corr. Dep't*,
   360 Fed. Appx. 249 (2d Cir. 2010) .......................................................................................... 8

*Sista v. CDC Ixis N. Am., Inc.*,
   445 F.3d 161 (2d Cir. 2006) ...................................................................................................... 8

*Snowden v. Trustees of Columbia Univ.*,
   2014 WL 1274514 (S.D.N.Y. Mar. 26, 2014), *aff'd*, 612 F. App'x 7 (2d Cir.
   2015) ........................................................................................................................................ 11

*Stuart v. T-Mobile, USA, Inc.*,
   2015 WL 4760184 (S.D.N.Y. 2014) .................................................................................... 7, 16

*Texas Dep't of Cmty. Affs. v. Burdine*,
   450 U.S. 248 (1981) ................................................................................................................. 15

*Thompson v. City of New York*,
   2002 WL 31760219 (S.D.N.Y. 2002) ................................................................................ 23, 24

*Van Ever-Ford v. Off. of Mental Health (Buffalo Psychiatric Ctr.)*,
   2020 WL 5951334 (W.D.N.Y. 2020) ...................................................................................... 22

*Vangas v. Montefiore Med. Ctr.*,
  6 F. Supp. 3d 400 (S.D.N.Y. 2014) ...................................................................20, 23

*Wein v. N.Y.C. Dep't of Educ.*,
  2020 WL 4903997 (S.D.N.Y. 2020) .........................................................................18

*Weinstock v. Columbia Univ.*,
  224 F.3d 33 (2d Cir. 2000) ..........................................................................................7

*Williams v. Geiger*,
  447 F. Supp. 3d 68 (S.D.N.Y. 2020) .........................................................................19

*Young v. Nassau Univ. Med. Ctr.*,
  2011 WL 6748500 (E.D.N.Y. 2011) ..........................................................................17

## **Statutes**

29 C.F.R. Part 1630 App. ...............................................................................................21

Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ................................. *passim*

Federal Rules of Civil Procedure Rule 56 ................................................................1, 6

Local Rule 56.1 ................................................................................................................2

New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ......................... *passim*

N.Y.C. Admin. Code § 8-102 ........................................................................................22

New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* .................................... *passim*

## **PRELIMINARY STATEMENT**

This Memorandum of Law is submitted by Defendants, Law Office of Yuriy Prakhin, P.C. (the "Firm") and Yuriy Prakhin, Esq. ("Mr. Prakhin") (collectively, "Defendants"), by and through their attorneys, Bond Schoeneck & King PLLC, in support of their motion pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing the Complaint of Plaintiff Yelena Ruderman ("Plaintiff") in its entirety. Plaintiff's Complaint alleges that Defendants discriminated against her on the basis of her disability and failed to accommodate her in violation of: (1) the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"); (2) New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* ("NYSHRL"); and (3) New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"). Plaintiff cannot sustain any of the claims asserted in her Complaint.

Plaintiff was a former Associate with the Firm whose employment was terminated as a result of Plaintiff's complete inability to perform the responsibilities of her job competently and consistently. During her tenure with the Firm, Plaintiff: (1) did not maintain regular and predictable attendance essential to the performance of her job responsibilities; (2) failed to timely respond to or communicate with clients of the Firm; (3) failed to abide by the Firm's policies and procedures; (3) failed to document case notes into the Firm's document management system; (3) improperly assigned attorney work to paralegals and did not provide appropriate oversight; (4) failed to efficiently and proactively settle the cases to which she was assigned, which is essential to the financial viability of the Firm; and (5) failed to competently perform her responsibilities as an Associate. In fact, Plaintiff's own deposition testimony demonstrates that she failed to adequately perform the responsibilities of her position as an Associate.

Defendants also provided Plaintiff with numerous reasonable accommodations, despite the fact that Plaintiff never provided any medical documentation either establishing any alleged medical condition or the need for an accommodation. Specifically, Defendants (1) provided Plaintiff with leaves of absence from her position; (2) provided Plaintiff with a full-page magnifier; (3) approved Plaintiff's purchase of a magnifier; and (4) authorized Plaintiff to install software on Plaintiff's Firm-issued computer. Defendants also offered Plaintiff an additional leave of absence in November 2018, which was rejected by Plaintiff. The overwhelming evidence demonstrates that Plaintiff's employment was terminated based on legitimate business reasons, in that she was not performing her job satisfactorily. Accordingly, Defendants' motion for summary judgment dismissing Plaintiff's Complaint should be granted in its entirety.

## **STATEMENT OF FACTS**[1]

The Firm is a small, plaintiff-side personal injury law firm located in Brooklyn, New York. (Prakhin Aff., ¶ 2). Mr. Prakhin established the Firm in 2002 and is the Firm's President. (*Id.*) As President, Mr. Prakhin retains sole authority to hire and fire employees of the Firm. (*Id.*)

Plaintiff commenced employment with the Firm in September 2012 as a paralegal pending Plaintiff's admission to the New York State Bar. Upon admission to the Bar, Plaintiff was promoted to an Associate position with the Firm. Plaintiff was supervised by Mr. Prakhin and

---

[1] The undisputed material facts are fully set forth in the accompanying Local Rule 56.1 Statement. For the Court's convenience, a brief statement of the facts is set forth herein. For a complete recitation of the facts, the Court is respectfully referred to the Affidavit of Yuriy Prakhin ("Prakhin Aff."), sworn to May 10, 2021, the Affidavit of Gil Zohar ("Zohar Aff."), sworn to May 10, 2021, the Affidavit of Irene Raskin ("Raskin Aff."), sworn to May 10, 2021, the Affidavit of Patricia Belous ("Belous Aff."), sworn to May 10, 2021, the Affidavit of Erika Larssen ("Larssen Aff."), sworn to May May 10, 2021, the Declaration of Mary Ellen Donnelly, Esq. ("Donnelly Decl."), and relevant deposition testimony. As used herein, "Pl. Tr.." refers to the transcript from the deposition of Plaintiff Yelena Ruderman on September 24, 2020; "Prakhin Tr." refers to the transcript from the depositions of Yuriy Prakhin on October 15, 2020 and November 9, 2020; "Raskin Tr.." refers to the transcript from the deposition of Irene Raskin on November 13, 2020; "Larssen Tr.." refers to the transcript from the deposition of Erica Larssen on November 16, 2020; "Belous Tr." refers to the transcript from the deposition of Patricia Belous on November 18, 2020; and "Gabo Tr." refers to the transcript from the deposition of Irene Gabo on December 12, 2020.

