UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **YELENA RUDERMAN,**<br><br>        **Plaintiff,**<br><br>   - against -<br><br>**LAW OFFICE OF YURIY PRAKHIN, P.C., and YURIY PRAKHIN, ESQ., in his professional and individual capacities,**<br><br>        **Defendants.** | Case No. 19-CV-02987 (RJD)(RLM)<br><br>**DEFENDANTS' RULE 56.1 STATEMENT OF UNDISPUTED <u>MATERIAL FACTS</u>** |

   Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Rule 56.1 of the Local Rules of the United States District Court for the Eastern District of New York, and this Court's motion rules, Defendants, Law Office of Yuriy Prakhin, P.C. (the "Firm") and Yuriy Prakhin, Esq. ("Mr. Prakhin") (collectively, "Defendants"), set forth the following Statement of Undisputed Material Facts about which it contends there are no issues to be tried.[1]

---

[1] Each assertion will include a reference to the relevant source when possible. "Pl. Tr." refers to pages in the transcript of the deposition of Plaintiff Yelena Ruderman, taken on September 24, 2020, and attached is as Exhibit E to the Declaration of Mary Ellen Donnelly, Esq., dated May 11, 2021 ("Donnelly Decl."). "Prakhin Tr." refers to pages in the transcript of the deposition of Defendant Yuriy Prakhin, taken on October 15, 2020, and attached as Exhibit F to Donnelly Decl. "Prakhin 30(b)(6) Tr." refers to pages in the transcript of the Rule 30(b)(6) deposition of Defendant Yuriy Prakhin, taken on November 9, 2020, and attached as Exhibit G to Donnelly Decl. "Raskin Tr." refers to pages in the transcript of the deposition of Irene Raskin, taken on November 13, 2020, and attached as Exhibit H to Donnelly Decl. "Larssen Tr." refers to pages in the transcript of the deposition of Erica Larssen, taken on November 16, 2020, and attached as Exhibit I to Donnelly Decl. "Belous Tr." refers to pages in the transcript of the deposition of Patricia Belous, taken on November 18, 2020, and attached as Exhibit J to Donnelly Decl. "Gabo Tr." refers to pages in the transcript of the deposition of Irene Gabo, taken on December 12, 2020, and attached as Exhibit K to Donnelly Decl. "Prakhin Aff." refers to the Affidavit of Yuriy Prakhin, sworn to on May 10, 2021, and the exhibits attached thereto. "Raskin Aff." refers to the Affidavit of Irene Raskin, sworn to on May 10, 2021, and the exhibits attached thereto. "Zohar Aff." refers to the Affidavit of Gil Zohar, Esq., sworn to on May 10, 2021. "Larssen Aff." refers to the Affidavit of Erica Larsen, sworn to on May 10, 2021. "Belous Aff." refers to the Affidavit of Patricia Belous, sworn to on May 10, 2021. All other references will be to documents attached as Exhibits to the Donnelly Decl.

## DEFENDANTS' UNDISPUTED FACTS

### A. Mr. Prakhin and The Firm

1.  The Firm is a small, plaintiff-side personal injury, medical malpractice law firm located at 1883 86th Street, 2nd Floor, Brooklyn, New York 11214. (Prakhin Aff., ¶ 2; Zohar Aff., ¶ 2).

2.  Mr. Prakhin is the founder and President of the Firm. (Prakhin Aff., ¶ 2; Prakhin Tr. at 93:9-15).

3.  Currently, the Firm employs approximately twenty (20) individuals, including attorneys, paralegals, and office staff. (Prakhin Tr. at 93:21-24; Prakhin Aff., ¶ 2; Raskin Aff., ¶ 2).

4.  Upon commencing employment, each employee is also provided with a copy of the Firm's Employee Handbook. (Prakhin Tr. at 140:10-141:24; Raskin Aff., ¶ 3, Ex. 2; Larssen Aff., ¶ 5).

5.  Irene Raskin ("Ms. Raskin") commenced employment with the Firm in 2015 as the Office Manager. (Raskin Tr. at 18:25-19:3, 32:21-33:3, 34:11-19; Raskin Aff., ¶ 3).

