UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

YELENA RUDERMAN,

                Plaintiff,

- against -

LAW OFFICE OF YURIY PRAKHIN, P.C., and YURIY PRAKHIN, ESQ., in his professional and individual capacities,

                Defendants.

Case No. 19-cv-2987 (RJD) (RLM)

**AFFIDAVIT OF YURIY PRAKHIN, ESQ. IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

STATE OF NEW YORK    )
                                ) ss.:
COUNTY OF KINGS      )

        **YURIY PRAKHIN**, being duly sworn, deposes and says:

        1.    I am the President of the Law Office of Yuriy Prakhin (the Firm") and a named defendant in this action. I am fully familiar with the facts and circumstances stated herein and submit this affidavit in support of Defendants' motion for summary judgment dismissing Plaintiff's Complaint in its entirety.

        2.    The Firm is a personal injury, medical malpractice law firm with approximately 20 employees. I established the Firm in 2002 and am the Firm's President. As President, I retain sole authority to hire and fire employees of the Firm.

        3.    The Firm is an equal opportunity employer and does not discriminate against any applicant or employee on the basis of any protected category, including disability, as defined under applicable federal, state, or local law.

4.      In 2012, I interviewed Yelena Ruderman ("Plaintiff"), for an associate position with the Firm. At the time of my initial interview, Plaintiff's admission to the New York State Bar was pending. I offered Plaintiff a position with the Firm as a paralegal until such time she was admitted to the Bar. Accordingly, Plaintiff commenced employment with the Firm in September 2012 as paralegal. Upon admission to the Bar, Plaintiff was promoted to an Associate position with the Firm. Plaintiff was supervised by me and Irene Gabo, Esq., who was Managing Attorney for the Firm at that time.

5.      At the time that Plaintiff commenced employment with the Firm she received training regarding the responsibilities of an associate attorney, including, but limited not to, instruction on the Firm's case management system, SAGA; attending court appearances; and conducting deposition. Plaintiff remained employed by the Firm until February 2017, at which time Plaintiff voluntary resigned from her employment to pursue an opportunity with another plaintiff-side personal injury law firm, Mallilo & Grossman.

6.      In 2018, the Firm was seeking to hire an additional associate. I met with Plaintiff to discuss the possibility of re-employment with the Firm. During that meeting, Plaintiff represented to me that she had gained significant additional experience during the period of time she was at Mallilo & Grossman, including managing her own caseload and conducting trials. As a result of Plaintiff's representation regarding her experience, I offered Plaintiff an associate position with the Firm and an increased salary of $100,000. I also advised Plaintiff that she was eligible to receive discretionary bonuses of five percent (5%) of the Firm's fee for all cases she settled based upon successful performance of her job responsibilities.

7.      As a plaintiff side personal injury firm, the attorneys in the Firm do not bill on an hourly basis. Rather, Firm revenue is generated through either the successful settlement of cases

or a monetary award to the plaintiff at trial. Accordingly, in order for the Firm to be financially viable, it is an essential responsibility of all attorneys to proactively settle cases on terms favorable to the plaintiff. The six-month payroll for the office is approximately $967,000.

8. All full-time attorneys at the Firm are expected to work 40 hours a week and are assigned a full caseload. Each attorney can be assigned between 100 and 200 cases at a time. Each attorney is responsible for the cases to which they are assigned.

9. Plaintiff commenced her second term of employment with the Firm on June 18, 2018.

10. Based upon Plaintiff's representation to me regarding the work experience she had obtained at Mallilo & Grossman, Plaintiff was assigned her own caseload to manage independently.

11. Shortly after Plaintiff commenced employment with the Firm in 2018, it became readily apparent to me that Plaintiff was not competently performing the essential responsibilities of her position as an associate with the Firm. Specifically, Plaintiff (1) was not entering case notes into SAGA, which was an essential responsibility of her position; (2) was not effectively managing her caseload; (3) did not proactively settle cases and (4) often used her cell phone during the work hours.

