**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YELENA RUDERMAN,<br><br>     Plaintiff,<br><br>   v.<br><br>LAW OFFICE OF YURIY PRAKHIN, P.C.<br>and YURIY PRAKHIN, in both his individual<br>and professional capacities,<br><br>     Defendants. | Civil Action No.: 1:19-cv-02987-RJD-RLM |

<u>**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**</u>

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT FACTS ............................................................................................................... 1

RELEVANT PROCEDURAL HISTORY ................................................................................. 2

ARGUMENT ......................................................................................................................... 3

I.      LEGAL STANDARDS ................................................................................................. 3

II.     PRAKHIN AND RASKIN'S SHAM AFFIDAVITS DEMONSTRATE NUMEROUS
        QUESTIONS OF MATERIAL FACT AND SHOULD BE DISREGARDED ................ 3

III.    PLAINTIFF CAN EASILY ESTABLISH WRONGFUL TERMINATION AT
        TRIAL ......................................................................................................................... 5

        A.      Defendants Had Notice of Plaintiff's Disability ...................................................... 6

                i.      Defendants Acknowledge that Plaintiff Disclosed Her LHON
                        Diagnosis ................................................................................................... 6

                ii.     Plaintiff Disclosed Her Disability Several Times Prior to Her
                        Diagnosis ................................................................................................... 6

                iii.    Defendants Never Requested Medical Documentation, Nor Was Plaintiff
                        Required to Provide It to Notify Defendants of Her Disability ................. 8

        B.      Plaintiff Was Qualified to and Did Perform Her Essential Job Functions ........... 11

                i.      Defendants' Claims That They Counseled Plaintiff About Her
                        Performance Are Unsupported by Documents and Contradicted by
                        Defendants' Vesting of Plaintiff with Additional Responsibilities .......... 11

                ii.     Defendants' Attendance Claims Are Disputed and Demonstrably
                        False .......................................................................................................... 12

                iii.    Defendants' SAGA Records Are Unreliable and Say Nothing About
                        Plaintiff's Ability to Perform Her Essential Job Functions ..................... 14

                iv.     Plaintiff's Alleged Failures to Communicate with Clients and Settle
                        Cases Are Strongly in Dispute ................................................................ 15

                v.      Plaintiff Can Perform All of Her Job Functions with Reasonable
                        Accommodations, and Defendants Amassed No Contrary Evidence ....... 17

        C.      Plaintiff Was Terminated Under Circumstances Giving Rise to an Inference
                of Discrimination ...................................................................................................... 18

   i.  Prakhin Admitted to His Unlawful Intent, Which Constitutes Direct Evidence of Discrimination ...................................................................... 18

   ii.  Plaintiff Amassed Myriad Other Evidence of Discriminatory Animus.... 20

   iii.  Temporal Proximity Raises an Inference of Discrimination ................... 22

  D.  Defendants' Stated Reasons for Firing Plaintiff Are Pretextual .......................... 22

IV.  PLAINTIFF CAN EASILY ESTABLISH SEVERAL FAILURES TO GRANT HER REASONABLE ACCOMMODATIONS AT TRIAL ..................................................... 23

  A.  Plaintiff Requested Five Reasonable Accommodations And Was Denied Without Any Interactive Process ............................................................ 23

  B.  Plainitff Was Not Required to Provide Medical Documentation Concerning Her Disability, Nor Did Defendants Request It ................................................... 24

CONCLUSION ...................................................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Barnett v. Revere Smelting & Refining Corp.*,
    67 F. Supp. 2d 378 (S.D.N.Y. 1999)..................................................................................13

*Baron v. Advanced Asset & Prop. Mgmt. Sols., LLC*,
    15 F. Supp. 3d 274 (E.D.N.Y. 2014) ................................................................................22

*Bartlett v. N.Y. State Bd. of L. Examiners*,
    No. 93 Civ. 4986(SS), 2001 WL 930792 (S.D.N.Y. Aug. 15, 2001) .......................................7

*Belfi v. Prendergast*,
    191 F.3d 129 (2d Cir. 1999)............................................................................................21

*Bennett v. Health Mgmt. Sys., Inc.*,
    92 A.D.3d 29 (1st Dept. 2011)..................................................................................6, 14

*Bourara v. N.Y. Hotel Trades Council & Hotel Ass'n of N.Y. City, Inc. Emp.*
    *Benefit Funds*,
    2020 WL 5209779 (S.D.N.Y. Sept. 1, 2020)..............................................................8

*Brady v. Wal-Mart Stores, Inc.*,
    531 F.3d 127 (2d Cir. 2008)...........................................................................................8

*Capobianco v. City of N.Y.*,
    422 F.3d 47 (2d Cir. 2005)..............................................................................................7

*Chambers v. TRM Copy Ctrs. Corp.*,
    43 F.3d 29 (2d Cir. 1994)........................................................................................22, 23

*Collins v. Cohen Pontani Lieberman & Pavane*,
    No. 04 CV 8983(KMW) (MHD), 2008 WL 2971668 (S.D.N.Y. July 31, 2008)...................21

*Curcio v. Roosevelt Union Free Sch. Dist.*,
    No. 10-CV-5612, 2012 WL 3646935 (E.D.N.Y. Aug. 22, 2012) ..........................................21

*Danzer v. Norden Sys., Inc.*,
    151 F.3d 50 (2d Cir. 1998).............................................................................................3

*DeCintio v. Westchester Cty. Med. Ctr.*,
    821 F.2d 111 (2d Cir.1987).............................................................................................15

*Droutman v. N.Y. Blood Ctr., Inc.*,
    No. 03-CV-5384(DRH), 2005 WL 1796120 (E.D.N.Y. July 27, 2005)..................................21

*Dupee v. Klaff's, Inc.*,
    462 F. Supp. 2d 233 (D. Conn. 2006)....................................................................................19

*Eastway Constr. Corp. v. City of N.Y.*,
   762 F.2d 243 (2d Cir. 1985)........................................................................3

*Fagan v. United Int'l Ins. Co.*,
   128 F. Supp. 2d 182 (S.D.N.Y. 2001).....................................................10

*Frantti v. N.Y.*,
   414 F. Supp. 3d 257 (N.D.N.Y. 2019).....................................................10

*Furman v. City of N.Y.*,
   No. 07-CV-1014(RRM), 2009 WL 4626706 (E.D.N.Y. Dec. 7, 2009) ................................25

*Gallo v. Prudential Residential Servs., Ltd. P'ship*,
   22 F.3d 1219 (2d Cir. 1994).....................................................................3

*Giugliano v. FS2 Capital Partners, LLC*,
   No. 14-cv-7240(ADS)(AKT), 2017 WL 2222924 (E.D.N.Y. May 18, 2017) .......................22

*Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*,
   252 F.3d 545 (2d Cir. 2001).....................................................................22

*Grabin v. Marymount Manhattan Coll.*,
   No. 12 Civ. 3591(KPF), 2014 WL 2592416 (S.D.N.Y. June 10, 2014)......................9, 10, 11

*Graves v. Finch Pruyn & Co., Inc.*,
   457 F.3d 181 (2d Cir.2006).....................................................................23

*Heyman v. Commerce & Indus. Ins. Co.*,
   524 F.2d 1317 (2d Cir.1975).....................................................................3

*Holtz v. Rockefeller & Co.*,
   258 F.3d 62 (2d Cir. 2001).................................................................5, 19

*Humphrey v. Cty. of Nassau*,
   No. 06-CV-3682(JFB)(AKT), 2009 WL 875534 (E.D.N.Y. Mar. 30, 2009)........................25

*Ibok v. Sec. Indus. Auto. Corp.*,
   369 F. App'x 210 (2d Cir. 2010) ..............................................................21

*JPMorgan Chase & Co.*,
   332 F. App'x 659 (2d Cir. 2009) ..............................................................20

*Kruger v. Virgin A. Airways, Ltd.*,
   976 F. Supp. 2d 290 (E.D.N.Y. 2013) .........................................................4

*Kwan v. Andalex Grp.*,
   737 F.3d 834 (2d Cir. 2013) ..................................................................22

*Littlejohn v. City of N.Y.*,
    795 F.3d 297 (2d Cir. 2015)..........................................................................................20

*Lyman v. N.Y. and Presbyterian Hosp.*,
    No. 11 Civ. 3889(KPF), 2014 WL 3417394 (S.D.N.Y. July 14, 2014) ...............................7, 8

*MacEntee v. IBM (Int'l Bus. Machs.)*,
    783 F. Supp. 434 (S.D.N.Y. 2011) .................................................................................9, 10

