**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YELENA RUDERMAN, <br><br>               Plaintiff, <br><br>        v. <br><br> LAW OFFICE OF YURIY PRAKHIN, P.C. and YURIY PRAKHIN, in both his individual and professional capacities, <br><br>              Defendants. | Civil Action No.: 1:19-cv-02987-RJD-RLM |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIF'S MOTION FOR SANCTIONS AGAINST DEFENDANTS AND THEIR COUNSEL

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

RELEVANT FACTS ................................................................................................................... 2

RELEVANT PROCEDURAL HISTORY .................................................................................. 3

ARGUMENT .............................................................................................................................. 4

I.      LEGAL STANDARDS ................................................................................................... 4

      A.      Rule 11 ................................................................................................................ 4

      B.      Section 1927 ...................................................................................................... 5

II.      SANCTIONS ARE WARRANTED UNDER RULE 11 ................................................. 5

      A.      Defendants' Summary Judgment Motion Is Not Viable Under Existing Law ....... 6

      B.      Defendants' Motion Is Frivolous and Unsupported by Facts .............................. 13

III.      SANCTIONS ARE WARRANTED UNDER SECTION 1927 ...................................... 16

IV.      PLAINTIFF'S PROPOSED SANCTION IS APPROPRIATE ....................................... 17

      A.      The Proposed Sanction Is Reasonable and Necessary to Deter Frivolous Motion Practice .................................................................................................. 17

      B.      Plaintiff's Proposed Attorneys' Fees and Costs Are Fair and Reasonable ........... 21

CONCLUSION ........................................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*In re 60 E. 80th St. Equities, Inc.*,
    218 F.3d 109 (2d Cir. 2000)........................................................................5, 16, 20

*Alam v. O&S Gen. Contractors Corp.*,
    No. 18-cv-2069(LDH)(JO), ECF No. 20 (E.D.N.Y. Aug. 17, 2018) ....................................22

*Chartier v. Residential Management, Inc.*,
    No. 91 CIV. 6018(JSM), 1993 WL 88236 (S.D.N.Y. Mar. 22, 1993) ..............................18, 19

*Dupee v. Klaff's, Inc.*,
    462 F. Supp. 2d 233 (D. Conn. 2006)................................................................................11

*Eastway Constr. Corp. v. City of N.Y.*,
    762 F.2d 243 (2d Cir. 1985)................................................................................................7

*Empire State Pharm. Soc'y, Inc. v. Empire Blue Cross and Blue Shield of Greater
N.Y.*,
    778 F. Supp. 1253 (S.D.N.Y. 1991)....................................................................................5

*Feliciano, et al. v. Metro. Transp. Auth., et al.*,
    No. 18-cv-00026(VSB), ECF No. 99 (S.D.N.Y. May 6, 2020)................................................22

*Frilando v. N.Y.C. Transit Auth.*,
    No. 18-cv-5204 (JSR), 2021 WL 119639 (S.D.N.Y. Jan. 13, 2021) .......................................9

*Georgiev, et al. v. Shapiro, et al.*,
    No. 1:19-cv-00122(JPO), ECF No. 47 (S.D.N.Y. Oct. 2, 2019) ...........................................22

*Griffin, et al. v. Aldi, Inc.*,
    No. 5:16-cv-354(LEK)(ATB), ECF No. 109 (N.D.N.Y. Nov. 15, 2018)................................22

*Gurvey v. Cowan, Leibowitz & Latman, P.C.*,
    No. 06 Civ. 1202(LGS)(HBP), 2015 WL 5472893 (S.D.N.Y. Sept. 17, 2015) .......................4

*Guttentag, et al. v. Ruby Tuesday, Inc.*,
    No. 12-cv-3041(AT), ECF No. 109 (S.D.N.Y. Oct. 2, 2014)................................................22

*Holtz v. Rockefeller & Co.*,
    258 F.3d 62 (2d Cir. 2001)................................................................................................6

*HVT, Inc, v. Port Auth. of N.Y. and N.J.*,
    No. 15 Civ. 5867 (MKB) (VMS),
    2018 WL 6079932 (E.D.N.Y. Nov. 21, 2018)......................................................................22

*Kuznetsov, et al. v. Bravura Glass and Mirror Corp., et al.*,
   No. 1:20-cv-00726(LB), ECF No. 25 (E.D.N.Y. Dec. 23, 2020) ...........................................22

*March, et al. v. First Choice Med., PLLC*,
   No. 15-cv-3669(GRB), ECF No. 46 .......................................................................................22

*Margo v. Weiss*,
   213 F.3d 55 (2d Cir. 2000).............................................................................................17, 19

*McHenry v. Fox News Network, LLC*,
   No. 19 Civ. 11294 (PAE), 2020 WL 7480622 (S.D.N.Y. Dec. 18, 2020) ..............................6

*McMillan v. City of N.Y.*,
   711 F.3d 120 (2d Cir. 2013)....................................................................................................9

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
   715 F.3d 102 (2d Cir. 2013)....................................................................................................6

*Milltex Indus. Corp. v. Jacquard Lace Co., Ltd.*,
   55 F.3d 34 (2d Cir. 1995)................................................................................................19, 20

*Miltland Raleigh-Durham v. Myers*,
   840 F. Supp. 235 (S.D.N.Y. 1993) .......................................................................................23

*Molina, et al. v. Huaxcuaxtla Restaurant Corp., et al.*,
   No. 1:20-cv-02481(RWL), ECF No. 76 (S.D.N.Y. Feb. 25, 2021).......................................22

*Morrell, et al. v. NYC Green Transp. Grp., LLC, et al.*,
   No. 1:18-cv-00918(PKC)(VMS),
   the Court's May 8, 2019 Order (E.D.N.Y. May 8, 2019).......................................................21

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*,
   269 F.3d 114 (2d Cir. 2001)..................................................................................................14

*Oliveri v. Thompson*,
   803 F.2d 1265 (2d Cir. 1986)...........................................................................................18, 20

*Pazdniakou v. CoolTech Mech. Corp., et al.*,
   No. 1:19-cv-05434(SJB), ECF No. 21 (E.D.N.Y. Mar. 23, 2020) .........................................22

*Rotger v. Montefiore Med. Ctr.*,
   No. 1:15-cv-7783-GHW, 2019 WL 1429556 (S.D.N.Y. Mar. 29, 2019)...............................12

*Sakon v. Andreo*,
   119 F.3d 109 (2d Cir. 1997).....................................................................................................5

*Sanchez, et al. v. The Stonehouse Rest LLC, et al.*,
   No. 1:18-cv-01397(ST), ECF No. 77 (E.D.N.Y. Feb. 4, 2021).............................................22

*Smith v. N. Shore-Long Island Jewish Health Sys.*,
   286 F. Supp. 3d 501 (E.D.N.Y. 2018) ...................................................................11

