**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

YELENA RUDERMAN,

                Plaintiff,

      v.

LAW OFFICE OF YURIY PRAKHIN, P.C. and
YURIY PRAKHIN, in both his individual and
professional capacities,

             Defendants.

---

Civil Action No.: 1:19-cv-2987-CBA-RLM

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION _IN LIMINE_ NO. 1**

## <u>TABLE OF CONTENTS</u>

DISCUSSION OF RECORD ................................................................................................ 1

ARGUMENT ....................................................................................................................... 5

   I.   LEGAL STANDARDS ............................................................................... 5

   II.  THE AFFIDAVITS ARE INADMISSIBLE HEARSAY ................................................. 6

   III.  THE AFFIDAVITS ARE SHAM AFFIDAVITS AND THUS
       SHOULD NOT BE ADMITTED INTO EVIDENCE ...................................................... 9

   IV.  THE AFFIDAVITS ARE INADMISSIBLE UNDER FRE 403 ....................................... 12

CONCLUSION .................................................................................................................. 18

## **TABLE OF AUTHORITIES**

**Cases**                                                                  **Page(s)**

*Blume v. Port Auth. Trans-Hudson Corp.*,
    No. 18 Civ. 12251(CM), 2020 WL 13551554 (S.D.N.Y. Sept. 21, 2020) ...........................6, 7

*Capitol Recs., LLC v. Escape Media Grp., Inc.*,
    No. 12-cv-6646(AJN), 2015 WL 1402049 (S.D.N.Y. Mar. 25, 2015)...................................12

*Crawford v. Franklin Credit Mgmt. Corp.*,
    758 F.3d 473 (2d Cir. 2014)..........................................................................................9

*Daubert v. NRA Group, LLC*,
    189 F. Supp. 3d 442 (M.D. Pa. 2016) ...................................................................................16

*Fed. Deposit Ins. Corp. v. Murex LLC*,
    No. 16 Civ. 7703(PAE), 2020 WL 6646159 (S.D.N.Y. Nov. 12, 2020) ...................................9

*In re Fill*,
    68 B.R. 923 (Bankr. S.D.N.Y. 1987)......................................................................................7

*Gem Fin. Serv., Inc. v. City of N.Y.*,
    No. 13-cv-1686(RPK)(RER), 2022 WL 409618 (E.D.N.Y. Feb. 10, 2022) ...........................6

*Gierlinger v. Gleason*,
    160 F.3d 858 (2d Cir. 1998).............................................................................................5, 12

*Golden v. Merrill Lynch & Co.*,
    No. 06 Civ. 2970(RWS), 2007 WL 4299443 (S.D.N.Y. Dec. 6, 2007) ...........................9, 12

*Gonzalez v. Morris*,
    No. 9:14-cv-01438(BKS)(DEP), 2018 WL 4471625 (N.D.N.Y. Sept. 18,
    2018) ..............................................................................................................................8

*Greenfield v. Sears, Roebuck & Co.*,
    No. 04-71086, 2006 WL 2927546 (E.D. Mich. Oct. 12, 2006)........................................15, 16

*Idaho v. Wright*,
    497 U.S. 805 (1990)..........................................................................................................7

*LeClair v. Raymond*,
    No. 1:19-cv-28(BKS)(DJS), 2022 WL 219609 (N.D.N.Y. Jan. 25, 2022)..............................6

*Lombardo v. R.L. Young, Inc.*,
    No. 3:18-cv-188(JBA), 2020 WL 3104910 (D. Conn. June 11, 2020)...................................12

*McKennon v. Nashville Banner Pub. Co.*,
    513 U.S. 352 (1995)..............................................................................................13, 14, 15

*Naylor v. Rotech Healthcare, Inc.*,
　No. 1:08-CV-95, 2009 WL 5206005 (D. Vt. Dec. 23, 2009) ...........................14, 15

*Nobel Ins. Co. v. Hudson Iron Works, Inc.*,
　111 F. Supp. 2d 373 (S.D.N.Y. 2000) .................................................................8, 9

*Old Chief v. U.S.*,
　519 U.S. 172 (1997) ........................................................................................13, 17

*Potash v. Fla. Union Free Sch. Dist.*,
　972 F. Supp. 2d 557 (S.D.N.Y. 2013) .....................................................................11

*In re Rodrigues*,
　No. 18-20095(JJT), 2019 WL 2385799 (Bankr. D. Conn. June 4, 2019) .................6

*Thompson v. TRW Auto., Inc.*,
　No. 2:09-cv-1375(JAD)(PAL), 2014 WL 12781291 (D. Nev. June 2, 2014) .........17

*U.S. v. Awadallah*,
　436 F.3d 125 (2d Cir. 2006) .............................................................................13, 17

*U.S. v. Carneglia*,
　256 F.R.D. 384 (E.D.N.Y. 2009) .............................................................................6

*Woolf v. Strada*,
　949 F.3d 89 (2d Cir. 2020) .....................................................................................13

## Other Authorities

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedures* §
　2103 (3d. ed. Apr. 2022 update) .............................................................................16

FRE 401 .........................................................................................................................5

FRE 403 ................................................................................................................. *passim*

FRE 801 .........................................................................................................................6

