UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| YELENA RUDERMAN,<br><br>                Plaintiff,<br><br>          v.<br><br>LAW OFFICE OF YURIY PRAKHIN, P.C. and YURIY PRAKHIN, in both his individual and professional capacities,<br><br>                Defendants. | Civil Action No.: 1:19-cv-2987-CBA-RLM |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* NO. 2

# TABLE OF CONTENTS

DISCUSSION OF RECORD .................................................................................................. 1

ARGUMENT .................................................................................................................... 3

    I.    LEGAL STANDARDS ................................................................................................ 3

    II.    M&G'S RESPONSE TO DEFENDANTS' SUBPOENA IS INADMISSIBLE HEARSAY ............................................................................................................ 4

    III.    EVIDENCE CONCERNING PLAINTIFF'S EMPLOYMENT AT M&G IS IRRELEVANT ........................................................................................................ 8

    IV.    EVIDENCE CONCERNING PLAINTIFF'S EMPLOYMENT AT M&G IS INADMISSIBLE UNDER FRE 403 ........................................................................ 10

CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page(s)**

*Belvin v. Electchester Mgmt., LLC*,
   No. 17-cv-6303(NGG)(MMH), 2022 WL 10586743 (E.D.N.Y. Oct. 18, 2022) ....................11

*Gierlinger v. Gleason*,
   160 F.3d 858 (2d Cir. 1998)..........................................................................................................3

*Guanghong Int'l. (HK) Ltd. v. Ultimate Fin. Sols. LLC*,
   11 Civ. 4019(RMB)(KNF), 2012 WL 1228085 (S.D.N.Y. Mar. 26, 2012) ..............................4

*Lakah v. UBS AG*,
   996 F. Supp. 2d 250 (S.D.N.Y. 2014)........................................................................................4

*Levarge v. Preston Bd. of Educ.*,
   552 F. Supp. 2d 248 (D. Conn. 2008)........................................................................................4

*Nobel Ins. Co. v. Hudson Iron Works, Inc.*,
   111 F. Supp. 2d 373 (S.D.N.Y. 2000)....................................................................................5, 6

*Park W. Radiology v. CareCore Nat'l LLC*,
   547 F. Supp. 2d 320 (S.D.N.Y. 2008)......................................................................................11

*Phoenix Assocs. III v. Stone*,
   60 F.3d 95 (2d Cir. 1995)............................................................................................................6

*Polanco v. Pierce*,
   101 F.3d 684 (2d Cir. 1996)........................................................................................................4

*Sanderson v. Horse Cave Theatre 76*,
   881 F. Supp. 2d 493 (S.D.N.Y. 2012)........................................................................................4

*U.S. v. Komasa*,
   767 F.3d 151 (2d Cir. 2014), *cert. denied*, 575 U.S. 925 (2015)..............................................6

*U.S. v. Kurland*,
   No. 20-CR-306(S-1)(NGG), 2022 WL 2669897 (E.D.N.Y. July 11, 2022) ...........................11

*U.S. v. Manfredi*,
   447 F. Supp. 847 (S.D.N.Y. 1978) .............................................................................................5

*W. L. Hailey & Co. v. Niagara Cty.*,
   388 F.2d 746 (2d Cir. 1967).......................................................................................................8

**Other Authorities**

FRE 401 ................................................................................................................................3

FRE 403 .........................................................................................................................3, 10

FRE 801 ...........................................................................................................................3, 8

FRE 802 ...........................................................................................................................3, 5

FRE 803(6) ......................................................................................................................5, 6

FRE 803(6)(A) ......................................................................................................................7

FRE 803(6)(B) ......................................................................................................................7

FRE 803(6)(C) ......................................................................................................................7

FRE 803(6)(D) ......................................................................................................................6

FRE 803(6)(E) ...................................................................................................................6, 7

FRE 803-07 ..........................................................................................................................3

Plaintiff Yelena Ruderman ("Plaintiff"), by and through her undersigned counsel, Faruqi & Faruqi, LLP, hereby submits this memorandum of law in support of her Motion *in Limine* No. 2 to preclude Defendants Law Office of Yuriy Prakhin (the "Firm") and Yuriy Prakhin ("Prakhin") (together, "Defendants") from introducing evidence at trial concerning Plaintiff's previous employment at the law firm Mallilo & Grossman ("M&G"), including, *inter alia*, M&G's response to Defendants' subpoena.

