**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

YELENA RUDERMAN,

        Plaintiff,

        v.

LAW OFFICE OF YURIY PRAKHIN, P.C. and
YURIY PRAKHIN, in both his individual and
professional capacities,

        Defendants.

Civil Action No.: 1:19-cv-2987-CBA-RLM

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION *IN LIMINE* NO. 6**

Plaintiff Yelena Ruderman ("Plaintiff"), by and through her undersigned counsel, Faruqi & Faruqi, LLP, hereby submits this memorandum of law in support of her Motion *in Limine* No. 6 to preclude Defendants Law Office of Yuriy Prakhin, P.C. (the "Firm") and Yuriy Prakhin ("Prakhin") (together, "Defendants") from introducing attorney time records into evidence at trial.

## DISCUSSION OF RECORD

Plaintiff worked for Defendants as an attorney from June 2018 through December 2018. *See* ECF No. 121 (the parties' Joint Pretrial Order ("JPTO")) at 6.  Throughout Plaintiff's employment, Defendants monitored non-exempt, hourly employees' hours worked.  *See* Omnibus Declaration of Innessa M. Huot ("Huot Decl."), Exhibit 65[1, 2] at D11924.  Initially, this was accomplished by requiring non-exempt, hourly employees to keep track of their hours worked themselves. *See id.*  Indeed, Defendants' "Timekeeping Procedures" policy states, in relevant part: "All non-exempt employees are required to record time worked for payroll purposes.  Employees must record their own time at the start and at the end of each work period, including before and after the lunch break." *Id.*  Noticeably absent from this policy is any mention that exempt employees, such as attorneys, were required to track their time.  *See id.*

Eventually, Defendants began using a timeclock, which non-exempt employees were required to use to clock in and out each day so the Firm could track their hours worked, and which generates timesheets and "Hours Summary Reports" showing how many hours each employee worked each day.  *See* Ex. 67 (timesheets); Ex. 68 (Hours Summary Reports) (together, the "Time Records")

---

[1] Unless otherwise noted, all exhibits to the Huot Decl. are hereinafter cited as "Ex. __."
[2] Exhibit 66 is ostensibly the employee handbook that was in effect during Plaintiff's employment with the Firm; however, Plaintiff was never provided with a copy of the same, as evidenced by the fact that it was produced without a signed acknowledgement form.  *See also* Plaintiff's Motion *In Limine* No. 5 (seeking to preclude Exhibit 66, as well as a prior version of the employee handbook (*see* Ex. 65), from being introduced into evidence at trial as irrelevant, hearsay, and inadmissible under FRE 403).

However, the Time Records do not accurately reflect hours worked by attorneys, as Defendants still did not require that attorneys track their time. *See supra* at 1. As such, Plaintiff only occasionally clocked in and out, and the timeclock of course did not capture time Plaintiff spent out of the office at depositions and court appearances. *See* Ex. 28 ("Plaintiff Dep.") at 177:7-15 ("I wasn't an hourly employee, and I didn't clock in and out per hours that I worked. I would sometimes only clock in once a day at some point and clock out at some point. I wasn't hired to be an hourly employee, and I wasn't always there because I would be in court or [at] depositions.").

These facts are beyond any legitimate dispute, as Prakhin himself acknowledges that the timeclock was not intended for attorneys and does not reflect their actual hours worked. *See* Ex. 3 ("Prakhin Dep.") at 303:9-23 ("The punching machine which you are submitting [to] me right now as an Exhibit, this is a machine that we use mostly for paralegals, not for attorneys. But attorneys use this punch-in machine as well, but, however, it [does] not reflect the real hours they work. For example, if the attorney started the day in court, it couldn't be reflected in this punch-in machine."). In fact, Prakhin even admitted at his deposition that he "did not rely on this timesheet" (*id.* at 303:24-25) when he decided to terminate Plaintiff, purportedly for missing too much work as a result of doctor's appointments related to her disability. *See id.* at 276:13-19 ("[Q:] Did Ms. Ruderman's absences from work play any role in your decision to fire her? [A:] Yes. I mentioned that. [Q:] Did that include the two week[-]long absence she took [to attend doctor's appointments to obtain a diagnosis for her deteriorating vision]? [A:] Yes.").

