**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YELENA RUDERMAN,<br><br>            Plaintiff,<br><br>      v.<br><br>LAW OFFICE OF YURIY PRAKHIN, P.C. and YURIY PRAKHIN, in both his individual and professional capacities,<br><br>            Defendants. | Civil Action No.: 1:19-cv-2987-CBA-RLM |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* NO. 8

## <u>TABLE OF CONTENTS</u>

DISCUSSION OF RECORD...................................................................................................... 1

ARGUMENT ........................................................................................................................... 5

   I.   LEGAL STANDARDS ................................................................................................ 5

   II.   THE CONFIDENTIAL DOCUMENTS ARE IRRELEVANT ...................................... 6

   III.   THE CONFIDENTIAL DOCUMENTS ARE INADMISSIBLE AFTER-ACQUIRED EVIDENCE ............................................................................. 7

   IV.   THE CONFIDENTIAL DOCUMENTS ARE INADMISSIBLE UNDER FRE 403 ................................................................................................................. 12

CONCLUSION ..................................................................................................................... 13

## **TABLE OF AUTHORITIES**

**Cases**                                                                                     **Page(s)**

*Ahing v. Lehman Bros.*,
   No. 94 Civ. 9027(CSH), 2000 WL 460443 (S.D.N.Y. Apr. 18, 2000) ..............................8, 10

*Ahmad v. Nassau Health Care Corp.*,
   234 F. Supp. 2d 185 (E.D.N.Y. 2002) ......................................................................................8

*Belvin v. Electchester Mgmt., LLC*,
   No. 17-cv-6303(NGG)(MMH), 2022 WL 10586743 (E.D.N.Y. Oct. 18, 2022) ...................13

*Blake-McIntosh v. Cadbury Beverages, Inc.*,
   No. 3:96-cv-2554(EBB), 1999 WL 643661 (D. Conn. Aug. 10, 1999) ...................................9

*Boyer v. Riverhead Cent. Sch. Dist.*,
   No. 05-4955(SJF)(AKT), 2006 WL 8441510 (E.D.N.Y. Oct. 5, 2006) ...................................8

*Gant v. Wallingford Bd. of Educ.*,
   195 F.3d 134 (2d Cir. 1999).....................................................................................................7

*Gierlinger v. Gleason*,
   160 F.3d 858 (2d Cir. 1998).....................................................................................................5

*McKennon v. Nashville Banner Publ'g Co.*,
   513 U.S. 352 (1995).......................................................................................................9, 11, 12

*Naylor v. Rotech Healthcare, Inc.*,
   No. 1:08-cv-95, 2009 WL 5206005 (D. Vt. Dec. 23, 2009).....................................................8

*Padilla v. Metro-N. Commuter R.R.*,
   92 F.3d 117 (2d Cir. 1996).....................................................................................................11

*Park W. Radiology v. CareCore Nat'l LLC*,
   547 F. Supp. 2d 320 (S.D.N.Y. 2008)....................................................................................13

*Sanders v. Madison Square Garden, L.P.*,
   No. 06 Civ. 589(GEL), 2007 WL 2254698 (S.D.N.Y. Aug. 6, 2007), *opinion
   withdrawn in part on reconsideration on other grounds*, 525 F. Supp. 2d 364
   (S.D.N.Y. 2007)......................................................................................................................11

*Shah v. James P. Purcell Assocs., Inc.*,
   No. 3:05-cv-00306(PCD), 2006 WL 1876662 (D. Conn. July 5, 2006).............................11, 12

*Sigmon v. Parker Chapin Flattau & Klimpl*,
   901 F. Supp. 667 (S.D.N.Y. 1995) ...........................................................................................8

*U.S. v. Kurland*,
    No. 20-CR-306(S-1)(NGG), 2022 WL 2669897 (E.D.N.Y. July 11, 2022) ..........................13

*Weiping Liu v. Indium Corp. of Am.*,
    No. 6:16-cv-0190(BKS)(TWD), 2019 WL 6310977 (N.D.N.Y. Nov. 25, 2019)......................8

**Other Authorities**

FRE 401 ...............................................................................................................................5, 6

FRE 403 .............................................................................................................................2, 5, 12

Plaintiff Yelena Ruderman ("Plaintiff"), by and through her undersigned counsel, Faruqi & Faruqi, LLP, hereby submits this memorandum of law in support of her Motion *in Limine* No. 8 to preclude Defendants Law Office of Yuriy Prakhin, P.C. (the "Firm") and Yuriy Prakhin ("Prakhin") (together, "Defendants") from referencing or introducing evidence at trial concerning Plaintiff's alleged retention of confidential documents after the end of her employment with Defendants.

