# Exhibit A

10

```
 1   ROUGH TRANSCRIPT - PETER COATS
 2   Prakhin involving the allegation that you
 3   were asked unethically and illegally to
 4   change SAGA records concerning Yelena
 5   Ruderman?
 6           MR. BARTELS:  Objection to form.
 7           You can answer.
 8      A.   Ruderman and other attorneys
 9      Q.   When did you first retain
10   counsel to represent you in that lawsuit?
11      A.   I believe June or July of 2022.
12      Q.   What was the name of the
13   attorney that you retained?
14      A.   Paul Bartels.
15      Q.   How were you referred to
16   Mr. Bartels?
17      A.   I had a conversation with
18   Innessa the attorney for Faruqi & Faruqi.
19           MR. BARTELS:  Just hold on.  I
20      want to be clear that my understanding
21      is that at some point in time
22      Mr. Coates did have a consultation
23      with Faruqi regarding potential
24      representation and those
25      conversations would be covered by
```

```
 1   ROUGH TRANSCRIPT - PETER COATS
 2          MR. BARTELS:  Peter again we're
 3      going to attorney/client privilege you
 4      can talk about who you met with where
 5      you met with them but you shouldn't.
 6      I don't think Mr. Dilorenzo is asking
 7      for that either.
 8          MR. DILORENZO:  Well I'm not
 9      talk is --
10      Q.   Is that the first time you met
11  with the firm?
12      A.   I only met with the firm spoke
13  with the firm once on the phone and once
14  in person.
15      Q.   When was it that the decision
16  was made that they weren't going to
17  represent you when the consultation was
18  over was it between the two meetings?
19      A.   About two weeks after the
20  meeting in the office.
21      Q.   Was that the first meeting?
22      A.   The first meeting -- when you
23  say meeting I'm assuming you mean
24  discussion first discussion meeting was
25  with Innessa on the phone.  Second
```

```
 1   ROUGH TRANSCRIPT - PETER COATS
 2   saw the word Ruderman I immediately
 3   thought I know who that is, I took over
 4   several of her cases, and then I looked
 5   and I saw that Ruderman was suing Prakhin
 6   for discrimination and it was for
 7   discrimination and for problems, the same
 8   problems I was having.
 9       Q.    You didn't have any
10   disabilities, did you?
11           MR. BARTELS:  Objection to form.
12       A.    No I don't have any
13   disabilities.
14       Q.    Do you know anybody in the
15   office any employees in the office.
16   Attorneys, paralegals or staff that had
17   disabilities while you were there?
18           MR. BARTELS:  Objection to form.
19           You can answer.
20       A.    I don't know of any
21   disabilities of other people.
22       Q.    Paragraph 24, shortly after
23   witnessing IT Solutions delete the SAGA
24   entries, that's your reference to the
25   Sasha that night?
```

```
 1   ROUGH TRANSCRIPT - PETER COATS
 2      A.   What do you mean by that night?
 3      Q.   Is there are there any other
 4   times that you saw IT solutions allegedly
 5   delete SAGA entries other than the night
 6   you sat next to Sash on August 30th?
 7      A.   They came in on other nights
 8   and got on my machine and I don't know
 9   what they were doing but I know that they
10   did things and things were moved into a
11   folder called "Ben."
12      Q.   Other than moving things into a
13   folder called "Ben" do you know what they
14   did?
15      A.   What do you mean?
16      Q.   You said they came on other
17   nights.
18           How many other nights did they
19   come in?
20      A.   Many many other nights.
21      Q.   Go ahead?
22      A.   Which paragraph?  I don't know
23   what you mean.
24      Q.   Paragraph 24.  It was your
25   testimony not a paragraph.  You said that
```

```
 1    ROUGH TRANSCRIPT - PETER COATS

 2    -- when you refer to notes I assume you

 3    mean the ten or 11 notebooks?

 4         A.   Yes.

 5         Q.   Is there any other notes -- is

 6    there any other documents including in

 7    your term notes?

 8         A.   Oh, well in notes, no but

 9    documentation.

10         Q.   I asked you about documents?

11         A.   Go ahead.

12         Q.   So there's no other notes --

13    you referenced the notes as the

14    notebooks?

15         A.   The notebooks are the notes.

16         Q.   Go ahead?

17         A.   And then I kept another

18    notebook of settlements.

19         Q.   That's in addition to the ten

20    or 11 that were the daily record?

21         A.   Yes.  And then I kept a

22    notebook of how to operate the logins the

23    passwords the names of people, their

24    phone numbers, I called that one

25    operations on the front of every yellow
```

```
 1    ROUGH TRANSCRIPT - PETER COATS
 2    pad -- on the front of every spiral
 3    notebook I wrote what's inside the
 4    notebook.
 5        Q.    And paragraph 75 also mentions
 6    other documentation what do you have in
 7    the way of other documentation?
 8        A.    Those are the assignment sheets
 9    that you would get at 4:45 from Raskin.
10        Q.    Do you have all of those or
11    most of those?
12        A.    I think I have most of them.
13        Q.    For all ten months, 8 or 9 or
14    ten months?
15        A.    Yes I think so.
16        Q.    Why did you keep those?
17        A.    I always thought you were
18    supposed to.  If it's something you were
19    assigned it's something you should keep
20    track of what you were assigned on that
21    day.  It's easier than throwing it away.
22        Q.    Did you have the documentation
23    -- is there anything else included in the
24    documentation besides the case
25    assignments at four o'clock?
```

```
 1    ROUGH TRANSCRIPT - PETER COATS
 2   with them about the notebook other than
 3   the time that you were consulting with
 4   them?
 5        A.    Well, what do you mean when I
 6   was consulting with them?
 7        Q.    When did you give them the
 8   notebooks?
 9        A.    In the initial visit that I
10   made to their office.  I made one visit
11   to their office near Grand Central
12   Station.
13        Q.    And you brought all the
14   notebooks with you?
15        A.    Yes.
16        Q.    How long did you leave them
17   there before they were returned to you?
18        A.    They were returned maybe in
19   seven days.
20        Q.    Since then they've been in your
21   apartment?
22        A.    Yes.
23        Q.    Have you given them to your
24   current attorney?
25             MR. BARTELS: Objection.  Again
```

```
 1    ROUGH TRANSCRIPT - PETER COATS
 2       we're engaging in discovery.
 3           MR. DILORENZO:  That's what this
 4       deposition is called.  It's exactly
 5       right.  We'll stipulate we're engaging
 6       in discovery.
 7           MR. BARTELS:  Are you
 8       representing the law firm in
 9       Mr. Coates' case?  I just want to
10       clarify that for the record.
11           MR. DILORENZO:  You know that,
12       don't you.
13           MR. BARTELS:  Are you
14       representing --
15           MR. DILORENZO:  I'm not
16       representing him.  Which case are you
17       representing him, the Ruderman case or
18       his case?
19           MR. BARTELS:  I'm representing
20       him in his case.
21           MR. DILORENZO:  Okay.  So you
22       did get discovery demands concerning
23       those notebooks back in December,
24       correct?
25
```