Irene Gabo, Esq. ("Ms. Gabo"), Managing Attorney for the Firm.  (Pl. Tr. at 92:18-93:24; Prakhin Aff., ¶ 4).  Plaintiff was provided with the Firm's Employee Handbook, which contained the policies and procedures for the Firm.  (Raskin Aff., Ex. 1).  Plaintiff also received training regarding the responsibilities of an Associate attorney, including, but not limited to, using the Firm's case management system, SAGA; attending court appearances; and conducting depositions.  (Pl. Tr. at 104-05).  Plaintiff remained employed by the Firm until February 2017, at which time Plaintiff voluntary resigned from her employment to pursue an opportunity with another plaintiff-side personal injury law firm, Mallilo & Grossman.  (Pl. Tr. at 122:23-128:5).

The Firm re-hired Plaintiff in June 2018 based upon Plaintiff's representation that she had gained significant experience at Mallilo & Grossman, including managing her own caseload and conducting trials.  (Prakhin Tr. at 197:4-16; Prakhin Aff., ¶¶ 6-9).  As a result of Plaintiff's representation regarding her experience, Mr. Prakhin offered Plaintiff an increased salary of $100,000.  (Pl. Tr. at 138; Prakhin Tr. at 195:4-197:16; Prakhin Aff., ¶ 6).  Plaintiff was also eligible to receive discretionary bonuses of five percent (5%) of the Firm's fee for all cases she settled.  (Pl. Tr. at 171:13-22; Prakhin Aff., ¶ 6).  As a result of Plaintiff's representation to Mr. Prakhin regarding her external work experience at Mallilo & Grossman, Plaintiff was assigned her own caseload to manage independently.

Shortly after Plaintiff commenced employment with the Firm, Defendants discovered that Plaintiff was not competently performing the responsibilities of her position.  Specifically, Plaintiff (1) was not entering case notes into SAGA, which was an essential responsibility of her position; (2) was not responding promptly to client communications, which resulted in multiple client complaints to Mr. Prakhin; (3) engaged in excessive use of her personal cellular telephone during work hours; (4) did not maintain regular attendance; and (5) was not proactively settling cases.

(Prakhin Aff., ¶ 11).  Mr. Prakhin reminded Plaintiff of the Firm's expectations for Plaintiff's performance of her job responsibilities.  (Prakhin Tr. at 208-209, 214-216; Prakhin Aff., ¶ 12). Mr. Prakhin also began seeking a replacement for Plaintiff's position at that time.  (Prakhin Aff., ¶ 13).  Plaintiff acknowledges that associates at the Firm were reminded of their responsibility to enter appropriate notes in SAGA and the need to promptly respond to client communications.  (Pl. Tr. at 157-158).  In August 2018, the Firm hired a paralegal, Patricia Belous, to assist Plaintiff with the management of her caseload.

In early September 2018, Ms. Gabo advised Mr. Prakhin that she would be leaving the Firm to establish her own law practice.  As a result of Ms. Gabo's notice of resignation, Ms. Gabo's cases needed to be reassigned to other attorneys at the Firm.  The majority of Ms. Gabo's cases were assigned to Sandra Beron, another attorney in the Firm, and Plaintiff, who would also be assigned to work with an additional paralegal, Erica Larssen, who had been working with Ms. Gabo and was familiar with her cases.  The remaining cases were to be distributed to other attorneys within the Firm.  (Prakhin Aff., ¶¶ 16-18).

Although Plaintiff was not performing the essential responsibilities of her position, at the time of Ms. Gabo's resignation, Mr. Prakhin was left with no alternative but to transfer many of the cases to Plaintiff, who had two experienced paralegals to assist her with managing those files. In addition, since Ms. Larssen had been assigned to work with Ms. Gabo, she was already familiar with the cases being assigned to Plaintiff.  Only Plaintiff and Ms. Beron had experience with the types of cases handled by Ms. Gabo.  (Prakhin Aff., ¶¶ 16-19; Larssen Aff., ¶¶ 6-7).

Plaintiff alleges that she began to experience problems with her vision in September 2018. (Pl. Tr. at 189:24-190:12).  Initially, Plaintiff requested days off from work to attend doctor's appointments.  Pursuant to the Firm's Employee Handbook, any request for leave must be in

writing and accompanied by a medical certification of a health care provider.  (*See* Raskin Aff., Exs. 1 and 2).  Despite Plaintiff's failure to provide any written request or medical documentation, as required under the Employee Handbook, Defendants accommodated Plaintiff's request for time off from work and provided Plaintiff with a leave of absence in October 2018.  Plaintiff again requested time off from work in November 2018.  Defendants accommodated Plaintiff's request and provided Plaintiff with an additional leave of absence in November 2018.  Plaintiff did not submit any medical documentation in support of her request for time off from work as required under the Employee Handbook.  Between August 2018 and December 2018, Plaintiff was absent from work a total of 25 days out of 73 possible workdays.  Plaintiff did not have any medical appointments on 17 of the 25 days she was absent from work.  (Pl. Tr. at 205:14-206:2, 217:12-21; Prakhin Aff., ¶¶ 20-24; Raskin Aff., ¶¶ 14-17, Ex. 4).

Defendants also accommodated Plaintiff's requests for devices to assist her in the performance of her job responsibilities.  Specifically, Defendants assisted Plaintiff in enlarging the font on her office computer, provided Plaintiff with a magnifying device to assist her in reading documents, approved Plaintiff's request to purchase a magnifier to assist her with reading documents, and permitted Plaintiff to install software on her computer to assist her in the performance of her job responsibilities.  (Prakhin Aff., ¶ 25; Raskin Aff., ¶¶ 23, 24; Raskin Tr. at 125:2-18, 145:22-147:13).   Plaintiff never provided Defendants with any documents about assistive devices she purchased or receipts for reimbursement.  (Pl. Tr. at 214:9-19, 217:9-11, 223:3-17).   Plaintiff was also offered an additional disability leave of absence, which accommodation was rejected by Plaintiff.  (Raskin Tr. at 64:2-14, 158:2-10).  Defendants provided such accommodations despite the fact that Plaintiff never provided any medical documentation or written documents in support of her request for an accommodation.