6.  As Office Manager, Ms. Raskin is responsible for handling the day-to-day matters at the Firm, including: (1) onboarding of newly hired employees; (2) assisting with the Firm's accounting and paying bills; (3) managing payroll and employee benefits; (4) monitoring employees' workload, attendance, and work performance; (5) communicating with specialists regarding the Firm's IT needs; and (6) ordering office supplies. (Raskin Tr. at 37:12-38:7, 96:17-97:6; Raskin Aff., ¶ 3). Prior to the onset of the Coronavirus Disease 2019 ("COVID-19") pandemic in March 2020, Ms. Raskin also used to manage the Firm's calendar for depositions and appearances. (Raskin Tr. at 37:12-38:7, 96:17-97:6)

7. In 2016 or 2017, the Firm updated its Employee Handbook. (Prakhin Tr. at 140:10-141:24). However, the majority of the policies and rules remained the same. (*Id*.; *see* Raskin Aff., ¶ 7, Exs. 1, 2).

8. The Firm's Employee Handbook specifically states:

**C. EQUAL EMPLOYMENT OPPORTUNITY PRACTICES**

Company is an equal opportunity employer and makes employment decisions on the basis of merit. Company policy prohibits unlawful discrimination based on genetic characteristics or information, race, color, creed, sex, gender, gender identity, marital status, age, national origin or ancestry, physical or mental disability, medical condition, veteran status, sexual orientation or any other consideration made unlawful by federal, state or local laws. All such discrimination is unlawful. Company prohibits unlawful discrimination and harassment by any employee of Company, including supervisors and co-workers.

To comply with applicable laws ensuring equal employment opportunities to qualified individuals with disabilities, Company will make reasonable accommodations for the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee unless undue hardship would result.

Any applicant or employee who requires an accommodation in order to perform the essential functions of the job should contact YURIY PRAKHIN ESQ or his or her duly authorized designee and request such an accommodation, and confirm such a request in writing.

(Raskin Aff., Ex. 2).

9. Regarding work hours and attendance, the Firm's Employee Handbook specifically states:

**C. WORKING HOURS AND SCHEDULES**

Company is normally open for business from 9:00 AM to 5:30PM with a half-hour unpaid lunch period included, Monday through Friday. All employees are expected to be at their desk or work station no later than 9:00 AM unless they have prior approval to begin work at a different time.

3

***

### E. PUNCTUALITY AND ATTENDANCE

Employees are expected to report to work every day as scheduled, on time, and prepared to start work. Employees are also expected to remain at work for their entire work schedule, except for meal or rest periods or when required to leave on authorized Company business.

If you are unable to report for work on any scheduled work day, you must call the office at least one hour before the time you are scheduled to begin working. Employees must also inform their supervisor of the expected duration of any absence. Absent extenuating circumstances, you must call in on every day you are scheduled to work and will not report to work.

Excessive absenteeism or tardiness, excused or not, will not be tolerated.

If you fail to report for work without any notification to your supervisor and your absence continues for a period of three days, Company will consider that you have abandoned your employment and have voluntarily terminated.

(Raskin Aff., ¶ 9, Ex. 2).

10. Plaintiff rarely worked 40 hours per week during her employment with the Firm from June 2018 through December 2018. (Raskin Aff., Ex. 4).

11. The Firm's Leaves of Absence policy is set forth in the Employee Handbook. (Raskin Aff., Ex. 2). In relevant part, this policy provides:

### D. LEAVES OF ABSENCE

Company may grant leaves of absence to employees. It is important to request any leave in writing as far in advance as possible, to keep in touch with your supervisor or YURIY PRAKHIN ESQ during your leave, and to give prompt notice if there is any change in your return date.

***

> **e. Reinstatement**
>
> Upon the submission of a medical certification from a health care provider that an employee is able to return to work, the employee will, in most circumstances, be offered the same position held at the time of the leave or an equivalent position.

(*Id*.)

12. The Firm's Temporary Disability Leave policy is also set forth in the Employee Handbook. (*Id*.) In relevant part, this policy provides:

> **3. Temporary Disability Leave**
>
> Any full-time or part-time employee who is temporarily disabled and unable to work due to a temporary disability, will, upon request, be granted a leave of absence without pay for the period of his or her disability, subject to applicable law and provided that it does not present an undue hardship to Company.
>
> \*\*\*
>
> **b. Notice Obligations**
>
> An employee who requires a temporary disability leave of absence must notify YURIY PRAKHIN ESQ or his or her immediate supervisor in writing of the need for such a leave. The employee must provision as much advance notice as practicable specifying that a need for the leave exists, the date such leave will begin, and the expected duration of the leave. The notice must be accompanied by a medical certification of a health care provider that verifies the existence of the temporary disability, the anticipated duration of the disability, and the dates the leave is expected to begin and end. An employee who requests such a leave may be required to provide additional medical certifications from time to time thereafter in order to provide updated information regarding the employee's condition.
>
> \*\*\*
>
> Before returning to work from a medical leave of absence, an employee must provide a written verification from the employee's health care provider that indicates that he or she is fit to return to work. When determining whether an employee who is disabled within the meaning of applicable law is able to return to work, the health care provider should make an individualized assessment of whether the employee can, with or

5

without reasonable accommodation, perform the essential functions of the position.