12. I reminded Plaintiff of the Firm's expectations for Plaintiff's performance of her job responsibilities. I also reminded all associates at the Firm of their responsibility to enter appropriate notes in SAGA and respond promptly to client communications. In August 2018, I also hired a paralegal, Patricia Belous, to assist Plaintiff with the management of her caseload.

13. As Plaintiff's poor performance of her job responsibilities was readily apparent early on in her employment with the Firm, I began looking for a replacement attorney for her position in August 2018.

14. In late August 2018, early September 2018, I was also seeking a trial attorney for the Firm. I met with Gil Zohar, an experienced trial attorney with over 20 years of trial experience, to discuss retaining him to be of counsel trial attorney for the Firm. At that time, I mentioned to Mr. Zohar that I was also seeking an associate for the Firm. However, the purpose of my initial meeting with Mr. Zohar was to retain his services as a trial attorney.

15. Mr. Zohar began actively conducting trials on behalf of the Firm in 2018.

16. In September 2018, Ms. Gabo advised me that she would be leaving the Firm to establish her own law practice. As a result of Ms. Gabo's notice of resignation, I advised Ms. Gabo that she would have to reassign the cases on which she was working to other attorneys at the Firm.

17. At the time I received Ms. Gabo's notice of resignation there were approximately six attorneys employed by the Firm.

18. After consultation with Ms. Gabo, it was determined that the majority of her cases would be divided between Sandra Beron, an attorney with over 12 years' experience, and Plaintiff, who would also be assigned to work with an additional paralegal, Erica Larssen, who had been working with Ms. Gabo and was familiar with her cases. The majority of Ms. Gabo's cases were trip and fall cases. Ms. Beron and Plaintiff were the only other attorneys in the Firm who had relevant experience with trip and fall cases. The remaining cases were to be distributed to other attorneys within the Firm.

19. Although I was dissatisfied with Plaintiff's job performance at the time I received Ms. Gabo's resignation from the Firm, I was left with no alternative but to transfer many of the cases to Plaintiff, who had two experienced paralegals to assist her with management of those files and would be able to ensure that the clients were properly served while I searched for a replacement for Plaintiff's position. In addition, since Ms. Larssen had been assigned to work with Ms. Gabo, she was already familiar with the cases being assigned to Plaintiff.

20. Sometime in early October 2018, Plaintiff verbally advised me that she was experiencing blurry vision. Initially, Plaintiff requested days off from work to attend doctor's appointments, which request was accommodated by Irene Raskin, the Firm's Office Manager.

21. In early to mid-October 2018, Plaintiff requested additional time off from work. Once again, this request was made verbally. Plaintiff did not submit a written request, nor any medical documentation in connection with her request for time off from work despite the clear language in the Employee Handbook requiring documentation for any such requests. Despite the fact that Plaintiff did not provide any documentation, Plaintiff's request for time off from work was granted.

22. In October 2018, Plaintiff was absent from work on October 4, 2018, October 5, 2018, October 8, 2018, October 9, 2018, October 10, 2018, October 11, 2018, October 12, 2018, October 15, 2018, October 16, 2018, October 18, 2018, and October 19, 2018. While Plaintiff did provide advance verbal notice that she would be absent on some of those days, on many occasions she did not provide any notice of her absence. Plaintiff also never provided any written notice or medical documentation regarding any of her absences from work, as required under the Employee Handbook.

23. In October or November 2018, Plaintiff again verbally requested additional time off from work to go to Florida for a medical appointment. Despite the fact that Plaintiff did not provide a written request or any supporting medical documentation, I granted Plaintiff's request for time off from work. The Firm never received any documentation from Plaintiff indicating that she actually attended a medical appointment in Florida in November 2018.

24. In November 2018, Plaintiff was absent from work on November 5, 2018, November 9, 2018, November 15, 2018, November 16, 2018, November 19, 2018, November 20, 2018, November 21, 2018, November 23, 2018, November 26, 2018, November 27, 2018, and November 30, 2018. Plaintiff never provided any written notice or medical documentation regarding any of her absences from work, despite my request to do so and the clear language in the Employee Handbook.