*Mack v. United States*,
    814 F.2d 120 (2d Cir.1987).............................................................................................4

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973)...........................................................................................5, 18, 19

*McHenry v. Fox News Network, LLC*,
    No. 19 Civ. 11294(PAE), 2020 WL 7480622 (S.D.N.Y. Dec. 18, 2020) .........................6, 14

*McMillan v. City of N.Y.*,
    711 F.3d 120 (2d Cir. 2013)...........................................................................................14

*Menes v. CUNY Univ. of N.Y.*,
    92 F. Supp. 2d 294 (S.D.N.Y. 2000)..................................................................................7

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013)............................................................................................5

*Nuchman v. City of N.Y.*,
    639 F. App'x 48 (2d Cir. 2016) ......................................................................................25

*Parker v. Columbia Pictures Indus.*,
    204 F.3d 326 (2d Cir. 2000)......................................................................................17, 23

*Piligian v. Ichan Sch. of Med. at Mt. Sinai*,
    No. 1:17-cv-01975 (ALC), 2020 WL 6561663 (S.D.N.Y. Apr. 7, 2020) .............................24

*Pinckney v. Carroll*,
    No. 18-CV-12198(VEC), 2019 WL 6619484 (S.D.N.Y. Dec. 4, 2019)................................25

*Reed v. Nike, Inc.*,
    No. 17 Civ. 7575(LGS), 2019 WL 2327519 (S.D.N.Y. May 31, 2019)................................25

*Reiter v. Maxi-Aids, Inc.*,
    No. 14 CV 3712, 2018 WL 557864 (E.D.N.Y. Jan. 19, 2018).............................................22

*Rotger v. Montefiore Med. Ctr.*,
    No. 1:15-cv-7783, 2019 WL 1429556 (S.D.N.Y. Mar. 29, 2019)......................................9, 25

*Sauerhaft v. Bd. of Educ. of Hastings-on-Hudson Union Free Sch. Dist.*,
    No. 05 CIV 09087 (PGG), 2009 WL 1576467 (S.D.N.Y. June 2, 2009) ................................4

*Smith v. N. Shore-Long Island Jewish Health Sys.*,
    286 F. Supp. 3d 501 (E.D.N.Y. 2018) ...................................................................................19

*Strohl v. Brite Adventure Ctr., Inc.*,
    No. 08-cv-259(RML), 2009 WL 2824585 (E.D.N.Y. Aug. 28, 2009) ...................................8

*Tex. Dep't of Cmty. Affairs v. Burdine*,
    450 U.S. 248 (1981).............................................................................................................21

*Thompson v. City of N.Y.*,
    No. 98 Civ. 4725(GBD), 2002 WL 31760219 (S.D.N.Y. Dec. 9, 2002) ................................9

*Trans World Airlines, Inc. v. Thurston*,
    469 U.S. 111 (1985).............................................................................................................19

*Turner v. Eastconn Reg'l Educ. Serv. Ctr.*,
    No. 3:12-cv-788(VLB), 2013 WL 1092907 (D. Conn. Mar. 15, 2013) ................................20

*Woolf v. Strada*,
    949 F.3d 89 (2d Cir. 2020).....................................................................................................5

**Statutes**

42 U.S.C. § 12102(1)(A)-(2)(A) ...................................................................................................6, 7

**Other Authorities**

Fed. R. Civ. P. 56(a) .........................................................................................................................3

## PRELIMINARY STATEMENT

Defendants' entire argument is based on vigorously disputed material facts; thereby rendering summary judgment inappropriate. Defendants brazenly assert that there are "no disputes"; yet ***every single argument*** they raise, rests on material facts that are fundamentally in dispute. Indeed, the record is replete with documentary evidence and testimony showing that Defendants' claims regarding Plaintiff's performance, attendance, SAGA notes, cell phone use, client communication, settlements, assistive devices, requests for medical documentation, details of her termination, and other critical facts – are demonstrably false, incomplete, misleading, and highly in dispute. Defendants submit sham affidavits in an attempt to rewrite their prior testimony to avoid damaging admissions, yet in doing so, they raise and highlight even more questions of fact as their prior testimony is now completely at odds with their current submissions. As such, summary judgment should be denied, and the disputed issues should be decided by a trier of fact.

## RELEVANT FACTS[1]

Plaintiff is a seasoned attorney with a long history at the Firm. 56.1 ¶ 19. After being recruited back in June 2018, Plaintiff received more cases, paralegals, and responsibilities – an acknowledgment of her stellar performance. *Id.* ¶¶ 28-48. In mid-September 2018, Plaintiff began rapidly losing her vision. *Id.* ¶ 93. Within a few weeks, Plaintiff had difficulty reading text, was unable to drive, and was getting progressively worse. *Id.* ¶¶ 79, 93. Plaintiff saw various doctors to obtain a diagnosis for her impairment. *Id.* ¶ 11, 43, 88-89, 95-96, 100. Plaintiff constantly apprised Prakhin, the office manager, Raskin, her managing attorney, Gabo, both of her paralegals, Larssen and Belous, and most of her co-workers – of her deteriorating vision, her need for assistive devices, her doctor's appointments, numerous tests she took, her hospitalization, and extensive

---

[1] For additional facts, Plaintiff respectfully refers the Court to her Local Rule 56.1 Counterstatement of Material Facts ("56.1 Counterstatement"). All references to the 56.1 Counterstatement are cited as "56.1 ¶ __," and exhibits to the same are cited as "Ex. __." All defined terms have the same meaning as set forth in the 56.1 Counterstatement.

experimental treatment she was undergoing and recovering from. *Id.* ¶¶ 11, 43, 79, 84, 88-89, 95-96, 100-120. Plaintiff requested devices, as reasonable accommodations, that would help her perform her job. *Id.* ¶¶ 64, 78, 84, 104-10. Defendants were not willing to provide Plaintiff with any assistive devices, or any contribution towards the purchase of same, and never engaged in any interactive process. Plaintiff purchased the devices at her own expense. *Id.* ¶¶ 104-08, 110-21.

On November 26, 2018, Plaintiff received a life-changing diagnosis – Leber Hereditary Optic Neuropathy ("LHON"), a genetic disease that causes a sudden, acute loss of central vision and has no known cure. *Id.* ¶¶ 100-01, 111. On November 28, 2018, Plaintiff disclosed her disability to Prakhin and again requested reasonable accommodations. *Id.* ¶ 101. Immediately after learning that Plaintiff's impairment was permanent and incurable, Defendants pressured Plaintiff to go out on disability leave. *Id.* ¶¶ 89, 111, 123. When Plaintiff refused – because she was willing and able (with accommodations) to perform her job as a full-time associate – Defendants terminated her employment ***two weeks later***, on December 14, 2018. *Id.* ¶ 111, 120, 123.

In the termination meeting, Prakhin explicitly admitted his discriminatory animus, specifically telling Plaintiff, "I don't know how you'll handle cases with your condition" and "I'm a business man. I don't see how this is worth it for me" but that "I would be happy to hire you back if your condition somehow improved." 56.1 ¶ 123. Since Plaintiff's discriminatory termination, she has been working as an attorney, on a *per diem* basis, with her assistive devises, performing all of the same job functions and duties as she did at the Firm.

## **RELEVANT PROCEDURAL HISTORY[2]**

On March 15, 2021, Defendants requested a pre-motion conference regarding this motion (*see* ECF No. 60), which Plaintiff opposed. *See* ECF No. 62. On April 20, 2021, the Court denied

---

[2] Unless stated otherwise, all citations, internal quotation marks, and footnotes are omitted; all emphases are added.

Defendants' request and urged the parties to either resolve their dispute or set a date for trial. Declaration of Innessa M. Huot ("Huot Decl.") ¶ 2. As the Court explained: "The parties' letters regarding a possible summary judgment motion ***strongly suggest that such a motion would be readily denied in light of the fundamental factual disputes that separate the parties.***" *Id.* ¶ 3. Despite this, Defendants served Plaintiff with the instant motion on May 11, 2021. *Id.* ¶ 4.