*Trans World Airlines, Inc. v. Thurston*,
   469 U.S. 111 (1985)...........................................................................................10

*Vitale, et al. v. Mystique Hookah Lounge, Inc., et al.*,
   No. 2:20-cv-01091(JMA)(AKT), ECF No. 28 (E.D.N.Y. Mar. 30, 2021) ...........................22

*Woolf v. Strada*,
   949 F.3d 89 (2d Cir. 2020)...................................................................................6

*Zigos v. Mayshad Choice Inc., et al.*,
   No. 1:20-cv-09203-ALC, ECF No. 28 (S.D.N.Y. May 21, 2021)...........................................21

**Statutes**

28 U.S.C. § 1927................................................................................................5, 23

42 U.S.C. § 12102(1)(A)-(2)(A) ..............................................................................7

**Other Authorities**

Fed. R. Evid. 801(a) ...........................................................................................14

Rule 11 ..............................................................................................4, 5, 18, 23

Rule 56(a)...........................................................................................................7

Plaintiff Yelena Ruderman ("Plaintiff"), by and through her undersigned counsel, Faruqi & Faruqi, LLP, hereby submits this memorandum of law in support of her motion for sanctions against Defendants and their counsel pursuant to Federal Rule of Civil Procedure 11 ("Rule 11") and 28 U.S.C. § 1927 ("Section 1927").

## PRELIMINARY STATEMENT

On March 15, 2021, Defendants (defined below) requested a pre-motion conference regarding their anticipated motion for summary judgment, which Plaintiff opposed. After reviewing the parties' submissions, the Court denied Defendants' request and warned Defendants as follows: "***The parties' letters regarding a possible summary judgment motion strongly suggest that such a motion would be readily denied in light of the fundamental factual disputes that separate the parties. . . . [T]he parties are strongly encouraged to resolve the dispute, if possible, or agree on a trial date during the coming summer***." (emphasis added). Rather than reconsider their meritless motion, Defendants and their counsel disregarded the Court's advice entirely.

Just as the Court recognized following the parties' pre-motion conference submissions, Defendants' motion is frivolous on its face, lacking any basis in law or fact. Worse yet, Defendants' motion is not only baseless but also pursued in bad faith, as evidenced by the underhanded tactics they and their counsel use to fabricate a basis for relief. Indeed, Defendants try to circumvent the myriad factual disputes and direct evidence of discrimination by ignoring key facts, misrepresenting others, and attempting to rewrite the record through sham affidavits.

Given both the Court's and Plaintiff's efforts to dissuade Defendants from filing their frivolous motion—and Defendants' decision to march forward with it anyway—the imposition of sanctions is the only remaining means to deter Defendants and their counsel from wasting the Court's, parties', and counsel's resources with such meritless motion practice in the future.

Accordingly, Plaintiff respectfully requests that the Court sanction Defendants and their counsel by order them to reimburse Plaintiff's reasonable attorneys' fees and costs incurred in opposing summary judgment and pursuing the instant motion, for a total of $83,628.15.  Attached to the Declaration of Innessa M. Huot ("Huot Decl.") as Exhibit A are contemporaneous time records reflecting the time spent by Plaintiff's counsel in opposing Defendants' meritless motion for summary judgment and preparing the instant motion for sanctions.[1]

## **RELEVANT FACTS**[2]

Plaintiff worked for Defendants Law Office of Yuriy Prakhin, P.C. (the "Firm") and Yuriy Prakhin ("Prakhin") (together, "Defendants") as an attorney.  56.1 ¶ 38.  In September 2018, Plaintiff began rapidly losing her vision.  *Id.* ¶ 93.  Within a few weeks, she had difficulty reading text and was unable to drive, with her vision still deteriorating progressively.  *Id.* ¶¶ 79, 93. Plaintiff constantly apprised Prakhin and Irene Raskin ("Raskin"), the Firm's Officer Manager, and Irene Gabo ("Gabo"), the Firm's former Managing Attorney, and most of her co-workers of her deteriorating vision, need for assistive devices, doctor's appointments, and hospitalization.  *Id.* ¶¶ 11, 43, 79, 84, 88-89, 95-96, 100-120.  Plaintiff requested several assistive devices as reasonable accommodations to help her perform her job, which Defendants denied entirely without any interactive process.  *Id.* ¶¶ 64, 78, 84, 104-21.

On November 26, 2018, Plaintiff was diagnosed with Leber's hereditary optic neuropathy ("LHON"), a genetic disease that causes a sudden, acute loss of central vision and has no known cure.  *Id.* ¶¶ 100-01, 111.  On November 28, 2018, Plaintiff disclosed her disability to Prakhin and again requested reasonable accommodations.  *Id.* ¶ 101.  Immediately after learning that Plaintiff's

---

[1] Unless otherwise noted, all exhibits to the Huot Decl. are hereinafter cited as "Ex. __."
[2] For additional facts, Plaintiff respectfully refers the Court to her Local Rule 56.1 Counterstatement of Material Facts ("56.1 Counterstatement") submitted in opposition to Defendants' motion for summary judgment.  *See* ECF No. 91. All references to the 56.1 Counterstatement are cited as "56.1 ¶ __."

impairment was permanent and incurable, Defendants pressured Plaintiff to go out on disability leave. *Id.* ¶¶ 89, 111, 123. Plaintiff refused because she was willing and able (with reasonable accommodations) to perform her job. *Id.* ¶ 111, 120, 123. Defendants terminated her employment two weeks later. *Id.*

## RELEVANT PROCEDURAL HISTORY

On March 15, 2021, Defendants requested a pre-motion conference regarding their anticipated motion for summary judgment (*see* ECF No. 60), which Plaintiff opposed. *See* ECF No. 62. On April 20, 2021, the Court denied Defendants' request and urged the parties to either resolve their dispute or set a date for trial. *See* Huot Decl., Ex. B. As the Court explained: "The parties' letters regarding a possible summary judgment motion strongly suggest that such a motion would be readily denied in light of the fundamental factual disputes that separate the parties. . . . [T]he parties are strongly encouraged to resolve the dispute, if possible, or agree on a trial date during the coming summer." *Id.* On April 21, 2021, defense counsel called Plaintiff's counsel to discuss their intention to file a motion for summary judgment. Huot Decl. ¶ 6. During this conversation, Plaintiff's counsel explicitly advised defense counsel that, given the record in discovery, any motion for summary judgment would be meritless and that, pending review of the motion itself, Plaintiff may seek recovery of attorneys' fees and costs as sanctions. *Id.* ¶ 7. On May 4, 2021, defense counsel again called Plaintiff's counsel to confirm Defendants' intention to proceed with filing their motion for summary judgment and to discuss a briefing schedule related to same. *Id.* ¶ 8. Defense counsel expressed that Defendants clearly understood that Plaintiff would be pursuing attorneys' fees and costs as sanctions, but had nevertheless decided to proceed with the filing of their motion. *Id.* ¶ 9.