FRE 801(d)(1) ...............................................................................................................7

FRE 803(6) ....................................................................................................................8

FRE 803-07 ....................................................................................................................5

Plaintiff Yelena Ruderman ("Plaintiff"), by and through her undersigned counsel, Faruqi & Faruqi, LLP, hereby submits this memorandum of law in support of her Motion *in Limine* No. 1 to preclude Defendants Law Office of Yuriy Prakhin, P.C. (the "Firm") and Yuriy Prakhin ("Prakhin") (together, "Defendants") from introducing the Affidavit of Yuriy Prakhin (ECF No. 71) and the Affidavit of Irene Raskin (ECF No. 72) into evidence at trial, other than for impeachment purposes.[1]

## **DISCUSSION OF RECORD**

On March 15, 2021, Defendants filed a pre-motion conference letter regarding their anticipated motion for summary judgment. *See* ECF No. 60. After reviewing Plaintiff's letter in opposition—which outlined myriad factual disputes, making clear that Defendants' motion would be futile (*see* ECF No. 62)—the Honorable Raymond J. Dearie issued an Order urging the parties to resolve Plaintiff's claims or prepare for trial, rather than proceeding with what would undoubtedly be a fruitless motion. *See* the Court's April 20, 2021 Order. As Judge Dearie wrote in the Order, any summary judgment motion "would be readily denied in light of the fundamental factual disputes that separate the parties." *Id.*

In the face of Judge Dearie's Order plainly stating that their anticipated motion would be a waste of time and resources, Defendants proceeded with their meritless summary judgment application anyway. *See* ECF Nos. 68-76. Having failed to establish a credible defense to Plaintiff's claims, Defendants attempted to rewrite the record in discovery through sworn affidavits provided by Prakhin and Irene Raskin ("Raskin"), the Firm's Office Manager. *See* Omnibus

---

[1] Shortly before the submission of the Joint Pre-Trial Order ("JPTO"), Defendants removed these two Affidavits from their exhibit list. *See* ECF No. 121. However, Defendants reserved their rights "to supplement and/or modify" the JPTO, including by adding back in the Affidavits at issue. Plaintiff submits this instant Motion *in limine* to preserve her arguments for preclusion of the Affidavits should Defendants seek to include them after the deadline for motions *in limine* pass.

Declaration of Innessa M. Huot ("Huot Decl."), Exhibit 1 ("Prakhin Aff.");[2] Ex. 2 ("Raskin Aff.") (together, the "Affidavits" and each individually an "Affidavit").

The Affidavits directly contradict Prakhin's and Raskin's deposition testimony. As detailed below, this renders them so-called "sham affidavits," which should be deemed inadmissible at trial, other than for impeachment purposes. As detailed below, the Affidavits are materially inconsistent with Prakhin's and Raskin's live testimony, and—based on the deposition testimony and documentary evidence (or lack thereof) provided—rife with apparent fabrications.

First, Prakhin and Raskin each claim in the Affidavits that Plaintiff was purportedly absent from work 25 total days, only eight of which were for medical appointments. *See* Prakhin Aff. ¶¶ 22-24; Raskin Aff. ¶¶ 17, 22. Further, they list specific dates on which Plaintiff was supposedly absent, noting whether Plaintiff had a medical appointment for each. *See id.* However, Prakhin and Raskin both made clear at their depositions that Defendants did not maintain a complete accounting of Plaintiff's absences, nor did they determine the dates on which Plaintiff was or was not seeking medical treatment prior to firing her. *See* Ex. 3 ("Prakhin Dep.") at 298:10-302:18; Ex. 4 ("Raskin Dep.") at 154:7-155:23.

Specifically, Prakhin first testified that he "cannot say" whether Plaintiff was at doctor's appointments on particular dates. Prakhin Dep. at 298:10-302:18. Prakhin later testified that he reviewed "accounting papers" on which Raskin had jotted handwritten notes regarding Plaintiff's absences from work, which he claimed to have reviewed before firing Plaintiff; however, he still could not recall the specific dates of or confirm the reasons for her absences. *Id.* Tellingly, the supposed "accounting papers" with handwritten notes to which Prakhin alluded (*id.*) were not produced in discovery (Huot Decl. ¶¶ 12-13)—despite Prakhin swearing "I have this documents

---

[2] Unless otherwise noted, all exhibits to the Huot Decl. are hereinafter cited as "Ex. __."

[*sic*]" (Prakhin Dep. at 300:8-10)—and Raskin has no recollection of creating any such documents. *See* Raskin Dep. at 154:7-155:23.  Unsurprisingly, neither Prakhin nor Raskin offers any insight in their Affidavits as to how they supposedly determined Plaintiff's total absences and whether such absences were for the purpose of seeking medical treatment.  *See generally* Prakhin Aff.; Raskin Aff.

Prakhin and Raskin's supposed accounting Plaintiff's absences is a complete fabrication. The record compiled in discovery clearly shows that Plaintiff was either not absent at all or had documented medical appointments or treatments (of which Defendants were well aware) on each of the 25 dates on which Defendants claim Plaintiff was absent without a legitimate reason.  *See* Exs. 5-22; *see also* ECF No. 91 (Plaintiff's 56.1 Counterstatement in opposition to Defendants' motion for summary judgment) ¶ 89 (detailing how the documents attached hereto prove that Plaintiff was either working or seeking disability-related medical treatment on each day listed in the Affidavits).