## DISCUSSION OF RECORD

Plaintiff initially worked for Defendants from September 2012 through February 2017. *See* ECF No. 121 (the parties' Joint Pretrial Order ("JPTO")) at 6. In February 2017, Plaintiff left the Firm to work at M&G. *See id*. Roughly one year later, Plaintiff rejoined the Firm after Prakhin recruited her back. *See id.*.

During Plaintiff's time at M&G, she conducted two trials—one of which went to verdict, and the other of which settled before a verdict was issued. *See* Omnibus Declaration of Innessa M. Huot ("Huot Decl."), Exhibit 28[1] ("Plaintiff Dep.") at 133:9-135:11.

When Prakhin spoke with Plaintiff about returning to the Firm, he and Plaintiff did not discuss her work experience. On the contrary, Prakhin merely told Plaintiff about the trial experience she would gain by returning at the Firm, in addition to discussing her anticipated caseload, compensation, and the assignment of paralegals to assist her. *See* Ex. 3 ("Prakhin Dep.") at 197:4-16.

In discovery, Plaintiff produced a copy of her résumé as evidence that she satisfied her duty to mitigate her damages. *See* Ex. 29.

---

[1] Unless otherwise noted, all exhibits to the Huot Decl. are hereinafter cited as "Ex. __."

1

At Plaintiff's deposition, defense counsel questioned Plaintiff at length about her trial work at M&G, and later served a subpoena upon M&G demanding documents concerning trials on which Plaintiff worked during her time there. *See* Ex. 30. In response to the subpoena, M&G produced payroll records for Plaintiff (*see* Ex. 31), along with an email from Francesco Pomara ("Pomara") stating as follows:

> Ms. Donnelly, attached please find records regarding Ms. Ruderman[']s salary history and benefits while employed with Mallilo and Grossman. Our records reflect she conducted a summary jury trial in the case DABY DEWBERRY v. CARMELO GARCIA in civil court queens County, index # 300431/17 on March 12,2018. The parameters were $0-$25,000.00. The verdict was in favor of the defendant with no award to the plaintiff. If there is anything else you require please contact me at the number below.

*Id.* at D014867 (emphasis in original).

In their motion for summary judgment, Defendants argued that Plaintiff misrepresented her experience at M&G on her résumé by claiming she "served as lead counsel" on two jury trials, when, according to Defendants, she served on only one. *See* ECF No. 70 (Defendants' 56.1 Statement of Undisputed Material Facts) ¶¶ 35-36 ("Plaintiff's resumé [*sic*] states that while employed at [M&G], Plaintiff [ ] acted as lead counsel on jury trials . . . . Plaintiff only conducted one trial at [M&G]."); *see also* Ex. 29 (Plaintiff résumé). As is evident from the record, the disputed fact here—to the extent it can be even characterized as such—is based purely on semantics. Defendants claim that it is incorrect for Plaintiff to say she served as "lead counsel on two jury trials" because only one of the trials went to verdict, whereas Plaintiff also counts the second trial she handled, even though it settled before a verdict was issued. *See id.*; *see also* Plaintiff Dep. at 134:19-20 ("[Q:] Did you try the cases to verdict? [A:] One of them.").

Of note, Plaintiff never submitted a résumé to Prakhin when she was re-hired by the Firm. *See* Prakhin Dep. at 185:25-186:6 (testifying that he did not recall Plaintiff sending him a résumé).

The résumé in question was produced in discovery to support Plaintiff's mitigation of her damages. *See supra* at 1. Defendants did not possess a copy of the résumé before then. *See* Ex. 29 (Plaintiff's résumé, which notes that her employment with Defendants ended in December 2018, thus clearly indicating that it was not provided to Defendants when Prakhin recruited Plaintiff back to the Firm); *see also* Huot Decl. ¶¶ 6-8.

## ARGUMENT

### I.  LEGAL STANDARDS

Federal Rules of Evidence ("FRE") 401 and 402 proscribe the admission of irrelevant evidence. Evidence is considered relevant only if: (i) "it has any tendency to make a fact more or less probable than it would be without the evidence;" and (ii) "the fact is of consequence in determining the action." FRE 401.