Notably, per the Time Records, none of the Firm's attorneys worked more than 40 hours per week throughout Plaintiff's employment—and, among all of the attorneys, the Time Records reflect that, collectively, they worked more than 40 hours during just five weeks in total. *See* Ex. 67 at D11839-47 (Lilit Avetisyan's time records, which reflect that she never worked 40 hours during any week from June 2018 through December 2018), D11870-72 (Irene Gabo's time records,

which reflect the same, and also show that almost never clocked in or out at all on any day during twelve entire weeks from June 2018 through September 2018), D11873-78 (Gregory Nahas's time records, which reflect that he never worked 40 hours during any week from June 2018 through December 2018), D11885-88 (Nicholas Serlin's time records, which reflect the same), D11879-84 (Stephen Revis's time records, which reflect that he worked more than 40 hours during just three weeks from June 2018 through December 2018), D11862-69 (Sandra Beron's time records, which reflect that she worked more than 40 hours during just two weeks from June 2018 through December 2018); *see also id.* at D11891-902 (time records for Gil Zohar, who started working for Defendants in 2019 after he replaced Plaintiff,[3] which reflect that he worked more than 40 hours during just two weeks throughout all of 2019).

The Time Records for Plaintiff's colleagues are telling. It should go without saying that all of the attorneys at the Firm (like most attorneys) regularly worked more than 40 hours—it simply is not reflected in the Time Records, given that the attorneys were often out of the office at court appearances and depositions, and also had no reason to believe they were required to clock in or out. *See supra* at 1-2. Further to this point, Defendants never communicated to Plaintiff that she was required to meet any threshold of hours worked, much less consistently clock in and out to ensure her hours were recorded in the Time Records. *See* Plaintiff Dep. at 157:12-24 ("[Q:] When you started back with Mr. Prakhin in 2018, was there any discussion regarding expectations for the amount of hours you should work per week? . . . . [A:] No.   [Q:] What was your understanding of what the hour requirement was? . . . . [A:] I didn't believe there was one.  Just the work had to be done.").

_____

[3] *See* Prakhin Dep. 235:18-20 ("[Q]: You hired Mr. Zohar to replace [Plaintiff]?  [A:] Yes.").

Based on the foregoing, it is patently obvious that the Time Records are of no relevance to assessing Plaintiff's or any other Firm attorneys' hours worked, much less the quality of their work. Indeed, attorneys were not required to use the Firm's timeclock or otherwise record their time in the office, and Prakhin himself acknowledges that the Time Records do not reflect attorneys' actual hours worked (hence his testimony that he did not rely on the Time Records when he decided terminate Plaintiff's employment). *See supra* at 2.

Despite this, Defendants questioned Plaintiff at length at her deposition regarding the Time Records, pointing out instances where the Time Records reflect that she purportedly worked fewer than 40 hours in a workweek, as is the case with the Time Records for literally every other Firm attorney (*see supra* at 2-3)). *See* Plaintiff Dep. 176:7-178:10. Defendants seemingly intend to use the Time Records at trial to make the same insinuation to the jury—*i.e.*, that the obviously and admittedly inaccurate Time Records, which are irrelevant to attorneys, somehow prove that Plaintiff was excessively absent and/or did not work enough hours—given that Defendants have listed the Time Records on their exhibit list as Exhibit Nos. 13 and 14. *See* JPTO at 30.

<b><u>ARGUMENT</u></b>

### I.  LEGAL STANDARDS

As the Court is aware, Federal Rules of Evidence ("FRE") 401 and 402 proscribe the admission of irrelevant evidence. Evidence is considered relevant only if: (i) "it has any tendency to make a fact more or less probable than it would be without the evidence;" and (ii) "the fact is of consequence in determining the action." FRE 401.

Even relevant evidence should be excluded if its probative value is substantially outweighed by a danger of one or more of the following: (i) unfair prejudice; (ii) confusing the issues; (iii) misleading the jury; (iv) undue delay; (v) wasting time; or (vi) needlessly presenting cumulative evidence. FRE 403; *see also Gierlinger v. Gleason*, 160 F.3d 858, 871 (2d Cir. 1998)

4

("The trial court has considerable discretion in determining whether to admit or exclude evidence, and to exclude even relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice or confusion[.]") (citations omitted).