## DISCUSSION OF RECORD

Plaintiff initially worked for Defendants from September 2012 through February 2017. *See* ECF No. 121 (the parties' Joint Pretrial Order ("JPTO")) at 6. After Plaintiff left the Firm for another opportunity, Prakhin recruited her back. *See id.*; Omnibus Declaration of Innessa M. Huot ("Huot Decl."), Exhibit 28[1] ("Plaintiff Dep.") at 135:15-138:2 (describing Prakhin's efforts to recruit her back to the Firm). Plaintiff returned to the Firm as an Associate in June 2018. *See* JPTO at 6.

On June 13, 2014—during Plaintiff's first term of employment with the Firm—Defendants provided her with a copy of the Firm's employee handbook, which was prepared in or around 2002. *See* Ex. 65 (the "2002 Handbook"); Ex. 3 ("Prakhin Dep.") at 140:6-24 (testifying that the employee handbook Plaintiff initially signed was drafted "[a]round 2002"). After providing Plaintiff with the 2002 Handbook, Defendants updated their employee handbook at least once, in approximately 2016 or 2017. *See* Ex. 66 (the "2016 Handbook") (together with the 2002 Handbook, the "Employee Handbooks"); Prakhin Dep. at 140:25-141:10 (testifying that the Firm's employee handbook was updated in "approximately, I would say 2017, '16").

---

[1] Unless otherwise noted, all exhibits to the Huot Decl. are hereinafter cited as "Ex. __."

When Plaintiff returned to the Firm in 2018, Defendants did not provide her with a copy of either the 2002 or the 2016 Handbook.  *See* Plaintiff Dep. at 145:14-21 ("[Q:] When you first started back with the [Firm], did you receive another copy of the handbook? [A:] No. . . . I knew nothing about it."), 217:25-218:10 ("The only time I used the employee handbook was in 2014, so I don't know [whether the Firm required medical documentation to support a reasonable accommodation request].  I don't know if it was even in effect when I worked there in 2018."). Defendants did not provide Plaintiff with a copy of 2016 Handbook (the operative employee handbook at the time) or the 2002 Employee Handbook at any point between her rehire and her termination six months later, either.  *See id.*  Prakhin himself admits that Plaintiff was never provided with a copy of the 2016 Handbook.  *See* Prakhin Dep. at 142:13-143:25 (testifying that the 2016 Handbook was provided only to employees who did not work at the Firm prior to the update, and that Defendants retained copies of all forms signed by employees acknowledging receipt of the 2016 Handbook); 2016 Handbook (produced without a signed acknowledgement form); *see also* Plaintiff's Motion *In Limine* No. 5 (seeking to preclude introduction of the Employee Handbooks into evidence as irrelevant, hearsay, and inadmissible under FRE 403).

The Firm's 2002 Handbook—which Plaintiff never received during the term of employment at issue in this action—states, in relevant part:

> Information about Company, its employees, customers, suppliers and vendors is to be kept confidential and divulged only to individuals within Company with a need to receive, and authorized to receive, such information. If in doubt as to whether information should be divulged, err in favor of not divulging information and discuss the situation with your supervisor.
>
> All records and files maintained by Company, in whatever form, are confidential and remain the property of Company. Records and files are not to be disclosed to any outside party in any manner without the express written permission of the Company.

Confidential information may not be removed from Company premises without express written authorization.

Employees will be required to enter into and strictly comply with a written confidentiality agreement as a condition of employment or continued employment.

2002 Handbook at D11932.[2]

In discovery, Plaintiff produced certain documents concerning the cases she handled at the Firm. These documents were emailed to Plaintiff's personal email account by Prakhin, Irene Gabo ("Gabo"), the Firm's former Managing Attorney, the Firm's other employees, opposing counsel, as well as by Plaintiff herself in order to prepare for out-of-office court appearances and depositions. *See* Exhibit 72 (compilation of "Confidential Documents");[3] Exhibit 38 ¶¶ 95-101. Plaintiff then retained the Confidential Documents after her employment with Defendants ended in accordance with her legal duty and obligation to preserve relevant evidence for litigation, given that she knew immediately that she intended to assert claims against Defendants. *See id.*

In the parties' JPTO, Defendants include the Confidential Documents on their exhibit list as Exhibit Nos. 29-30. *See* JPTO at 32. Plaintiff anticipates that Defendants will argue that Plaintiff's retention of the Confidential Documents justifies her termination, either by motivating Prakhin's decision to fire Plaintiff, or by treating the Confidential Documents as after-acquired evidence to support Prakhin's decision. Nothing in the record supports either argument.