In November 2018 Plaintiff advised Mr. Prakhin and Ms. Raskin that she had received a diagnosis from her doctor.  However, Plaintiff never provided Defendants with any documentation from her healthcare providers regarding her medical condition nor did she provide any medical documentation or information identifying any accommodations that would assist Plaintiff in performing the essential functions of her position.  (Pl. Tr. at 205:14-206:2; 217:12-21)

Despite Defendants' accommodations to assist Plaintiff in the performance of her job responsibilities, Plaintiff remained unable to perform the essential functions of her job.  (Prakhin Aff., ¶ 26).  Plaintiff did not enter case notes in SAGA; did not proactively settle cases to which she was assigned, which was essential to the operation of the Firm; was non-responsive to communications from clients and adversaries; and did not competently perform the responsibilities of her position.  In the late fall of 2018, Mr. Prakhin received numerous complaints from clients regarding Plaintiff's failure to communicate with them regarding pending cases.  (Prakhin Aff., ¶¶ 30-35; Prakhin Tr. at 209).  As a result of Plaintiff's demonstrated inability or unwillingness to competently perform the responsibilities of her position, Plaintiff's employment was terminated effective December 14, 2018.  (Prakhin Aff., ¶ 45).

## ARGUMENT

### POINT I

### THE STANDARD FOR A MOTION FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. Pro. 56(c).  The moving party bears the initial burden of establishing that there are no genuine issues of material

fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Once demonstrated, the non-moving party must provide "concrete particulars" rather than merely asserting "a conclusion without supplying supporting arguments or facts" to show that there is a genuine issue of fact which would preclude summary relief. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984).  Summary judgment should be granted where, upon all the papers and proof submitted, the non-moving party has failed to establish the existence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Summary judgment is appropriate in discrimination cases, as "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to other areas of litigation." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (internal quotations and alterations omitted).  Indeed, even a "fact-intensive" employment discrimination case may be resolved on summary judgment. *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.2001).  For the reasons set forth below, this motion for summary judgment should be granted and Plaintiff's Complaint dismissed in the entirety.

**POINT II**

**PLAINTIFF CANNOT ESTABLISH A
CLAIM OF DISABILITY DISCRIMINATION**

Plaintiff cannot establish a  claim for disability discrimination under the ADA, NYSHRL, or NYCHRL.  Claims of disability discrimination under the ADA and NYSHRL are analyzed under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009).  The Second Circuit also applies the liberal standards of the NYCHRL to the basic *McDonnell Douglas* framework.  *Stuart v. T-Mobile, USA, Inc.*, 2015 WL 4760184 (S.D.N.Y. 2014).  Pursuant to this framework, a plaintiff must first establish a *prima facie* case of

discrimination. *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).  Once a *prima facie* case has been established, "the defendant must produce evidence" which supports a "clear and specific" explanation for the termination, and which, "taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000) (internal quotation marks omitted).  The burden then shifts back to the plaintiff to prove discrimination," which can be met "by showing that the employer's proffered reason is pretextual." *Raspardo v. Carlone*, 770 F.3d 97, 125 (2d Cir.2014) (internal quotations omitted).   Plaintiff cannot establish a *prima facie* case of disability discrimination.

A.    <u>**Plaintiff Cannot Establish A Prima Facie Case**</u>

Plaintiff cannot establish a *prima facie* claim of disability discrimination.  To establish a *prima facie* claim of disability-based discrimination under the ADA and NYSHRL, Plaintiff must demonstrate that:  (1) her employer is subject to the ADA and NYSHRL; (2) she was disabled within the meaning of the ADA and NYSHRL; (3) she was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) she suffered an adverse employment action because of her disability.  *Francis v. Wyckoff Heights Med. Ctr.* 177 F. Supp. 3rd 754, 767 (E.D.N.Y 2016); *Shepheard v. N.Y.C. Corr. Dep't*, 360 Fed. Appx. 249, 250 (2d Cir. 2010).  Similarly, under NYCHRL, a plaintiff must "show that the conduct complained of is caused by a discriminatory motive." *Jones v. N.Y.C. Transit Auth.*, 2020 WL 1550582, at *9 (E.D.N.Y. Mar. 31, 2020), *aff'd sub nom.*, 2021 WL 864694 (2d Cir. Mar. 9, 2021) (internal quotations omitted).  Since Plaintiff was not qualified to perform the essential functions of her position as an Associate, Plaintiff's disability discrimination claims should be dismissed in the entirety.

### 1.    Defendants did not have Notice of a Disability

Defendants did not have notice of Plaintiff's alleged disability.  Courts have recognized that for a plaintiff to show that she suffered an adverse action because of a disability, the employer must have knowledge of the alleged disability.  *Moore v. Time Warner GRC* 9, 18 F.Supp.2d 257 (W.D.N.Y. 1998); *see also Pacenza v. IBM Corp.*, 2009 WL 890060 (S.D.N.Y. 2009), *aff'd*, 363 F. App'x 128 (2d Cir. 2010).  "A person alleging a disability protected by the ADA has a burden of establishing with medical evidence the existence of the alleged disability, and presenting the documentation during the term of employment, not following termination."  *Fagan v. United Int'l Ins. Co.*, 128 F. Supp. 2d 182, 186 fn. 2 (S.D.N.Y. 2001) (quoting *Kalekiristos v. CTF Hotel Mgmt. Corp.*, 958 F. Supp. 641 (D.D.C.1997), *aff'd*, 132 F.3d 1481, 1997 WL 812530 (D.C. Cir.1997)).  Even when an employer is aware of an employee's claims of impairment, the employee must demonstrate that the employer was aware of an actual disability in order to establish a claim under the ADA.  *See MacEntee v. IBM,* 783 F. Supp. 2d 434, 443 (S.D.N.Y. 2011) (concluding employer lacked notice of plaintiff's disability where employer was aware plaintiff had taken leave for medical condition and had informed her manager of medical condition, but failed to provide documentation indicating she needed accommodations).  Plaintiff never provided Defendants with any medical documentation demonstrating that Plaintiff had a disability at any time during her employment with the Firm.  (Pl. Tr. at 205:14-206:2; 217:12-21).  Rather, Plaintiff repeatedly represented that she was not disabled and rejected the Firm's offer of a disability leave of absence in November 2018.  (Raskin Tr. at 64:2-14).  Accordingly, Plaintiff cannot establish that Defendants had actual knowledge of any alleged disability.