13. The Firm's Employee Handbook establishes a Confidentiality Policy, which in relevant part provides:

> **F. CONFIDENTIALITY**
>
> Information about Company, its employees, customers, suppliers and vendors is to be kept confidential and divulged only to individuals within Company with a need to receive, and authorized to receive, such information. If in doubt as to whether information should be divulged, err in favor of not divulging information and discuss the situation with your supervisor.
>
> All records and files maintained by Company, in whatever form, are confidential and remain the property of Company. Records and files are not to be disclosed to any outside party in any manner without the express written permission of the Company.
>
> Confidential information may not be removed from Company premises without express written authorization.
>
> Employees will be required to enter into and strictly comply with a written confidentiality agreement as a condition of employment or continued employment. Why do we need that ?

(*Id.*)

14. The Firm's Employee Handbook also contains an Internet, E-Mail, and Computer Use Policy, which in relevant part provides:

> **K.   INTERNET, E-MAIL, AND COMPUTER USE POLICY**
>
> The use of Law Office of Yuriy Prakhin's automation systems, including computers, fax machines, and all form of Internet/intranet access, is for company business and for authorized purposes only.
>
> \*\*\*
>
> Unless specifically granted in this policy, any non-business use of the Company's automation systems is expressly forbidden.

6

>           If you violate these policies, you could be subject to
> disciplinary action, up to and including dismissal.

(*Id*.)

15.     The Firm's Personal Cellular Use policy ("Cellular Use Policy") is set forth in the Employee Handbook as follows:

> **L.     PERSONAL CELLULAR USE**
>
> **Employees are prohibited from using their cell phones to call or text, watch videos or use internet during work hours.**

(*Id*.) (emphasis original).

16.     On June 29, 2018, Mr. Prakhin sent an office-wide instant message that stated: "The rule of this office. You cannot use your cell phone during the work hours, unless it is emergency and you are out of your office space.!" (Prakhin Aff., Ex. 5).

17.     Plaintiff responded to Mr. Prakhin via instant message apologizing and promising it "[w]on't happen again." (*Id*.)

18.     SAGA is a case management database system that was used by the Firm in 2018. (Prakhin Aff., ¶ 5; Raskin Aff., ¶ 11).

**B.     Plaintiff's First Period of Employment with the Firm**

19.     In September 2012, Plaintiff was hired by the Firm as a paralegal. (Pl. Tr. at 90:22-91:9, 92:18-93:24; Prakhin Aff., ¶ 4).

20.     Plaintiff received a copy of the Firm's Employee Handbook and signed an acknowledgement indicating the same. (Raskin Aff., Ex. 1).

21.     At the commencement of her employment, Plaintiff received training on how to use SAGA. (Pl. Tr. at 104:5-17; Prakhin Aff., ¶ 5).

22. Plaintiff was supervised by Mr. Prakhin and Managing Attorney Irene Gabo ("Ms. Gabo").  (Pl. Tr. at 92:18-93:24; Prakhin Aff., ¶ 4).

23. In November 2012, Plaintiff was admitted to the New York State bar.  (Pl. Tr. at 93:3-4).

24. Upon admission to the Bar, Plaintiff was promoted to an Associate position with the Firm, working under the close supervision of Ms. Gabo. (Prakhin Tr. at 184:18-187:20; Pl. Tr. At 93:93:15-24; Prakhin Aff., ¶ 4; Raskin Aff., ¶ 4).

25. At the time Plaintiff was hired and after her admission to the Bar, Mr. Prakhin described the responsibilities of an Associate.  (Pl. Tr. at 94:14-21).

26. After being admitting to the Bar, Plaintiff received trainings on representing clients at court appearances and conducting depositions. (Pl. Tr. at 104:5-17; Prakhin Aff., ¶ 5).

27. In February 2017, Plaintiff voluntarily resigned from her employment with the Firm to pursue an opportunity at Mallilo & Grossman, another plaintiff-side personal injury law firm. (Pl. Tr. at 122:23-128:5; Raskin Aff., ¶ 4; Prakhin Aff., ¶ 5).