25. The Firm also provided Plaintiff with other reasonable accommodations. On one occasion, Plaintiff requested permission to install software on her computer, which request was accommodated.

26. Despite our accommodations to assist Plaintiff in the performance of her job responsibilities, Plaintiff's work performance remained unsatisfactory. Plaintiff did not enter case notes in SAGA; did not proactively settle cases to which she was assigned, which was essential to the continued operation of the Firm; was non-responsive to emails from clients and adversaries; and did not competently perform the responsibilities of her position.

27. In late November 2018, Plaintiff advised me that she had received a diagnosis with respect to her blurry vision. Plaintiff did not provide me with any medical documentation regarding her diagnosis, despite of my and manager's requests.

28. I also discussed with Plaintiff the availability of a disability leave of absence as an accommodation to her. Plaintiff advised me that she did not want to take a disability leave of absence because she was not disabled.

29. At no time did Plaintiff advise me of any accommodation that would enable her to perform the essential functions of her job as an associate in the Firm, nor did Plaintiff provide me with any medical documentation identifying any accommodation that would enable her to perform the essential functions of her job as an associate in the Firm.

30. In the fall of 2018, I received numerous complaints from clients regarding Plaintiff's failure to communicate with them regarding pending cases.

31. Specifically, client Natalia Generalova, a plaintiff in a case being handled by Plaintiff, contacted me and advised me that Plaintiff was non-responsive and did not return her telephone calls. *See* Exhibit 1, Affidavit of Natalia Generalova, sworn to May 6, 2021.

32. Azfar Khan, another client in a case assigned to Plaintiff, also contacted me and advised me that Plaintiff was non-responsive and did not return his telephone calls. Mr. Kahn further advised me that on the one occasion that Plaintiff returned his telephone call, Plaintiff was rude and unprofessional towards him. *See* Exhibit 2, Affidavit of Azfar Kahn, sworn to May 7, 2021.

33. Vitaliy Lyutyk, another client in a case assigned to Plaintiff, also contacted me and complained that Plaintiff was rude on the one occasion he spoke to her and was otherwise non-responsive to his communications. *See* Exhibit 3, Affidavit of Vitaliy Lyutyk, sworn to May 6, 2021.

34. Laura Shvarts, another client in a case handled by Plaintiff, contacted me to complain that Plaintiff never responded to her communications. *See* Exhibit 4, Affidavit of Laura Shvarts, sworn to May 6, 2021.

35. Finally, Marina Zhernyakova, a client in a case handled by Plaintiff, arrived at the Firm one day in an attempt to meet with Plaintiff regarding her case. Ms. Zhernyakova observed Plaintiff walking around the Firm on her cell phone, laughing. After waiting to speak with Plaintiff for over half an hour, Ms. Zhernyakova left the Firm with the intention of seeking new counsel. I ran into Ms. Zhernyakova in the lobby of the building as she was leaving. Ms. Zhernyakova described to me what had occurred and her frustration with Plaintiff. I advised Ms. Zhernyakova that I would assign her case to another attorney.

36. As a litigation Associate, Plaintiff was required to attend court conferences, conduct depositions, conduct hearings, respond to client communications, meet with clients, and conduct mediations. Plaintiff's unscheduled absences from work required the Firm to assign the essential functions of Plaintiff's position to other attorneys in the Firm to ensure that the Firm was satisfying its obligations to its clients. Such reassignment caused undue hardship on the Firm and the other attorneys since they were already managing a full caseload which required their full attention.

37. The essential functions of Plaintiff's position at the Firm also included: (1) drafting litigation documents, such as motions, discovery demands, and discovery responses; (2) entering case notes into the Firm's SAGA database; (3) negotiating settlements; (5) reviewing work completed by paralegals; (6) representing clients at court appearances; (7) taking and defending depositions; (8) being available to work at least forty (40) hours per workweek; and (9) following the Firm's policies and procedures as set forth in the Employee Handbook. Plaintiff could not and did not perform these essential functions.