## ARGUMENT

### I.    LEGAL STANDARDS

Summary judgment may not be granted unless the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden is upon the moving party to demonstrate the absence of any material factual issue genuinely in dispute." *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975). The "court must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." *Eastway Constr. Corp. v. City of N.Y.*, 762 F.2d 243, 249 (2d Cir. 1985). "[S]ummary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 54 (2d Cir. 1998). In discrimination cases, the "trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). The trial court "is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Id.*

### II.    PRAKHIN AND RASKIN'S SHAM AFFIDAVITS DEMONSTRATE NUMEROUS QUESTIONS OF MATERIAL FACT AND SHOULD BE DISREGARDED

Defendants attempt to rewrite the discovery record through affidavits that are directly at

odds with their deposition testimony. Prakhin Aff.; Raskin Aff. It must be emphasized that Defendants' submission of these materially inconsistent statements further demonstrates the numerous factual disputes at issue in this case; thereby making summary judgment inappropriate. At a bare minimum, the Court should disregard these sham affidavits and the portions of Defendants' Rule 56.1 statement that relies on them.

"It is well settled in the Second Circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment." *Kruger v. Virgin A. Airways, Ltd.*, 976 F. Supp. 2d 290, 309–10 (E.D.N.Y. 2013), *aff'd,* 578 F. Appx. 51 (2d Cir. 2014); *Mack v. United States,* 814 F.2d 120, 124–25 (2d Cir.1987); *Sauerhaft v. Bd. of Educ. of Hastings-on-Hudson Union Free Sch. Dist.*, No. 05 CIV 09087 (PGG), 2009 WL 1576467, at *8 (S.D.N.Y. June 2, 2009), *aff'd sub nom. R.S. v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 371 F. Appx. 231 (2d Cir. 2010) (Court strikes portions of Defendants' sham affidavits, and their 56.1 Statement, that are inconsistent with their prior deposition testimony.). The five (5) contradicted statements are as follows:

1) Prakhin and Raskin list 25 specific dates on which Plaintiff was allegedly absent from work, identifying only eight as related to her medical treatment. Prakhin Aff. ¶¶ 22-24; Raskin Aff. ¶¶ 17, 22. Yet, Prakhin and Raskin both testified that Defendants did not maintain a complete accounting of Plaintiff's absences, had no record of the dates on which she sought treatment, and did not determine which absences were related to medical appointments before firing her. 56.1 ¶ 88.

2) Prakhin claims that he received five complaints from clients that Plaintiff had failed to communicate with them, citing this as a main reason for her termination. Prakhin Aff. ¶¶ 30-37, 45. This is at odds with his deposition testimony, wherein he stated, "I had a couple of complaints from the clients, but only a couple, not much," as opposed to five complaints, and that "[i]t was not major," as opposed to providing a basis for termination. 56.1 ¶ 54; Prakhin Dep. 209:13-23.

3) Prakhin avers that "Plaintiff repeatedly used her cellphone in the office for personal matters." Prakhin Aff. ¶ 44. However, Prakhin testified that he merely saw Plaintiff typing on her phone, and could not confirm whether she was sending a text messages or work emails. Prakhin Dep. 277:16-21; Plaintiff Dep. 189:7-11 ("[W]e were allowed to text if it was work related.").

4

4) Prakhin and Raskin both claim that they "discussed with Plaintiff the availability of a disability leave of absence as an accommodation." Prakhin Aff. ¶ 28; Raskin Aff. ¶ 26. However, Prakhin testified that he requested that Plaintiff take disability leave not as an accommodation, but because he had "no [other] option" besides firing her, as he "didn't want her to work in [his] office anymore." Prakhin Dep. 366:17-369:16. Raskin, testified that she suggested only a general leave of absence, not disability leave. Raskin Dep. 157:21-158:106.

5) Prakhin states that he hired Gil Zohar to replace Gabo, not Plaintiff (Prakhin Aff. ¶ 50); yet, he testified unequivocally that he hired Zohar to replace Plaintiff. *See* Prakhin Dep. 235:18-20 ("[Q]: You hired Mr. Zohar to replace [Plaintiff]?  [A:] Yes.").

These affidavits are designed to negate prior damaging testimony. However, Defendants' new statements raise material questions of fact as they are contradicted by their prior deposition testimony. This fact alone warrants denial of summary judgment. At a minimum, the Court should disregard the sham affidavits and the portions of Defendants' 56.1 statement that rely them.

## III.   PLAINTIFF CAN EASILY ESTABLISH WRONGFUL TERMINATION AT TRIAL

Disability discrimination claims are subject to the three-step burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a *prima facie* case, Plaintiff must demonstrate that: "(1) [her] employer is subject to the ADA; (2) [she] was disabled within the meaning of the ADA; (3) [she] was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) [she] suffered adverse employment action because of [her] disability." *Woolf v. Strada*, 949 F.3d 89 (2d Cir. 2020); *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 78 (2d Cir. 2001) (plaintiff need only show that a reasonable juror could find "that the prohibited factor was at least one of the motivating factors.").

Plaintiff's burden under the NYSHRL and NYCHRL is even lower, as she "need only show differential treatment—that she is treated less well—because of a discriminatory intent." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013). Under both statutes, summary judgment must be denied (except in the "most extreme and unusual circumstances") if even "some evidence that at least one of the [non-discriminatory] reasons proffered by defendant

is false, misleading, or incomplete." *Bennett v. Health Mgmt. Sys., Inc.*, 92 A.D.3d 29, 43-44 (1st Dept. 2011) (discussing NYCHRL); *McHenry v. Fox News Network, LLC*, No. 19 Civ. 11294(PAE), 2020 WL 7480622, at *8 (S.D.N.Y. Dec. 18, 2020) (after the 2019 amendments, claims under the NYSHRL are subject to the same liberal standards as claims under the NYCHRL).

Defendants do not dispute that they are subject to the ADA, NYSHRL, and NYCHRL, that Plaintiff suffers from a recognized disability, or that Plaintiff suffered an adverse action. *See generally* Defs. Br. Instead, Defendants claim that: (i) they had no notice of Plaintiff's disability; (ii) Plaintiff was not qualified to perform her essential job functions; and (iii) they did not fire Plaintiff under circumstances giving rise to an inference of discrimination. *Id.* Such arguments are without merit. Plaintiff can easily establish all elements of her wrongful termination claim at trial, and the record is rife with disputes of material fact, rendering summary judgment inappropriate.

## A.    Defendants Had Notice of Plaintiff's Disability

### i.    Defendants Acknowledge that Plaintiff Disclosed Her LHON Diagnosis

Defendants acknowledge that Plaintiff disclosed her LHON diagnosis to Prakhin in November 2018. *See* Defs. Br. 6; 56.1 ¶¶ 100-01. Further, it is beyond dispute that Defendants understood the impact of LHON on Plaintiff's vision. *See id.*; Ex. 55 at D01566 ("Lena asked for my help . . . as she cannot see."); 42 U.S.C. § 12102(1)(A)-(2)(A) ("The term 'disability' means, with respect to an individual—a physical or mental impairment that substantially limits one or more major life activities . . . major life activities including . . . seeing[.]"). Defendants concede that Plaintiff suffered from a recognized disability; thus, no further inquiry is needed.

### ii.    Plaintiff Disclosed Her Disability Several Times Prior to Her Diagnosis

Besides Plaintiff's disclosure of her diagnosis in November 2018, all parties uniformly testified that Plaintiff made numerous disclosures of her vision impairment as early as September 2018 – putting Defendants on notice that she suffered from a recognized disability. 56.1 ¶¶ 89, 93.

Plaintiff explained that she was suffering from blurry vision and was unable to read text. *Id.*; *Bartlett v. N.Y. State Bd. of L. Examiners*, No. 93 Civ. 4986(SS), 2001 WL 930792, at *41 (S.D.N.Y. Aug. 15, 2001) (plaintiff has a disability when "she is substantially limited in reading in comparison to most people.") (Sotomayor, J.). Plaintiff advised that her vision was getting worse and that she could no longer drive. 56.1 ¶¶ 89, 93; Ex. 4 Gabo Dep. 82:23-83:7; *Capobianco v. City of N.Y.*, 422 F.3d 47, 58 (2d Cir. 2005) (summary judgment reversed where plaintiff's vision impairment limited his ability to drive). Plaintiff shared that she was seeing doctors to diagnose her vision loss, and discussed the spinal taps, MRIs, plasma transfusions, and different "injections" and "IVs," she was receiving. 56.1 ¶¶ 82, 89, 102; Raskin Dep. 126:3-17; *Lyman v. N.Y. and Presbyterian Hosp.*, No. 11 Civ. 3889(KPF), 2014 WL 3417394, at *8 (S.D.N.Y. July 14, 2014) (notice established when plaintiff "implied" doctor visits related to condition). In fact, Defendants acknowledge that they approved two weeks of leave for Plaintiff to undergo tests, hospitalization, and experimental treatments in the hopes of diagnosing and curing her deteriorating vision. Defs. Br. 2, 5, 20, 22-23. *See Menes v. CUNY Univ. of N.Y.*, 92 F. Supp. 2d 294, 304 (S.D.N.Y. 2000) (notice established with plaintiff's "request for a three-day week" following surgery).