Despite Plaintiff's repeated attempts to dissuade Defendants from wasting all parties', counsel's, and the Court's time with a frivolous motion, Defendants served Plaintiff with their

motion on May 11, 2021. *Id.* ¶ 10. On July 23, 2021, Plaintiff served Defendants with a draft of the instant motion for sanctions. *Id.* ¶¶ 11-12; Ex. C. Plaintiff's counsel again expressly advised of Plaintiff's intent to move for sanctions, including recovery of attorneys' fees and costs. *See* Ex. C. On July 30, 2021, Defendants' counsel confirmed receipt of the draft motion for sanctions and stated that Defendants would not be withdrawing their motion for summary judgment. Huot Decl. ¶ 14. Now, 21 days have passed since Plaintiff served Defendants with her draft motion; however, Defendants have not withdrawn their motion for summary judgment. Huot Decl. ¶ 15.

## ARGUMENT

### I.   LEGAL STANDARDS

#### A.   Rule 11

Rule 11 states, in relevant part, "that an attorney . . . who presents 'a pleading, written motion, or other paper' to a court thereby 'certifies' that to 'the best of the person's knowledge, information, and belief,' formed after a reasonable inquiry, the filing is: (1) not presented for any improper purpose, such as to 'harass, cause unnecessary delay, or needlessly increase the cost of litigation'; (2) 'warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law'; and (3) supported in facts known or likely to be discovered on further investigation." *Gurvey v. Cowan, Leibowitz & Latman, P.C.*, No. 06 Civ. 1202(LGS)(HBP), 2015 WL 5472893, at *3 (S.D.N.Y. Sept. 17, 2015) (quoting Rule 11(b)). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Rule 11(c)(1). "If warranted, the court may award to the prevailing party [] reasonable expenses, including attorney's fees, incurred" due to both the violation of Rule 11 and the motion for sanctions itself. Rule 11(c)(2), (4).

4

B.    <u>Section 1927</u>

Separate and apart from Rule 11, Section 1927 provides: "Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctions are appropriate under Section 1927 where the opposing party engages in conduct "constituting or akin to bad faith." *Sakon v. Andreo*, 119 F.3d 109, 114 (2d Cir. 1997). The Second Circuit has "held that an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 115 (2d Cir. 2000) (quoting *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991)).

II.    <u>SANCTIONS ARE WARRANTED UNDER RULE 11</u>

Rule 11(a) requires that all motions "be signed by at least one attorney of record in the attorney's name . . . ." Per Rule 11(b), this signature "certifies to the Court that the signer has read the document, and has conducted a reasonable inquiry into the facts and law and is satisfied that the document is well-grounded in both, and is not acting for any improper motive." *Empire State Pharm. Soc'y, Inc. v. Empire Blue Cross and Blue Shield of Greater N.Y.*, 778 F. Supp. 1253, 1258 (S.D.N.Y. 1991) (collecting U.S. Supreme Court and Second Circuit decisions). "[T]he Rule mandates sanctions where it is clear that a reasonable inquiry into the basis for the [motion] has not been made, or there is no chance of success under existing law, or no reasonable argument has been advanced to extend, modify, or reverse the existing law." *Id.* (citing *Int'l Shipping Co. v. Hydra Offshore, Inc.*, 875 F.2d 388, 390 (2d Cir. 1989).

While it appears that Defendants and their counsel made an inquiry into the basis for the motion, this inquiry was in no way reasonable. Defendants' motion was baseless under Federal

Rule of Civil Procedure 56 ("Rule 56"), as there are (at minimum) clear material disputes of fact as to Plaintiff's *prima facie* case under the Americans with Disabilities Act ("ADA"), New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"). Defendants attempt to work around this by deliberately ignoring key facts, misrepresenting others, and attempting to rewrite the record through sham affidavits. Defendants' motion is unsupported by the law or facts and was completely frivolous.

### A.    Defendants' Summary Judgment Motion Is Not Viable Under Existing Law

To establish a *prima facie* case for disability discrimination, Plaintiff must demonstrate that: "(1) [her] employer is subject to the ADA; (2) [she] was disabled within the meaning of the ADA; (3) [she] was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [she] suffered adverse employment action because of [her] disability." *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020); *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 78 (2d Cir. 2001) (a plaintiff need only show that a reasonable juror could find "that the prohibited factor was at least one of the motivating factors.") (internal quotation marks omitted).

Plaintiff's burden under the NYSHRL and NYCHRL is even lower, as she "need only show differential treatment—that she is treated less well—because of a discriminatory intent." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (discussing the NYCHRL) (internal quotation marks omitted); *see also McHenry v. Fox News Network, LLC*, No. 19 Civ. 11294 (PAE), 2020 WL 7480622, at *8 (S.D.N.Y. Dec. 18, 2020) ("In August 2019, the NYSHRL was amended to direct courts to construe the NYSHRL, like the NYCHRL, 'liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed.'") (quoting N.Y. Exec. Law § 300).

For summary judgment to be granted as to Plaintiff's disability discrimination claims,

Defendants must "show[] that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law" (Rule 56(a)), while "resolv[ing] all ambiguities and draw[ing] all reasonable inferences in favor of" Plaintiff. *Eastway Constr. Corp. v. City of N.Y.*, 762 F.2d 243, 249 (2d Cir. 1985).

In their motion for summary judgment, Defendants argue that: (i) they did not have notice of Plaintiff's disability; (ii) Plaintiff was not qualified to perform her essential job functions with or without a reasonable accommodation; (iii) they did not fire Plaintiff under circumstances giving rise to an inference of discrimination; and (iv) that they did not unlawfully deny Plaintiff's several requests for reasonable accommodations. ECF No. 69 ("Defs. Br."). On each of these issues, clear disputes of material fact were readily apparent from the record well before Defendants filed their motion, rendering the motion facially untenable under the law. Without rehashing all of the arguments detailed in her opposition to Defendants' motion (ECF No. 90 ("Pl. Opp.")), below Plaintiff highlights some of the most egregious examples of Defendants willfully ignoring or fabricating evidence, revealing their summary judgment motion to be facially frivolous.