Second, Prakhin claims in his Affidavit that he received five complaints from clients that Plaintiff had failed to communicate with them, citing this as one of the reasons he terminated Plaintiff's employment.  *See* Prakhin Aff. ¶¶ 30-37, 45.  This is at odds with his deposition testimony, wherein he stated, "I had a couple of complaints from the clients, but only a couple, not much," as opposed to having received five complaints, and that  "[i]t was not major," as opposed to providing a basis for termination.  Prakhin Dep. at 209:13-23; *see also* Plaintiff's Motion *In Limine* No. 3 (seeking to preclude introduction of belatedly obtained affidavits from Firm clients into evidence as hearsay and inadmissible under FRE 403).  Notably, Irene Gabo ("Gabo"), the Firm's former Managing Attorney, is unaware of any of the alleged client complaints Prakhin recounts in his Affidavit.  *See* Ex. 23 ("Gabo Dep.") 52:18-25 ("[Q:] [D]id any clients ever

complaint to the [Firm] about [Plaintiff] during her second term of employment? [A:] No.").

Third, Prakhin swears in his Affidavit that Plaintiff received training regarding SAGA, an electronic case management system utilized by the Firm.  *See* Prakhin Aff. ¶ 5.  This contradicts his deposition testimony that employees do not receive training on Firm policies.  Prakhin Dep. at 144:2-17.  Indeed, Prakhin testified that he simply "assume[s]" attorneys know how to use SAGA. *Id.* at 210:3-13; *see also* Plaintiff's Motion *In Limine* No. 4 (seeking to preclude introduction of SAGA records into evidence as irrelevant, hearsay, and inadmissible under FRE 403).

Fourth, Prakhin avers in his Affidavit that "Plaintiff repeatedly used her cellphone in the office for personal matters."  Prakhin Aff. ¶ 44.  However, at his deposition, Prakhin testified that he merely saw Plaintiff typing on her phone, and could not confirm that she was sending personal text messages as opposed to, for example, work-related emails.  Prakhin Dep. at 277:16-21; *see also* Plaintiff Dep. at 189:7-11 ("[W]e were allowed to text if it was work related.").

Fifth, Prakhin states in his Affidavit that he "discussed with Plaintiff the availability of a disability leave of absence as an accommodation."  Prakhin Aff. ¶ 28.  At his deposition, however, Prakhin testified that he suggested that Plaintiff go out on disability leave not as an accommodation, but because he had "no [other] option" besides firing her, as he "didn't want her to work in [his] office anymore."  *See* Prakhin Dep. at 366:17-369:16.

Sixth, Prakhin's Affidavit states that he hired Gil Zohar ("Zohar") to replace Gabo, rather than Plaintiff.  *See* Prakhin Aff. ¶ 50.  However, Prakhin testified unequivocally at his deposition that he hired Zohar to replace Plaintiff.  *See* Prakhin Dep. at 235:18-20 ("[Q]: You hired Mr. Zohar to replace [Plaintiff]?  [A:] Yes.").

Finally, Prakhin's Affidavit states that he and Plaintiff discussed her trial experience at a prior law firm, Mallilo & Grossman, when he interviewed her for a role with Defendants (after

Plaintiff previously worked for Defendants for roughly five years).  *See* Prakhin Aff. ¶ 6.  At his deposition, however, Prakhin testified at length regarding his interview with Plaintiff, not once mentioning any discussion of her prior work experience at all.  *See* Prakhin Dep. at 193:12-23 (when she resigned, Plaintiff told Prakhin that "she found a new firm, with new opportunities, where she can work with trials"), 197:4-16 (Prakhin promised Plaintiff "trial experience" when he interviewed and subsequently re-hired her in 2018).

## ARGUMENT

## I.   LEGAL STANDARDS

Federal Rules of Evidence ("FRE") 401 and 402 proscribe the admission of irrelevant evidence.  Evidence is considered relevant only if: (i) "it has any tendency to make a fact more or less probable than it would be without the evidence;" and (ii) "the fact is of consequence in determining the action."  FRE 401.

Even relevant evidence should be excluded if its probative value is substantially outweighed by a danger of one or more of the following: (i) unfair prejudice; (ii) confusing the issues; (iii) misleading the jury; (iv) undue delay; (v) wasting time; or (vi) needlessly presenting cumulative evidence.  FRE 403; *see also Gierlinger v. Gleason*, 160 F.3d 858, 871 (2d Cir. 1998) ("The trial court has considerable discretion in determining whether to admit or exclude evidence, and to exclude even relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice or confusion[.]") (citations omitted).

Regardless of whether testimony is relevant, hearsay evidence is inadmissible under FRE 802 unless a federal statute, the FRE, or other rules prescribed by the Supreme Court provides otherwise, or if a hearsay exception under the FRE applies.  *See* FRE 803-07.  "Hearsay" means a statement that: (i) "the declarant does not make while testifying at the current trial or hearing;" and

(ii) "a party offers in evidence to prove the truth of the matter asserted in the statement."  FRE 801.