Even relevant evidence should be excluded if its probative value is substantially outweighed by a danger of one or more of the following: (i) unfair prejudice; (ii) confusing the issues; (iii) misleading the jury; (iv) undue delay; (v) wasting time; or (vi) needlessly presenting cumulative evidence. FRE 403; *see also Gierlinger v. Gleason*, 160 F.3d 858, 871 (2d Cir. 1998) ("The trial court has considerable discretion in determining whether to admit or exclude evidence, and to exclude even relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice or confusion[.]") (citations omitted).

Regardless of whether testimony is irrelevant, hearsay evidence is inadmissible under FRE 802 unless a federal statute, the FRE, or other rules prescribed by the Supreme Court provides otherwise, or if a hearsay exception under the FRE applies. *See* FRE 803-07. "Hearsay" means a statement that: (i) "the declarant does not make while testifying at the current trial or hearing;" and (ii) "a party offers in evidence to prove the truth of the matter asserted in the statement." FRE 801.

3

## II. M&G'S RESPONSE TO DEFENDANTS' SUBPOENA IS INADMISSIBLE HEARSAY

As outlined above, in response to Defendants' subpoena, M&G submitted payroll records for Plaintiff, and stated in an email from Pomara that, based on Pomara's review of "our records," Plaintiff conducted one summary jury trial during her employment at M&G. *See* Ex. 31. For several reasons, M&G's subpoena is inadmissible hearsay. Therefore, Defendants should be precluded from introducing it into evidence,

The email from M&G is plainly an out-of-court statement by a non-party that Defendants clearly intend to offer to prove the truth of the matter asserted—*i.e.*, that Plaintiff handled only one trial, rather than two trials, as Defendants allege Plaintiff represented to Prakhin during her job interview. As such, it is textbook hearsay. *See, e.g.*, *Sanderson v. Horse Cave Theatre 76*, 881 F. Supp. 2d 493, 499–500 (S.D.N.Y. 2012) (finding unauthenticated emails to be hearsay not subject to an exception); *see also Polanco v. Pierce*, 101 F.3d 684 (2d Cir. 1996) (affirming lower court's ruling that legal assistant's notes "were hearsay and did not amount to a written statement from Hernandez since they were not signed or verified by him"); *Lakah v. UBS AG*, 996 F. Supp. 2d 250, 257-58 (S.D.N.Y. 2014) (finding bank records and investigatory reports to be hearsay not subject to an exception); *Guanghong Int'l. (HK) Ltd. v. Ultimate Fin. Sols. LLC*, 11 Civ. 4019(RMB)(KNF), 2012 WL 1228085, at *5 (S.D.N.Y. Mar. 26, 2012) (finding unsigned agreement to be of "questionable authenticity" and inadmissible as hearsay), *report and recommendation adopted*, 11 Civ. 4019(RMB)(KNF), 2012 WL 2402902 (S.D.N.Y. June 26, 2012); *Levarge v. Preston Bd. of Educ.*, 552 F. Supp. 2d 248, 252 (D. Conn. 2008) ("The unsigned letters submitted by the LeVarges are hearsay and do not constitute admissible evidence of the matters contained therein for the purposes of summary judgment or trial.").

Moreover, no exception to the rule against hearsay applies, including, *inter alia*, the business records exception. *See* FRE 803(6). As a preliminary matter, Pomara's email is not itself a business record, but a summary by Pomara of information purportedly gleaned from M&G's records. No actual business records regarding Plaintiff's trial work (*i.e.*, the "records" referenced in Pomara's email) have been produced. Therefore, Pomara's email—an out-of-court statement by a non-party being offered for the truth of the matter asserted—is itself hearsay. *See* FRE 802.

Further, the email's reference to "our records," which have not themselves been produced, renders it hearsay within hearsay. *See U.S. v. Manfredi*, 447 F. Supp. 847, 850 (S.D.N.Y. 1978) ("Significantly, the hearsay statements of the private investigator as to what Roseboro allegedly told him during the course of the recorded telephone conversation is not submitted; neither is the recording offered. . . . The hearsay and double hearsay statements are incompetent and inadmissible[.]") (citing *U.S. v. Franzese*, 525 F.2d 27, 31 (2d Cir. 1975) and *Dalli v. U.S.*, 491 F.2d 758, 760-61 (2d Cir. 1974)).