## II.     THE TIME RECORDS ARE IRRELEVANT

The Time Records are plainly irrelevant, as they have no tendency to make any "fact more or less probable than it would be without the evidence" and do not concern facts that are "of consequence in determining the action." FRE 401. Indeed, the Time Records provide no insight whatsoever as to Plaintiff's hours worked or the hours her comparators worked, and certainly not the quality of any Firm attorney's work. This is because attorneys were not required to use Defendants' timeclock, and as such often did not use it, and because Plaintiff and other Firm attorneys each spent considerable time out of the office at court appearances and depositions. *See* Ex. 65 at D11924 (Defendants' timekeeping policy, which states that it applies only to non-exempt employees); Ex. 68 (Hours Summary Reports for other attorneys at the Firm reflecting that they purportedly worked more than 40 hours extremely rarely, if at all); Plaintiff Dep. at 177:7-15 ("I wasn't an hourly employee, and I didn't clock in and out per hours that I worked. I would sometimes only clock in once a day at some point and clock out at some point. I wasn't hired to be an hourly employee, and I wasn't always there because I would be in court or [at] depositions."); *see also id.* at 157:12-24 ("[Q:] When you started back with Mr. Prakhin in 2018, was there any discussion regarding expectations for the amount of hours you should work per week? . . . . [A:] No. [Q:] What was your understanding of what the hour requirement was? . . . . [A:] I didn't believe there was one. Just the work had to be done.").

For the above-stated reasons, the Time Records also have no bearing on Defendants' termination decision. This is simple common sense, given that the Time Records were not used to monitor the hours worked of exempt employees, such as attorneys. Regardless, Prakhin

admitted at his deposition that Plaintiff's Time Records had no bearing on his termination decision. *See* Prakhin Dep. at 303:9-25 ("The punching machine which you are submitting [to] me right now as an Exhibit, this is a machine that we use mostly for paralegals, not for attorneys. But attorneys use this punch-in machine as well, but, however, it [does] not reflect the real hours they work. For example, if the attorney started the day in court, it couldn't be reflected in this punch-in machine. Therefore[,] I did not rely on this timesheet during my calculation [of Plaintiff's attendance to make the decision to fire her].").

Frankly, in light of the evidence in the record summarized *supra* at 1-4, there should be no reason for Plaintiff to have to make the instant motion. It is without question equally obvious to Defendants that the Time Records in no way relate to Plaintiff's hours worked or attendance, or the basis for Defendants' termination decision. As such, the Court should summarily preclude Defendants from introducing the Time Records into evidence at trial.

### III.  THE TIME RECORDS ARE INADMISSIBLE UNDER FRE 403

Even if the Court somehow finds that the Time Records are relevant, any minimal probative value is massively outweighed by the risks of unfair prejudice to Plaintiff, misleading the jury, confusing the issues, and wasting time. *See* FRE 403.

The unfair prejudice to Plaintiff here is obvious: if the Time Records are allowed into evidence, the jury will give them at least some weight when the Time Records should be given none. As outlined *supra* § II, attorneys were not required to use Defendants' time clock, and as such often did not use it. Moreover, the Time Records do not capture the considerable time Firm attorneys spent out of the office at court appearances and depositions. *See id.* Prakhin himself admits that Plaintiff's Time Records had no bearing on his termination decision and do not reflect attorneys' actual hours worked. *See* Prakhin Dep. at 303:9-25. If the Time Records are admitted into evidence, the jury will be provided and may rely upon an indisputably false and incomplete

6

record of Plaintiff's attendance and hours worked, thereby risking that they incorrectly believe the Time Records are accurate and, in turn, unfairly prejudicing the jury against Plaintiff. *See* Plaintiff Dep. at 177:7-15 (testifying that she generally "didn't clock in and out per hours that I worked" and only "sometimes" used Defendants' timeclock).

For the same reasons, introducing the Time Records into evidence will also mislead the jury and confuse the issues. Finally, allowing the Time Records will only serve to delay the conclusion of the trial and waste time by allowing misleading and potentially lengthy questioning regarding the Time Records, even though they in no way evince Plaintiff's time or attendance and, thus, have no bearing on Defendants' motive for firing Plaintiff.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court preclude Defendants from introducing the Time Records into evidence at trial, together with such other and further relief as the Court deems just and proper.

Dated: November 14, 2022
New York, New York

**FARUQI & FARUQI, LLP**

By: */s/ Innessa M. Huot*
Innessa M. Huot
Alex J. Hartzband
Camilo M. Burr
Annabel R. Stanley

685 Third Avenue, 26th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331
ihuot@faruqilaw.com
ahartzband@faruqilaw.com
cburr@faruqilaw.com
astanley@faruqilaw.com