First of all, as noted above, the 2002 Handbook was no longer in effect when Plaintiff resumed working at the Firm in 2018, and Plaintiff was never given a copy of the 2016 Handbook.

---

[2] Plaintiff was never asked to sign the "written confidentiality agreement" referenced in the 2002 Handbook, as evidenced by the fact that no such agreement was produced in discovery. *See* Huot Decl. ¶¶ 10-11.

[3] In their exhibit list, Defendants also include several documents as Exhibit No. 30, with the description, "Documents regarding the Firm's clients and cases retained by Plaintiff." JPTO at 32. This is inaccurate. Defendants' Exhibit No. 30 comprises documents produced to Plaintiff as part of this litigation, when Defendants were represented by prior counsel—not documents Plaintiff herself retained after the termination of her employment. *See* Huot Decl. ¶¶ 20-23.

*See supra* at 2.   Similarly, Plaintiff never signed the "written confidentiality" agreement contemplated by the 2002 Handbook (the only employee handbook of which Plaintiff was aware before Defendants' moved for summary judgment).  *See supra* at 3 n.2.

Moreover, the record is clear that attorneys and support staff at the Firm frequently removed physical case files and forwarded themselves electronic versions of the same in order to work on cases at night or over the weekends, and to adequately represent their clients at court appearances, conferences, or depositions.  *See, e.g.*, Ex. 71 ("Larssen Dep.") 12:17-24 ("[Q:] Do you still use [your personal email account] for any purpose? . . . [A:] I used that during COVID when we were working from home so I can e-mail myself at home some documents."). Conversely, Plaintiff only emailed herself the Confidential Documents (and did so for work-related reasons), never bringing any physical files home with her other than for a court appearance or deposition.  *See* Plaintiff Dep. 118:16-22 (Plaintiff retained the Confidential Documents "only to either do work at home or only for work related reasons"), 119:22-25 ("[Q:] So did you ever remove a physical file from the [Firm] other than, obviously, to go to court or a deposition[?] [A:] No, not that I know of, no."); Ex. 38 ¶ 97.

In fact, attorneys at the Firm, including Prakhin and Gabo, and other Firm employees regularly forwarded Plaintiff portions of clients' case files to her personal email account so that Plaintiff could have remote access to the same when she was out of the office.  *See* Ex. 72 at PLAINTIFF 000315-44 (email from Gabo to Plaintiff's personal email account attaching a portion of a client's case file); *id.* at PLAINTIFF 0000351-52 (same); *id.* at PLAINTIFF 0000346-47 (email from Gabo forwarding information concerning one of the Firm's cases to the personal email accounts of Plaintiff and another attorney); *id.* at PLAINTIFF 0000348-49 (email from Prakhin to Plaintiff's personal email account attaching a photograph from a client's case file); *id.* at PLAINTIFF 0000518-19 (same, but also sending the photograph to another individual outside of

the Firm); *id.* at PLAINTIFF 0000664-71 (Erica Larssen ("Larssen"), a paralegal at the Firm, forwarding case information to Plaintiff's personal email account); Ex. 73 (Larssen forwarding an email from opposing counsel to Plaintiff's personal email account).

Moreover, Prakhin could not have known that Plaintiff would retain the Confidential Documents post-termination at the time he decided to fire her. He has also admitted that Plaintiff's retention of Confidential Documents played no role in his decision to fire her. When asked as his deposition to explain why he decided to terminate Plaintiff's employment, Prakhin rattled off a laundry list of alleged nondiscriminatory reasons (and one expressly discriminatory reason) for firing Plaintiff, making no mention of her supposed retention of the Confidential Documents. *See* Ex. 3 ("Prakhin Dep.") at 273:8-276:12.

Defendants have not asserted any counterclaims against Plaintiff, much less a counterclaim based on her retention of the Confidential Documents. *See* ECF No. 9 (Defendants' Answer).