### 2.    Plaintiff Failed to Perform the Essential Functions of her Job

Plaintiff also failed to perform the essential functions of her job and, therefore, was not qualified for her position with the Firm.  An employee is "qualified" for a position "only if she can

perform its essential functions." *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 98 (2d Cir. 2009). Courts "must give substantial deference to an employer's judgment as to whether a function is essential to the proper performance of a job." *Id.* It is well settled that "some degree of regular, predictable attendance is fundamental to most jobs." *Aquinas v. Fed. Express Corp.*, 940 F. Supp. 73, 78 (S.D.N.Y. 1996) (internal quotations omitted). Indeed, "[t]he ADA does not require employers to tolerate chronic absenteeism even when attendance problems are caused by an employee's alleged disability." *Lewis v. N.Y.C. Police Dep't*, 908 F. Supp. 2d 313, 327 (E.D.N.Y. 2012), *aff'd sub nom.*, 537 F. App'x 11 (2d Cir. 2013) (collecting cases); *see Pierce v. Highland Falls-Fort Montgomery Cent. Sch. Dist.*, 2011 WL 4526520, at *5 (S.D.N.Y. 2011) (even assuming plaintiff's absences were a result of a recognized disability, plaintiff's absences render him unqualified). Plaintiff's poor attendance record renders her unqualified to perform the essential functions of her job as an Associate for the Firm.

There is no dispute that Plaintiff repeatedly failed to show up for work, and that she missed at least 25 days of work in just a four-month period, many without advance notice to the Firm. (Raskin Aff., ¶¶ 14-17, 21-22, Ex. 4; Raskin Tr. at 132-133; Prakhin Tr. at 216). Plaintiff's chronic, unexcused absences rendered her unqualified for the position. The Firm's Employee Handbook specifically states that "[e]xcessive absenteeism or tardiness, excused or not, will not be tolerated." (Raskin Aff., Ex. 1). It is indisputable that regular and predictable attendance at work was essential to the performance of Plaintiff's job responsibilities. As a litigation associate, Plaintiff was required to attend court conferences, conduct depositions, conduct hearings, respond to client communications, meet with clients, and conduct mediations. Plaintiff's unscheduled absences from work required others to assume the essential functions of Plaintiff's position to ensure that the Firm was satisfying its obligations to its clients, which resulted in an undue burden

to the other attorneys who were assigned to and responsible for a full caseload of their own. (Raskin Aff., ¶ 18).  It is also well settled that the elimination of essential responsibilities of a position or transferring those responsibilities to other employees does not constitute a reasonable accommodation.  *See* S*nowden v. Trustees of Columbia Univ.*, 2014 WL 1274514, at *5 (S.D.N.Y. Mar. 26, 2014), *aff'd*, 612 F. App'x 7 (2d Cir. 2015).  Based upon Plaintiff's failure to achieve regular and predictable attendance at work, Plaintiff was not "otherwise qualified" for purposes of establishing a *prima facie* claim of disability discrimination.

In addition to Plaintiff's failure to regularly attend work, a review of Plaintiff's short tenure with the Firm in 2018 further demonstrates that Plaintiff was unable to perform the essential functions of her job.  One of the essential functions of Plaintiff's position as an Associate with the Firm was to enter case notes into the Firm's case management software, SAGA.  Such notes are a reflection of an attorney's work performance and ensure that there are accurate records in the case files for review by other attorneys assigned to cover court appearances, depositions or to respond to inquiries from clients.  Between June 18, 2018 and December 14, 2018, Plaintiff entered only 54 notes into SAGA, many of which were deficient in content.  (Raskin Aff., ¶ 13, Ex. 3).  In comparison, between June 18, 2018 and December 14, 2018, attorney Irene Gabo entered 2,449 notes in SAGA, attorney Sandra Beron entered 1,073 notes in SAGA, and attorney Lilit Avetisyan entered 1,770 notes in SAGA.  (*Id.*)  Plaintiff failed to record adequate information about her assigned cases in SAGA as her position required, which deprived other attorneys of the ability to cover her cases with up-to-date information.

Plaintiff also failed to proactively settle the cases assigned to her.  The settlement of cases is not only an essential function of the Associate position, but also essential to the continued operation and success of the Firm.  (Prakhin Aff., ¶ 7).  Between June 2018 and December 2018,

11

Plaintiff earned settlement bonuses of $650, which generated revenue for the Firm of $13,000. (*Id*).  Between June 2018 and December 2018, Ms. Beron earned $8,585 in settlement bonuses, which generated revenue for the Firm in the amount of $171,700.  Ms. Gabo earned $71,000 in settlement bonuses during the same period, which generated revenue for the Firm in the amount of $1,420,000. (*Id*).  Plaintiff's inability to settle cases, which was critical to the financial viability of the Firm, demonstrates that Plaintiff failed to perform this essential function of her position.

Plaintiff also failed to appropriately communicate with clients and respond to client inquiries.  Plaintiff acknowledged that if she was absent from the office, she would not respond to client inquiries, but rather would direct her paralegals to do so.  (Pl. Tr. at 153:15-19, 1587:25-159:5).  Plaintiff even directed her paralegals to engage in settlement discussions on behalf of clients, a function which Plaintiff admits was the responsibility of the attorney.  (Donnelly Decl., Ex. V; Pl. Tr. at 153:9-11).  As a result of Plaintiff's failure to appropriately communicate with clients, several clients, including, but not limited to, Natalia Generalova, Azfar Khan, Laura Shvarts, Vitaliy Lyutyk, and Marina Zhernyakova, complained to Mr. Prakhin about Plaintiff. (Prakhin Aff., Exs. 1-4).  Plaintiff repeatedly demonstrated that she was unable to perform the essential function of appropriately and respectfully communicating with the Firm's clients.