**C.     Plaintiff is Rehired by the Firm**

28. In 2018, Mr. Prakhin was looking for a new Associate for the Firm.  (Prakhin Tr. at 195-196; Prakhin Aff., ¶ 6).

29. In 2018, Mr. Prakhin met with Plaintiff. (Pl. Tr. at 136:25-137:16; Prakhin Tr. at 196:9-13; Prakhin Aff., ¶ 6).

30. During this meeting, Mr. Prakhin and Plaintiff discussed the possibility of re-employing Plaintiff as an Associate with the Firm. (Pl. Tr. at 136:25-137:16; Prakhin Tr. at 196:9-197:16; Prakhin Aff., ¶ 6).

31. Plaintiff indicated that she would be interested in returning to the Firm if Mr. Prakhin matched or increased her current salary. (Pl. Tr. at 135:15-138:20).

32. Plaintiff represented to Mr. Prakhin that she had gained significant experience as an associate at Mallilo & Grossman. (Prakhin Tr. at 196:9-197:16; Pl. Tr. at 128:16-135:10; Prakhin Aff., ¶ 6).

33. After the meeting, Mr. Prakhin offered Plaintiff an Associate position at an increased salary of $100,000. (Pl. Tr. at 138:14-20; Prakhin Tr. at 195:4-197:16; Prakhin Aff., ¶ 6; Raskin Aff., ¶ 5).

34. In addition to her salary, Plaintiff was eligible for a discretionary bonus consisting of 5% of the Firm's fee collected from settlements she negotiated. (Pl. Tr. at 138:14-20, 171:13-22; Prakhin Tr. at 197:18-198:11; Prakhin Aff., ¶ 6; Raskin Aff., ¶ 5).

35. Plaintiff's resumé states that while employed at Mallilo & Grossman, Plaintiff: (1) acted as lead counsel on jury trials; (2) managed a caseload from inception to conclusion; (3) conducted depositions; (4) drafted pleadings; and (5) researched, prepared, and argued discovery and dispositive motions. (Donnelly Decl., Ex. M).

36. Plaintiff only conducted one trial at Mallilo & Grossman, which she lost. (Donnelly Decl., Ex. N).

37. Plaintiff did not manage her own caseload and instead was assigned to assist partners with their caseloads. (Pl. Tr. at 129:5-132:17).

**D.**     **Plaintiff's Second Period of Employment with the Firm**

38. Plaintiff commenced her second period of employment with the Firm on June 18, 2018. (Prakhin Tr. at 206:2-5; Prakhin Aff., ¶ 9; Raskin Aff., Ex. 4).

39. The essential duties of the Associate position included: (1) representing clients at court hearings; (2) conducting and defending depositions; (3) drafting motions; and (4) negotiating settlements. (Prakhin Tr. at 285:13-286:16; Prakhin Aff., ¶¶ 33-34; Pl. Tr. at 94:22-95:3).

40. Plaintiff acknowledges that engaging in settlement discussions on behalf of clients is the responsibility of the attorney. (Pl. Tr. at 153:9-11).

41. The essential duties of an Associate also included: (1) entering case notes into the Firm's case management database, SAGA; (2) communicating with clients; (3) reviewing work completed by paralegals; (4) being available to work at least forty (40) hours per workweek; and (5) following the Firm's policies and procedures as set forth in the Employee Handbook. (Prakhin Tr. at 285:13-286:16; Prakhin Aff., ¶¶ 36-37).

42. After Plaintiff commenced employment with the Firm in 2018, Defendants quickly realized that Plaintiff's work performance was not satisfactory. (Prakhin Tr. at 207:21-208:16; Prakhin Aff., ¶ 13).

43. By August 2018, Mr. Prakhin began searching for an attorney to replace Plaintiff. (Prakhin Tr. at 280:23-283:21; Prakhin Aff., ¶ 14; Zohar Aff., ¶ 4).

44. Ms. Gabo was the Firm's Managing Attorney during Plaintiff's second period of employment until October 1, 2018. (Prakhin Aff., ¶¶ 4, 16; Pl. Tr. at 143:7-17).

45. Patricia Belous was hired as a paralegal by the Firm in August 2018. (Prakhin Tr. at 198:12-21; Belous Tr. at 17:5-10; Belous Aff., ¶¶ 2, 4).

46. Ms. Belous was assigned to work with Plaintiff. (Prakhin Tr. at 198:12-21; Belous Tr. 14-16; Belous Aff., ¶ 5; Prakhin Aff., ¶ 12).