38. Between June 18, 2018 and December 14, 2018, Plaintiff entered only 54 notes into SAGA, most of which were deficient. Between June 18, 2018 and December 14, 2018, Irene Gabo entered 2,449 notes in SAGA, Sandra Beron entered 1,073 notes in SAGA, Lilit Avetisyan entered 1,770 notes in SAGA, and Gregory Nahas entered 746 notes in SAGA. Plaintiff failed to record adequate information about her assigned cases in SAGA.

39. Plaintiff also failed to settle the cases to which she was assigned, which is essential to the Firm's revenue. During Plaintiff's employment with the Firm, I advised Plaintiff that she needed to settle more cases. Plaintiff understood that this was an essential responsibility of her position with the Firm.

40. Between June 2018 and December 2018, Plaintiff earned $650 in settlement bonuses, which resulted in revenue to the Firm of $13,000. Plaintiff's annual salary was $100,000.

41. From June 2018 through December 2018, Ms. Beron earned $8,585 in settlement bonuses, resulting in revenue to the Firm of $171,700.

42. Ms. Gabo earned $71,000 in settlement bonuses between June 2018 and October 2018, which generated revenue of $1,420,000 for the Firm.

43. Plaintiff also violated the Firm's policy regarding cell phone use. I reminded employees of this policy, including Plaintiff, on June 29, 2018. Plaintiff acknowledged receipt of the warning and stated that it would not happen again. A copy of the communication between Plaintiff and myself is annexed as Exhibit 5.

44. Despite such assurances from Plaintiff, Plaintiff repeatedly used her cellphone in the office for personal matters.

45. As a result of Plaintiff's repeated failure to perform the responsibilities of her position as an associate, I made the decision to terminate Plaintiff's employment. Specifically,

9

Plaintiff's work remained unsatisfactory because she failed to: (1) timely respond to or communicate with clients; (2) perform the work assigned to her and reassigned such work to paralegals; (3) review documents prepared by paralegals on her behalf; (4) enter case notes into the Firm's SAGA database; (5) follow the policies and procedures stated in the Employee Handbook, and (6) efficiently and proactively settle cases.

46. On December 14, 2018, I advised Plaintiff that her employment was being terminated as a result of Plaintiff's failure to perform her job responsibilities.

47. I have also terminated the employment of other attorneys at the Firm for failing to perform their job responsibilities. Specifically, I terminated the employment of attorney Alex Smolyar in November 2015, after approximately four months of employment, due to unsatisfactory work performance, which included failing to communicate with clients and failing to adequately prepare motions and cases for trial.

48. I terminated the employment of attorney Daniel Berke in March 2016, after approximately five months of employment, for poor performance and excessive, unexcused absences.

49. I also terminated the employment of Gregory Nahas for unexcused absences and unsatisfactory work performance, including failing to communicate with clients and failing to enter SAGA notes.

50. In December 2018, I also made the decision to hire Gil Zohar to act as the Firm's Managing Attorney. Mr. Zohar had extensive experience as an attorney and possessed qualifications superior to those of Plaintiff.

51. Mr. Zohar assumed responsibility for all of the cases assigned to Plaintiff in addition to the responsibility for trying cases for the Firm. Within the first seven months of Mr.

Zohar's employment with the Firm, he earned $72,400 in settlement bonuses, which resulted in revenue to the Firm of $1,448,000.

52. The decision to terminate Plaintiff's employment was based solely on Plaintiff's inability to perform the essential functions of her position at any time during her employment with the Firm, with or without a reasonable accommodation. For the entirety of Plaintiff's employment between June 2018 and December 2018, Plaintiff failed to perform the essential responsibilities of her job, despite numerous opportunities to do so. Plaintiff also repeatedly violated the Firm's policies and procedures. The Firm treated Plaintiff fairly and equitably at all times during her employment.

_____
Yuriy Prakhin

Sworn to before me this
10 day of May, 2021.

_____
Notary Public

Michelle Lewis
Notary Public State of New York
No. 01LE5077518
Qualified in Kings County
Commission expires May 12, 2019 2023

11