Further, Defendants themselves (Defs. Br. 2, 19-20) claim that shortly after Plaintiff's initial disclosure of her vision impairment, Prakhin, Raskin, and Gabo each had several discussions with Plaintiff wherein Plaintiff requested various accommodations, including magnifiers, OrCam glasses, Dragon dictation, and JAWS software. 56.1 ¶¶104, 107-08, 114, 116-18, 120-21. While Defendants provided no such devices, resulting in Plaintiff having to purchase them at her own expense, Raskin was keenly aware of Plaintiff's use of such devices, claiming she told Plaintiff "[a]s long as they're helping you, that's great." *Id.*; Raskin Dep. 148:15-23. As such, Defendants' claim that they were completely unaware that Plaintiff suffered from a disability is disingenuous.

Indeed, Plaintiff's disclosures of her deteriorating vision, inability to read text or drive, need for assistive devices, and the doctor's visits and treatment she was receiving were sufficient to put Defendants on notice of her disability. *Bourara v. N.Y. Hotel Trades Council & Hotel Ass'n of N.Y. City, Inc. Emp. Benefit Funds*, 2020 WL 5209779, at *9 (S.D.N.Y. Sept. 1, 2020) (issue of material fact as to notice where plaintiff disclosed that his condition made it difficult to perform his job); *Lyman*, 2014 WL 3417394, at *8 (notice established even when plaintiff had no diagnosis); *Strohl v. Brite Adventure Ctr., Inc.*, No. 08-cv-259(RML), 2009 WL 2824585, at *7-8 (E.D.N.Y. Aug. 28, 2009) (notice established where plaintiff requested time off to visit doctors).

Lastly, Defendants harp on Plaintiff's statement that she does not consider herself disabled, in the colloquial sense—a point of pride for her. *See* Defs. Br. 9, 23, 25. First of all, Plaintiff told Defendants, "I don't like to call myself disabled," as opposed to stating that she does not consider herself disabled. Plaintiff Dep. 257:3-11; *see also id.* at 252:13-18 ("[A]s far as I understand, if you're disabled, you can't work and I intend on working"). Regardless, Plaintiff's disclosure of the substantial limitation on her vision (among other things) established notice of a disability, irrespective of whether Plaintiff is fond of the term "disabled." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008) (an employer has notice of a disability and is subjected to the ADA "if the employer knew or reasonably should have known that the employee was disabled," even if the employee "does not consider himself to be disabled").

### iii. Defendants Never Requested Medical Documentation, Nor Was Plaintiff Required to Provide It to Notify Defendants of Her Disability

Defendants emphasize that Plaintiff did not provide medical documentation of her disability, claiming that such documentation was necessary to establish notice. Defs. Br. 2, 5-6, 9, 14. However, "a plaintiff is not required to provide a formal diagnosis or medical evidence in order to put an employer on notice of a disability." *Bourara*, 2020 WL 5209779 at *9; *Lyman*,

8

2014 WL 3417394 at *11 ("[T]here is no requirement of medical evidence associated with the necessity of an employer's awareness of the disability at issue."). "Plaintiff is not required, as part of [her] *prima facie* case . . . to demonstrate that [she] provided medical documentation[.]" *Rotger v. Montefiore Med. Ctr.*, No. 1:15-cv-7783, 2019 WL 1429556, at *10 (S.D.N.Y. Mar. 29, 2019).

This is particularly true where, as here, the employer never requested documentation. 56.1 ¶¶ 99, 102-03, 115; s*ee Grabin v. Marymount Manhattan Coll.*, No. 12 Civ. 3591(KPF), 2014 WL 2592416, at *14 (S.D.N.Y. June 10, 2014) (denying summary judgment where plaintiff disclosed her disability verbally and defendant did not ask her for documentation). Plaintiff vigorously denies ever receiving a request for medical documentation. 56.1 ¶¶ 99, 102-03, 115. Gabo also denied that either Prakhin or Raskin ever requested documentation from Plaintiff. *Id.* Defendants produced not a single document showing that such requests were made. *Id.*; Huot Decl. ¶ 5.

The cases Defendants cite do not undercut the established principle that an employer may be put on notice of a disability without the need for medical documentation, and that an employee need not provide documentation, absent a request for the same. Defs. Br. 9. *MacEntee v. IBM (Int'l Bus. Machs.)*, 783 F. Supp. 434, 440 (S.D.N.Y. 2011) ("IBM requested medical documentation" from the plaintiff). This alone distinguishes the *MacEntee* decision from the instant case. Indeed, whether Defendants requested medical documentation from Plaintiff is a material fact squarely in dispute; thereby rendering summary judgment inappropriate. *See* 56.1 ¶¶ 99, 102-03, 115.[3]

Further, the *MacEntee* plaintiff's depression was so severe that she took short-term leave, from which the court determined "[i]t can be inferred that IBM had notice of her depressive condition." *Id.* at 443. Similarly, here, Plaintiff's taking of short-term leave (twice) to seek treatment for her lost vision put Defendants on notice that her condition substantially impaired her

---

[3] Similarly, in *Thompson v. City of N.Y.*, No. 98 Civ. 4725(GBD), 2002 WL 31760219, at *8 (S.D.N.Y. Dec. 9, 2002), the employer—unlike Defendants—"requested medical documentation."

ability to see. It was MacEntee's subsequent disclosure of her depression a year later, without any mention of its severity, that the court found insufficient. As the court explained, MacEntee failed to "inform[] *in some manner* her employer of her limitations as a result of [her] disability." *Id.* at 444. Notably, the court did not specify that medical documentation was the sole sufficient means for notice, as Defendants falsely contend. *See id.* In any event, here, Plaintiff maintained a constant dialogue with Defendants regarding the impact of her vision impairment and the treatments she was receiving. As such, unlike in *MacEntee*, Defendants were well aware of the limitations on Plaintiff's major life activities—which ultimately motivated their decision to fire her.

In *Frantti v. N.Y.*, 414 F. Supp. 3d 257, 288 (N.D.N.Y. 2019), the employee never disclosed her impairment, whereas here Plaintiff disclosed her LHON diagnosis immediately after receiving it. 56.1 ¶¶ 100-01. As the *Frantti* court acknowledged, plaintiff's requested accommodations "might well have been perfectly appropriate and reasonable for an employee suffering a *known* psychiatric condition." *Id.* (emphasis in original). Here, Plaintiff's condition was known to Defendants, irrespective of whether she provided medical documentation.

Defendants' reliance on *dicta* in *Fagan v. United Int'l Ins. Co.*, 128 F. Supp. 2d 182, 185-86 (S.D.N.Y. 2001) is even less appropriate. There, plaintiff suffered from temporary knee injuries that did not prevent him from returning to work without restrictions after a brief recovery period. *Id.* As such, he had "produced no evidence that he had anything more than a temporary ailment". *Id.* Conversely, here, Plaintiff shared with Defendants that she suffers from a permanent, severe disability with no known cure. *See* 56.1 ¶¶ 100-01. The language Defendants misleadingly excerpt from the decision (*see* Defs. Br. 9) concerns the plaintiff's "attempt to admit post-termination medical reports" that were never disclosed to the employer to establish notice. *Id.* n.2.

*Grabin* provides a far more apt comparison:

> Defendant argues that it was not on notice of Plaintiff's disability, since

10

> she did not register as a disabled student, obtain a 'disability card,' or provide medical documentation for her claimed disability . . . This assertion is refuted by Grabin's specific testimony, which the Court must accept as true, that she told Carrington and numerous other administrators . . . that her infections were directly related to her thalassemia, and that she needed an accommodation as a result.

2014 WL 2592416, at *14. Similarly, here, Plaintiff testified that she disclosed her disability to Defendants in September 2018 and updated them at every stage as she visited doctors, underwent tests, and received treatments to diagnose the sudden loss of her vision. *See supra* § III(A)(ii). Further, as Defendants concede, Plaintiff shared her LHON diagnosis with Defendants within two days of receiving it and roughly two weeks before Defendants fired her. *See* 56.1 ¶¶ 100-01, 120.

### B.     Plaintiff Was Qualified to and Did Perform Her Essential Job Functions

Defendants list myriad performance issues from which Plaintiff supposedly suffered. *See* Defs Br. 9-13). However, the record in this case completely contradicts Defendants' bald assertions and Plaintiff vigorously disputes such claims.