First, Defendants argue that it is beyond dispute that they did not have notice of Plaintiff's disability. Defs. Br. 9. Simultaneously, however, they acknowledge that Plaintiff disclosed her LHON diagnosis to Prakhin more than two weeks before Defendants fired her. *See id.* at 6; *see also* Ex. D (Defendants' interrogatory responses) at Response No. 9 (Prakhin, Raskin and several others had knowledge of Plaintiff's disability in early September 2018 and of her LHON diagnosis as of November 26, 2018); Pl. Opp. 6-11 (summarizing several other disclosures by Plaintiff prior to her diagnosis that provided notice of her disability). Further, it is beyond dispute that Defendants understood the impact of LHON on Plaintiff's vision. *See, e.g.*, Ex. E ("Lena asked for my help . . . as she cannot see."); *see also* 42 U.S.C. § 12102(1)(A)-(2)(A) ("The term

7

'disability' means, with respect to an individual—a physical or mental impairment that substantially limits one or more major life activities . . . . major life activities includ[ing] . . . seeing[.]").  Given these facts, Plaintiff's ability to establish notice of her disability at trial is beyond reproach.  Defendants' stubborn pursuit of summary judgment in the face of these facts renders their motion baseless and in violation of Rule 11.

Second, Defendants claim that Plaintiff was unqualified for her job by characteristically ignoring, misrepresenting, and rewriting evidence.  While there are myriad examples of this (*see* Pl. Opp. 11-18), one of the more shocking misrepresentations concerns Defendants' contention that Plaintiff was absent from work for reasons unrelated to her disability, which purportedly rendered her unqualified.  *See* Defs. Br. 5, 10-11.  Specifically, Defendants allege that Plaintiff was absent from work 25 times, and 17 of these absences were unrelated to medical appointments. *Id.*  However, it is undisputed that Plaintiff took 10 days of unpaid leave to seek medical treatment. Defs. Br. 2, 5, 20, 22-23.  Thus, assuming Plaintiff's absences total 25 days (which they do not), at worst 15 out of 25 days were unrelated to medical treatment (not 17 out of 25).  Further, audio recordings show Defendants' claims about Plaintiff's absences without medical appointments to be completely and knowingly false.  Ex. F (Plaintiff was with her father "in the hospital" and had "her own appointments today and tomorrow."); Ex. G ("Lena's at the doctor's in the morning."); Ex. H ("She had a 2 o'clock appointment with the doctor."); Ex. I ("[S]he's doing some kind of IV.").  Most importantly, documents produced in discovery show that Plaintiff was either working or seeking a diagnosis for her medical condition on every single date identified.  *See* 56.1 ¶ 89 (detailing Plaintiff's whereabouts on each date in question, supported by medical records).

Defendants also falsely claim that Plaintiff entered only 54 SAGA notes, knowing full well that she entered at least 50 to 75 SAGA notes ***each week***, but that her entries were transferred to

other attorneys who took over her cases after her termination.  *Id.* ¶¶ 64-65; Ex. J ("Plaintiff Decl.") ¶ 27.  As stated in Raskin's sworn affidavit, when attorneys depart from the Firm, their cases are "reassigned to multiple other attorneys" in SAGA.  Ex. K ("Raskin Aff.") ¶ 3.  In this process, the user data for all SAGA entries related to each such case is changed to the attorney who takes over the case.  *Id.*  Therefore, SAGA notes previously entered by Plaintiff now appear as though they were entered by the attorneys to whom her cases were assigned.  *Id.*  As Raskin explained "[t]he SAGA database stores notes and entries by case file," and all such active cases were reassigned upon Plaintiff's departure.  *Id.* ¶¶ 2-3.  As Raskin further explained, "it is impossible to search, filter, or other determine" which SAGA entries were entered by Plaintiff.  *Id*. ¶ 3.  As such, numerous SAGA entries currently being displayed under the names of the Firm's other attorneys were initially created by Plaintiff. 56.1 ¶ 65.  Regardless, Gabo testified that the failure to enter SAGA notes was ubiquitous amongst Firm attorneys and would be an invalid and unprecedented basis on which to fire an attorney. Ex. L ("Gabo Dep.") 69:9-81:3; 56.1 ¶ 64.

Additionally, Defendants move for summary judgment on the issue of Plaintiff's qualification for her role without ever acknowledging Prakhin's admission that Plaintiff would have been able to perform her job duties with a reasonable accommodation.  *See* Defs. Br. 12; *see also Frilando v. N.Y.C. Transit Auth.*, No. 18-cv-5204 (JSR), 2021 WL 119639, at *4 (S.D.N.Y. Jan. 13, 2021) (to establish her *prima facie* case, a plaintiff need only prove that she could "'perform the essential functions of the employment position' at issue '*with or without reasonable accommodation*'") (quoting 42 U.S.C. §§ 12111(8), 12112(a)) (emphasis added)); *see also McMillan v. City of N.Y.*, 711 F.3d 120, 127 (2d Cir. 2013) ("It is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits.") (internal quotations omitted).  Indeed, Prakhin testified unequivocally that Plaintiff

would have been able to perform her job with reasonable accommodations.  Ex. M ("Prakhin Dep.") at 286:20-287:2 ("[Q:] [Do] [y]ou think that any of the various devices that you discussed with [Plaintiff] might have rendered able to do any of [her essential job functions]?  [A:] Yes.").

Third, Defendants claim that Plaintiff cannot establish an inference of discrimination at trial.  *See* Defs. Br. 13-16.  To do so, they gloss over or completely ignore several express admissions by Prakhin as to his unlawful animus.  *See id.*  Each of these admissions amounts to direct evidence of discrimination that is alone sufficient to defeat summary judgment, obviating the need for the *McDonnell Douglas* burden-shifting analysis.  *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) ("[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination.").  For example, when Prakhin terminated Plaintiff's employment, he told her, "I don't know how you'll handle cases with your condition . . . . I'm a businessman. I don't see how this is worth it for me."  Plaintiff Decl. ¶¶ 164, 166-67.  He also told her, "I would be happy to hire you back if your condition somehow improved."  *Id.*  Defendants acknowledge these comments by Prakhin and argue without any explanation whatsoever that Prakhin's remarks do not "demonstrate that [he] made any decision with respect to Plaintiff's employment based on any alleged disability."  Defs. Br. 14.  Defendants' suggestion that Prakhin's firing of Plaintiff expressly because of her "condition"—an obvious allusion to her LHON diagnosis, which she told him was uncurable just over two weeks prior—is simply not serious and underscores the frivolous nature of their entire motion.  *Id.*

Prakhin did not just admit to his unlawful motive in Plaintiff's termination meeting.  In an audio recording produced by Defendants, Raskin told Prakhin that Plaintiff was out of the office seeking medical treatment, in response to which Prakhin said, "I'm going to have to start looking[.]"  56.1 ¶ 43; Ex. I.  The fact that Prakhin advised Raskin that he was planning to fire

Plaintiff and search for her replacement immediately after learning that Plaintiff was being treated

for her disability is similarly direct evidence of discrimination.  What is more, Prakhin admitted at

his deposition that he terminated Plaintiff "[b]ecause of the fact that her absence[s]," which were

uniformly due to her disability, "cost my office literally to be in turmoil . . . . Her absence caused

me big problem into the office, not to mention financial losses."  Prakhin Dep. 273:8-274:22.  This,

too, amounts to direct evidence.  *See Smith v. N. Shore-Long Island Jewish Health Sys.*, 286 F.