## II.   THE AFFIDAVITS ARE INADMISSIBLE HEARSAY

The Affidavits are plainly out-of-court statements offered by Defendants to support their position, and which Defendants clearly intend to offer to prove the truth of the matter asserted—*i.e.*, that Defendants had legitimate, nondiscriminatory reasons for firing Plaintiff.  Indeed, the Affidavits attest to conversations Prakhin and Raskin each had, contain myriad alleged statements by Prakhin and Raskin, offer rationales for firing Plaintiff, and opine regarding the content of supposed records of Plaintiff's attendance that have not been produced.  As such, the Affidavits are textbook hearsay.

It is axiomatic that a party may not rely on affidavits—indisputably out-of-court statements made somewhere other than at trial—to prove the truth of the matters asserted therein.  *See, e.g.*, *U.S. v. Carneglia*, 256 F.R.D. 384, 391 (E.D.N.Y. 2009) ("Any statement that is made by a declarant not testifying at trial, offered in evidence to prove the truth of the matter asserted, is excluded as hearsay absent applicability of one of the hearsay exceptions provided in the Federal Rules of Evidence or a relevant statute."); *In re Rodrigues*, No. 18-20095(JJT), 2019 WL 2385799, at *2 (Bankr. D. Conn. June 4, 2019) (precluding introduction of affidavit and describing the affidavit as "textbook hearsay with no exception offered"); *see also Gem Fin. Serv., Inc. v. City of N.Y.*, No. 13-cv-1686(RPK)(RER), 2022 WL 409618, at *4 (E.D.N.Y. Feb. 10, 2022) (precluding introduction of affidavit based on hearsay rule, and expressly rejecting argument that the residual exception applies); *LeClair v. Raymond*, No. 1:19-cv-28(BKS)(DJS), 2022 WL 219609, at *8 (N.D.N.Y. Jan. 25, 2022) ("Ms. Whipple's deposition may be admissible for impeachment,  or it may be used, as appropriate, to refresh her recollection.  Her deposition and affidavit are, however, not admissible as evidence absent a hearsay exception.") (internal citations omitted); *Blume v.*

*Port Auth. Trans-Hudson Corp.*, No. 18 Civ. 12251(CM), 2020 WL 13551554, at *2 (S.D.N.Y.

Sept. 21, 2020) ("[T]he affidavit is an out-of-court statement by a non-party, which means it

is hearsay and so inadmissible.").

Defendants may argue that the Affidavits are admissible under FRE 801(d)(1), which

provides that a declarant-witness's prior statements may be admissible under certain

circumstances.  This would be wrong.  FRE 801(d)(1) requires that the "declarant testifies and is

subject to cross-examination."  As succinctly stated in *In re Fill*, 68 B.R. 923, 929 (Bankr.

S.D.N.Y. 1987), "an affidavit . . . is no substitute" for such live testimony as a prerequisite to

admissibility.  *See also Idaho v. Wright*, 497 U.S. 805, 820 (1990) ("The circumstantial guarantees

of trustworthiness on which the various specific exceptions to the hearsay rule are based are those

that existed at the time the statement was made and do not include those that may be added by

using hindsight.") (citation and quotation marks omitted).

Moreover, the lion's share of the Affidavits wax poetic regarding out-of-court

conversations involving Prakhin, Raskin, Plaintiff, and other Firm employees.  For example,

Prakhin attests to conversations wherein he and Plaintiff allegedly discussed: (i) Plaintiff's work

experience; (ii) Plaintiff's supposedly poor work performance; (iii) Plaintiff's disability; (iv)

Plaintiff's doctor's appointments and requests for time off for the same; (v) alleged reasonable

accommodations provided; (vi) Plaintiff's alleged violations of the Firm's cell phone use policy;

and (vii) whether Plaintiff considered herself to be disabled.  *See* Prakhin Aff. ¶¶ 6, 10, 12, 20-21,

23, 25, 27-28, 43.  Prakhin also attests to separate conversations he purportedly had with Zohar,

Gabo, and various Firm clients.  *See id.* ¶¶ 14, 16, 31-35.

Similarly, Raskin attests to a conversation with Prakhin during which they allegedly discussed Plaintiff's hiring and starting salary.  *See* Raskin Aff. ¶ 5.  Raskin also attests to conversations with Plaintiff during which they allegedly discussed: (i) Plaintiff's vision; (ii) Plaintiff's doctor's appointments and requests for time off for the same; (iii) alleged reasonable accommodations provided; (iv) whether Plaintiff considered herself to be disabled; and (v) her diagnosis with Leber's hereditary optic neuropathy.  *See* Raskin Aff. ¶¶ 14-17, 20-21, 23-24, 26-27.

Given that these alleged out-of-court statements are provided through Prakhin's and Raskin's already inadmissible Affidavits, they constitute hearsay within hearsay.  *See, e.g.*, *Gonzalez v. Morris*, No. 9:14-cv-01438(BKS)(DEP), 2018 WL 4471625, at *5 (N.D.N.Y. Sept. 18, 2018) ("[T]he declaration that discusses Plaintiff's disparate treatment compared to Native Americans merely recounts what Plaintiff told Father Lamore—those statements are inadmissible hearsay within hearsay[.]") (internal citations omitted).