The Honorable Victor Marrero's decision in *Nobel Ins. Co. v. Hudson Iron Works, Inc.*, 111 F. Supp. 2d 373, 375 (S.D.N.Y. 2000) is instructive. In *Nobel*, a corporate defendant sought to rely upon an affidavit attesting "that an attached 'accounting summary' reflects payments made by Republic in connection with the issuance of the performance bond and payment bond" at issue in this case. *Id.* Judge Marrero swiftly rejected the argument that the attached "accounting summary" caused the affidavit to fit into the business records exemption "because there was no showing that [the affiant] had any personal knowledge about the matters to which he attested, or that the 'accounting summary' was anything more than inadmissible hearsay. *Id.*

*Nobel* drives home the basic point that a hearsay statement—much less an email, as opposed to, for example, a sworn affidavit—may not be forced into the business records exception

5

by a simple reference to an "accounting summary," or, in this case, "records." The same reasoning applies here, particularly because, unlike in *Nobel*, no actual records of Plaintiff's trial work have been produced. *See id.*; Ex. 31.

Even if the Court is willing to treat Pomara's email as a business record, the exception does not apply. The business records exception permits courts to admit records which would otherwise be hearsay if only: (i) "the record was made at or near the time by—or from information transmitted by—someone with knowledge;" (ii) "the record was kept in the course of a regularly conducted activity of a business[;]" and (iii) "making the record was a regular practice of that activity." FRE 803(6). Moreover, each of these three conditions must be "shown by the testimony of the custodian or another qualified witness, or by a certification that complies with [FRE] 902(11) or (12) or with a statute permitting certification." *Id.*[2] FRE 803(6). While the custodian "need not have personal knowledge of the actual creation of the document," the party offering the document into evidence must nevertheless prove that "it was the business entity's regular practice" to create the record. *Phoenix Assocs. III v. Stone*, 60 F.3d 95, 101 (2d Cir. 1995). Here, none of these criteria is satisfied, let alone all of them.

Addressing the fourth factor first, there is no "custodian or other qualified witness." *Id.* Indeed, Defendants seek to introduce Pomara's email without identifying Pomara on their witness list. *See* JPTO Exhibit No. 12 at 30.[3] Relatedly, Defendants lack the requisite "testimony" (FRE

---

[2] FRE 803(6)(E) also provides that the business records exception will not apply if the opposing party shows "that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness."

[3] For the same reason, it is unclear how Defendants would be able to authenticate Pomara's email, as would be necessary to introduce it into evidence. *See U.S. v. Komasa*, 767 F.3d 151, 156 (2d Cir. 2014) ("To lay a proper foundation for a business record, a custodian or other qualified witness must testify that the document was kept in the course of a regularly conducted business activity and also that it was the regular practice of that business activity to make the record.") (internal quotation marks and citations omitted), *cert. denied*, 575 U.S. 925 (2015).

803(6)(D)), as Pomara's email is just that—an email—rather than an affidavit or other certification that could even conceivably comply with FRE 902(11), FRE 902(12), or an applicable statute. *See id.*

As for the first three factors, while Pomara references "our records" in his email, nothing in the email sheds any light whatsoever on when the supposed records were created and whether anyone with personal knowledge of Plaintiff's trial work at M&G was involved in their creation. Therefore, Defendants cannot establish that the records were "made at or near the time" of Plaintiff's trial work, nor can they establish that the records referenced in Pomara's email were made by "someone with knowledge" of Plaintiff's trial work. FRE 803(6)(A).

Moreover, as noted above, M&G did not produce any records of Plaintiff's trial work. Even if M&G had produced such records, Pomara's mere reference to "our records" falls far short of establishing that the records were kept in the course of M&G's "regularly conducted activity." FRE 803(6)(B). For the same reason, Defendants cannot establish that making the records (to the extent they exist) was "a regular practice" of M&G's business. FRE 803(6)(C).

Lastly, it bears repeating that Defendants seek to introduce Pomara's email drawing conclusions from "our records" without identifying Pomara as a witness and without producing the records referenced in his email. Setting aside the fact that these realities render the email hearsay to which no exception applies, Defendants' course of action makes it impossible for Plaintiff to assess whether "the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." FRE 803(6)(E). Along the same lines, by attempting to introduce Pomara's email without also obtaining and producing the alleged records themselves, Defendants effectively ask the Court to allow hearsay evidence into the proceedings without any opportunity for Plaintiff to review the alleged records, let alone use them to impeach

Pomara's testimony or clarify the record—*e.g.*, by establishing that Plaintiff did, in fact, work on two trials, but one of the cases settled after jury selection. *Cf. W. L. Hailey & Co. v. Niagara Cty.*, 388 F.2d 746, 754 (2d Cir. 1967) (allowing hearsay testimony into evidence because the "books and records were available throughout the trial and could have been used by Hailey to impeach Mr. Wells' testimony").