## ARGUMENT

## I.    LEGAL STANDARDS

Federal Rules of Evidence ("FRE") 401 and 402 proscribe the admission of irrelevant evidence. Evidence is considered relevant only if: (i) "it has any tendency to make a fact more or less probable than it would be without the evidence;" and (ii) "the fact is of consequence in determining the action." FRE 401.

Even relevant evidence should be excluded if its probative value is substantially outweighed by a danger of one or more of the following: (i) unfair prejudice; (ii) confusing the issues; (iii) misleading the jury; (iv) undue delay; (v) wasting time; or (vi) needlessly presenting cumulative evidence. FRE 403; *see also Gierlinger v. Gleason*, 160 F.3d 858, 871 (2d Cir. 1998) ("The trial court has considerable discretion in determining whether to admit or exclude evidence, and to exclude even relevant evidence if its probative value is substantially outweighed by the

danger of unfair prejudice or confusion[.]") (citations omitted).

## II.    THE CONFIDENTIAL DOCUMENTS ARE IRRELEVANT

The Confidential Documents are irrelevant, as they concern facts that are not "of consequence in determining the action" and—apart from establishing that Plaintiff inadvertently retained the Confidential Documents after her employment ended (and then was obligated to continue retaining them in light of her intention to assert the claims that form the basis of the instant lawsuit)—they do not have any "tendency to make a fact more or less probable than it would be without" introduction of the Confidential Documents.  FRE 401.

First, the 2002 Handbook was no longer in effect during the period of employment at issue, and Plaintiff was not made aware of the confidentiality policy in the 2016 Handbook during the relevant term of employment.  *See* Prakhin Dep. at 140:6-24, 140:25-141:10 (testifying that the Firm's employee handbook was updated in "approximately, I would say 2017, '16," well before Plaintiff resumed employment at the Firm in June 2018); Plaintiff Dep. at 145:14-21 ("[Q:] When you first started back with the [Firm], did you receive another copy of the handbook? [A:] No. . . . I knew nothing about it."), 217:25-218:10 ("The only time I used the employee handbook was in 2014, so I don't know . . . I don't know if it was even in effect when I worked there in 2018.").  In fact, Prakhin himself admits that Plaintiff was never provided with a copy of the 2016 Handbook. *See* Prakhin Dep. at 142:13-143:25 (testifying that the 2016 Handbook was only provided to employees who did not work at the Firm prior to the update, and that Defendants retained copies of all forms signed by employees acknowledging receipt of the 2016 Handbook); *see also* 2016 Handbook (produced without a signed acknowledgement form).  Moreover, Plaintiff never signed the "written confidentiality" agreement contemplated by the 2002 Handbook (the only employee handbook of which Plaintiff was aware before Defendants' moved for summary judgment).  *See supra* at 3 n.2.  Given Plaintiff's lack of awareness of the 2016 Handbook and Prakhin's admission

as to the same, the Confidential Documents and any testimony or evidence that Plaintiff breached Firm policies by retaining them are irrelevant.

Additionally, it is beyond dispute that Prakhin had no knowledge that Plaintiff retained the Confidential Documents—apart from those he sent to her personal email account himself (*see* Exs. 72-73)—and that Plaintiff's retention of Confidential Documents played no role in his decision to fire her. *See* Prakhin Dep. at 273:8-276:12 (listing his reasons for firing Plaintiff, making no mention of the Confidential Documents). Even setting aside Prakhin's testimony as to why he fired Plaintiff, to the extent Plaintiff breached a Firm policy, she did so only as a result of Prakhin's own breach or after she left the Firm. Therefore, the Confidential Documents *per se* played no role in the termination decision and, thus, are of no consequence to the jury's assessment of Defendants' reasons for firing Plaintiff.

The Confidential Documents are not relevant to any counterclaim, either, as Defendants have not alleged one. *See generally* ECF No. 9 (Defendants' Answer).

## III.    THE CONFIDENTIAL DOCUMENTS ARE INADMISSIBLE AFTER-ACQUIRED EVIDENCE

The Confidential Documents are also inadmissible after-acquired evidence. The after-acquired evidence doctrine holds that "an employer cannot escape liability based on evidence of the plaintiff's misconduct that would have justified her termination in any event, when the employer discovered such evidence after it had fired the plaintiff for discriminatory reasons." *Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 147 n.17 (2d Cir. 1999) (citing *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 360 (1995), the seminal case creating the after-acquired evidence doctrine).