Plaintiff was also unable to perform her duties as counsel at depositions.  Plaintiff acknowledges her inability to review documents, pictures, or videos presented at depositions.  (Pl. Tr. at 25:2-10, 111:4-114:15, 250:23-251:5).  Further, while employed with the Firm, Plaintiff appeared as counsel at a deposition during which surveillance footage was reviewed.  Rather than adjourning the deposition, Plaintiff "faked" her representation of the client.  "[T]hey have a surveillance video with our client in it, couldn't see shit at all, I couldn't even tell if that was our client in it.  I'm faking it, like pretend like I know what's going on."  (Donnelly Decl., Ex. TT).

Clearly, Plaintiff failed to perform her essential responsibilities as attorney. Since Plaintiff did not perform the essential functions of her position, Plaintiff was not an "otherwise qualified" individual.

Plaintiff also repeatedly and consistently violated the Firm's policies regarding the use of personal cellphones.  The Firm's Personal Cellular Use policy states:  "Employees are prohibited from using their cell phones to call or text, watch videos or use internet during work hours.  (Raskin Aff., Ex. 2).  Mr. Prakhin reminded employees of the Firm's policy on June 29, 2018:  "The rule of this office.  You cannot use your cell phone during the work hours, unless it is emergency and you are out of your office space.!"  (Prakhin Aff., Ex. 5).  Plaintiff acknowledged receipt of Mr. Prakhin's message and apologized for the use of her cell phone during work hours.  (*Id*).  However, Firm employees repeatedly witnessed Plaintiff using her cellphone in the office for personal matters.  (Prakhin Tr. at 253, 274; Belous Aff., ¶ 10; Raskin Aff., ¶ 10; Prakhin Aff., ¶¶ 43-44).  Plaintiff's failure to abide by the Firm's workplace policies further demonstrates that she is not an "otherwise qualified" individual.

### 3.  No Inference of Discrimination Arises from Plaintiff's Termination

Plaintiff also cannot establish that the termination of her employment occurred under circumstances that give rise to an inference of discrimination.  Circumstances that give rise to an inference of discrimination include:  "(1) the employer sought to replace a discharged plaintiff with another person possessing the same qualifications, although not a member of the same protected class as the plaintiff, (2) the employer criticized the plaintiff's work performance in terms degrading to the protected class; (3) the employer made invidious comments about others in the plaintiff's protected class; (4) the employer treated more favorably employees not in the protected class; (5) the sequence of events leading to the adverse employment action; and (6) the timing of the adverse employment action."  *Paluh v. HSBC Bank USA*, 409 F. Supp. 2d 178, 191 (W.D.N.Y.

2006) (citing *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)).  As Plaintiff cannot establish an inference of discrimination her disability discrimination claims must be dismissed.

Plaintiff alleges in her Complaint that Mr. Prakhin stated:  "I don't know how you'll handle cases with your condition" and "I'm a business man.  I don't see how this is worth it for me." (Complaint at ¶¶ 76, 81).  However, even if true, neither of these comments demonstrate that Mr. Prakhin made any decision with respect to Plaintiff's employment based on any alleged disability. Rather, the documentary evidence demonstrates that Plaintiff was unable to perform the responsibilities of her position, with or without a reasonable accommodation.  There is no dispute regarding Plaintiff's failure to regularly and predictably report for work.  There is no dispute about Plaintiff's failure to enter sufficient SAGA notes.   There is no dispute that Plaintiff did not proactively settle cases.  There is no dispute about Plaintiff's lack of responsiveness to clients.  A disability does not absolve an employee of their responsibility to perform the essential functions of their position.  *See Davis v. N.Y.C Health & Hosps. Corp.*, 508 F. App'x 26, 29 (2d Cir. 2013). Additionally, despite the requirements in the Employee Handbook, Plaintiff never provided Defendants with any medical documentation regarding any alleged disability, nor did she identify any reasonable accommodation that would enable her to perform the responsibilities of her position as an Associate.  Given the fact that Plaintiff was not adequately performing and did not perform the essential responsibilities of her position, with or without a reasonable accommodation, it did not make any business sense to continue Plaintiff's employment with the Firm.  None of the statements asserted by Plaintiff constitute degrading or invidious comments regarding Plaintiff or her alleged medical condition.

The documentary and testimonial evidence in this matter also demonstrates that Plaintiff was treated the same as other attorneys at the Firm.  Defendants terminated Plaintiff's employment in December 2018 due to her unsatisfactory work performance.  (Prakhin Aff., ¶ 45).  Similarly, Defendants terminated the employment of attorney Alex Smolyar in November 2015, after about four months of employment, due to unsatisfactory performance, which included failing to communicate with clients and failing to adequately prepare motions and cases for trial.  (*Id.*, ¶ 47)  Defendants also terminated attorney Daniel Berke in March 2016, after about five months of employment, for poor performance and excessive absences.  (*Id.*, ¶ 48).  Defendants have also terminated other attorneys, including Stephen Revis and Gregory Nahas, for unexcused absences and unsatisfactory performance, including failing to communicate with clients and failing to enter SAGA notes.  (*Id.*, ¶ 49; Prakhin 30(b)(6) Tr. at 113).  As Defendants applied the same workplace policies and performance standards to all attorneys, including Plaintiff, and terminated those attorneys who failed to comply with these policies and standards, no inference of discrimination arises from the termination of Plaintiff's employment.

The Firm's hiring of Mr. Zohar also does not establish an inference of discrimination as Mr. Zohar possessed superior qualifications compared to Plaintiff.  *See Meyer v. McDonald*, 241 F. Supp. 3d 379, 395 (E.D.N.Y. 2017) (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 259 (1981)).  Mr. Zohar has over twenty years of experience as a practicing attorney and had been engaged by the Firm as a trial attorney prior to commencing his full-time employment with the Firm in 2019.  (Prakhin Tr. at 234, 316-317; Prakhin Aff., ¶ 14). Comparatively, Plaintiff has only been practicing law since November 2012 and only conducted one trial, which she lost.  (Pl. Tr. at 92:20-91:24; Donnelly Decl., Ex. N).  Mr. Zohar was also hired in December 2018 as the Firm's new Managing Attorney to replace Ms. Gabo.  (Prakhin Aff., ¶ 50; Prakhin Tr. at 234, 317;

Zohar Aff., ¶ 5).  As Mr. Zohar possesses superior qualifications and performed different responsibilities as the Firm's managing attorney, Defendants' hiring of Mr. Zohar does not establish an inference of discrimination.