47. Erica Larssen was hired as a paralegal by the Firm in September 2018. (Larssen Aff., ¶¶ 4; Prakhin Aff., ¶ 18).

48. Ms. Gabo resigned from the Firm to commence her own law practice effective October 1, 2018. (Prakhin Aff., ¶ 16).

49. In late September 2018, Ms. Larssen was assigned to work with Plaintiff. (Prakhin Aff., ¶ 18; Larssen Aff., ¶ 7; Gabo Tr. at 35:2-6).

50. Plaintiff assigned Ms. Larssen to draft summons and complaints. (Belous Tr. at 61:10-62:6; Larssen Aff., ¶ 8; Pl. Tr. at 148-149).

51. Plaintiff assigned paralegals to draft motions. (Larssen Aff., ¶ 8; Donnelly Decl., Ex. R).

52. Plaintiff assigned Ms. Belous to draft discovery demands and responses. (Belous Aff., ¶ 7; Pl. Tr. at 154:6-155:25).

53. If Plaintiff was absent from the office, she would not respond to client inquiries, but would direct her paralegals to do so. (Pl. Tr. at 153:15-19, 157:25-159:5).

54. Several clients, including, but not limited to, Natalia Generalova, Azfar Khan, Laura Shvarts, Vitaliy Lyutyk, and Marina Zhernyakova, complained to Mr. Prakhin about Plaintiff's failure to appropriately communicate with them about their cases. (Prakhin Aff., ¶¶ 30-35, Exs. 1-4).

55. Mr. Lyutyk intended to hire new counsel as a result of his experience with Plaintiff. (Prakhin Aff., ¶ 33, Ex. 3).

56. Plaintiff requested that Ms. Belous pay her rent and electric bills each month. (Belous Aff., ¶ 11).

57. Plaintiff requested that Ms. Belous address parking tickets that Plaintiff had incurred. (Belous Aff., ¶ 11; Prakhin Tr. at 273, 286).

58. Plaintiff instructed Ms. Larssen to order her food. (Larssen Aff., ¶ 14).

59. On October 3, 2018, Plaintiff called Ms. Larssen and instructed Ms. Larssen to go outside and pick up medicine from Plaintiff's uncle. (Donnelly Decl., Ex. [Rec. 597]; Larssen Aff., ¶ 14).

60. Plaintiff only sometimes reviewed the work performed by her paralegals. (Pl. Tr. at 152:12-18; Belous Tr. at 54:22-23, 61:10-62:6; Larssen Aff., ¶ 9; Belous Aff., ¶ 9).

61. Attorneys were required to enter accurate notes about their assigned cases into SAGA to ensure that there are accurate records for the files that can be reviewed by any attorney in the Firm in the event that coverage is required for a court appearance or deposition or to response to inquiries from clients. (Prakhin Aff., ¶¶ 5, 37; Raskhin Aff., ¶¶ 11, 12; Pl. Tr. at 60).

62. Plaintiff was informed that she was expected to enter notes into SAGA following a deposition. (Donnelly Decl., Ex. P).

63. Plaintiff acknowledges that it was her job responsibility as an Associate at the Firm to enter notes into SAGA after completing a deposition. (Pl. Tr. at 183:5-8).

64. Plaintiff did not enter any notes into SAGA for numerous depositions at which she appeared. (Donnelly Decl., Ex. Y).

65. From June 18, 2018, through December 14, 2018, Plaintiff only entered 54 notes into SAGA. (Raskin Aff., ¶ 13, Ex. 3; Prakhin Aff., ¶ 38).

66. From June 18, 2018, through December 14, 2018, Sandra Beron entered 1,073 notes into SAGA. ((Raskin Aff., ¶ 13, Ex. 3).

67. From June 18, 2018, through December 14, 2018, Irene Gabo entered 2,449 notes into SAGA. (*Id.*)

68. From June 18, 2018, through December 14, 2018, Lilit Avetisyan entered 1,770 notes into SAGA. (*Id.*)

12

69. From June 18, 2018, through December 14, 2018, Gregory Nahas entered 746 notes into SAGA. (Donnelly Decl., Ex. CC).

70. From June 18, 2018, through December 14, 2018, Nicholas Serlin entered 598 notes into SAGA. (Donnelly Decl., Ex. DD).

71. Settling cases was an essential responsibility of attorneys at the Firm and necessary for the Firm's financial viability. (Prakhin Aff., ¶ 7).