### i.     Defendants' Claims That They Counseled Plaintiff About Her Performance Are Unsupported by Documents and Contradicted by Defendants' Vesting of Plaintiff with Additional Responsibilities

Defendants claim that Prakhin met with Plaintiff on three occasions to discuss her performance. 56.1 ¶ 78, 123. Yet, no other witnesses or documents corroborate the occurrence of these alleged meetings (Huot Decl. ¶¶ 8-9) and Plaintiff disputes having had any discussions with Prakhin or anyone else about her alleged poor performance. *Id.* ¶¶ 78, 123; Plaintiff Decl. ¶ 76. Critically, Gabo, who worked closely with Prakhin to supervise Plaintiff, testified unequivocally that Prakhin never expressed any dissatisfaction with Plaintiff's work. 56.1 ¶ 42, 72, 78, 123.

Further, Defendants cannot credibly dispute that Plaintiff was able to perform the essential functions of her position, as they vested her with additional responsibilities and over 123 additional cases, even after she began suffering from her disability. 56.1 ¶¶ 42, 48, 72, 90, 120-21, 123. On

November 26, 2018, immediately prior to Prakhin learning of Plaintiff's LHON diagnosis, Prakhin explicitly stated to Plaintiff that he intended to "keep [her] on" and continue her employment. 56.1 ¶¶ 89, 123; Plaintiff Decl. ¶ 139. It was not until Prakhin learned that Plaintiff's impairment was permanent and incurable, that he decided to terminate her. 56.1 ¶¶ 101, 123. Even as Prakhin was firing Plaintiff, he confirmed that the termination was not based on performance issues and that he saw no decline in Plaintiff's work performance. *Id.* at 123; Plaintiff Decl. ¶ 165. In fact, Prakhin even offered to rehire Plaintiff if her disability improved. *Id.* at 123; Plaintiff Decl. ¶ 167.

### ii. Defendants' Attendance Claims Are Disputed and Demonstrably False

Defendants claim that they fired Plaintiff for her purportedly poor attendance; alleging she was absent from work 25 times, and 17 of these absences were unrelated to medical appointments. Defs. Br. 5. As a threshold matter, Plaintiff's absences to seek medical treatment—a short-term necessity to determine why she was losing her vision—do not speak to her qualifications. Regardless, Defendants' claims are demonstrably false and do not make mathematical sense. It is undisputed that Plaintiff took 10 days of unpaid leave to seek medical treatment. Defs. Br. 2, 5, 20, 22-23; 56.1 ¶¶ 88-89, 95-96. Thus, assuming Plaintiff's absences total 25 days (which they do not), at worst 15 out of 25 days were unrelated to medical treatment (as opposed to 17 out of 25).

Also, Defendants' claims are based on records generated from a time-keeping machine that Plaintiff rarely used. 56.1 ¶¶ 10, 88-89; Prakhin Dep. 303:9-20. ("[T]his is a machine that we use mostly for paralegals, not for attorneys … it [does] not reflect the real hours they work."). Indeed, Plaintiff worked in the office or conducted depositions on five (5) of the 25 days. 56.1 ¶¶ 88-89. On two (2) other such dates, Plaintiff worked remotely as Prakhin permitted attorneys to work from home due to a severe snowstorm. *Id.* Finally, audio recordings and documentary evidence show Defendants' claims about Plaintiff's absences without medical appointments to be completely false. *Id.; e.g.,* Ex. 51 at PLAINTIFF 001476 (Plaintiff was with her father "in the

12

hospital" and had "her own appointments today and tomorrow."); *Id.* at PLAINTIFF 001480 ("Lena's at the doctor's in the morning."); *Id.* at PLAINTIFF 001477 ("She had a 2 o'clock appointment with the doctor."); *Id.* ("She's doing some kind of IV."); *Id.* at PLAINTIFF 000025-27 (plaintiff is being "treated with IV steroids").

As such, contrary to Defendants' claims, Plaintiff was either not absent at all or was visiting doctors, obtaining treatment, being hospitalized, or recovering from rigorous and invasive treatment on ***each day*** identified by Defendants. 56.1 ¶¶ 88-89.

Unlike the cases relied upon by Defendants here, Plaintiff was absent a handful of times over a brief two-month period, hoping to find a diagnosis for her rapidly deteriorating vision and notifying Defendants of her absences and treatments at every turn. 56.1 ¶¶ 11, 43, 88-89. Had she not been fired roughly two weeks later, Plaintiff would not have required the same number of absences after she returned to work with an LHON diagnosis on November 28, 2018, as evidenced by her perfect attendance following the disclosure of the diagnosis. Plaintiff Decl. ¶ 162.

Moreover, Defendants made no showing that Plaintiff's absences caused her alleged performance deficiencies. *See generally* Defs. Br.; *Barnett v. Revere Smelting & Refining Corp.*, 67 F. Supp. 2d 378, 391 (S.D.N.Y. 1999) ("Revere has produced no evidence indicating that Barnett's past or future need to be absent from work on an occasional basis will make it impossible for him to perform the essential functions of his particular job. Absent such a showing . . . his absenteeism cannot be a basis for summary judgment."). Further to this point, it would be improper to dismiss Plaintiff's claims pre-trial based on an excessive absenteeism defense when Defendants cannot even provide an accurate or credible accounting of Plaintiff's alleged absences.

Since Plaintiff is able to provide "some evidence that at least one" of Defendants' proffered "non-discriminatory" reason for Plaintiff's termination – namely their absenteeism defense – is

indeed "false, misleading, or incomplete," summary judgment must be denied. *Bennett,* 92 A.D.3d at 43-44; *see also McHenry,* 2020 WL 7480622, at *8. This fact alone should end the inquiry. However, as detailed below, Defendants' remaining reasons for firing Plaintiff are similarly false and contravened by the record; thereby further warranting a denial of Defendants' motion.

### iii. Defendants' SAGA Records Are Unreliable and Say Nothing About Plaintiff's Ability to Perform Her Essential Job Functions

Defendants cite Plaintiff's alleged failure to enter SAGA notes as evidence that she could not perform her essential job functions. Defs. Br. 11. As a preliminary matter, Defendants denied Plaintiff's requests for JAWS (speech-to-text computer software) and Dragon (speech dictation device) as accommodations that would have allowed her to enter SAGA notes far more easily. 56.1 ¶ 64; *McMillan v. City of N.Y.*, 711 F.3d 120, 127 (2d Cir. 2013) ("It is enough for the plaintiff to suggest the existence of a plausible accommodation" that could assist her in doing her job).

Nevertheless, the frequency and sufficiency of Plaintiff's SAGA entries were on par with other attorneys. 56.1 ¶¶ 64-65. Defendants' representation that Plaintiff entered only 54 SAGA notes is completely false. 56.1 ¶¶ 64-65. Plaintiff estimates that she entered at least 50 to 75 SAGA notes ***each week***. 56.1 ¶ 65; 135; Plaintiff Decl. ¶ 27. As explicitly stated in Raskin's sworn affidavit, when attorneys depart from the Firm, their cases are "reassigned to multiple other attorney" in SAGA. Ex. 22 ¶ 3. In this process, the user data for all SAGA entries related to each such case is changed to the attorney who takes over the case. *Id.* Therefore, SAGA notes previously entered by Plaintiff now appear as though they were entered by the attorneys to whom her cases were assigned. *Id.* As Raskin explained "[t]he SAGA database stores notes and entries by case file," and all such active cases were reassigned upon Plaintiff's departure. *Id.* ¶¶ 2-3. As Raskin further explained, "it is impossible to search, filter, or other determine" which SAGA entries were entered by Plaintiff. *Id.* ¶ 3. As such, numerous SAGA entries currently being displayed under the

names of the Firm's other attorneys were initially created by Plaintiff. 56.1 ¶ 28.

Even assuming *arguendo* that Plaintiff was delinquent in entering SAGA notes, contemporaneous emails reflect that all attorneys throughout the Firm failed to enter SAGA notes regularly. *See* 56.1 ¶¶ 62, 64. Gabo confirmed this fact at her deposition, in addition to testifying that the failure to enter SAGA notes would be an ***invalid and unprecedented*** basis on which to fire an attorney. *Id.* at ¶ 64; Gabo Dep. 69:9-81:3; *see also DeCintio v. Westchester Cty. Med. Ctr.,* 821 F.2d 111, 115 (2d Cir.1987) (discrimination may be proven through evidence of "disparate treatment of fellow employees who engaged in similar conduct").