Supp. 3d 501, 514-15 (E.D.N.Y. 2018) (deposition testimony that supervisor denied plaintiff's

transfer requests "because of excessive leave" was direct evidence of discrimination); *Dupee v.

Klaff's, Inc.*, 462 F. Supp. 2d 233, 243 (D. Conn. 2006) (finding explanation that plaintiff was

being fired "because he 'had too many doctors appointments'" to be direct evidence of animus).

Finally, Defendants falsely claim that they provided Plaintiff with assistive devices when

in fact Defendants ***never*** purchased for Plaintiff any such devices and never reimbursed her for

same.  56.1 ¶¶ 107-08, 110, 114, 118, 121.  First, Defendants dishonestly claim that they "provided

Plaintiff with a full-page magnifier[.]"  Defs. Br. 19.  This is untrue.  Defendants denied this request

with no interactive process and Plaintiff purchased the device herself with no reimbursement.  Ex.

N at PLAINTIFF 000062-63 (receipt for full-page magnifier).  Second, Defendants falsely claim

that they purchased Plaintiff a magnifying glass.  This is again untrue.  Plaintiff purchased the

magnifying glass herself and was never reimbursed.  Ex. O at PLAINTIFF 000060-61 (receipt for

the magnifying glass).  While Plaintiff was waiting for the magnifier to arrive, another Firm

attorney, Anna Broxmeyer, gave her a small hand-held magnifying glass which she had in the

office.  Plaintiff Decl. ¶ 56.  Third, Plaintiff requested Dragon dictation, which the Firm previously

purchased for another employee, but was denied.  56.1 ¶¶ 108, 110, 116, 120-21.  Fourth, Plaintiff

requested contribution towards the purchase of OrCam glasses. Prakhin Dep. 250:14-16 ("She

11

can't see very well without some kind of glasses"). Defendants denied this request. Ex. P at PLAINTIFF 00057-58 (receipt for OrCam glasses). Fifth, Plaintiff requested JAWS software. Ex. Q ("Plaintiff Dep.") at 211:19-212:6, 222:14-224:17; Prakhin Dep. 250:14-16 (Plaintiff "needs some computer program to work in a normal way."). Defendants denied this request, resulting in Plaintiff purchasing the software at her own expense. Ex. R at PLAINTIFF 000053 (receipt for JAWS). Thereafter, Prakhin discouraged Plaintiff from setting up JAWS saying he was "uncomfortable" with it being installed on his computers. 56.1 ¶¶ 110, 116, 121. Plaintiff did not install JAWS and was terminated shortly thereafter. *Id.* ¶¶ 116, 120. Notably, Defendants claim that their IT consultant, Alexander Pusachev ("Pusachev"), increased the font size on her computer as a supposed reasonable accommodation, despite Pusachev disclaiming having ever done so at his deposition. *See* Defs. Br. 19-20; Ex. S ("Pusachev Dep.") at 107:21-108:14.

Moreover, Defendants base the lion's share of their argument regarding Plaintiff's reasonable accommodation claims on the contention that Plaintiff supposedly refused Defendants' requests to provide medical documentation concerning her disability. *See* Defs. Br. 19-25. Defendants offered this same argument in their pre-motion conference submission, in response to which Plaintiff pointed out that she was in no way required to provide medical documentation, particularly where, as here, Plaintiff testified unequivocally that Defendants never requested such documentation. *See* ECF No. 62 at 3; *Rotger v. Montefiore Med. Ctr.*, No. 1:15-cv-7783-GHW, 2019 WL 1429556, at *10 (S.D.N.Y. Mar. 29, 2019) ("Plaintiff is not required, as part of [her] *prima facie* case for failure to provide reasonable accommodation, to demonstrate that [she] provided medical documentation supporting [her] requested accommodation."). Indeed, Plaintiff testified at least nine (9) times that Defendants never asked her to provide a doctor's note or other medical documentation. *See* Plaintiff Dep. 205:14-206:10, 212:21-24, 217:12-24, 239:2-10.

12

Nevertheless, Defendants willfully blind themselves to this evidence and claim that it is somehow beyond dispute that such requests were made.  *See* Defs. Br. 19-25

### B.    Defendants' Motion Is Frivolous and Unsupported by Facts

Rather than grapple with these clear disputes—or, better yet, opt not to file a frivolous motion that wastes the parties' and the Court's time and resources—Defendants used unethical tactics to try to work around and rewrite the evidence.  These tactics are summarized more fully in Plaintiff's opposition to Defendants' summary judgment motion (*see generally* Pl. Opp.), but Plaintiff highlights some of the more indefensible instances here.

First, as outlined *supra* § II(A), Defendants deliberately ignore key facts that reveal their motion to be meritless, including, *inter alia*: (i) Prakhin's admission that Plaintiff would have been able to perform all job duties with reasonable accommodations; (ii) Prakhin's admissions as to discriminatory animus; (iii) Plaintiff's testimony and documentary evidence that she requested five assistive devices as reasonable accommodations and was denied all of them without any interactive process; and (iv) Plaintiff's repeated and consistent testimony that Defendants never asked her to provide medical documentation.

Defendants also attempt to rewrite the record in a ham-fisted effort to fabricate a basis for their frivolous motion.  For example, Defendants claim that Plaintiff was absent from work 25 times, 17 of which were for reasons unrelated to her medical condition.  *See* Defs. Br. 5, 10-11. As noted above, both of these numbers are incorrect, as Plaintiff was either working or seeking a diagnosis for her medical condition on every single date identified.  *See* 56.1 ¶ 89.  These misrepresentations are sanctionable in and of themselves, and even more so in light of the fact that Defendants make them through sham affidavits from Prakhin and Raskin attached to Defendants' motion for summary judgment.  Ex. T ("Prakhin MSJ Aff." (ECF No. 71)); Ex. U ("Raskin MSJ Aff." (ECF No. 72)).  Indeed, Prakhin and Raskin both made clear at their depositions that

Defendants did not maintain a complete accounting of Plaintiff's absences, had no record of the dates on which she sought treatment, and did not determine which absences were related to medical appointments prior to firing her. *See* Prakhin Dep. 298:10-302:18; Ex. V ("Raskin Dep.") at 154:7-155:23. Tellingly, neither Prakhin nor Raskin offer any insight into how they determined Plaintiff's total absences and whether such absences were for the purpose of seeking medical treatment. *See generally* Prakhin MSJ Aff.; Raskin MSJ Aff. Given the voluminous evidence disproving their contentions (*see* 56.1 ¶¶ 88-89), it is obvious that Prakhin's and Raskin's claims as to Plaintiff's absences and the reasons therefor were fabricated entirely.