Defendants may also argue that Prakhin's and Raskin's claims that they reviewed Plaintiff's attendance records to determine her total absences and the reasons therefor (*see* Prakhin Aff. ¶¶ 22-24; Raskin Aff. ¶¶ 17, 22) somehow fit their hearsay statements within the business records exception to the hearsay rule.  *See* FRE 803(6).  This, too, would be wrong.

The Honorable Victor Marrero's decision in *Nobel Ins. Co. v. Hudson Iron Works, Inc.*, 111 F. Supp. 2d 373, 375 (S.D.N.Y. 2000) is particularly instructive on this point.  In *Nobel*, a corporate defendant sought to rely upon an affidavit attesting "that an attached 'accounting summary' reflects payments made by Republic in connection with the issuance of the performance bond and payment bond" at issue in this case.  *Id.*  Judge Marrero swiftly rejected the argument

that the affidavit was anything other than hearsay "because there was no showing that [the affiant] had any personal knowledge about the matters to which he attested, or that the 'accounting summary' was anything more than inadmissible hearsay." *Id.*

*Nobel* drives home the basic point that a hearsay statement may not be forced into the business records exception or any other hearsay exception by a simple reference to external records. The same reasoning applies here, especially because the Affidavits provide no insight whatsoever as to how Prakhin and Raskin supposedly developed their supposed understanding of Plaintiff's attendance, let alone attach actual records (as were attached to the affidavit at issue in *Nobel*). *See id.*; Prakhin Aff ¶¶ 22-24; Raskin Aff. ¶¶ 17, 22.

## III.   THE AFFIDAVITS ARE SHAM AFFIDAVITS AND THUS SHOULD NOT BE ADMITTED INTO EVIDENCE

Even if the Court does not preclude the Affidavits from evidence as hearsay, it should deem them inadmissible as so-called "sham affidavits."  Under the sham affidavit doctrine, an affidavit or declaration may be deemed a "sham" where, "by omission or addition, [it] contradicts the affiant's previous deposition testimony." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 482 (2d Cir. 2014) (quoting *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996)).

"[C]ourts in the Second Circuit are particularly reluctant to credit affidavit testimony that alleges critical, obviously material facts that were not mentioned at deposition, noting that such circumstances strongly suggest a sham affidavit." *Golden v. Merrill Lynch & Co.*, No. 06 Civ. 2970(RWS), 2007 WL 4299443, at *9 (S.D.N.Y. Dec. 6, 2007).  Relatedly, a party may not, through a subsequent affidavit, "renounce[e] deposition testimony to the effect that he could not remember a particular fact which he now purports to remember." *Fed. Deposit Ins. Corp. v. Murex LLC*, No. 16 Civ. 7703(PAE), 2020 WL 6646159, at *9 (S.D.N.Y. Nov. 12, 2020) (citing *Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir. 1997) and *Kennedy v. City of N.Y.*, 570 F. App'x 83, 84-85

(2d Cir. 2014)).

As shown *supra* at 2-5, the Affidavits are, indeed, sham affidavits, as they directly contradict the prior deposition testimony offered by Prakhin and Raskin, respectively. Specifically, in the Affidavits, Prakhin and Raskin variously:

(i)     Quantify and detail Plaintiff's total absences and whether such absences were for medical appointments, despite prior testimony by both Prakhin and Raskin that Defendants neither maintained a complete accounting of Plaintiff's absences nor did they determine the dates on which Plaintiff was or was not seeking medical treatment (*compare* Prakhin Aff. ¶¶ 22-24 *with* Prakhin Dep. at 298:10-302:18; *compare* Raskin Aff. ¶¶ 17, 22 *with* Raskin Dep. at 154:7-155:23);

(ii)    Summarize alleged complaints by five former Firm clients regarding Plaintiff and claim that Plaintiff was fired, in part, because of these complaints, thereby contradicting prior testimony that Defendants received "only a couple" of complaints, which were considered "not major" (*compare* Prakhin Aff. ¶¶ 30-37, 45 *with* Prakhin Dep. at 209:13-23);

(iii)   Claim that Plaintiff was trained on how to use SAGA, even though Prakhin testified that employees receive no such training and that he simply "assume[s]" attorneys know how to use the program (*compare* Prakhin Aff. ¶ 5 *with* Prakhin Dep. at 144:2-17, 210:3-13);

(iv)    Aver that "Plaintiff repeatedly used her cellphone in the office for personal matters," while seemingly forgetting that Prakhin testified that he saw Plaintiff use her cellphone in the office on a single occasion and admitted that he could not confirm that she was using her phone for personal purposes as opposed to, for example, corresponding with a client (*compare* Prakhin Aff. ¶ 44 *with* Prakhin Dep. at 277:16-21);

(v)     Allege that Prakhin "discussed with Plaintiff the availability of a disability leave of absence as an accommodation," despite prior testimony by Prakhin that he suggested that Plaintiff go out on disability leave not as an accommodation, but because he had "no [other] option" besides firing her, as he "didn't want her to work in [his] office anymore" (*compare* Prakhin Aff. ¶ 28 *with* Prakhin Dep. at 366:17-369:16);[3]