### III.  EVIDENCE CONCERNING PLAINTIFF'S EMPLOYMENT AT M&G IS IRRELEVANT

M&G's response to Defendants' subpoena—as well as all other documentary evidence and testimony concerning Plaintiff's prior employment at M&G—should be precluded as irrelevant, as any such evidence necessarily does not concern facts "of consequence in determining the action." FRE 801. Per their summary judgment motion, Defendants intend to bring the subject of Plaintiff's employment at M&G into the trial to establish that Plaintiff supposedly misrepresented her work experience by telling Prakhin that she had handled two trials at M&G, as opposed to one. *See generally* ECF Nos. 68-76, 83-84 (summary judgment briefing by Defendants). This falls far short of establishing relevance.

First, the evidence in the record makes clear that Plaintiff did not misrepresent her work experience to Prakhin. Specifically, Prakhin testified that that Plaintiff merely told him she was leaving the Firm to gain trial experience at M&G and that he enticed her to return to the Firm by telling her she would gain trial experience. *See* Ex. 3 ("Prakhin Dep.") at 193:12-23 (when she resigned, Plaintiff told Prakhin that "she found a new firm, with new opportunities, where she can work with trials"), 197:4-16 (Prakhin promised Plaintiff "trial experience" when he re-hired her in 2018). In fact, the dispute as to Plaintiff's summary of her work experience appears to have nothing to do with what Plaintiff told or did not tell Prakhin about her experience when he re-hired her. On the contrary, it is nothing more than a semantic dispute between Plaintiff and defense

counsel regarding how Plaintiff characterized her work experience in her résumé and at her deposition—specifically, whether trying a case other than through a verdict counts as acting as lead counsel on a trial. *Compare* ECF No. 70 (Defendants' 56.1 Statement of Undisputed Material Facts) ¶¶ 35-36 ("Plaintiff's resumé [*sic*] states that while employed at [M&G], Plaintiff [ ] acted as lead counsel on jury trials . . . . Plaintiff only conducted one trial at [M&G].") *with* Ex. 29 (Plaintiff's résumé, which states that she "[s]erved as lead counsel on two jury trials"); *see also* Plaintiff Dep. at 134:19-20 ("[Q:] Did you try the cases to verdict? [A:] One of them.").[4]

Second, even assuming *arguendo* that Plaintiff did misrepresent her experience handling trials at M&G, the evidence in question would still be irrelevant. Indeed, it is undisputed that none of the cases Plaintiff managed during her time working for Defendants ever went to trial. *See* Plaintiff Dep. at 172:12-20 ("[Q:] From June of 2018 to December of 2018, did any of your cases go to trial? . . . [A:] Not that I'm aware of."); *see also* Ex. 23 (transcript of the deposition of Irene Gabo, the Firm's former Managing Attorney) at 47:12-48:5 (testifying that the cases assigned to Plaintiff were in the early stages of litigation and, thus, Plaintiff did not have an opportunity to settle them, let alone try them). This is also borne out by Prakhin's deposition testimony. Specifically, when asked to explain why he decided to terminate Plaintiff's employment, Prakhin rattled off a laundry list of alleged nondiscriminatory reasons (and one expressly discriminatory reason) for firing Plaintiff, making no mention of her supposed lack of trial experience or inability to handle trials while employed at the Firm. *See* Prakhin Dep. at 273:8-276:12.

---

[4] As noted above, Plaintiff never submitted a résumé to Prakhin when she was re-hired by the Firm. This is beyond dispute. *See* Prakhin Dep. at 185:25-186:6 (testifying that he did not recall Plaintiff sending him a résumé). The résumé in question was produced in discovery to support Plaintiff's mitigation of her damages; however, Defendants did not possess a copy of the résumé before then. *See* Ex. 29 (Plaintiff's résumé, which notes that her employment with Defendants ended in December 2018).

## IV. EVIDENCE CONCERNING PLAINTIFF'S EMPLOYMENT AT M&G IS INADMISSIBLE UNDER FRE 403

As outlined above, M&G's subpoena response and any other evidence concerning M&G are irrelevant. That said, even if the Court determines that evidence concerning Plaintiff's prior employment with M&G is somehow relevant, any marginal probative value is outweighed by the significant risks of unfair prejudice to Plaintiff, misleading the jury, confusing the issues, and wasting time. *See* FRE 403.