Crucially, "[a]fter-acquired evidence is 'evidence of employee misconduct, such as criminal behavior, employer rule infractions, malpractice and the like, committed *during the*

*course of employment*, of which the employer became aware only after the employee's termination." *Boyer v. Riverhead Cent. Sch. Dist.*, No. 05-4955(SJF)(AKT), 2006 WL 8441510, at *1 (E.D.N.Y. Oct. 5, 2006) (quoting *Ahmad v. Nassau Health Care Corp.*, 234 F. Supp. 2d 185, 195 (E.D.N.Y. 2002) (emphasis in original). "In wrongful termination claims alleging discrimination, liability depends on the employer's intent in the moment of firing. After-acquired evidence therefore is irrelevant and cannot be used as a defense to liability." *Naylor v. Rotech Healthcare, Inc.*, No. 1:08-cv-95, 2009 WL 5206005, at *1 (D. Vt. Dec. 23, 2009).

Here, Defendants take issue with Plaintiff's retention of the Confidential Documents post-termination. *See supra* at 4. Therefore, the Confidential Documents are *per se* irrelevant, given that "liability depends on the employer's intent in the moment of firing." *Naylor*, 2009 WL 5206005 at *1. Courts that have encountered similar evidentiary disputes concerning after-acquired evidence have consistently reached the same conclusion. *See, e.g.*, *Weiping Liu v. Indium Corp. of Am.,* No. 6:16-cv-0190(BKS)(TWD), 2019 WL 6310977, at *2 (N.D.N.Y. Nov. 25, 2019) (granting motion *in limine* to preclude introduction of after-acquired evidence at trial because "the weight of authority precludes the admission of post-termination misconduct"); *Ahmad*, 234 F. Supp. 2d at 195 (after-acquired evidence "may not be used to justify Plaintiff's termination, since at the time of termination Defendants were not aware of these misrepresentations"), *aff'd*, 71 F. App'x 98 (2d Cir. 2003); *Ahing v. Lehman Bros.*, No. 94 Civ. 9027(CSH), 2000 WL 460443, at *11-12 (S.D.N.Y. Apr. 18, 2000) (precluding the use of omissions on job applications and poor job performance as justifications for termination when that evidence was not known at the time of the termination); *Sigmon v. Parker Chapin Flattau & Klimpl*, 901 F. Supp. 667, 683 (S.D.N.Y. 1995) ("[D]efendant and plaintiff were not in an employer-employee relationship at the time of the alleged incident. Therefore any complaint defendant has against plaintiff for her post-employment conduct falls outside of the *McKennon* rule[.]").

While after-acquired evidence may provide a defense to front pay damages (*see McKennon*, 513 U.S. at 362-63), the Confidential Documents are inadmissible for this purpose as well. As a preliminary matter, application of the after-acquired evidence doctrine, even for damages purposes, still requires that the alleged act was committed during the employment relationship. *See Blake-McIntosh v. Cadbury Beverages, Inc.*, No. 3:96-cv-2554(EBB), 1999 WL 643661, at *16 (D. Conn. Aug. 10, 1999) ("The after-acquired evidence doctrine limits damages when an employer discovers evidence of prior employee misconduct after the employee's actual or constructive discharge, if that misconduct is 'of such severity that the employee would have been terminated on those grounds alone *if the employer had known of it at the time of discharge*.'") (quoting *McKennon*, 513 U.S. at 362-63) (emphasis added). Here, Defendants take issue with Plaintiff's retention of the Confidential Documents after Defendants terminated her employment. *See supra* at 7-8. While they clearly knew that Plaintiff retained the Confidential Documents on her personal device during her employment (as Prakhin himself emailed Confidential Documents to Plaintiff's personal email account), Defendants could not possibly have known at the time of discharge that Plaintiff would later retain the Confidential Documents after her employment with Defendants ended.

Even if Defendants take the position that Plaintiff breached Firm policy by sending herself the Confidential Documents during her employment, the Confidential Documents are still inadmissible. To set forth a cognizable defense on this point at trial, Defendants must show that Plaintiff's retention of Confidential Documents was both unknown at the time of discharge and "of such severity that the employee would have been terminated on those grounds alone[.]" *McKennon*, 513 U.S. at 353. Defendants fall short on both points.