Further, the temporal proximity between Plaintiff's diagnosis and the termination of her employment with the Firm is insufficient to defeat Defendants' motion for summary judgment. "[T]emporal proximity, without more, is insufficient to establish pretext." *Stuart v. T-Mobile USA, Inc.*, No. 14–CV–4252, 2015 WL 4760184, at *7 (S.D.N.Y. Aug. 12, 2015).  As Defendants terminated Plaintiff for legitimate, non-discriminatory reasons, Plaintiff's discrimination claims should be dismissed.

**B.**   **Defendants' Terminated Plaintiff's Employment Based on Legitimate, Non-Discriminatory Reasons**

Even, assuming *arguendo*, that Plaintiff can establish a *prima facie* case of discrimination, Defendants have articulated legitimate business reasons for the termination of Plaintiff's employment.  As the Second Circuit stated in *McPherson v. New York City Department of Education*: "[i]n a discrimination case, however we are decidedly not interested in the truth of the allegations against Plaintiff.  We are interested in what *motivated* the employer; the factual validity of the underlying imputation against the employee is not at issue."  457 F.3d 211, 216 (2d Cir. 2006).  Unsatisfactory job performance is a legitimate, non-discriminatory reason to terminate an employee.  *Fall v. N.Y.S. United Teachers*, 289 Fed. Appx. 419, 421 (2d Cir. 2008); *Macropoulous v. Metro. Life Ins. Co.*, 2018 WL 1508564, at *9 (S.D.N.Y. 2018) (holding that frequent lateness to work and inaccurate or late work product each constituted "a legitimate, non-discriminatory reason for an employee's dismissal").  Plaintiff's employment was terminated based on her poor work performance.  Specifically, Plaintiff failed to:  (1) timely respond to or communicate with clients; (2) perform the work assigned to her and reassigned such work to paralegals; (3) review

16

documents prepared by paralegals on her behalf; (4) enter case notes into the Firm's SAGA database; (5) follow the policies and procedures stated in the Employee Handbook; and (6) proactively settle cases. (Prakhin Tr. at 272-277, 304:13-22, 368-369; Prakhin Aff. at ¶ 45). Plaintiff's employment was lawfully terminated for unsatisfactory performance.

Moreover, complaints of dissatisfaction from clients constitutes a legitimate, non-discriminatory reason for an employee's termination. *See, e.g., House v. Wackenhut Servs.*, 2012 WL 4017334 (S.D.N.Y. 2012) (finding that performance issues and customer complaint were legitimate reasons for terminating plaintiff) (collecting cases); *Young v. Nassau Univ. Med. Ctr.*, 2011 WL 6748500 (E.D.N.Y. 2011); *Bronzini v. Classic Sec. LLC*, 2009 WL 102140 (S.D.N.Y. 2009). Mr. Prakhin received multiple complaints from clients about Plaintiff's non-responsiveness and unprofessional conduct. (Prakhin Aff., ¶¶ 30-35). "Federal courts do not have a roving commission to review business judgments, and may not sit as super personnel departments, assessing the merits—or even the rationality—of employers' non-discriminatory business decisions." *Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, 263 (E.D.N.Y. 2015) (internal quotations omitted). Plaintiff's employment was terminated for legitimate, non-discriminatory business reasons. Accordingly, Plaintiff's disability discrimination claims should be dismissed in their entirety.

**C.**     **Plaintiff cannot Establish that her Termination Based**
**on Poor Work Performance is Pretextual**

Since Defendants have proffered legitimate, non-discriminatory reason for the termination of Plaintiff's employment, Plaintiff bears the burden of demonstrating that discrimination was the true reason for her termination. A plaintiff satisfies this burden "by adducing evidence sufficient to show by a preponderance that the employer's purported reasons for its actions are mere pretext, and that discrimination was the real but-for cause of any adverse employment actions." *Wein v.*

*N.Y.C. Dep't of Educ.*, 2020 WL 4903997, at *15 (S.D.N.Y. 2020).  Plaintiff cannot sustain this burden as there is overwhelming evidence demonstrating her inadequate work performance.

As demonstrated fully above, a review of Plaintiff's SAGA entries confirms that Plaintiff entered significantly less notes than any other attorneys employed by the Firm.  Plaintiff clearly failed to perform this essential function of her position.  In fact, Plaintiff's claim that other attorneys failed to enter case notes in SAGA is belied by the documentary evidence in this matter. (Prakhin Aff., ¶ 38; Raskin Aff., ¶ 13, Ex. 3).

Plaintiff's failure to proactively negotiate settlements of her assigned matters is also demonstrable.  Between June and December 2018, Plaintiff received settlement bonuses of $650, which generated revenue of $13,000 for the Firm.  (Prakhin Aff., ¶ 40).  For the same period of time, Ms. Beron earned approximately $8,585 in settlement bonuses, which generated revenue of $171,700 for the Firm and Ms. Gabo earned approximately $71,000 in settlement bonuses, which generated revenue of $1,420,000 for the Firm.  (*Id.*, ¶¶ 41-42). Plaintiff's performance with respect to settlement of her assigned cases was also deficient.

Plaintiff also failed to perform other essential responsibilities of her position.  Plaintiff failed to respond to or communicate with both clients and opposing counsel.  (Prakhin Aff., ¶¶ 27-32; Donnelly Decl., Exs. S-U).  Plaintiff repeatedly violated the Firm's workplace policies regarding cellphone use and engaging in personal matters while at work.  (Raskin Aff., ¶¶ 8-10). Plaintiff also improperly assigned work to her paralegals and failed to review the work product they drafted.  (Belous Tr. at 54:18-23, 61:10-62:6; Larssen Aff., ¶ 8; Belous Aff., ¶ 8).  As the undisputable evidence demonstrates that Plaintiff failed to adequately perform the essential functions of her position, Plaintiff cannot demonstrate any evidence of pretext.