72. Between June 2018 and December 2018, Plaintiff received a total of $650 in bonus compensation from settlements. (Prakhin Aff., ¶ 40; Donnelly Decl., Ex. EE)

73. Plaintiff's settlements generated only $13,000 of revenue for the Firm. (Prakhin Aff., ¶ 40)

74. From June 2018, through December 2018, the Firm collected approximately $1,420,000 in fees from settlements that Irene Gabo negotiated. (Prakhin Aff. at ¶ 42).

75. Ms. Gabo earned a total of $71,000 in bonus compensation from her settlements. (*Id.*; Donnelly Decl., Ex. GG).

76. From June 2018, through December 2018, the Firm collected approximately $171,700 in fees from settlements that Sandra Beron negotiated. (Prakhin Aff. at ¶ 41).

77. Ms. Beron earned a total of $8,585 in bonus compensation from her settlements. (*Id.*; Donnelly Decl., Ex. FF)

78. Mr. Prakhin advised Plaintiff that she needed to settle more cases. (Prakhin Aff., ¶ 39).

79. Plaintiff acknowledges her inability to review documents, pictures, or videos presented at depositions. (Pl. Tr. at 25:2-10, 111:4-114:15, 250:17-251:5).

80. On October 17, 2018, Plaintiff appeared as counsel at a deposition for one of the Firm's clients. (Donnelly Decl., Exs. SS, TT).

81. During the deposition, surveillance footage was reviewed. (*Id.*)

82. Plaintiff was unable to review the surveillance footage and "faked" her way through the deposition. (*Id.*)

83. On December 11, 2018, Plaintiff appeared as counsel at a deposition for one of the Firm's clients. (Donnelly Decl., Exs. UU, VV).

84. During this deposition, Plaintiff was unable to review a picture that was presented as an exhibit. (*Id.*)

85. Plaintiff repeatedly used her cellphone in the office for personal matters. (Prakhin Tr. at 253:13-25, 274:16-22; Belous Aff., ¶ 10; Raskin Aff., ¶ 10; Prakhin Aff., ¶¶ 43-44).

86. A client, Ms. Zhernyakova, complained to Mr. Prakhin about Plaintiff after she was required to wait for over half an hour while she observed Plaintiff walking around the office talking and laughing on her cellphone. (Prakhin Aff., ¶ 35).

87. Plaintiff removed confidential client documents from the Firm and retained such documents. (Pl. Tr. at 228:4-13; Donnelly Decl., Ex. X).

88. Between August 2018 and December 2018, Plaintiff was absent from work at total of 25 days. (Raskin Aff., Ex. 4)

89. Plaintiff was absent from work on the following dates: September 26, 2018 (no medical appointment); September 27, 2018 (no medical appointment); September 28, 2018 (medical appointment); October 4, 2018 (no medical appointment); October 5, 2018 (medical appointment); October 8, 2018 (medical appointment); October 9, 2018 (no medical appointment); October 10, 2018 (medical appointment); October 11, 2018 (no medical

appointment); October 12, 2018 (no medical appointment); October 15, 2018 (no medical appointment); October 16, 2018 (no medical appointment); October 18, 2018 (no medical appointment); October 19, 2018 (no medical appointment); November 5, 2018 (medical appointment); November 9, 2018 (no medical appointment); November 15, 2018 (no medical appointment); November 16, 2018 (medical appointment); November 19, 2018 (no medical appointment); November 20, 2018 (medical appointment); November 21, 2018 (no medical appointment); November 23, 2018 (no medical appointment); November 26, 2018 (no medical appointment); November 27, 2018 (medical appointment); and November 30, 2018 (no medical appointment). (*Id.*; Donnelly Decl., Exs. JJ - MM).

90. Plaintiff's absences from work required other attorneys to assume the essential functions of Plaintiff's position to ensure that the Firm was satisfying its obligations to its clients. (Raskin Tr. at 128:14-22; 153:3-9).

91. Other attorneys in the Firm were unduly burdened by being reassigned Plaintiff's appearances and depositions, and having to review Ms. Belous and Ms. Larssen's work. (Raskin Aff., ¶¶ 18-20; Belous Aff., ¶ 8; Larssen Aff., ¶ 9).

92. Ms. Belous and Ms. Larssen were unduly burdened by having to perform their paralegal duties as well as the work Plaintiff directed them to perform. (Belous Aff., ¶¶ 12; Larssen Aff., ¶¶ 8, 10-11, 16; Prakhin Tr. at 273).