### iv.   Plaintiff's Alleged Failures to Communicate with Clients and Settle Cases Are Strongly in Dispute

While Defendants assert (Defs. Br. 14) that there is "no dispute" that Plaintiff was not responsive to clients, Plaintiff strongly disputes this characterization. In fact, Plaintiff was praised for her responsiveness and demeanor with clients. 56.1 ¶ 54. Prakhin even asked Plaintiff to contact displeased clients who were upset about their communications with other attorneys or staff because he relied on Plaintiff to repair these clients' perception of the Firm. Plaintiff Decl. ¶ 92; Ex. 35 at D06441 (email about a displeased client complaining about how support staff who answer the phones are rude and unprofessional, sent by Prakhin to Plaintiff so she could fix the issue).

Indeed, "there was an office-wide complaint" or "office-wide directive to communicate more with clients," as the Firm's attorneys generally fell short in this regard, but this was never raised as an issue with respect to Plaintiff. Plaintiff Dep. 157:25-158:12. Additionally, as noted *supra* § II, Defendants' claim that Plaintiff's alleged failures to communicate with clients rendered her unqualified for her job is contradicted by Prakhin's testimony that, "I had a couple of complaints from the clients, but only a couple, not much, that she did not return phone calls. It was not major[.]" Prakhin Dep. 209:13-23. Notably, Gabo (Plaintiff's supervising attorney) is

completely unaware of any client complaints ever lodged against Plaintiff. Gabo Dep. 52:18-22.

As detailed more thoroughly in the 56.1 Counterstatement ¶ 54-55, the affidavits Defendants submit from Firm clients are completely incredible, drafted by Prakhin's family members, and relate to clients that other Firm attorneys, rather than Plaintiff, were handling. 56.1 ¶ 54. The affidavits must also be viewed within the context of the unethical manner in which Prakhin conducts his practice. Documents in discovery reveal that Prakhin: (i) has instructed a client to lie at a deposition;[4] (ii) records all calls on the Firm's phone system, despite being admonished by the Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts that doing so is "ethically impermissible;" and (iii) made a client sign a blank piece of paper onto which an engagement letter she never reviewed was printed. *See id*. It is against this backdrop—that of a law firm and lead attorney unrestrained by morality or ethical rules, with a demonstrated willingness to advise clients to lie under oath—that the affidavits must be viewed.

Defendants similarly claim there is "no dispute" that Plaintiff did not proactively settle her cases. Defs. Br. 14. Again, this is very much disputed. As Gabo testified, Prakhin never expressed any dissatisfaction with Plaintiff's work or the frequency with which she resolved cases, as the cases Plaintiff was assigned "were very new, so I don't think she had an opportunity to actually settle anything," as her cases were unlikely to reach a settlement posture for several months. 56.1 ¶¶ 72, 78; Gabo Dep. 47:13-48:5. Moreover, when Gabo departed the Firm, Prakhin gave her authority and a financial incentive to continue settling all cases that were previously assigned to Plaintiff. 56.1 ¶¶ 48, 72, 74; Gabo Dep. 60:19-62. As such, Plaintiff's settlements cannot be compared side-by-side to those of other attorneys, as her cases were never considered likely to

---

[4] In a recorded phone call, Prakhin instructs a client to lie at his deposition about the manner in which he sustained injuries that formed the basis of a lawsuit. 56.1 ¶ 54; Ex. 37 at PLAINTIFF 1466-67 (Prakhin instructs his client at a deposition to simply repeat what Prakhin told him to say the day before "quietly and calmly," after the client complains that the testimony would be inaccurate. Prakhin states that otherwise, "[w]e'll lose the case. Straightaway.").

settle until months after her discriminatory termination.

> **v.    Plaintiff Can Perform All of Her Job Functions with Reasonable Accommodations, and Defendants Amassed No Contrary Evidence**

Defendants claim that Plaintiff was "unable to perform her duties as counsel at depositions." Defs. Br. 12. This is false. On the contrary, Plaintiff testified unequivocally that she can review documents (Plaintiff Dep. 55:18-21), photographs (*id.* at 50:5-9), and videos (*id.* at 50:10-11) with the help of assistive devices like those she asked the Firm to provide her as a reasonable accommodation. Defendants' suggestion that a blind person cannot adequately handle a deposition or perform other job functions is insulting (and easily disprovable).[5]

Even assuming *arguendo* that Defendants could prove that Plaintiff performed poorly, they would still not be able to prove that she was unqualified to perform her job duties with reasonable accommodations. Defendants fired Plaintiff two weeks after she disclosed her LHON diagnosis, without engaging in any interactive process or providing her an opportunity to explore assistive devices that could help her. 56.1 ¶¶ 115, 120; *see Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 338 (2d Cir. 2000) ("An employer who fails to [investigate the feasibility of a request for a reasonable accommodation], and instead terminates the employee based on exhaustion of leave, has discriminated 'because of' disability within the meaning of the ADA."). In fact, Prakhin acknowledged this at his deposition. *See* Prakhin Dep. 286:20-287:2 ("[Q:] [Do] [y]ou think that any of the various devices that you discussed with [Plaintiff] might have rendered [her] able to do any of [her essential job functions]?  [A:] Yes."). Simply put, Defendants never gave her a chance, but terminated her immediately once they learned that her disability was permanent and incurable.

---

[5] Defendants reference an incident where Plaintiff was unable to view surveillance footage at a deposition. *See* Defs. Br. 12. However, as Plaintiff explained, both in a contemporaneous, recorded phone call with Larssen (Ex. 54 at PLAINTIFF 1396), and again at her deposition (Plaintiff Dep. 226:10-15), she suffered from a sudden onset of severe side effects due to having just received an intravenous does of "3,000 milligrams of steroids" as part of an experimental treatment for her disability. 56.1 ¶¶ 81-82. Plaintiff had seen the referenced video prior to the deposition and had properly prepared her client to respond to questions related to the video. *Id.*

56.1 ¶ 123. Indeed, while terminating Plaintiff, Prakhin explicitly stated that he "would be happy to hire [Plaintiff] back if [her] condition somehow improved." *Id.* at ¶ 123; Plaintiff Decl. ¶ 167.

Moreover, Plaintiff testified that, with the help of magnifying devices and computer software, she is capable of performing all job duties for which she would have been responsible at the Firm. Plaintiff Dep. 224:3-228:3. Indeed, since her termination in December 2018, Plaintiff has used her assistive devices to review ***thousands*** of pages of documents, medical records, discovery responses, photographs, police reports, transcripts and other case records, attend court conferences, prepare clients for depositions, conduct approximately ***175 depositions***, and prepare detailed and comprehensive case reports in connection with each of these examinations. 56.1 ¶¶ 79, 82, 84, 117, 120; Ex. 9 (Plaintiff's privilege log). Defendants provide no evidence showing that with her assistive devices, Plaintiff is unable to perform the essential job functions of being an attorney – something she successfully performs on a daily basis.

C.    **Plaintiff Was Terminated Under Circumstances Giving Rise to an Inference of Discrimination**

i.    **Prakhin Admitted to His Unlawful Intent, Which Constitutes Direct Evidence of Discrimination**

Plaintiff offers far more evidence than is required to prove that her termination was motivated by discriminatory animus. First, Prakhin admitted to discriminatory animus when firing Plaintiff. Specifically, he told Plaintiff, "I don't know how you'll handle cases with your condition" and "I'm a business man. I don't see how this is worth it for me" but that "I would be happy to hire you back if your condition somehow improved." 56.1 ¶ 123; Plaintiff Decl. ¶¶ 166-67.[6]  This direct evidence of animus alone, is more than sufficient to raise an inference of discrimination. This evidence also obviates the need to conduct the *McDonnell Douglas* burden-

---

[6] At Plaintiff's deposition, defense counsel opted to completely avoid the subject of Plaintiff's termination. As such, Plaintiff offers her recollection of the meeting as part of her declaration in opposition to the Defendants' motion.

shifting analysis. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 77-78 (2d Cir. 2001) (decision-makers comments that he preferred to train "young women" constituted direct evidence of age discrimination); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) ("*McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination.").

Defendants acknowledge these comments by Prakhin and argue without any explanation whatsoever that the remarks do not "demonstrate that [he] made any decision with respect to Plaintiff's employment based on any alleged disability." Defs. Br. 14. Defendants' suggestion that Prakhin's firing of Plaintiff expressly because of her "condition" - an obvious allusion to her LHON diagnosis, which she told him was permanent and incurable just two weeks prior - is simply not serious, and underscores the frivolous nature of Defendants' entire motion.