Defendants also use their sham affidavits to fabricate five supposed complaints against Plaintiff, claiming these to be a main reason for her termination, despite Prakhin's stating at his deposition, "I had a couple of complaints from the clients, but only a couple, not much," as opposed to five, and that "[i]t was not major," as opposed to providing a basis for termination. Prakhin Dep. 209:13-23. Tellingly, the sham affidavits are devoid of specifics (such as the dates or even months they supposedly complained about Plaintiff) and contradicted by documentary evidence. *See* 56.1 ¶ 54. Notably, Azfar Khan—one of the clients identified—is Prakhin's stepdaughter's boyfriend. *See id.* As for Marina Zhernyakova, her supposed complaint against Plaintiff is based on Prakhin's affidavit, which summarizes a conversation he supposedly had with her. *See id.* Obviously, Prakhin's attestations about alleged out-of-court statements by Ms. Zhernyakova constitute inadmissible hearsay. *See* Fed. R. Evid. 801(a); *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 123 (2d Cir. 2001) ("It is appropriate for a district court ruling on summary judgment to consider only admissible evidence."). Finally, documentary evidence shows that the remaining three complaints came from clients that were assigned to, and were being handled by, other Firm attorneys, not Plaintiff. *See* 56.1 ¶ 54 (details regarding each alleged complaint).

14

Further, Prakhin avers that "Plaintiff repeatedly used her cellphone in the office for personal matters." Prakhin MSJ Aff. ¶ 44. However, at his deposition, Prakhin testified that he merely saw Plaintiff typing on her phone, and could not confirm that she was sending text messages as opposed to, for example, sending work emails. Prakhin Dep. 277:16-21; *see also* Plaintiff Dep. 189:7-11 ("[W]e were allowed to text if it was work related.").

Moreover, Prakhin states in his affidavit that he "discussed with Plaintiff the availability of a disability leave of absence as an accommodation." Prakhin MSJ Aff. ¶ 28. However, Prakhin testified that he requested that Plaintiff go out on disability leave not as an accommodation, but because he had "no [other] option" besides firing her, as he "didn't want her to work in [his] office anymore." Prakhin Dep. 366:17-369:16. Additionally, Prakhin's affidavit states that he hired Gil Zohar ("Zohar") to replace Gabo as Managing Attorney, rather than Plaintiff (*see* Prakhin MSJ Aff. ¶ 50); however, Prakhin already admitted at his deposition that he hired Zohar to replace Plaintiff. *See* Prakhin Dep. 235:18-20 ("[Q]: You hired Mr. Zohar to replace [Plaintiff]? [A:] Yes.").

Lastly, it bears mention that this is not the first time Defendants have used unethical means to try to rewrite the record in this action. On December 8, 2020, Plaintiff deposed Pusachev, who Defendants claim searched the Firm's internal messaging system, IP Messenger, in accordance with the parties' Protocol for the Disclosure, Search, and Production of Electronic Systems and Electronically Stored Information. *See* Ex. W at Response No. 24. At Pusachev's deposition, however, he testified unequivocally that he did not search IP Messenger at all. *See* Pusachev Dep. 48:3-23 ("[Q:] Did you search for instant messages? [A:] No. . . . I was not searching the instant messenger[.] . . . [Q:] So you played no role whatsoever in searching IP Messenger in this case? [A:] Right[.]")). In fact, Pusachev did not know how to conduct an IP Messenger search. *See id.*

15

at 78:10-11, 80:9-15.  After Plaintiff raised this issue with Defendants (*see* Ex. X at 1-2), they scrambled to cover their tracks by submitting an errata sheet brazenly changing Pusachev's repeated noes that he did not search IP Messenger into yeses.  *See* Ex. Y.  In a February 22, 2021 hearing, Defendants' counsel even acknowledged to the Honorable Roanne L. Mann that the errata sheet was "not reliable," yet Defendants still refused to withdraw it.  Huot Decl. ¶ 38.

## III.    SANCTIONS ARE WARRANTED UNDER SECTION 1927

Defendants' conduct is not just objectively unreasonable but constitutes or is akin to bad faith.  *See In re 60 E. 80th St.*, 218 F.3d at 115 (to impose sanctions under § 1927, the court must make a finding of "conduct constituting or akin to bad faith") (internal quotation marks omitted).  As outlined *supra* § II, Defendants filed their motion for summary judgment without any basis in law or fact.  This in and of itself supports an inference of bad faith.  *See In re 60 E. 80th St.*, 218 F.3d at 116 ("[B]ad faith may be inferred where the action is completely without merit.").

Moreover, Defendants pursue their motion despite being advised twice by Plaintiff's counsel that the motion would be meritless and that, pending review, Plaintiff may seek recovery of attorneys' fees based on the motion's lack of merit.  Huot Decl. ¶¶ 6-10.  Further, following pre-motion conference submissions regarding the basis for the motion, the Court warned Defendants in no uncertain terms that their motion "would be readily denied in light of the fundamental factual disputes that separate the parties."  *See* Ex. B.  This underscores the frivolous nature of Defendants' motion and further supports a finding of bad faith.  *See In re 60 E. 80th St.*, 218 F.3d at 116 ("Here, not only were the claims meritless, but [plaintiff] was warned of their frivolity by the Bankruptcy Court before he filed the appeal to the District Court.").

Defendants' bad faith is also revealed by their approach to the motion in general.  Faced with clear disputes of fact (and outright admissions of animus by Prakhin), they ignore key evidence on issues material to Plaintiff's *prima facie* case and attempt to rewrite the record through

16

sham affidavits that brazenly contradict witnesses' prior deposition testimony, much like they did with Pusachev's errata sheet earlier in discovery. *See supra* § II; *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000) (imposing sanctions where counsel "file[d] affidavits . . . in which the plaintiffs contradicted their earlier deposition testimony and interrogatory answers.").

Defendants are represented by competent counsel leaving no doubt that they conducted a thorough review of the discovery record prior to filing. Accordingly, they could not possibly believe that they have a valid basis to obtain summary judgment, yet they decided to pursue their motion anyway. Indeed, rather than permit the parties to proceed with trial (or at least withdraw the motion after receiving notice of Plaintiff's intent to file the instant motion), Defendants knowingly misrepresent facts and attempt to rewrite others to fabricate a basis for relief that they know is simply not there. In doing so, Defendants have vexatiously multiplied the proceedings, wasting the Court's and the parties' time and resources in the process. Therefore, sanctions under Section 1927 are appropriate—and necessary to deter Defendants and their counsel from engaging in such unethical practices in the future.

## IV. PLAINTIFF'S PROPOSED SANCTION IS APPROPRIATE

As detailed below, sanctions are necessary to deter further frivolous motion practice. Moreover, Plaintiff's proposed sanction of an award of $83,250 in attorneys' fees and $378.15 in expenses incurred in both opposing summary judgment and pursuing the instant motion is reasonable, as it is supported by contemporaneous billing records and hourly rates that other courts within the Second Circuit have consistently approved.