(vi)    Swear that Defendants hired Zohar to replace Gabo, rather than Plaintiff, even after Prakhin unequivocally stated that the opposite was true at his deposition (*compare* Prakhin Aff. ¶ 50 *with* Prakhin Dep. at 235:18-20 ("[Q:] You hired Mr. Zohar to

---

[3] Notably, at her deposition, Raskin denied ever providing with Plaintiff forms for disability leave. *See* Raskin Dep. at 157:21-160:10.  However, Defendants produced an email confirming that Raskin did, in fact, send Plaintiff such forms. Ex. 24.

replace [Plaintiff]?  [A:] Yes.")); and

(vii)   Claim that Plaintiff made representations to Prakhin about her prior work experience during a job interview, even though Prakhin testified at his deposition that Plaintiff's work experience never came up.  *Compare* Prakhin Aff. ¶ 6 *with* Prakhin Dep. at 193:12-197:16.

In opposition, Defendants may argue that Prakhin and Raskin merely recalled new facts after their depositions and alleged the same in the Affidavits, and should thus be allowed to rely upon the Affidavits at trial.  This would be wrong.  The above-summarized contradictions between the Affidavits and Prakhin's and Raskin's testimony during their depositions do not merely provide additional color to their live testimony.  On the contrary, they represent a complete about-face.  Prakhin and Raskin testified under oath as to certain facts and, as soon as it became apparent these facts would in no way allow for pre-trial dismissal of Plaintiff's claims, they signed the Affidavits, which attest to the exact opposite.

By way of example, Prakhin did not forget who he hired Zohar to replace, then later recall that Zohar replaced Gabo; he testified unequivocally that he hired Zohar to replace Plaintiff and, after realizing this cut against his defense, alleged the exact opposite in the Affidavit.  *Compare* Prakhin Aff. ¶ 50 *with* Prakhin Dep. at 235:18-20.  Similarly, Prakhin did not testify that he could not recall whether Defendants kept an accounting of Plaintiff's absences, and then recall the dates and reasons for her absences thereafter.  On the contrary, he testified unequivocally that he made no effort to determine Plaintiff's total absences or the reasons for the same and then, after the close of discovery, fabricated records through his Affidavit.[4]  *Compare* Prakhin Aff. ¶¶ 22-24 *with* Prakhin Dep. at 298:10-302:18; *see also Potash v. Fla. Union Free Sch. Dist.*, 972 F. Supp. 2d

---

[4] Prakhin later testified that he reviewed "accounting papers" or payroll records on which Raskin had jotted handwritten notes regarding Plaintiff's absences from work (Prakhin Dep. at 298:10-302:18); however, the supposed handwritten document to which Prakhin alluded was not produced in discovery (Huot Decl. ¶¶ 12-13)—and Raskin had no recollection of creating it.  *See* Raskin Dep. at 154:7-155:23.

557, 564 (S.D.N.Y. 2013) (ruling plaintiff's affidavit to be inadmissible because it "include[d] averments that were omitted from her responses to related questions during her deposition").

Brazen contradictions in the Affidavits like those outlined above represent the quintessential circumstances in which the sham affidavit doctrine should apply.  Because the Affidavits are sham affidavits, they should be deemed inadmissible, other than for impeachment purposes.  *See, e.g.*, *Lombardo v. R.L. Young, Inc.*, No. 3:18-cv-188(JBA), 2020 WL 3104910, at *1 n.1 (D. Conn. June 11, 2020) (finding affidavit inadmissible under the sham affidavit doctrine based on "substantive inconsistencies" between plaintiff's affidavit and his deposition testimony and pleadings); *Capitol Recs., LLC v. Escape Media Grp., Inc.*, No. 12-cv-6646(AJN), 2015 WL 1402049, at *29 (S.D.N.Y. Mar. 25, 2015) (relying on the sham affidavit doctrine to strike declaration in its entirety).

Lastly, even if the Court finds that the Affidavits should not be precluded in their entirety, it should, at minimum, strike the portions of the Affidavits that most squarely contradict Prakhin's and Raskin's prior deposition testimony.  *See* Prakhin Aff. ¶¶ 5-6, 22-24, 28, 30-37, 44, 50; Raskin Aff. ¶¶ 17, 22; *see also Golden*, 2007 WL 4299443 at *9 (striking "the portions of Golden's affidavit which conflict with her deposition" under the sham affidavit doctrine).

## IV.   THE AFFIDAVITS ARE INADMISSIBLE UNDER FRE 403

Even if the Court decides that the Affidavits should not be precluded from introduction into evidence as hearsay or because they are sham affidavits, it should preclude them under FRE 403, which states that even relevant evidence should be excluded if its probative value is substantially outweighed by the danger of one or more of the following: (i) unfair prejudice; (ii) confusing the issues; (iii) misleading the jury; (iv) undue delay; (v) wasting time; or (vi) needlessly presenting cumulative evidence.  *See also Gierlinger*, 160 F.3d at 871 ("The trial court has

considerable discretion in determining whether to admit or exclude evidence, and to exclude even relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice or confusion.") (internal citations omitted).