Defendants transparently intend to use Plaintiff's prior employment history at M&G for two purposes: (i) to claim Plaintiff misrepresented her experience; and (ii) to claim that this alleged misrepresentation justified Prakhin's decision to fire Plaintiff. On both points, the risk of unfair prejudice to Plaintiff is high, especially given the lack of relevance of either purpose for introducing the evidence.

By allowing Plaintiff's trial work at M&G to come into the trial, the Court will permit Defendants to blow what is obviously a semantic dispute over what it means to conduct a trial into a lie, when it is clear that no such lie was ever made on Plaintiff's résumé or anywhere else. On top of that, Plaintiff will suffer further unfair prejudice by allowing Defendants to falsely suggest that Plaintiff's work experience at M&G played any role in Prakhin's decision to fire Plaintiff when Prakhin made clear at his deposition that this was anything but the case. *See* Prakhin Dep. at 273:8-276:12. The unfair prejudice is especially obvious given that, by Prakhin's own admission—and by the fact that Prakhin did not even have Plaintiff's résumé until after discovery began in this lawsuit—he never discussed Plaintiff's work experience at M&G with her before offering her employment in 2018. *See* Prakhin Dep. at 193:12-23 (summarizing his conversation with Plaintiff about re-hiring her at length, and making no mention of any representations by Plaintiff regarding any of her experiences at M&G, let alone trial work).

For similar reasons, allowing Plaintiff's trial work at M&G into evidence will mislead the jury and confuse the issues by bringing in documents and information Prakhin indisputably did not have when he hired Plaintiff or when he fired her.

Further, allowing M&G's subpoena response or the subject of Plaintiff's trial work at M&G into evidence presents considerable risks of wasting time. If the Court allows this to be covered at trial, Plaintiff's cross-examination may very well turn into a side show, with lengthy questioning regarding the phrasing of her résumé and work experience about which Prakhin was not even aware, quickly turning into a mini-trial of its own and distracting from the real issues. *See, e.g.*, *Park W. Radiology v. CareCore Nat'l LLC*, 547 F. Supp. 2d 320, 322 (S.D.N.Y. 2008) ("Defendants demand would risk turning the trial of this case into a multi-ringed sideshow of mini-trials on collateral issues pertaining to the conduct and relationships of third parties that may have only tangential bearing, if at all, to the issues and claims disputed in this case."); *see also Belvin v. Electchester Mgmt., LLC*, No. 17-cv-6303(NGG)(MMH), 2022 WL 10586743, at *5 (E.D.N.Y. Oct. 18, 2022) ("It would be a poor use of judicial resources and the parties' time to conduct a mini-trial focused on determining whether EML is responsible for Gambrell's statements" and risks "confus[ing] the jury, who is asked to determine whether Plaintiffs were subjected to a hostile work environment[.]"); *U.S. v. Kurland*, No. 20-CR-306(S-1)(NGG), 2022 WL 2669897, at *6 (E.D.N.Y. July 11, 2022) ("The court will [ ] not hold a mini-trial . . . involving different legal issues would create substantial and unfair prejudice, and would risk the jury confusing the issues.").

Plaintiff's time at M&G is relevant only to establish that Plaintiff left the Firm to work at M&G, and then came back to the Firm a little over a year later—facts to which the parties have already stipulated in their Joint Pretrial Order. *See* JPTO at 6. Therefore, the Court should

preclude any further evidence regarding Plaintiff's employment at M&G so that the parties, their counsel, and the jury can focus their attention on facts and evidence that are of actual consequence.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court preclude Defendants from introducing M&G's response to Defendants' subpoena or any other evidence concerning Plaintiff's employment at M&G into evidence at trial, together with such other and further relief as the Court deems just and proper.

Dated: November 14, 2022
       New York, New York

**FARUQI & FARUQI, LLP**

By: */s/ Innessa M. Huot*
    Innessa M. Huot
    Alex J. Hartzband
    Camilo M. Burr
    Annabel R. Stanley

685 Third Avenue, 26th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331
ihuot@faruqilaw.com
ahartzband@faruqilaw.com
cburr@faruqilaw.com
astanley@faruqilaw.com

*Attorneys for Plaintiff*