First, it is beyond dispute that Prakhin did, in fact, know that Plaintiff held at least some of the Confidential Documents in her personal email account during her employment. Accessing

9

case-related documents in this manner was so common that Prakhin must have known about it (*see supra* at 3-4)—and, crucially, Prakhin emailed some of the Confidential Documents to Plaintiff's personal email account himself.  *See* Ex. 72 at PLAINTIFF 0000348-49 (email from Prakhin to Plaintiff's personal email account attaching a photograph from a client's case file); *id.* at PLAINTIFF 0000518-19 (same, but also sending the photograph to another individual outside of the Firm); *see also* Prakhin Dep. at 284:6-10 ("[Q:] Did you make the decision to fire Ms. Ruderman alone?  [A:] Yes.  [Q:] Did anyone else have any input?  [A:] No.  Alone.").  Any suggestion that Prakhin did not know that Plaintiff retained the Confidential Documents during her employment would be facially absurd.  *See Ahing*, 2000 WL 460443 at *12 (rejecting application of the after-acquired evidence doctrine because "[b]y its very nature, Lehman must have had knowledge of this evidence before plaintiff was terminated because much of it was generated by the very supervisor who fired her and the rest of it by other Lehman employees" and describing that argument that this information was discovered only post-termination as "baffling").

Moreover, as outlined above, Firm employees—including Prakhin himself—regularly sent case-related documents to personal email accounts, including those of individuals who did not even work at the Firm.  *See* Larssen Dep. at 12:17-24 ("[Q:] Do you still use [your personal email account] for any purpose? . . . [A:] I used that during COVID when we were working from home so I can e-mail myself at home some documents."); Ex. 72 at PLAINTIFF 000315-44 (email from Gabo to Plaintiff's personal email account attaching a portion of a client's case file); *id.* at PLAINTIFF 0000351-52 (same); *id.* at PLAINTIFF 0000346-47 (email from Gabo forwarding information concerning one of the Firm's cases to the personal email accounts of Plaintiff and another attorney); *id.* at PLAINTIFF 0000348-49 (email from Prakhin to Plaintiff's personal email account attaching a photograph from a client's case file); *id.* at PLAINTIFF 0000518-19 (same, but also sending the photograph to another individual outside of the Firm); *id.* at PLAINTIFF

0000664-71 (Erica Larssen ("Larssen"), a paralegal at the Firm, forwarding case information to Plaintiff's personal email account; Ex. 73 (Larssen forwarding an email from opposing counsel to Plaintiff's personal email account).

This leaves no question that Prakhin did not consider Plaintiff's retention of the Confidential Documents during her employment to be an issue, let alone an infraction "of such severity that the employee would have been terminated on those grounds alone." *McKennon*, 513 U.S. at 353; *see also Shah v. James P. Purcell Assocs., Inc.*, No. 3:05-cv-00306(PCD), 2006 WL 1876662, at *2 n.3 (D. Conn. July 5, 2006) ("*McKennon* assumes that the offense in question is truly a firing offense.  Defendant must be prepared to establish this as well.") (quotation marks and citation omitted).

Given that the practice of sending case files to personal email accounts was ubiquitous (so much so that Prakhin did it himself), there is unsurprisingly nothing in the record to suggest that this provides a basis for termination, either under Firm policy or in practice.  *See Padilla v. Metro-N. Commuter R.R.*, 92 F.3d 117, 124-25 (2d Cir. 1996) ("[D]espite their assertions that the prospect of Padilla returning as superintendent of train operations was troubling, neither Nelson nor Sinigiani stated that, if Padilla had remained as superintendent, his making of a false statement to the EEOC would have led to his demotion for that reason alone. Nor is there evidence that Metro-North had a policy in which it demoted managers for making such false statements, or that a manager had ever been demoted for this reason in the past."); *Sanders v. Madison Square Garden, L.P.*, No. 06 Civ. 589(GEL), 2007 WL 2254698, at *11 (S.D.N.Y. Aug. 6, 2007) (rejecting application of after-acquired evidence doctrine in part because "Browne Sanders provides evidence that other employees—including Thomas and Dolan—have violated MSG policies in the past but were not terminated as a result of their violations"), *opinion withdrawn in part on reconsideration on other grounds*, 525 F. Supp. 2d 364 (S.D.N.Y. 2007).