**POINT III**

**PLAINTIFF'S FAILURE TO ACCOMMODATE CLAIMS
<u>ARE FATALLY DEFICIENT AND MUST BE DISMISSED</u>**

Plaintiff also cannot establish a failure to accommodate claim under the ADA, NYSHRL, or NYCHRL.  To establish a claim for failure to accommodate under the ADA and NYSHRL, Plaintiff must demonstrate that: (1) she is a person with a disability under the applicable law; (2) her employer knew of her disability; (3) she could perform the job's essential functions, with or without reasonable accommodation; and (4) her employer refused to make such accommodations.  *Lazzari v. N.Y.C. Dep't of Parks & Recreation*, 751 Fed. Appx. 100, 102 (2d Cir. 2018) (holding that the same legal standards apply to ADA and NYSHRL claims).  Under NYCHRL, an employer is required to "make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job provided that the disability is known or should have been known by the employer."  *Id.*  As Plaintiff cannot establish the *prima facie* elements for a failure to accommodate claim, such claims should be dismissed in their entirety.

**A.      <u>Defendants Provided Plaintiff with Reasonable Accommodations</u>**

Plaintiff cannot establish a failure to accommodate claim as a matter of law because Defendants provided Plaintiff with numerous accommodations.  Summary judgment dismissing a failure to accommodate claim is appropriate where the employer provided reasonable accommodations to the plaintiff.  *Noll v. IBM Corp.*, 787 F.3d 89, 95 (2d Cir. 2015).  Indeed, "the plain reasonableness of the existing accommodation ends the analysis,'" and warrants summary judgment for the employer.  *Williams v. Geiger*, 447 F. Supp. 3d 68, 83 (S.D.N.Y. 2020) (quoting *Noll*, 787 F.3d at 94).  Defendants provided Plaintiff with a full-page magnifier and approved Plaintiff's purchase of a magnifier upon her request.  (Pl. Tr. at 212:11-18, 253:3-12; Raskin Tr. at 143:17-25).  Defendants also accommodated Plaintiff by arranging to have the font on her

computer adjusted.  (Raskin Tr. at 124:2-18).  Plaintiff was also permitted to upload software of her choice to the Firm's computers.  (Pl. Tr. at 223:22-224:17; Prakhin Aff., ¶ 25; Raskin Aff., ¶ 24).  Despite such accommodations, Plaintiff remained unable to perform the essential functions of her job.  Since Defendants provided Plaintiff with these reasonable accommodations, her failure to accommodate claim fails as a matter of law.

Defendants also provided Plaintiff with unpaid leaves of absence as a reasonable accommodation.   It is well established that a leave of absence constitutes a reasonable accommodation.  *Vangas v. Montefiore Med. Ctr*., 6 F. Supp. 3d 400, 413 (S.D.N.Y. 2014); *see e.g. Ciullo v. Yellow Book, USA, Inc*., 2012 WL 2676080, at *11 (E.D.N.Y. 2012) (dismissing plaintiff's failure to accommodate claim were all of plaintiff's requests to attend medical appointments were granted).  Plaintiff acknowledges that she was provided with leave to attend medical appointments.  (Pl. Tr. at 200:23-201:8, 239:11-13).  Indeed, Plaintiff has not and cannot identify a single day where a request for time off from work to attend a medical appointment was denied.  Defendants' granted Plaintiff time off to attend medical appointments despite the fact the Plaintiff never submitted any medical documentation in support of such requests for leave as required under the Employee Handbook.  Defendants reasonably accommodated Plaintiff by providing her with multiple leaves of absence from work.

**B.**     **Defendants did not Refuse to Provide Reasonable Accommodations**

Plaintiff alleges that Defendants failed to accommodate her because Defendants did not purchase assistive devices for her or reimburse Plaintiff for items she purchased. (Complaint at ¶ 63).  However, as detailed above, Defendants provided Plaintiff with reasonable accommodations during her employment with the Firm.   Further, Defendants did so without any medical documentation   or   written   communication   from   Plaintiff   regarding   the   need   for   such

accommodations.   Plaintiff's desire for accommodations different from those provided by Defendants does not establish a failure to accommodate claim as a matter of law.

Moreover, Defendants were not required to provide the devices allegedly requested by Plaintiff as they were not effective accommodations.   An employer only has an obligation to provide an employee with effective accommodations.   *Noll v. IBM Corp.*, 787 F.3d 89, 95 (2d Cir. 2015); 29 C.F.R. Part 1630 App. ("[T]he employer providing the accommodation has the ultimate discretion to choose between effective accommodations and may choose the less expensive accommodation or the accommodation that is easier for it to provide.").   The employee bears the burden of demonstrating that the requested accommodation would enable her to perform the essential functions of the job.   *See Nuchman v. City of New York*, 639 Fed. Appx. 48, 49-50 (2d Cir. 2016).   Plaintiff never submitted any medical documentation to Defendants identifying any disability, nor identifying any accommodation that would enable her to perform the essential functions of her position.   Plaintiff concedes that several of the assistive devices she selected and purchased did not enable her to perform the essential functions of her position.   Plaintiff discontinued using the JAWS software program she purchased in December 2018 because she "soon realized it was intended for individuals who were completely blind rather than visually impaired."  (Pl. Tr. at 229-230; Donnelly Decl., Ex. L).  Plaintiff also acknowledged that she does not know if JAWS would have assisted her in performing her job functions, such as conducting depositions.  (Pl. Tr. at 225:14-22).  Similarly, Plaintiff returned the OrCam glasses she purchased because she "didn't find them very useful."  (Pl. Tr. at 220:24-221:8; Larssen Tr. at 86:1-24).  As these devices would not be and were not effective in assisting Plaintiff to perform the essential functions of her job, Defendants were not required to provide such accommodations as a matter of law.  Further, Plaintiff never requested reimbursement from Defendants for any of the devices she

purchased, nor did she ever submit any documentation indicating that such devices would enable her to perform the essential responsibilities of her position.