E. **Plaintiff's Medical Condition**

93. In September 2018, Plaintiff claims that she began to experience blurry vision. (Pl. Tr. at 189:24-190:12).

94. Ms. Raskin encouraged Plaintiff to seek medical advice regarding her blurry vision. (Raskin Tr. at 122; Raskin Aff., ¶ 14).

95. Defendants granted Plaintiff's request for a leave of absence in October 2018 to attend medical appointments. (Pl. Tr. at 239:11-13; Raskin Tr. at 151:6-152:15; Raskin Aff., ¶¶ 15-17; Prakhin Aff., ¶¶ 20-22).

96. Defendants granted Plaintiff's request for a leave of absence in November 2018. (Pl. Tr. at 239:11-13; Raskin Tr. at 151:6-152:15; Raskin Aff., ¶¶ 21-22; Prakhin Aff., ¶¶ 23-24).

97. Plaintiff requested, and Defendants approved, a leave of absence for Plaintiff to obtain medical treatment in Florida. (Prakhin Tr. at 292-293; Prakhin Aff., ¶ 23; Raskin Tr. at 124:21-125:18, 151:6-20; Raskin Aff., ¶ 21).

98. Plaintiff did not receive any medical testing or treatment in Florida during her employment with the Firm. (*See* Donnelly Decl., Exs. JJ - MM).

99. At no time during Plaintiff's employment with the Firm did Plaintiff provide Defendants with any medical documentation indicating that she received medical treatment in Florida, or any other medical treatment. (Pl. Tr. at 217:19-21, 239:8-10; Raskin Aff. ¶¶ 17, 22; Prakhin Aff., ¶¶ 22-24).

100. Plaintiff received a diagnosis in November 2018. (Donnelly Decl., Ex. MM).

101. Plaintiff advised Mr. Prakhin and Ms. Raskin that she received a medical diagnosis. (Raskin Aff., ¶ 27, Prakhin Aff., ¶ 27).

102. Plaintiff did not provide any medical documentation to Mr. Prakhin or Ms. Raskin regarding her medical diagnosis. (Raskin Aff., ¶ 28; Prakhin Aff., ¶ 27).

103. Plaintiff never provided Defendants with any documentation from any of her healthcare providers regarding her medical condition or any requests for leave. (Pl. Tr. at 205:14-206:2, 217:12-21; Raskin Aff. ¶¶ 17, 22, 28; Prakhin Aff., ¶¶ 22-24, 27).

**F.     Defendants Provided Plaintiff with Reasonable Accommodations**

104.    From September through December 2018, Ms. Raskin engaged in numerous discussions with Plaintiff regarding her blurry vision, magnifying devices, and installing software onto Plaintiff's Firm-provided computer. (Raskin Tr. at 121:23-125:18, 145:22-147:13, 157:21-158:16; Pl. Tr. at 194:11-195:6, 212:7-20, 253:3-12).

105.    Ms. Raskin approved Plaintiff to take time off to attend medical appointments. (Raskin Tr. at 125:14-18, 151:6-152:15; Raskin Aff., ¶¶ 15-17, 21-22).

106.    Plaintiff was provided with leave to attend her medical appointments. (Pl. Tr. at 199:22-200:2, 239:11-13).

107.    Defendants approved Plaintiff's request to purchase magnifying devices. (Pl. Tr. at 212:11-18, 253:3-12).

108.    Plaintiff used the full-page magnifier at work. (Larssen Tr. at 76:23-77:9, 78:22-79:6).

109.    Defendants engaged an IT specialist to enlarge the text on Plaintiff's Firm-provided computer. (Raskin Tr. at 125:2-18; Raskin Aff., ¶ 23).

110.    Defendants permitted Plaintiff to upload software of her choice to the Firm's computers. (Pl. Tr. at 223:22-224:17; Prakhin Tr. at 136:7-17; Raskin Tr. at 145:22-147:13; Larssen Tr. at 83:22-85:5; Prakhin Aff., ¶ 25; Raskin Aff., ¶ 24; Larssen Aff., ¶ 12).

111.    In November 2018, Defendants offered Plaintiff a leave of absence, which was rejected by Plaintiff. (Raskin Tr. at 64:2-14; Raskin Aff., ¶ 26).

112.    Plaintiff acknowledges that Mr. Prakhin suggested that Plaintiff take a leave of absence. (Pl. Tr. at 201:5-6, 68:19-10; Prakhin Aff., ¶ 28).

17

113. Plaintiff refused to accept Defendants' offer to take a leave of absence, stating that that she was not disabled. (Raskin Tr. at 64:2-14, 158:2-10; Prakhin Aff., ¶ 28; Donnelly Decl., Ex. A, ¶ 42).