Prakhin admitted his unlawful motives on numerous other occasions. For example, in an audio recording, Raskin told Prakhin that Plaintiff was out of the office seeking medical treatment, in response Prakhin said, "I'm going to have to start looking" 56.1 ¶ 43. The fact that Prakhin advised Raskin that he was planning to fire Plaintiff and search for her replacement, immediately after learning that she was being treated for her disability is also direct evidence of discrimination.

Further, Prakhin admitted at his deposition that he terminated Plaintiff's employment "[b]ecause of the fact that her absence[s]," which were uniformly due to her disability, "cost my office literally to be in turmoil . . . . Her absence caused me big problem into the office, not to mention financial losses." This, too, amounts to direct evidence. *See Smith v. N. Shore-Long Island Jewish Health Sys.*, 286 F. Supp. 3d 501, 514-15 (E.D.N.Y. 2018) (deposition testimony that supervisor denied plaintiff's transfer requests "because of excessive leave" was direct evidence of discrimination); *Dupee v. Klaff's, Inc.*, 462 F. Supp. 2d 233, 243 (D. Conn. 2006) (explanation that plaintiff was being fired "because he 'had too many doctors appointments'" was direct evidence

19

of animus). The Court need not look any further to deny summary judgment.

ii.   **Plaintiff Amassed Myriad Other Evidence of Discriminatory Animus**

Shortly before firing Plaintiff and two days after she disclosed her diagnosis, Defendants pressured her to go out on short-term disability. 56.1 ¶¶ 105, 111, 123; Ex. 60 at PLAINTIFF 001482 ("[M]ost likely we expect to file disability because I don't know any other way." Prakhin testified that he requested Plaintiff take leave because he had "no [other] option" besides firing her, as he "didn't want her to work in [his] office anymore." Prakhin Dep. 366:17-369:16. This unmistakably evinces animus. *See Turner v. Eastconn Reg'l Educ. Serv. Ctr.*, No. 3:12-cv-788(VLB), 2013 WL 1092907, at *3 (D. Conn. Mar. 15, 2013) (plaintiff stated *prima facie* case of discrimination where employer "would not make reasonable accommodations and instead forced her to take FMLA leave."). Defendants have now attempted to reframe their insistence that Plaintiff take disability leave as some bizarre act of supposed benevolence, or even an "accommodation." Defs Br. 5, 9. In reality, Defendants pressured Plaintiff to go out on disability and fired her because she insisted on (and was capable of) working full-time with reasonable accommodations. 56.1 ¶¶ 89, 111, 113, 123.

Additionally, Defendants' hiring of Zohar to replace Plaintiff also raises an inference of discriminatory intent. "[A]n inference of discrimination [ ] arises when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 312-13 (2d Cir. 2015). While Defendants claim (in sham affidavits) that Zohar was hired to replace Gabo (Defs. Br. 15-16); Prakhin already admitted at his deposition that he hired Zohar to replace Plaintiff. 56.1 ¶ 43; Prakhin Dep. 235:18-20.

Defendants' new, unsupported, and shifting rationales for firing Plaintiff strongly suggests "post-hoc explanations for a termination decision" indicative of discriminatory animus. *JPMorgan Chase & Co.*, 332 F. App'x 659, 663 (2d Cir. 2009). Also, as further noted *infra* § III(D), such

shifting reasons for Plaintiff's termination are meritless and evince pretext. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981) (a plaintiff may establish pretext "by showing that the employer's proffered explanation is unworthy of credence"). Shifting rationales include:

1) <u>SAGA notes</u>: Defendants' falsely claim that Plaintiff entered 54 SAGA notes, while knowing full well that Plaintiff's entries were transferred to other attorneys who took over her cases. Ex. 22, Raskin Aff. ¶¶ 2-3. Regardless, Gabo testified that failure to enter SAGA notes was ubiquitous amongst Firm attorneys and would be an invalid and unprecedented basis to fire an attorney. Gabo Dep. 69:9-81:3.[7]

2) <u>Absences</u>: Defendants' fabricated accounting – which as noted *supra* § II, is demonstrably false – to justify Plaintiff's termination, shows animus and pretext.[8]

3) <u>Settling cases</u>: Defendants' new claim that Plaintiff failed to settle cases is undermined by the record showing that she was staffed on cases that were in their infancy and, according to Gabo, did not even have "an opportunity to actually settle" until several months after her termination. Gabo Dep. 47:13-48:5.[9]

4) <u>Client complaints</u>: Defendants claim Plaintiff was unresponsive as a basis to fire her; yet Prakhin previously testified he was unconcerned with such complaints, as "it could happen with any attorney" and thus was "not major." Prakhin Dep. 209:13-212:8.

5) <u>Performance</u>: Defendants' claim they met with Plaintiff about her performance on three occasions; yet not a single document or other witness can corroborate even one such meeting, and Gabo testified that Prakhin never expressed any dissatisfaction with Plaintiff's work – supporting a finding of animus. 56.1 ¶ 78, 123. Further, Defendants staffed Plaintiff on 123 additional cases, only to fire her less than two months later – two weeks after she disclosed her disability – undoubtedly supports a finding of pretext.[10]

6) <u>Cell phone use</u>: Defendants' falsely claim that Plaintiff "constantly" used her cell phone for personal matters; yet, Defendants testified that they had no way of knowing whether Plaintiff's cell phone use for anything other than work (Prakhin Dep. 277:16-21) is evidence of animus and pretext. Also, all Firm employees routinely used their cell phones during working hours, without discipline. 56.1 ¶ 15, 85-86.[11]

---

[7] *Droutman v. N.Y. Blood Ctr., Inc.*, No. 03-CV-5384(DRH), 2005 WL 1796120, at *9 (E.D.N.Y. July 27, 2005) ([D]issimilar punishment . . . can indicate pretext[.]").

[8] *Collins v. Cohen Pontani Lieberman & Pavane*, No. 04 CV 8983(KMW) (MHD), 2008 WL 2971668, at *13 (S.D.N.Y. July 31, 2008) (pretext established by "draw[ing] into question" the credibility of the defendant's reason).

[9] *Curcio v. Roosevelt Union Free Sch. Dist.*, No. 10-CV-5612, 2012 WL 3646935, at *15 (E.D.N.Y. Aug. 22, 2012) (imposition of unrealistic goals raises interference of discrimination "that cannot be resolved on summary judgment").

[10] *See, e.g., Ibok v. Sec. Indus. Auto. Corp.*, 369 F. App'x 210, 213 (2d Cir. 2010) (the fact that "evaluations of the plaintiff post-dating the protected activity contradict earlier evaluations" may serve as evidence of pretext).
[11] *Belfi v. Prendergast*, 191 F.3d 129, 139 (2d Cir. 1999) ("[A] jury could reasonably infer discrimination from the selective enforcement of the employer's policies.").

These new justifications for terminating Plaintiff are evidence of discriminatory animus (and pretext, *infra* § III(D)) that render summary judgment improper. *Kwan v. Andalex Grp.*, 737 F.3d 834, 846 (2d Cir. 2013) ("shifting and somewhat inconsistent explanations" required reversal of summary judgment).

### iii.    Temporal Proximity Raises an Inference of Discrimination

The temporal proximity between Plaintiff's disclosure of her LHON diagnosis and her termination alone is sufficient to establish an inference of discrimination. In the Second Circuit, "the temporal proximity of an employee's disclosure of a disability to [her] termination support[s] an inference of discrimination." *Baron v. Advanced Asset & Prop. Mgmt. Sols., LLC*, 15 F. Supp. 3d 274, 283 (E.D.N.Y. 2014); *Reiter v. Maxi-Aids, Inc.*, No. 14 CV 3712, 2018 WL 557864, at *4 (E.D.N.Y. Jan. 19, 2018) ("Temporal proximity between the employer's knowledge and the adverse employment action may by itself constitute sufficient evidence of causality where the proximity is 'very close.'") (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

Here, Plaintiff was terminated just 16 days after she disclosed her LHON diagnosis and advised Prakhin that her disability is incurable. 56.1 ¶ 120 123. This "very close" temporal proximity alone is sufficient to create an inference of discrimination on summary judgment. *See e.g., Kwan*, 737 F.3d at 845 (Three weeks "is sufficiently short to make a *prima facie* showing of causation indirectly through temporal proximity."); *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 554-55 (2d Cir. 2001) (four months sufficient for proximity).