### A. The Proposed Sanction Is Reasonable and Necessary to Deter Frivolous Motion Practice

If the Court finds a violation of Rule 11 and/or Section 1927, Plaintiff respectfully submits that the Court should impose sanctions against Defendants and their counsel. In determining the

appropriate sanction, the Court should fashion the penalty so that it "suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Rule 11(c)(4).  In light of the mandate to deter conduct not only by the parties violating Rule 11, but "others similarly situated," the Court may consider the individuals' "ability to pay" to ensure that the sanction serves as a both appropriate and sufficient deterrent.  *Oliveri v. Thompson*, 803 F.2d 1265, 1281 (2d Cir. 1986).

Here, Plaintiff respectfully requests that the Court sanction Defendants and their counsel by ordering that they reimburse Plaintiff for reasonable attorneys' fees and costs incurred in opposing Defendants' frivolous motion for summary judgment and pursuing the instant motion. This proposed sanction is reasonable and sufficient to deter Defendants, their counsel, and others similarly situated from engaging in further frivolous motion practice.  Indeed, Plaintiff merely seeks to recovery attorneys' fees and expenses incurred as a direct result of the Rule 11 and Section 1927 violations.  Plaintiff does not seek any additional penalties.  Frankly, the relief requested herein is the minimum necessary to stem similar future conduct that, as here, serves no purpose other than to harass, delay, and increase the opposite party's litigation costs.

The decision by the Honorable John S. Martin, Jr. (Ret.) in *Chartier v. Residential Management, Inc.*, No. 91 CIV. 6018(JSM), 1993 WL 88236, at *5-6 (S.D.N.Y. Mar. 22, 1993) is instructive.  In *Chartier*, Judge Martin imposed sanctions against defendants and their counsel due to the "frivolous nature of the defendants' motion for summary judgment[.]"  *Id.* at *6.  Just as Plaintiff requests here, Judge Martin ordered the defendants to pay Plaintiff's reasonable attorneys' fees and costs, deeming this to be an appropriate sanction.  *Id.*  As Judge Martin explained, "Defendants' sole evidence presented consisted of conclusory statements" and "Defendants were wholly unable to explain or contradict the wealth of documentary evidence submitted by plaintiffs which unambiguously established their" claims.  *Id.* at *5.  Judge Martin also highlighted

18

defendants' contentions, which were contradicted by prior admissions, as a basis for sanctions.  *Id.*

Here, Defendants pursue summary judgment under strikingly similar circumstances.  As outlined *supra* § II and in opposition to Defendants' summary judgment motion (*see generally* Pl. Opp.), Defendants' motion rests entirely on conclusory assertions by Prakhin and Raskin that are completely unsupported or even directly contradicted by documentary evidence and their prior testimony.  *See Margo*, 213 F.3d at 65 (imposing sanctions where counsel "file[d] affidavits . . . in which the plaintiffs contradicted their earlier deposition testimony and interrogatory answers.").

By way of example only, Prakhin and Raskin claim in their sham affidavits that Plaintiff was repeatedly absent for reasons unrelated to her disability, despite testifying at their depositions that they took no accounting of Plaintiff's absences prior to firing her, as well as documentary evidence proving that Plaintiff either working or seeking a diagnosis for her medical condition on every single date identified.  *See supra* § II.  Further, Defendants march forward with their motion on the issue of notice despite their admissions as to their knowledge of Plaintiff's LHON diagnosis. *See id.*  In the same vein, they pursue their frivolous motion for summary judgment on Plaintiff's reasonable accommodation claims by ignoring multiple accommodation requests to which Plaintiff testified and by claiming that they requested medical documentation without any documentary evidence of having done so, and despite Plaintiff's repeated testimony that no such request was ever made.  *See id.*

It also bears emphasis that, before ever moving for summary judgment, the Court issued a warning that any such motion "would be readily denied in light of the fundamental factual disputes that separate the parties. . . . [T]he parties are strongly encouraged to resolve the dispute, if possible, or agree on a trial date during the coming summer."  Ex. B.  In other words, the Court did everything it could to dissuade Defendants from filing a frivolous motion.  *See Milltex Indus.*

19

*Corp. v. Jacquard Lace Co., Ltd.*, 55 F.3d 34, 39 (2d Cir. 1995) ("Although it is within the judge's discretion to hold a pre-motion conference for the purpose of persuading a party not to file a perceived meritless motion, the judge may not require that the court's permission be secured at such a conference before a party may file the motion.") (citation omitted).

Thereafter, on two separate occasions, Plaintiff's counsel advised defense counsel that the contemplated motion was frivolous and warned that Plaintiff might seek sanctions. Huot Decl. ¶¶ 6-10. Despite all of this, Defendants marched forward with their meritless motion anyway. Both the Court and Plaintiff's counsel tried to reason with Defendants and warn them that the motion would only delay and waste time and resources, but Defendants and their counsel refused to listen. At this point, the imposition of sanctions is the only option left to deter them from such baseless motion practice going forward. *See In re 60 E. 80th St.*, 218 F.3d at 116 (imposing sanctions because the claims were meritless and the plaintiff "was warned of their frivolity by the Bankruptcy Court before he filed the appeal to the District Court.").

Lastly, the proposed sanction presents no risk of outpacing Defendants' and/or their counsel's ability to pay it. *Oliveri*, 803 F.2d at 1281 (when crafting a sanction, courts may take into account the sanctioned parties' "ability to pay"). Indeed, Defendants' records reveal that the Firm reported $30,058,766.00 in revenue in 2019, and $17,907,882.00 in 2018. *See* Ex. Z at D11975, D11964. Prakhin paid himself $407,692.00 from the Firm in each of these two years (*id.* at D11974, D11981), in addition to reporting supplemental income from other sources of $7,676,668.00 in 2019 and $2,250,021.00 in 2018. *Id.* at D11984, D11982. As for Defendants' counsel, Bond, Schoeneck & King PLLC is a perennial *Am Law 200* law firm, "with 250 lawyers" across 13 offices. *See* https://www.bsk.com/news-events-videos/bond-among-am-law-200 (last visited July 23, 2021).

Indeed, Defendants and their counsel are more than capable of paying the modest sanction of $83,628.15 requested herein.  Plaintiff only hopes that, if granted, this sanction is sufficient to deter future frivolous motion practice that needlessly drains the time and resources of the Court, the parties, and counsel.