First, the Affidavits have little to no probative value, as they largely attest to supposed facts that are demonstrably false based on Prakhin's and Raskin's deposition testimony (as well as the discovery record in this case). *See supra* § III.  Further, the fact that Prakhin testified at a deposition twice (once as a fact witness, and once as corporate designee under Federal Rule of Civil Procedure ("FRCP") 30(b)(6)), as well as the fact that Raskin also sat for a full deposition, render their Affidavits non-probative. *See generally* Ex. 25 (transcript of Prakhin's FRCP 30(b)(6) deposition).  Indeed, the "'probative value' of an item of evidence . . . may be calculated by comparing evidentiary alternatives." *Old Chief v. U.S.*, 519 U.S. 172, 184 (1997) (quoting FRE 403).  Put differently, even if evidence is probative, the Court may "properly consider alternatives as a factor in balancing the probative value and the risk of prejudice." *U.S. v. Awadallah*, 436 F.3d 125, 132 (2d Cir. 2006).  Because the Affidavits merely rewrite testimony on the same topics already explored at length during Prakhin's and Raskin's depositions, the Court should find them non-probative or, alternatively, find that any diminished probative value is outweighed by the risk of prejudice and other FRE 403 factors.

Moreover, the Affidavits are non-probative as to Plaintiff's qualifications for her position, Defendants' coverage under the relevant statutes, their notice of Plaintiff's disability, whether they reasonably accommodated Plaintiff, and/or their motive for firing Plaintiff—the only issues that matter in this trial. *See Woolf v. Strada*, 949 F.3d 89 (2d Cir. 2020) (reciting elements of *prima facie* case of disability discrimination).  This is because the Affidavits concern facts that Defendants did not have when they made the termination decision. *See McKennon v. Nashville*

*Banner Pub. Co.*, 513 U.S. 352, 360 (1995) ("The employer could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reason."); *Naylor v. Rotech Healthcare, Inc.*, No. 1:08-CV-95, 2009 WL 5206005, at *1 (D. Vt. Dec. 23, 2009) ("In wrongful termination claims alleging discrimination, liability depends on the employer's intent in the moment of firing. After-acquired evidence therefore is irrelevant and cannot be used as a defense to liability.").

For example, Prakhin and Raskin each allege in their Affidavits Plaintiff's total number of absences and whether each purported absence was or was not related to Plaintiff's disability. *See* Prakhin Aff. ¶¶ 22-24; Raskin Aff. ¶¶ 17, 22. However, they already testified at their depositions that they maintained no such records. *See* Prakhin Dep. at 298:10-302:18; Raskin Dep. at 154:7-155:23. While Prakhin claims that Raskin prepared "accounting papers" for him with this information (despite previously testifying that he had no attendance records for Plaintiff), Raskin testified under oath that this never happened. *See* Prakhin Dep. at 298:10-302:18; Raskin Dep. at 154:7-155:23. Moreover, the supposed "accounting papers" were never produced in discovery. Huot Decl. ¶¶ 12-13. Accordingly, even if Defendants somehow ascertained complete attendance records after firing Plaintiff (or, more likely, after Prakhin's and Raskin's depositions),[5] those records would be irrelevant, as Prakhin and Raskin each admitted that they had no such records as of Plaintiff's firing. *See McKennon*, 513 U.S. at 360 (1995); *Naylor*, 2009 WL 5206005 at *1.[6]

For the same reason, Prakhin's attestations regarding alleged client complaints are irrelevant and non-probative. *See* Prakhin Aff. ¶¶ 30-37, 45. While Prakhin now claims that he

---

[5] To be clear, even this possibility seems farfetched, given that the Affidavits provide no insight into how Prakhin and Raskin determined Plaintiff's total absences and whether such absences were for disability-related reasons. *See generally* Prakhin Aff.; Raskin Aff.

[6] These attestations are also demonstrably false and contradicted by the discovery record, showing that Plaintiff was either not absent from work at all or had documented medical appointments or treatments (which Defendants were well aware of) for each date referenced in the Affidavits. *See* Exs. 5-22.

received five complaints from clients regarding Plaintiff (*see id.*), he testified at his deposition that he received "only a couple."  Prakhin Dep. at 209:13-23.  Setting aside the fact that Prakhin also testified that he considered client complaints to be "not major" (whereas he now seemingly claims they partially motivated his termination decision)—as well as the fact that many of these alleged complaints can be established only through inadmissible hearsay (*see supra* § II)—Prakhin's deposition testimony makes clear that he received just two client complaints (to the extent he received any at all).  *See* Prakhin Dep. at 209:13-23.  Thus, Prakhin's Affidavit again relies on evidence he *per se* did not have when he fired Plaintiff, thus stripping it of any probative value.  *See McKennon*, 513 U.S. at 360 (1995); *Naylor*, 2009 WL 5206005 at *1.