11

**IV.**   **THE CONFIDENTIAL DOCUMENTS ARE INADMISSIBLE UNDER FRE 403**

Even if the Court finds that the Confidential Documents are relevant and admissible, any minimal probative value of the Confidential Documents is far outweighed by the risks of prejudice to Plaintiff, confusing the issues, misleading the jury, undue delay, and wasting time.  *See* FRE 403.  Therefore, the Confidential Documents are inadmissible.

By allowing the Confidential Documents into evidence, the Court will unfairly prejudice Plaintiff by allowing Defendants to take an innocent act of sending documents to a personal email account to work remotely—a practice in which Prakhin himself and his former Managing Attorney themselves engaged regularly (*see* Ex. 72 at PLAINTIFF 000315-44 (email from Gabo to Plaintiff's personal email account attaching a portion of a client's case file); *id*. at PLAINTIFF 0000351-52 (same); *id*. at PLAINTIFF 0000346-47 (email from Gabo forwarding information concerning one of the Firm's cases to the personal email accounts of Plaintiff and another attorney); *id*. at PLAINTIFF 0000348-49 (email from Prakhin to Plaintiff's personal email account attaching photograph from a client's case file); *id*. at PLAINTIFF 0000518-19 (same, but also sending the photograph to another individual outside of the Firm)—and exaggerate it into somehow constituting a fire-able offense.  *See Shah*, 2006 WL 1876662 at *2 n.3 ("*McKennon* assumes that the offense in question is truly a firing offense.  Defendant must be prepared to establish this as well.").  This unfair prejudice will be compounded by the facts that the conduct at issue post-dates Plaintiff's termination and that Plaintiff was never even made aware of the policy Defendants claim she violated.  *See supra* at 1-2, 4.

For similar reasons, allowing the Confidential Documents into evidence will mislead the jury and confuse the issues by bringing in documents and information Prakhin indisputably did not have when he fired Plaintiff, and policies of which Plaintiff was unaware, into the record.  *See supra*.

Further, allowing Defendants to introduce the Confidential Documents at trial presents considerable risks of wasting time.  If the Court allows this to be covered at trial, Plaintiff's cross-examination may very well turn into a side show, with lengthy questioning regarding the irrelevant Confidential Documents, which would quickly turn into a mini-trial of its own and distract from the real issues.  *See, e.g.*, *Park W. Radiology v. CareCore Nat'l LLC*, 547 F. Supp. 2d 320, 322 (S.D.N.Y. 2008) ("Defendants demand would risk turning the trial of this case into a multi-ringed sideshow of mini-trials on collateral issues pertaining to the conduct and relationships of third parties that may have only tangential bearing, if at all, to the issues and claims disputed in this case."); *see also Belvin v. Electchester Mgmt., LLC*, No. 17-cv-6303(NGG)(MMH), 2022 WL 10586743, at *5 (E.D.N.Y. Oct. 18, 2022) ("It would be a poor use of judicial resources and the parties' time to conduct a mini-trial focused on determining whether EML is responsible for Gambrell's statements" and risks "confus[ing] the jury, who is asked to determine whether Plaintiffs were subjected to a hostile work environment[.]"); *U.S. v. Kurland*, No. 20-CR-306(S-1)(NGG), 2022 WL 2669897, at *6 (E.D.N.Y. July 11, 2022) ("The court will [ ] not hold a mini-trial . . . involving different legal issues would create substantial and unfair prejudice, and would risk the jury confusing the issues.").

**CONCLUSION**

13

For the foregoing reasons, the Court should preclude Defendants from introducing the Confidential Documents into evidence at trial, together with such other and further relief as the Court deems just and proper.

Dated: November 14, 2022              **FARUQI & FARUQI, LLP**
       New York, New York

                                      By: */s/ Innessa M. Huot*
                                          Innessa M. Huot
                                        Alex J. Hartzband
                                        Camilo M. Burr
                                        Annabel R. Stanley

                                     685 Third Avenue, 26th Floor
                                     New York, New York 10017
                                     Tel: 212-983-9330
                                     Fax: 212-983-9331
                                     ihuot@faruqilaw.com
                                     ahartzband@faruqilaw.com
                                     cburr@faruqilaw.com
                                     astanley@faruqilaw.com

                                     *Attorneys for Plaintiff*

14