## C.   **Defendants Engaged in the Interactive Process with Plaintiff**

Defendants also engaged in the interactive process with Plaintiff.  The interactive process can involve "meeting with the employee who requests an accommodation, requesting information about the condition and what limitations the employee has, asking the employee what he or she specifically wants, showing some sign of having considered the employee's request, and offering and discussing available alternatives when the request is too burdensome."  *Frilando v. N.Y.C. Transit Auth.*, 2021 WL 119639, at *7 (S.D.N.Y. 2021); *see* N.Y.C. Admin. Code § 8-102 (defining "cooperative dialogue" as the employer and employee "engag[ing] in good faith in a written or oral dialogue concerning the person's accommodation needs . . . including alternatives to a requested accommodation").  From September 2018 through December 2018, Ms. Raskin met with Plaintiff on numerous occasions.  (Raskin Tr. at 121:23-123:21; Pl. Tr. at 194:11-195:6). During these meetings, Ms. Raskin and Plaintiff discussed magnifying devices for Plaintiff and installing software onto the Firm's computer to assist Plaintiff.  (Raskin Tr. at 121-125, 145-147, 157-158; Pl. Tr. at 194 -195, 212, 253).  Ms. Raskin also approved Plaintiff to take time off to attend medical appointments, despite the fact that Plaintiff never submitted any medical documentation in support of that request as required under the Employee Handbook.  (Pl. Tr. at 205:14-206:2, 217:12-21; Raskin Aff. ¶¶ 17, 22, 28).  As these interactions included discussions of reasonable accommodations that could be and were provided to Plaintiff, Defendants fulfilled their obligations to engage in the interactive process.

Additionally, both Ms. Raskin and Mr. Prakhin proposed that Plaintiff take a leave of absence to permit Plaintiff to obtain medical treatment and determine what accommodations, if any, would best meet her needs.  (Raskin Tr. at 157:21-160:23; Pl. Tr. at 201:5-6.)  As noted above,

a leave of absence constitutes a reasonable accommodation.  *Van Ever-Ford v. Off. of Mental Health (Buffalo Psychiatric Ctr.)*, 2020 WL 5951334, at *14 (W.D.N.Y. 2020); *Vangas v. Montefiore Med. Ctr.*, 6 F. Supp. 3d 400, 413 (S.D.N.Y. 2014).  However, Plaintiff refused this accommodation, claiming that she was not disabled.  (Raskin Tr. at 64:2-14, 158:2-10; Donnelly Decl., Ex. A, ¶ 42).  Plaintiff's outright rejection of this proposed reasonable accommodation does not establish a claim against Defendants for failure to engage in the interactive process or failure to accommodate.  *See Romanello v. Intesa Sanpaolo S.P.A.*, 97 A.D.3d 449, 451, 949 N.Y.S.2d 345, 349 (1st Dep't 2012), *aff'd as modified*, 22 N.Y.3d 881 (2013).  Thus, Plaintiff's own conduct in response to Defendants' attempt to engage in the interactive process warrants dismissal of her claims against Defendants.

Plaintiff's claims are also fatally deficient as Plaintiff failed to make a reasonable good faith effort to engage in the interactive process with Defendants.  A party that "fails to communicate, or withholds important information solely within the knowledge of that party, can be found to have obstructed the [interactive] process in bad faith." *Thompson v. City of New York*, 2002 WL 31760219 (S.D.N.Y. 2002) (citing *Jackan v. N.Y.S. Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000)).  An employer cannot be held liable for failing to provide a reasonable accommodation where an employee obstructs the interactive process. *Durick v. N.Y.C. Dept. of Educ.*, 2016 WL 4385908, at *8 (E.D.N.Y. 2016).  Plaintiff obstructed the interactive process when she failed to provide documentation to Defendants regarding her medical condition or any reasonable accommodations that would enable her to perform the essential functions of her job.  Plaintiff admits that she did not provide Defendants with any documentation regarding her purchase of any assistive devices, including any receipts for reimbursement.  (Pl. Tr. at 214:9-19, 217:9-11, 223:3-17; Raskin Aff., ¶ 30).  Even where Defendants authorized Plaintiff to purchase

an assistive device, Plaintiff failed to inform Defendants of that purchase or submit a receipt for reimbursement.   (Pl. Tr. at 214:9-19).   As Plaintiff failed to make a reasonable effort to communicate with Defendants as part of the interactive process, Plaintiff cannot establish any claim for failure to accommodate.

**D.**      **Plaintiff Failed to Provide Defendants with Adequate Information**

Plaintiff also failed to provide Defendants with sufficient information about her medical condition.  It is well-established that a defendant cannot be held liable for failing "to provide a reasonable accommodation if the plaintiff fails to provide the information necessary to assess the request for an accommodation in the first place."  *Frantti v. New York*, 414 F. Supp. 3d 257, 288 (N.D.N.Y. 2019), *aff'd sub nom.*, 2021 WL 864706 (2d Cir. Mar. 9, 2021).  In *Thompson v. City of New York*, where an employee with cervical cancer alleged that her employer failed to provide her with an accommodation, the Court found that since "[t]he nature of her condition was solely within her knowledge . . . it was her responsibility to provide the necessary medical documentation to defendants."  2002 WL 31760219, at *8.  In dismissing the plaintiff's claims under the ADA, the Court held that "Defendants cannot be held liable for failing to provide a reasonable accommodation when it was plaintiff who stymied the extent of their knowledge of her alleged disability in the first instance."  *Id.*

Similarly, Plaintiff failed to provide Defendants with sufficient information regarding her medical condition.  The Firm's Employee Handbook explicitly provides that an "employee who requires an accommodation in order to perform the essential functions of the job should contact YURIY PRAKHIN ESQ or his or her duly authorized designee and request such an accommodation, and confirm such a request in writing."  (Raskin Aff., Ex. 1).  However, Plaintiff concedes that she never submitted any written requests for accommodation nor provided Defendants with any medical documentation regarding her medical condition or any

24

accommodation that would enable her to perform the essential functions of her job.  (Pl. Tr. at 205:14-206:2; 217:12-21).  Instead, Plaintiff repeatedly informed Defendants that she was not disabled and able to perform the essential functions of her position.  (Raskin Tr. at 64:2-14, 158:2-10; Prakhin Aff., ¶ 28).  As Plaintiff failed to provide Defendants with any medical documentation regarding her medical condition, Plaintiff cannot establish any failure to accommodate claim against Defendants.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court grant their motion for summary judgment, dismiss the Complaint in its entirety, and provide such other and further relief as this Court deems just and appropriate.

Dated:  New York, New York
        May 11, 2021

         /s/      MED                          
        Mary Ellen Donnelly
        Nicole E. Price
        **BOND SCHOENECK & KING, PLLC**
        600 Third Avenue, 22nd Floor
        New York, New York 10016
        (646) 253-2300

        *Attorneys for Defendants Law Office of*
        *Yuriy Prakhin, P.C., and Yuriy Prakhin*