114. Plaintiff did not provide Defendants any receipts for reimbursement following her purchase of any assistive devices. (Pl. Tr. at 214:9-19, 217:9-11, 223:3-17; Raskin Aff., ¶ 30).

115. Plaintiff never submitted any medical documentation to Defendants indicating any accommodation that would have allowed her to perform essential functions of the Associate position. (Pl. Tr. at 205:14-206:2, 217:12-21; Prahkin Aff., ¶ 29).

116. Plaintiff discontinued using JAWS because she "soon realized it was intended for individuals who were completely blind rather than visually impaired." (Pl. Tr. at 229:4-230:18; Donnelly Decl., Ex. L at No. 11).

117. Plaintiff she does not know if JAWS would have assisted her in performing her job functions, such as conducting depositions. (Pl. Tr. at 225:14-22).

118. On November 9, 2018, Plaintiff purchased OrCam glasses for $3,599.00. (Donnelly Decl., Ex. NN).

119. Plaintiff returned the OrCam glasses she purchased because she "didn't find them very useful." (Pl. Tr. at 220:24-221:5).

120. Plaintiff remained unable to perform the essential functions of her position as an Associate at the Firm even after she began using assistive devices and software. (Prakhin Aff., ¶ 26; Larssen Aff., ¶¶ 13, 15; Belous Aff., ¶ 9).

121. Plaintiff never identified a reasonable accommodation that would allow her to perform the essential functions of the Associate position. (Prakhin Aff., ¶ 29; *see* Raskin Aff., ¶ 31).

122. Plaintiff never submitted any requests for accommodation in writing, as required by the Employee Handbook. (Pl. Tr. at 201:9-19; 216:7-12; Raskin Aff., Exs. 1, 2).

### G. Plaintiff's Termination for Unsatisfactory Performance

123. Mr. Prakhin decided to terminate Plaintiff because of her poor work performance. (Prakhin Tr. at 272:21-277:8, 304:13-22, 368:4-369:16; Prakhin 30(b)(6) Tr. at 125:13-126:23, 129:19-130:10; Prakhin Aff., ¶ 45).

124. Plaintiff's work performance was unsatisfactory because Plaintiff failed to: (1) timely respond to or communicate with clients; (2) perform the work assigned to her and reassigned such work to paralegals; (3) review documents prepared by paralegals on her behalf; (4) enter case notes into the Firm's SAGA database; (5) follow the rules provided in the Employee Handbook; and (6) efficiently and proactively settle cases. (Prakhin Aff., ¶ 45).

125. Plaintiff's employment with the Firm was terminated effective December 14, 2018. (Prakhin Aff., ¶ 46).

### H. The Firm's Employment of Gil Zohar

126. In late August 2018, early September 2018, Mr. Prakhin was searching for a trial attorney for the Firm. (Prakhin Aff., ¶ 14).

127. In late August 2018, early September 2018, Mr. Prakhin met with Gil Zohar, an experienced trial attorney with over 20 years of trial experience, to discuss retaining him to be an of counsel trial attorney for the Firm. (*Id*.; Zohar Aff., ¶¶ 3, 4.)

128. Mr. Zohar was hired by the Firm of counsel trial attorney for the Firm from September 2018 through December 2018. (Prakhin Tr. at 316-317; Prakhin Aff., ¶ 15; Zohar Aff., ¶¶ 4-5).

129. In December 2018, Mr. Prakhin hired Mr. Zohar to act as the Firm's managing attorney. (Prakhin Aff., ¶ 50; Prakhin Tr. at 234, 317; Zohar Aff., ¶ 5).

130. Mr. Zohar had extensive experience as an attorney and possessed qualifications superior to those of Plaintiff. (Prakhin Aff., ¶ 50; Prakhin Tr. at 234).

131. From January 2019 through July 2019, the Firm collected approximately $1,448,000, in fees from settlements that Mr. Zohar negotiated. (Prakhin Aff., ¶ 51).

132. Mr. Zohar earned a total of $72,400 in bonus compensation from his settlements. (*Id*.)

Dated:  New York, New York
        May 11, 2021                    /s/ MED
                                        Mary Ellen Donnelly
                                        Nicole E. Price
                                        **BOND SCHOENECK & KING PLLC**
                                        600 Third Avenue, 22nd Floor
                                        New York, New York 10016
                                        (646) 682-0020

                                        *Attorneys for Defendants*