### D.    Defendants' Stated Reasons for Firing Plaintiff Are Pretextual

The same evidence that creates an inference of discrimination also supports a finding of pretext. "[A] discrimination plaintiff may rely on the same evidence to establish pretext as [s]he used to support h[er] *prima facie* case." *Giugliano v. FS2 Capital Partners, LLC*, No. 14-cv-7240(ADS)(AKT), 2017 WL 2222924, at *20 (E.D.N.Y. May 18, 2017); *see also Chambers v.*

*TRM Copy Ctrs. Corp.*, 43 F.3d 29, 38 (2d Cir. 1994) ("Pretext may be demonstrated . . . by reliance on the evidence comprising the *prima facie* case, without more"). Accordingly, the following evidence all creates a triable issue of fact as to pretext: (i) Prakhin's multiple statements directly evincing animus; (ii) Defendants pressuring Plaintiff to go out on short-term disability; (iii) their hiring of Zohar to replace Plaintiff; (iv) Defendants assigning the lion's share of Gabo's caseload to Plaintiff only to fire her two months later; (v) their demonstrably baseless and shifting rationales for firing Plaintiff (*i.e.*, SAGA entries, alleged absenteeism for personal reasons, failure to settle cases, client complaints, spurious performance claims, and cell phone use for personal reasons) (*see supra* § III(C)(ii)); and (vi) the 16-day temporal proximity between Plaintiff's LHON diagnosis and her termination. *See supra* § III(A)-(C). No further inquiry is needed.

## IV.    PLAINTIFF CAN EASILY ESTABLISH SEVERAL FAILURES TO GRANT HER REASONABLE ACCOMMODATIONS AT TRIAL

For reasonable accommodation claims, Plaintiff needs to show that: (1) she is disabled; (2) Defendants had notice; (3) with accommodations, Plaintiff can perform essential job functions; and (4) Defendants denied accommodations. *Graves v. Finch Pruyn & Co., Inc.,* 457 F.3d 181, 183-84 (2d Cir. 2006); *Parker*, 204 F.3d at 332 n.1. As detailed *supra* §§ III(A)-(B), Defendants do not dispute that Plaintiff suffered from a disability, and  Plaintiff can easily establish that she notified Defendants of her disability and was capable of performing her essential job duties. The only issue ***in dispute*** is whether Defendants denied Plaintiff reasonable accommodations.

### A.    Plaintiff Requested Five Reasonable Accommodations And Was Denied Without Any Interactive Process

Plaintiff requested that Defendants accommodate her by providing five devices: (i) full-page magnifier; (ii) magnifying glass; (iii) Dragon; (iv) OrCam glasses, (v) and JAWS. 56.1 ¶¶ 104-10, 116-20. Contrary to their claims, Defendants never purchased for Plaintiff ***any*** assistive devices and never reimbursed her for same. *Id*. ¶¶ 107-08, 110, 114, 118, 121.

First, Defendants falsely claim that they "provided Plaintiff with a full-page magnifier." Defs. Br. 19. This is untrue. Defendants denied this request with no interactive process and Plaintiff purchased the device herself. 56.1 ¶¶ 107-08; Ex. 68 at PLAINTIFF 000062-63 (receipt for full-page magnifier). Second, Defendants falsely claim that they purchased Plaintiff a magnifying glass. This is again untrue. Plaintiff purchase the magnifying glass herself and was never reimbursed. 56.1 ¶ 107; Ex. 68 at PLAINTIFF 000060-61 (receipt for the magnifying glass). While Plaintiff was waiting for the magnifier to arrive, another Firm attorney, Anna Broxmeyer, gave her a small hand-held magnifying glass which she had in the office. 56.1 ¶ 107. Third, Plaintiff requested Dragon dictation, which the Firm previously purchased for another employee, but was denied. *See id.* ¶¶ 108, 110, 116, 120-21. Fourth, Plaintiff requested contribution towards the purchase of OrCam glasses. 56.1 ¶¶ 104, 108, 114, 118, 121; Prakhin Dep. 250:13-16 ("She can't see very well without some kind of glasses"). Defendants denied this request. Ex. 68 at PLAINTIFF 00057-58 (receipt for OrCam glasses). Fifth, Plaintiff requested JAWS software. 56.1 ¶¶ 104, 108, 110, 116-17, 120-21; Prakhin Dep. 250:13-16 (Plaintiff "needs some computer program to work in a normal way."). Defendants denied this request, resulting in Plaintiff purchasing the software at her own expense. 56.1 ¶¶ 107-08, 110, 114, 118, 121; Ex. 68 at PLAINTIFF 000053 (receipt for JAWS). Thereafter, Prakhin discouraged Plaintiff from setting up JAWS saying he was "uncomfortable" with it being installed on his computers. 56.1 ¶¶ 110, 116, 121. Plaintiff did not install JAWS and was terminated shortly thereafter. *Id.* ¶¶ 116, 120.[12]

### B.   Plaintiff Was Not Required to Provide Medical Documentation Concerning Her Disability, Nor Did Defendants Request It

---

[12] Defendants' insistence that Plaintiff go on disability leave after learning of her diagnosis, is anything but an offer for an "accommodation." Even assuming *arguendo* that such an offer is an accommodation, it does not negate Defendants' various other refusals to accommodate her. *Piligian v. Ichan Sch. of Med. at Mt. Sinai*, No. 1:17-cv-01975 (ALC), 2020 WL 6561663, at *10 (S.D.N.Y. Apr. 7, 2020) (denying summary judgment when some accommodations were provided but Defendants did not engage in an interactive process to assess other accommodations).

"Plaintiff is not required, as part of [her] *prima facie* case for failure to provide reasonable accommodation, to demonstrate that [she] provided medical documentation supporting [her] requested accommodation." *Rotger v. Montefiore Med. Ctr.*, 1:15-cv-7783, 2019 WL 1429556, at *10 (S.D.N.Y. Mar. 29, 2019). Defendants' insistence otherwise is contrary to the law.

Defendants claim that per the Handbook, such requests must to be done in writing.[13] However, the policy (which says nothing about providing documentation)—cannot be used to create additional legal hurdles for such requests beyond those imposed by the ADA, NYSHRL, and NYCHRL, which do not require them to be made in writing. *Pinckney v. Carroll*, No. 18-CV-12198(VEC), 2019 WL 6619484, at *8 n.10 (S.D.N.Y. Dec. 4, 2019); *Reed v. Nike, Inc.*, No. 17 Civ. 7575(LGS), 2019 WL 2327519, at *3 (S.D.N.Y. May 31, 2019) ("a request for accommodation need not take a specific form"); *Furman v. City of N.Y.*, No. 07-CV-1014(RRM), 2009 WL 4626706, at *10 (E.D.N.Y. Dec. 7, 2009) ("I disagree that the onus was exclusively on Furman to make sure his request for accommodation was made in any particular way.").

Defendants cite *Nuchman v. City of N.Y.*, 639 F. App'x 48, 49-50 (2d Cir. 2016), arguing that Plaintiff needed to definitively demonstrate that her requested accommodations would have enabled her to perform her job. Defs. Br. 21. On the contrary, this case states that "*both* parties are obliged to work together to fashion a reasonable accommodation." *Furman*, 2009 WL 4626706 at *10 (E.D.N.Y. Dec. 7, 2009). However, over the last 2.5 years, Plaintiff has utilized her devices to perform the duties of an attorney. 56.1 ¶ 169, 126. Indeed, just as numerous other professionals with disabilities, Plaintiff has demonstrated that, with the assistance of reasonable accommodations, she is fully capable of performing her job.

---

[13] Plaintiff was not provided the Handbook following her re-hire and received no training on policies therein. 56.1 ¶¶ 4, 7, 8, 20-21, 85, 134; *Humphrey v. Cty. of Nassau*, No. 06-CV-3682(JFB)(AKT), 2009 WL 875534, at *12 (E.D.N.Y. Mar. 30, 2009) (summary judgment denied when its disputed if employees were trained on filing complaints).

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants'

motion for summary judgment in its entirety.

Dated: July 6, 2021                    **FARUQI & FARUQI, LLP**
      New York, New York

                                   By: */s/ Innessa M. Huot*
                                      Innessa Melamed Huot
                                      Alex J. Hartzband
                                      Camilo M. Burr

                                   685 Third Avenue, 26th Floor
                                   New York, New York 10017
                                   Tel: 212-983-9330
                                   Fax: 212-983-9331
                                   ihuot@faruqilaw.com
                                   ahartzband@faruqilaw.com
                                   cburr@faruqilaw.com

                                   *Attorneys for Plaintiff*

26