**B.**     **Plaintiff's Proposed Attorneys' Fees and Costs Are Fair and Reasonable**

Plaintiff requests that the Court order Defendants and their counsel to reimburse Plaintiff for a total of **$83,250** in attorneys' fees and **$378.15** in expenses as a sanction.  Huot Decl. ¶ 41. This comprises $69,000 in attorneys' fees, representing 173.6 billable hours, and $354.03 in expenses incurred in opposing Defendants' frivolous motion for summary judgment.  *Id.* at ¶ 41; Ex. A.  This figure also includes $14,250 in attorneys' fees, representing 34.40 billable hours, and $24.12 in expenses incurred in pursuing this instant motion.  Huot Decl. ¶ 41; Ex. A.[3]  Plaintiff's proposed attorneys' fees are supported by contemporaneous billing records.  Ex. A.

Plaintiff's requested fees are reasonable.  Plaintiff calculates the proposed sanction by applying an hourly rate of $500 for work performed by Innessa M. Huot, a Partner at Faruqi & Faruqi, LLP and head of its employment practice group, $450 for work performed by Alex J. Hartzband, a Senior Associate, $350 for work performed by Camilo M. Burr, an Associate, and $100 to $175 for work performed by paralegals and support staff.  Huot Decl. ¶ 43.

These hourly rates have been consistently approved within the Second Circuit.  *See, e.g., Zigos v. Mayshad Choice Inc., et al.*, No. 1:20-cv-09203-ALC, ECF No. 28 (S.D.N.Y. May 21, 2021) (approving rates of $500 for Ms. Huot, $450 for Mr. Hartzband, $350 for Mr. Burr, and $175 for paralegals); *Morrell, et al. v. NYC Green Transp. Grp., LLC, et al.*, No. 1:18-cv-00918(PKC)(VMS), ECF No. 129-1, the Court's May 8, 2019 Order (E.D.N.Y. May 8, 2019)

---

[3] Plaintiff intends to update these figures on reply to account for additional attorneys' fees and expenses incurred in connection with the same.

($500 for Ms. Huot, $350 for junior associates, and $175 for paralegals); *Griffin, et al. v. Aldi, Inc.*, No. 5:16-cv-354(LEK)(ATB), ECF Nos. 104-4, 109 (N.D.N.Y. Nov. 15, 2018) ($500 for Ms. Huot, $350 for junior associates, and $175 for paralegals); *Vitale, et al. v. Mystique Hookah Lounge, Inc., et al.*, No. 2:20-cv-01091(JMA)(AKT), ECF No. 28 (E.D.N.Y. Mar. 30, 2021) (same); *Molina, et al. v. Huaxcuaxtla Restaurant Corp., et al.*, No. 1:20-cv-02481(RWL), ECF Nos. 74, 76 (S.D.N.Y. Feb. 25, 2021) (same); *Sanchez, et al. v. The Stonehouse Rest LLC, et al.*, No. 1:18-cv-01397(ST), ECF Nos. 75, 77 (E.D.N.Y. Feb. 4, 2021) (same); *Kuznetsov, et al. v. Bravura Glass and Mirror Corp., et al.*, No. 1:20-cv-00726(LB), ECF Nos. 23, 25 (E.D.N.Y. Dec. 23, 2020) (same); *Feliciano, et al. v. Metro. Transp. Auth., et al.*, No. 18-cv-00026(VSB), ECF Nos. 97-1, 99 (S.D.N.Y. May 6, 2020) (same); *Pazdniakou v. CoolTech Mech. Corp., et al.*, No. 1:19-cv-05434(SJB), ECF Nos. 18, 21 (E.D.N.Y. Mar. 23, 2020) (same); *Georgiev, et al. v. Shapiro, et al.*, No. 1:19-cv-00122(JPO), ECF Nos. 41, 47 (S.D.N.Y. Oct. 2, 2019) (same); *Alam v. O&S Gen. Contractors Corp.*, No. 18-cv-2069(LDH)(JO), ECF Nos. 19-4, 20 (E.D.N.Y. Aug. 17, 2018) ($600 for Ms. Huot, $450 for Mr. Hartzband, and $310 for head paralegal); *Guttentag, et al. v. Ruby Tuesday, Inc.*, No. 12-cv-3041(AT), ECF Nos. 107-8, 109 (S.D.N.Y. Oct. 2, 2014) ($875-$625 for partners, $585-$555 for senior associates, $390-$375 for junior associates, $245-$315 for paralegals); *March, et al. v. First Choice Med., PLLC*, No. 15-cv-3669(GRB), ECF No. 46, the Court's March 6, 2017 Order (E.D.N.Y. Mar. 6, 2017) (approving rate of $500 for Ms. Huot). Huot Decl. ¶ 45.

Additionally, courts have held that "[a] reasonable hourly rate is 'the rate a paying client would be willing to pay.'" *HVT, Inc, v. Port Auth. of N.Y. and N.J.*, No. 15 Civ. 5867 (MKB) (VMS), 2018 WL 6079932, at *1 (E.D.N.Y. Nov. 21, 2018) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)). A meaningful portion

of Plaintiff's counsel's practice is non-contingency cases where clients in fact pay on an hourly basis at the following rates: $500 per hour for Ms. Huot, $450 per hour for Mr. Hartzband, $350 for Mr. Burr, and $175 per hour for paralegals. Huot Decl. ¶¶ 43-44.

Further, Plaintiff requests the Court order Defendants and their counsel to reimburse Plaintiff for the costs and expenses incurred by Plaintiff's counsel in opposing Defendants' motion for summary judgment and in bringing this motion for sanctions. Plaintiff's counsel has incurred $378.15 in actual costs and expenses for postage and legal research. *Id*. ¶ 46. These expenses are reasonable, as well as incidental and necessary to the opposing of Defendants' frivolous motion for summary judgment and preparation of the instant motion. *Id*. ¶ 47. Therefore, should the Court determine that sanctions are appropriate, the Court should include reimbursement of these expenses as part of any sanction imposed upon Defendants and/or their counsel. *See Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.") (quoting *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)); *see also* Rule 11(c)(2), (4) (authorizing recovery of expenses); Section 1927 (same).

Accordingly, Plaintiff respectfully requests that the Court order Defendants and their counsel to reimburse Plaintiff for a total of **$83,250** in attorneys' fees and **$378.15** in expenses—both of which are reasonably calculated and would not have been incurred but for Defendants' and their counsel's violations of Rule 11 and Section 1927—as a sanction.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the instant motion in its entirety.

23

Dated: August 13, 2021
   New York, New York

            **FARUQI & FARUQI, LLP**

            By: */s/ Innessa M. Huot*
              Innessa M. Huot
              Alex J. Hartzband
              Camilo M. Burr

            685 Third Avenue, 26th Floor
            New York, New York 10017
            Telephone: 212-983-9330
            Facsimile: 212-983-9331
            ihuot@faruqilaw.com
            ahartzband@faruqilaw.com
            cburr@faruqilaw.com

            *Attorneys for Plaintiff*

24