Raskin's Affidavit also lacks probative value because she played no role in the decision to fire Plaintiff.  Both Prakhin and Raskin made clear at their depositions that Prakhin alone decided to terminate Plaintiff's employment.  *See* Prakhin Dep. at 284:6-10 ("[Q:] Did you make the decision to fire Ms. Ruderman alone?  [A:] Yes.  [Q:] Did anyone else have any input?  [A:] No.  Alone."); Raskin Dep. at 161:19-22 ("[Q:] And so I take it [Prakhin] never sought your input regarding that decision [to terminate Plaintiff's employment], correct?  [A:] No.").   In fact, Raskin claims she did not even learn of the decision until after Prakhin had already fired Plaintiff.  *See* Raskin Dep. at 161:8-18 ("[Q:] So at no point prior to firing Ms. Ruderman did Mr. Prakhin give you any indication that he planned to fire her?  [A:] No, I didn't know about his plans."); *see also Greenfield v. Sears, Roebuck & Co.*, No. 04-71086, 2006 WL 2927546, at *8 (E.D. Mich. Oct. 12, 2006) ("[C]omments made by [a] non-decisionmaker in the instant case . . . have no bearing on whether discrimination played a part in the Plaintiff's demotion[.]").   Accordingly, Raskin's written testimony in her Affidavit as to alleged bases for firing Plaintiff have no bearing on the upcoming trial, and should therefore be deemed inadmissible.

Turning to the other side of the FRE 403 balancing test, even if the Court finds that the Affidavits are somehow relevant or probative, any marginal probative value is substantially outweighed by the risk of unfair prejudice to Plaintiff.  As outlined at length above, the Affidavits attempt to undo unfavorable deposition testimony by Prakhin and Raskin, in effect rewriting the discovery record just before trial.  To allow the Affidavits into evidence would prejudice Plaintiff by allowing the jury to be influenced by attestations in the Affidavits that are demonstrably false based on the other evidence in the record.

Put simply, Prakhin and Raskin should not be permitted to rewrite their deposition testimony post-discovery in order to improperly sway the jury.  FRCP 37(c)(1) is designed to prevent this very brand of gamesmanship—or, in this case, brazen dishonesty—by granting the Court discretion to preclude testimony not provided in discovery "unless the failure was substantially justified or is harmless."  *See also Daubert v. NRA Group, LLC*, 189 F. Supp. 3d 442, 459-60 (M.D. Pa. 2016) ("[Defendant] cannot now disavow [Shaar's] testimony with a new affidavit from another employee, Charlene Sarver . . . Defendant is bound by Schaar's deposition testimony and cannot now disavow her testimony with the Sarver Affidavit."); 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedures* § 2103 (3d. ed. Apr. 2022 update) (sanctioning a party by precluding testimony would be consistent with Rule 37(c)(1), which more generally authorizes a court to forbid a party from submitting evidence it failed to provide as required through discovery.").  The Court should exercise this discretion here.

Moreover, Raskin's Affidavit is prejudicial for the same reason noted *supra* at 15—that she played no role in the termination decision, making her opinions as to any supposed justifications for firing Plaintiff irrelevant (and thus making their admission into evidence highly prejudicial).  *See Greenfield*, 2006 WL 2927546 at *8 ("[C]omments made by non-decisionmaker

in the instant case are unduly prejudicial under Rule 403 because they would confuse the jury as to the actual issue of the case . . . The comments made by McCurry have no bearing on whether discrimination played a part in the Plaintiff's demotion, and allowing these remarks may mislead the jury as to [their] importance.").

Allowing Raskin's Affidavit into evidence would also confuse the issues and mislead the jury for the very same reason.  *See id.*  Admitting either Affidavit would similarly mislead the jury insofar as the jury would be led to believe, for example, that Defendants relied on an accounting of Plaintiff's absences to fire her (when no such accounting existed) or that, when he fired Plaintiff, Prakhin was aware of twice as many client complaints than he claimed to have received when he sat for his deposition.  *See supra* at 3, 10.

Lastly, allowing the Affidavits into evidence would waste time and result in the needless presentation of cumulative evidence.  Every topic covered in the Affidavits was explored fully at Prakhin's and Raskin's depositions.  Thus, allowing not only their live testimony and deposition transcripts (to the extent used for impeachment purposes) but also their sham Affidavits, would waste time and delay completion of the trial due to the cumulative nature of the evidence.  *See Thompson v. TRW Auto., Inc.*, No. 2:09-cv-1375(JAD)(PAL), 2014 WL 12781291, at *11 (D. Nev. June 2, 2014) (on motion *in limine* to preclude introduction of affidavits written by witnesses who plaintiff had designated to testify at trial, "the Court finds they are cumulative and is disinclined to allow each affidavit to be read to the jury"); *see also Old Chief*, 519 U.S. at 184 (The "'probative value' of an item of evidence . . . may be calculated by comparing evidentiary alternatives."); *Awadallah*, 436 F.3d at 132 (district court "did properly consider alternatives as a factor in balancing the probative value [of testimony] and the risk of prejudice").

## CONCLUSION

For the foregoing reasons, the Court should preclude Defendants from introducing the Affidavits into evidence at trial, other than for impeachment purposes, together with such other and further relief as the Court deems just and proper.

Dated: November 14, 2022  
       New York, New York

**FARUQI & FARUQI, LLP**

By: *_/s/ Innessa M. Huot_____*
    Innessa M. Huot
    Alex J. Hartzband
    Camilo M. Burr
    Annabel R. Stanley

685 Third Avenue, 26th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331
ihuot@faruqilaw.com
ahartzband@faruqilaw.com
cburr@faruqilaw.com
astanley@faruqilaw.com

*Attorneys for Plaintiff*