**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

**YELENA RUDERMAN,**

                                        **Plaintiff,**

        **- against -**

**LAW OFFICE OF YURIY PRAKHIN,**
**P.C., and YURIY PRAKHIN, ESQ.** *in both*
*his individual and professional capacities*,

                                        **Defendants.**

---

**Case No. 19-cv-02987 (CBA) (LB)**

 

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION FOR JUDGMENT AS A MATTER OF LAW**

 

**Bond Schoeneck & King, PLLC**
600 Third Avenue, 22nd Floor
New York, New York 10016
(646) 253-2300
*Attorneys for Defendant Law Office of*
*Yuriy Prakhin, P.C.*

Of Counsel:

        Louis P. DiLorenzo, Esq.
        Mary Ellen Donnelly, Esq.
        Mallory A. Campbell, Esq.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

RELEVANT FACTS ..................................................................................................... 2

POINT I        LEGAL STANDARD ..........................................................................5

POINT II       THE FIRM IS ENTITLED TO JUDGMENT AS A MATTER OF
               LAW.................................................................................................6

        A.      Plaintiff did not Prove Disability Discrimination ............................... 6

               1.      Plaintiff did not Prove that the Firm had Notice of a
                       Disability ............................................................................... 7

               2.      Plaintiff did not Prove she could Perform the Essential
                       Functions of the Job.............................................................. 8

                       i.       Regular Attendance...................................................... 9

                       ii.      Settlements................................................................. 13

                       iii.     Client Communication................................................. 15

                       iv.      Management of Cases and Oversight of Paralegals.................. 19

               3.      No Reasonable Juror Could Have Found Sufficient Evidence
                       to Establish a Failure to Accommodate Claim ....................................... 22

                       i.       The Firm Discharged its Duty to Provide Plaintiff with a
                                Reasonable Accommodation ...................................................... 23

                       ii.      No Reasonable Juror Could Find that Plaintiff Requested
                                that the Firm Purchase Any Assistive Device .......................... 25

                       iii.     Plaintiff Failed to Demonstrate that She Could Have
                                Been Reasonably Accommodated ............................................. 27

        B.      The Firm Proved that it Terminated Plaintiff's Employment for
                Legitimate, Non-Discriminatory Reasons......................................... 29

POINT III      PLAINTIFF IS NOT ENTITLED TO PUNITIVE DAMAGES ....................30

CONCLUSION ........................................................................................................ 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aquinas v. Fed. Express Corp.*,
  940 F. Supp. 73 (S.D.N.Y. 1996) ............................................................9

*Bell v. Hercules Liftboat Co., LLC*,
  524 Fed.Appx. 64 (5th Cir. 2013)...........................................................29

*Bohen v. Potter*,
  No. 04-CV-1039S, 2009 WL 791356 (W.D.N.Y. Mar. 23, 2009) ...........................................8

*Bronzini v. Classic Sec. LLC*,
  Nos. 07 Civ. 11104(HB), 08 Civ. 475(HB), 2009 WL 102140
  (S.D.N.Y. Jan. 15, 2009)......................................................................30

*Chauca v. Abraham*,
  30 N.Y.3d 325 (N.Y. 2017) ..................................................................30

*Ciullo v. Yellow Book, USA, Inc.*,
  2012 WL 2676080 (E.D.N.Y. 2012)........................................................23

*Disanto v. McGraw-Hill, Inc.*,
  220 F.3d 61 (2d Cir. 2000)...................................................................28

*Durick v. N.Y.C. Dept. of Educ.*,
  202 F. Supp.3d 277 (E.D.N.Y. 2016) .....................................................25

*Epoch Prod. Corp. v. Killiam Shows, Inc.*,
  522 F. 2d 737 (2d Cir. 1975)..................................................................6

*Fagan v. United Int'l Ins. Co.*,
  128 F. Supp. 2d 182 (S.D.N.Y. 2001)......................................................7

*Fall v. N.Y.S. United Teachers*,
  289 Fed. Appx. 419 (2d Cir. 2008) ........................................................29

*Francis v. Wyckoff Heights Med. Ctr.*,
  177 F. Supp. 3rd 754, 767 (E.D.N.Y 2016) ..............................................6

*Frantti v. New York*,
  414 F. Supp. 3d 257 (N.D.N.Y. 2019), *aff'd sub nom.*, 2021 WL 864706
  (2d Cir. Mar. 9, 2021) ........................................................................24

*Harris v. Niagra Mohawk Power Corp.*,
  252 F.3d 592 (2d Cir. 2001)...................................................................6

*House v. Wackenhut Servs.*,
  No. 10 Civ. 9476 (CM) (FM), 2012 WL 4017334 (S.D.N.Y. Aug. 20, 2012) ......................30

*Hunt-Watts v. Nassau Health Care Corp.*,
  43 F.Supp.3d 119 (E.D.N.Y. 2014) ........................................................................................8

*Jackan v. N.Y.S. Dep't of Labor*,
  205 F.3d 562 (2d Cir. 2000).................................................................................................28

*Jones v. N.Y.C. Transit Auth.*,
  2020 WL 1550582 (E.D.N.Y. Mar. 31, 2020), *aff'd sub nom.*,
  2021 WL 864694 (2d Cir. Mar. 9, 2021) ...............................................................................6

*Kemer v. Johnson*,
  990 F.Supp. 677 (S.D.N.Y. 1995) ........................................................................................24

*Khalil v. Pratt Inst.*,
  16-CV-6731 (JFB)(SIL), 2017 WL 8813136 (E.D.N.Y. Dec. 11, 2017) ...............................26

*Lazzari v. N.Y.C. Dep't of Parks & Recreation*,
  751 Fed. Appx. 100 (2d Cir. 2018)......................................................................................22

*Lewis v. N.Y.C. Police Dep't*,
  908 F. Supp. 2d 313 (E.D.N.Y. 2012), *aff'd sub nom.*, 537 F. App'x 11
  (2d Cir. 2013).......................................................................................................................9

*MacEntee v. IBM*,
  783 F. Supp. 2d 434 (S.D.N.Y. 2011) ....................................................................................7

*Macropoulous v. Metro. Life Ins. Co.*,
  15 Civ. 6096 (ER), 2018 WL 1508564 (S.D.N.Y. 2018) ......................................................29

*McBride v. BIC Consumer Prods. Mfg. Co., Inc.*,
  583 F.3d 92 (2d Cir. 2009)....................................................................................................8

*McMillan v. City of N.Y.*,
  711 F.3d 120 (2d Cir. 2013)...................................................................................................8

*Meling v. St. Francis College*,
  No. 95-CV-3739 JG, 1997 WL 1068681 (E.D.N.Y Apr. 1, 1997).........................................11

*Miller v. City of Ithaca*,
  914 F.Supp.2d 242 (N.D.N.Y. 2012) ......................................................................................6

*Moore v. Time Warner GRC*
  9, 18 F.Supp.2d 257 (W.D.N.Y. 1998) ...................................................................................7

*Pacenza v. IBM Corp.*,
　No. 04 Civ. 5831 (PGG), 2009 WL 890060 (S.D.N.Y. Apr. 2, 2009), *aff'd*,
　363 F. App'x 128 (2d Cir. 2010) ...................................................................................7

*Pierce v. Highland Falls-Fort Montgomery Cent. Sch. Dist.*,
　Court No. 08-civ-1948 (RKE), 2011 WL 4526520, at *5
　(S.D.N.Y. Sept. 28, 2011) ............................................................................................9

*Pimental v. Citibank, N.A.*,
　811 N.Y.S.2d 381 (1st Dep't 2006) .............................................................................23

*Romanello v. Intesa Sanpaolo S.P.A.*,
　97 A.D.3d 449, 949 N.Y.S.2d 345 (1st Dep't 2012), *aff'd as modified*,
　22 N.Y.3d 881 (2013) ..................................................................................................24

*Shepheard v. N.Y.C. Corr. Dep't*,
　360 Fed. Appx. 249 (2d Cir. 2010) ...............................................................................6

*Suvada v. Gordon Flesch Co.*,
　No. 11 C 07892, 2013 WL 5166213 (N.D. Ill, Sept. 13, 2013) ..................................28

*Thompson v. City of New York*,
　No. 98 Civ. 4725 (GBD), 2002 WL 31760219 (S.D.N.Y. Dec. 9, 2002) ..............24, 25

*United States v. Real Property Known as 77 East 3rd Street, New York, N.Y.*,
　869 F. Supp. 1042 (S.D.N.Y. 1994) ..............................................................................6

*Vangas v. Montefiore Med. Ctr.*,
　6 F. Supp. 3d 400 (S.D.N.Y. 2014) .............................................................................23

*Weissman v. Dawn Joy Fashions, Inc.*,
　214 F.3d 224 (2d Cir 2000) ..........................................................................................31

*Whalen v. City of Syracuse*,
　No. 5:11-CV-0784, 2014 WL 3529976 (N.D.N.Y. July 5, 2014) ................................28

*Young v. Nassau Univ. Med. Ctr.*,
　No. 10-cv-00649 (JFB) (ARL), 2011 WL 6748500 (E.D.N.Y. Dec. 22, 2011) ...........30

## Statutes

Americans with Disabilities Act ("ADA") ............................................................ *passim*

New York City Human Rights Law ..............................................................................1

iv

**Other Authorities**

29 C.F.R. § 1630.2(n)(1) ................................................................................................8

Fed. R. Civ. P. 50(b) .....................................................................................................5

Rule 50 ...........................................................................................................................6

## PRELIMINARY STATEMENT

Defendant Law Office of Yuriy Prakhin, P.C. (the "Firm"), files this motion for a judgment as a matter of law ("JMOL") on Plaintiff's claims of disability discrimination and failure to accommodate under the Americans with Disabilities Act ("ADA"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL") (collectively "Disability Claims"). At trial, the jury improperly returned a verdict for Plaintiff on her Disability Claims and awarded her back pay, front pay, emotional distress damages and punitive damages in the total amount of $1,735,000.

This case presents a perfect example of a miscarriage of justice. The jury returned a verdict based on emotion and prejudice, not the evidence submitted at trial. Quite simply, the verdict was wrong as a matter of law. Plaintiff failed to produce evidence at trial necessary for a reasonable trier of fact to conclude that: (1) she was a qualified person with a disability; (2) the Firm refused to accommodate Plaintiff; (3) she could have been reasonably accommodated; and (4) the Firm terminated her employment for any unlawful reasons, as opposed to Plaintiff's inability to perform the essential functions of her position.

It was Plaintiff's burden to demonstrate at trial that (1) she was able to perform the essential functions of her position, with or without a reasonable accommodation, at the time that her employment with the Firm was terminated; (2) she requested an accommodation that would have enabled her to perform the essential functions of her position; (3) the Firm refused to provide Plaintiff with reasonable accommodation; and (4) there was in fact an accommodation that would have enabled Plaintiff to perform the essential functions of her position during her employment with the Firm. As Plaintiff failed to meet her evidentiary burden in this case, the Firm should be granted judgment as a matter of law.

## RELEVANT FACTS[1]

The Firm rehired Plaintiff in June 2018.  (Tr. pp. 91:12-13, 416:3-5).  At the time that Plaintiff was rehired, Mr. Prakhin offered Plaintiff an increased salary of $100,000. (Tr. pp. 416:22, 416:22, 417:1-25).  Plaintiff was also eligible to receive discretionary bonuses of five percent (5%) of the Firm's fee for all cases she settled.  (*Id.*).  At trial, Plaintiff testified that she began to experience problems with her vision in September 2018 shortly after she was rehired by the Firm. (Tr. p. 65:15-17). Plaintiff requested days off from work to attend doctor's appointments. Plaintiff acknowledged that at no time did she submit a written request for time off from work nor did she submit any medical documentation in support of her request for time off from work. (Tr. p. 251:2-15; 252:1-5). The Firm maintains an Employee Handbook which requires employees to submit medical documentation in connection with any absences from work. (**Exhibit ZZ** to Campbell Dec.). Despite Plaintiff's failure to provide any written request or medical documentation, the Firm accommodated Plaintiff's request for time off from work. Plaintiff was provided with a leave of absence in October 2018 (Tr. pp. 661-3; 115:19-25; 433:22, 434:18). Plaintiff again requested time off from work in November 2018. (Tr. pp. 66:1-3; 141:13; 142:15). Again, Plaintiff did not put the request in writing, nor did she submit any medical documentation in connection with her request for time off from work. (Tr. p. 251:2-15). The Firm accommodated Plaintiff's second request and provided Plaintiff with an additional leave of absence in November 2018. (Tr. pp. 141:13, 142:15, 184:10-20, 251:2-15).  Between September 24, 2018, and December 14, 2018, Plaintiff was absent from work a total of 28 days out of the 59 workdays, (**Exhibit UU**

---

[1] As used herein, "Tr.." refers to the trial transcript from the trial conducted in this matter from February 6, 2023 through February 16, 2023.  "Defendants' Trial Ex." And "Plaintiff's Trial Ex." refers to exhibits introduced by Defendants and/or Plaintiff at trial.

to Campbell Dec.).  Many times the Firm had no advance notice that Plaintiff would be absent from work. (Tr. Pp. 463:15-25, 464:1-13, 569:1-14,599:11-17).

Although Plaintiff did not provide any medical documentation to the Firm, despite repeated requests to do so, the Firm did in fact provide numerous accommodations to Plaintiff including: (1) two leaves of absence; (2) enlargement of the font on her office computer; (3) a magnifying device to assist her in reading documents; (4) approval of Plaintiff's request to purchase a magnifier; (5) granting Plaintiff's request to install software on her computer to assist her in the performance of her job responsibilities; and (6) offering Plaintiff a disability leave of absence. (Tr. pp. 381:7-13; 452:2-3; 456:21-25; 457:1-2; 480:20-25; 1380:18-19). The Firm provided the accommodations which were actually requested by Plaintiff and offered the additional accommodation of a disability leave. Plaintiff acknowledged in her sworn statement to the Equal Employment Opportunity Commission ("EEOC"), that she was researching other "potential accommodations," which she purchased on her own and did not "ask the Firm to foot the bill as [she] explored new accommodations...." (**Exhibit TT** to Campbell Dec.).

Plaintiff's treating physician, Dr. Pillai, acknowledged that Plaintiff never requested any medical documentation from her to submit to the Firm. Further, Dr. Pillai indicated that while she recommended the ORCAM device to Plaintiff, she herself was not familiar with it, had never seen it and did not have knowledge of whether it would assist Plaintiff in the performance of her job responsibilities. (Tr. pp. 517:17-25). Plaintiff ultimately advised Dr. Pillai that the OrCam glasses did not work well for her, and she did not continue to use it. (Tr. p. 518:15-21). Notably, during her testimony, Dr. Pillai never identified any accommodation that would have enabled Plaintiff to perform the essential functions of her job as a Plaintiff's personal injury attorney.  The testimony and documentary evidence submitted at trial further demonstrated that Plaintiff did not in fact find

15717265.2 3/24/2023

any accommodation that would have enabled her to perform the essential responsibilities of her positions as a full time Plaintiff's personal injury attorney.  Rather, in April 2021, two years after the termination of her employment with the Firm, Plaintiff discovered assistive devices and software that enabled her to perform her responsibilities as an per diem attorney.  (Tr. p. 1265:2-7).

In an attempt to buttress her claims at trial, Plaintiff offered testimony from three attorneys for whom she performed work after the termination of her employment, Irene Gabo, William Lawlor, and Dmitry Levitsky, purportedly in support of her claim that she was able to perform the essential functions of her job.  However, what was readily apparent from the testimony of Ms. Gabo is that Ms. Gabo never hired Plaintiff to perform any legal work, nor did she retain Plaintiff's services as a per diem attorney.  Rather, Plaintiff assisted Ms. Gabo in communicating with Plaintiff's family members who she had referred to Ms. Gabo for legal services. (Tr. p. 558:4-19). Mr. Lawlor testified that Plaintiff assisted him on one occasion on an unpaid, voluntary basis with a three-day trial during which she did nothing other than sit at the plaintiff's table with him. (Tr. p. 1010: 22-24; 1012:2-23). Ms. Lawlor also testified that Plaintiff provided intermittent services as a per diem attorney for his Firm. (Tr. pp. 1003:23-25, 1004:1-6). Finally, Mr. Levitsky testified that Plaintiff conducted three depositions for his firm as a per diem attorney. (Tr. p. 1053:2-8). Not one of the witnesses who testified on behalf of Plaintiff identified any documents or motions prepared by Plaintiff, any regular communications Plaintiff was required to have with clients or any full-time legal services performed by Plaintiff on behalf of their respective firms. Nor did any witness testify that Plaintiff was able to maintain her own caseload, as she was required to do while employed at the Firm.

Alternatively, three of the Firm's clients testified at trial about complaints they made to the Firm and Mr. Prakhin regarding Plaintiff's failure to perform her responsibilities as the attorney assigned to handle their cases. Natalia Generalova, Marina Zhernyakova and Vitaliy Lyutyk all testified at trial about their dissatisfaction with Plaintiff's lack of communication with them and failure to properly manage their cases. The testimony of these clients, clients who voluntarily appeared in court, is compelling evidence of Plaintiff's failure to perform perhaps the more important responsibility of her position with the Firm, maintaining a professional and supportive relationship with the Firm's clients.

The paralegals assigned to work with Plaintiff at the Firm also testified regarding Plaintiff's failure to perform the responsibilities of an attorney with the Firm. Erica Larssen and Patricia Belous testified that Plaintiff failed to supervise and review their work as she was required to do and assigned them work that should have been performed by an attorney which substantially impacted the paralegals' ability to do their own work. At no time during Plaintiff's employment with the Firm did Ms. Larssen or Ms. Belous observe Plaintiff fully performing the responsibilities of her position, with or without a reasonable accommodation. Plaintiff offered no competent evidence at trial to show that she was able to perform the essential functions of her position. Despite Plaintiff's self-serving testimony that she was performing those responsibilities, the documentary and testimonial evidence at trial proves otherwise.

**POINT I**

**<u>LEGAL STANDARD</u>**

Judgment as a matter of law is warranted under Fed. R. Civ. P. 50(b) where "there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [individuals] could not arrive at a verdict

against him." *Miller v. City of Ithaca*, 914 F.Supp.2d 242, 248 (N.D.N.Y. 2012). "In deciding a motion for judgment as a matter of law, a district court must consider whether 'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached.'" *Harris v. Niagra Mohawk Power Corp.*, 252 F.3d 592, 597 (2d Cir. 2001).  The party opposing the Rule 50 motion must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *United States v. Real Property Known as 77 East 3rd Street, New York, N.Y.*, 869 F. Supp. 1042, 1056 (S.D.N.Y. 1994). A "mere scintilla of evidence" is insufficient to defeat a motion for judgment as a matter of law.  *Id.* Moreover, an inference from that evidence will be upheld only if application of common experience and logic supports it. *Epoch Prod. Corp. v. Killiam Shows, Inc.*, 522 F. 2d 737, 744 (2d Cir. 1975).  As the evidence before the jury was insufficient to permit it to find in favor of Plaintiff on any of her claims, the Firm is entitled to judgment as a matter of law.

## POINT II

### THE FIRM IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

**A.**     **Plaintiff did not Prove Disability Discrimination**

To prove a *prima facie* claim of disability-based discrimination under the ADA and NYSHRL, Plaintiff must demonstrate that:  (1) her employer is subject to the ADA and NYSHRL; (2) she was disabled within the meaning of the ADA and NYSHRL; (3) she was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) she suffered an adverse employment action because of her disability.  *Francis v. Wyckoff Heights Med. Ctr.,* 177 F. Supp. 3rd 754, 767 (E.D.N.Y 2016); *Shepheard v. N.Y.C. Corr. Dep't*, 360 Fed. Appx. 249, 250 (2d Cir. 2010). Under the NYCHRL, Plaintiff must prove "that the conduct complained of is caused by a discriminatory motive." *Jones v. N.Y.C. Transit Auth.*, 2020 WL

1550582, at *9 (E.D.N.Y. Mar. 31, 2020), *aff'd sub nom.*, 2021 WL 864694 (2d Cir. Mar. 9, 2021) (internal quotations omitted).  Plaintiff did not meet her *prima facie* burden and the Firm is entitled to judgment as a matter of law.

### 1.        Plaintiff did not Prove that the Firm had Notice of a Disability

In order for Plaintiff to prove that she suffered an adverse action because of a disability, Plaintiff must prove that the Firm had knowledge of the alleged disability.  *Moore v. Time Warner GRC* 9, 18 F.Supp.2d 257, 261-262 (W.D.N.Y. 1998); *see also Pacenza v. IBM Corp.*, No. 04 Civ. 5831 (PGG), 2009 WL 890060 at *10 (S.D.N.Y. Apr. 2, 2009), *aff'd*, 363 F. App'x 128 (2d Cir. 2010).  "A person alleging a disability protected by the ADA has a burden of establishing with medical evidence the existence of the alleged disability, and presenting the documentation during the term of employment, not following termination."  *Fagan v. United Int'l Ins. Co.*, 128 F. Supp. 2d 182, 186 fn. 2 (S.D.N.Y. 2001) (quoting *Kalekiristos v. CTF Hotel Mgmt. Corp.*, 958 F. Supp. 641 (D.D.C.1997), *aff'd*, 132 F.3d 1481, 1997 WL 812530 (D.C. Cir. 1997)).  Simply demonstrating that an employer is aware of an employee's claim of impairment is insufficient to prove a claim of disability discrimination under the ADA.  *See MacEntee v. IBM,* 783 F. Supp. 2d 434, 443 (S.D.N.Y. 2011) (employer lacked notice of plaintiff's disability where employer was aware plaintiff had taken leave for medical condition and had informed her manager of medical condition, but failed to provide documentation indicating she needed accommodations).

Plaintiff testified at trial that she never provided the Firm with any documentation regarding her vision impairment or of her diagnosis with LHON. (Tr. pp. 251:13-15; 252:1-5).  Mr. Prakhin and Ms. Raskin testified at trial that they repeatedly requested medical documentation from Plaintiff in connection with her absences from work.  (Tr. pp. 465:15-466:7, 1722:10-19). Plaintiff's treating physician stated that Plaintiff never requested any medical documentation from her to be provided to her employer. (Tr. p. 509:16-19). Plaintiff  testified at trial that everybody at

the Firm was aware of her "blurry vision." (Tr. p. 65:15-22). Such statement, in the absence of appropriate medical documentation to the Firm, is insufficient to prove a claim of disability discrimination. Further, Plaintiff specifically told Mr. Prakhin and Ms. Raskin that she was not disabled. (Tr. pp. 192:22-193:15). Plaintiff also acknowledged that she rejected the Firm's offer of a disability leave of absence. (Tr. 192:22-193:15). Based upon Plaintiff's own actions and the testimony in this matter, no reasonable juror could find that the Firm had knowledge of Plaintiff's disability when Plaintiff did not provide any medical documentation to the Firm and Plaintiff herself advised Ms. Raskin and Mr. Prakhin that she was not disabled.

### 2.   Plaintiff did not Prove she could Perform the Essential Functions of the Job

It is undisputed that in order to state a claim for disability discrimination under the ADA, NYSHRL or NYCHRL, a plaintiff must prove that she is able to perform the essential functions of the position at the time of her discharge, with or without a reasonable accommodation. *McMillan v. City of N.Y.*, 711 F.3d 120, 172 (2d Cir. 2013). Essential functions are the "fundamental job duties" of the actual position held by the employee. 29 C.F.R. § 1630.2(n)(1). "Under no circumstances can a reasonable accommodation involve the elimination of an essential job function." *Hunt-Watts v. Nassau Health Care Corp.*, 43 F.Supp.3d 119, 133 (E.D.N.Y. 2014). It is Plaintiff's burden to prove that she could perform all the essential functions of her position as an associate at the Firm at the time of the alleged adverse employment action. *Bohen v. Potter*, No. 04-CV-1039S, 2009 WL 791356 at *8 (W.D.N.Y. Mar. 23, 2009). Plaintiff did not meet this burden at trial.

Courts grant substantial deference to an employer's judgment with respect to the essential functions of the job. *McBride v. BIC Consumer Prods. Mfg. Co., Inc.,* 583 F.3d 92, 98 (2d Cir. 2009). The essential functions of an associate position at the Law Office of Yuriy Prakhin include, but are not limited to: (1) regular attendance; (2) settlement of cases; (3) client communication;

and (4) management of cases and oversight of the work performed by the paralegals.  Plaintiff did not prove at trial that she was able to perform any of these essential functions at the time of the termination of her employment or any time thereafter.

### i.      Regular Attendance

It is well settled that "some degree of regular, predictable attendance is fundamental to most jobs." *Aquinas v. Fed. Express Corp.*, 940 F. Supp. 73, 78 (S.D.N.Y. 1996) (internal quotations omitted).  Indeed, "[t]he ADA does not require employers to tolerate chronic absenteeism even when attendance problems are caused by an employee's alleged disability." *Lewis v. N.Y.C. Police Dep't*, 908 F. Supp. 2d 313, 327 (E.D.N.Y. 2012), *aff'd sub nom.*, 537 F. App'x 11 (2d Cir. 2013) (collecting cases); *see Pierce v. Highland Falls-Fort Montgomery Cent. Sch. Dist.*, Court No. 08-civ-1948 (RKE), 2011 WL 4526520, at *5 (S.D.N.Y. Sept. 28, 2011) (even assuming plaintiff's absences were a result of a recognized disability, plaintiff's absences render him unqualified).  Plaintiff's poor attendance record renders her unqualified to perform the essential functions of her job as an associate for the Firm.

There is no dispute that Plaintiff was excessively absent from work between September 2018 and December 2018.  Plaintiff did not in fact deny that she had multiple absences from her position with the Firm. (Tr. 286:3-18).  Rather, Plaintiff repeatedly asserted that since her absences were related to her disability, such absences could not be considered in connection with her ability to perform the essential functions of her job.  (Tr. p. 66:1-3).  Plaintiff's assertion is contrary to applicable law.

Between September 24, 2018, and December 14, 2018, there were 59 workdays.  Plaintiff was absent from work a total of 28 days during that time period.  Out of a total of 59 workdays, Plaintiff missed almost half of those days. As a result of Plaintiff's excessive absenteeism from

work, Plaintiff cannot prove that she was able to perform the essential functions of her position. No reasonable juror could conclude otherwise.

During closing arguments, Plaintiff's counsel misrepresented to the jury that the payroll records "only" showed that Plaintiff was absent from work 18 days between September 2018 and December 2018. (Tr. p. 2116:1-5, 19-22). Even assuming counsel's statement was true, 18 absences over 59 workdays also constitutes excessive absenteeism rendering Plaintiff unqualified for her position. However, Plaintiff's counsel was either unable to correctly read the payroll records in this case or, once again, deliberately misled the jury with respect to Plaintiff's absences.  A review of the payroll records (**Exhibit UU** of Campbell Dec.) demonstrates the following:

| | |
|---|---|
| September 20, 2018 – September 26, 2018 | 1 day absent |
| September 27, 2018 – October 3, 2018 | 3 days absent |
| October 4, 2018 – October 10, 2018 | 5 days absent |
| October 11, 2018 – October 17, 2018 | 4 days absent |
| October 18, 2018 – October 24, 2018 | 2 days absent |
| October 25, 2018 – October 31, 2018 | No days absent |
| November 1, 2018 – November 7, 2018 | 1 day absent |
| November 8, 2018 – November 14, 2018 | 2 days absent |
| November 15, 2018 – November 21, 2018 | 5 days absent |
| November 22, 2018 – November 28, 2018 | 4 days absent[2] |
| November 29, 2018 – December 5, 2018 | 1 day absent[3] |

No reasonable juror in reviewing the documentary evidence submitted in this case could conclude that Plaintiff's absences of 28 days during a period of 59 workdays was not excessive.

---

[2] Plaintiff did not work any day this week but was only absent four of the five days as Plaintiff was granted a paid holiday day for Thanksgiving.

[3] If Plaintiff did not work any days in a payroll week, then that week is not reflected in the payroll records.  As acknowledged by Plaintiff she was absent from work for a full week on two separate occasions.  October 4, 2018 through October 10, 2018 and November 15, 2018 through November 21, 2018 represent two payroll weeks during which Plaintiff did not work at all.  It is also important to note that the Firm's payroll weeks ran from Thursday through Wednesday.

Given that fact that Plaintiff experienced excessive absences from work, Plaintiff was not able to fulfill the essential function of regular attendance and therefore was not qualified for her associate position with the Firm.

None of the evidence submitted by Plaintiff in any way demonstrates that Plaintiff had regular attendance at any job either before or after the termination of her employment. Further, the essential functions of Plaintiff's position with the Firm are not the same fundamental duties Plaintiff had at a similar job with another law firm. Nor are the essential functions the fundamental duties that Plaintiff has at her current employment. The essential functions are the fundamental duties of the job held by Plaintiff at the time of the termination of her employment with the Firm. *Meling v. St. Francis College*, No. 95-CV-3739 JG, 1997 WL 1068681, at *4 (E.D.N.Y Apr. 1, 1997). Sandra Beron, an associate with the Firm, testified on behalf of Plaintiff regarding Plaintiff' job responsibilities at the Firm. Plaintiff also submitted testimony from Irene Gabo, William Lawlor, and Dmitry Levitsky purportedly in support of her claim that she was able to perform her job duties as an attorney *after* the termination of her employment with the Firm. (Tr. Tr. pp. 509-571; 584-657; 804-810; 823-859; 869-894; 899-912).

First, Ms. Beron was employed by the Firm in the same position as Plaintiff. Ms. Beron was not Plaintiff's supervising attorney, nor did she provide assignments to Plaintiff or oversee her work. Ms. Beron and Plaintiff were "equals" within the Firm. (Tr. p. 895:6-10). Ms. Beron testified that between September 2018 and December 2018, she was unaware of how many days Plaintiff was absent from work. (Tr. p. 894:3-5). Ms. Beron also acknowledged that she was not overseeing Plaintiff's work, nor involved in Plaintiff's daily assignments. (Tr. p. 895:6-10). Ms. Beron simply had no direct knowledge of whether Plaintiff was performing the essential functions of her job between September 2018 and December 2018.

11

Further, none of the attorneys who testified on behalf of Plaintiff employed Plaintiff for any significant period of time.  Irene Gabo did not work with or oversee Plaintiff's work after Ms. Gabo left the Firm on October 1, 2018. (Tr. p. 731:16-21). Rather, Ms. Gabo would remind Plaintiff of deadlines and requirements for her cases through various emails. (**Exhibit VV** to Campbell Dec.). Second, Ms. Gabo never employed Plaintiff, but merely requested her assistance in communicating with Plaintiff's relatives, whom Plaintiff had referred to Ms. Gabo for legal services. (Tr. p. 730:7-19). Regular attendance was not a requirement of those services particularly since those services were intermittent.

Mr. Lawlor testified that Plaintiff volunteered to assist him during a trial. Although Mr. Lawlor attempted to inflate Plaintiff's responsibilities during that assistance, he testified that the work with which she assisted him occurred over a period of three days. (Tr. pp. 1012:1-23). Such limited service does not demonstrate the regular attendance required for a full-time associate position in a law firm. Mr. Lawlor also testified that the firm for which he worked retained Plaintiff's services as a per diem attorney to conduct or defend depositions. (Tr. pp. 1003:23-25, 1004:1-6, 1013:23-832:6). The nature of per diem work is to provide services intermittently as required due to staffing shortages or unavailability of attorneys.  Regular and consistent attendance is not required for a per diem attorney position.

Finally, Mr. Levitsky testified that Plaintiff conducted three depositions for his firm as a per diem attorney. (Tr. p. 1053:2-8). Again, Plaintiff's services for Mr. Levitsky did not require regular attendance. The services provided by Plaintiff to Mr. Levitsky were intermittent and few and far between.

Plaintiff's counsel also misrepresented to the jury that Plaintiff was not absent from work at any time after she received her diagnosis. To the contrary, Plaintiff received her diagnosis on

12

November 26, 2018. (Tr. Tr. pp. 66:13-16; 239:1-6). Plaintiff was absent from work November 27, 2018 and November 30, 2018.  (**Exhibit H** at 17-19 and **Exhibit UU** to Campbell Dec.) Plaintiff's Trial Ex. 317; (Tr. p. 334:16-25). Further, Plaintiff herself represented to Ms. Larssen that she intended to seek additional treatment regarding her LHON diagnosis, which treatment was only available outside of New York. (**Exhibit WW** to Campbell Dec. at 3-4). In fact, Plaintiff did attend such treatment at the Willis Eye Institute after the termination of her employment from the Firm which would have resulted in further absences. (**Exhibit H** to Campbell Dec. at 30-64).

Finally, Plaintiff testified that she works 100% percent remote at her current job. (Tr. pp. 383:4-25). Remote work is vastly different from the in-person work performed by Plaintiff at the Firm at the time of the termination of Plaintiff's employment. Further, remote work allows for flexibility in attendance which is not available with in-person attorney work. Plaintiff did not provide any evidence of the structure of her workday and whether she is required to work a specified number of hours a week. Rather, Plaintiff specifically stated that all her work is performed with Zoom or other remote services.  (Tr. p. 383:19-23).

Plaintiff put forth absolutely no evidence demonstrating that she was able to maintain regular attendance during her employment with the Firm. Plaintiff did not dispute that she was absent from work for a significant number of days.  Rather, Plaintiff simply excused those absences as being related to doctor's appointments.  (Tr. Tr. pp. 66:1-3; 251:8-15; 339:11-1).  Plaintiff's absences from work, 28 days over a period of 59 days, were excessive, rendering her unable to perform the essential functions of her job.  No reasonable juror could find otherwise.

    ii.   **Settlements**

It is also undisputed that moving and settling cases were essential functions of Plaintiff's job as an associate at the Firm. (Tr. pp. 256:18-22; 280:7-11). Plaintiff failed to proactively settle the cases assigned to her.  Between June 2018 and December 2018, Plaintiff earned settlement

bonuses of $650, which generated revenue for the Firm of $13,000. (Tr. pp. 458:5-459:18; **Exhibit NN** to Campbell Dec.).  Between June 2018 and December 2018, Ms. Beron earned $8,585 in settlement bonuses, which generated revenue for the Firm in the amount of $171,700.  Ms. Gabo earned $71,000 in settlement bonuses during the same period, which generated revenue for the Firm in the amount of $1,420,000. (**Exhibit XX** to Campbell Dec.)..  Plaintiff's inability to settle cases demonstrates that Plaintiff failed to perform this essential function of her position. While Plaintiff attempts to dispute this number, there is no evidence in the record to the contrary. Indeed, it was Plaintiff's counsel, not Plaintiff, who misrepresented to the jury that she received almost $20,094 in settlement money from the Firm in 2019. (Tr. p. 2011:12-22). First, Plaintiff's counsel's statement is erroneous in that Plaintiff never received $20,000 from the Firm in 2019 for any settlements initiated by Plaintiff. Further, nothing was introduced into evidence, either through testimony or documents, which proves that Plaintiff received $20,000 from the Firm for settlements she initiated. As the Court repeatedly admonished the jury, Plaintiff's counsel's statements are not evidence. Yet, it is clear from the verdict in this case, that the jury did not review or consider the relevant documents submitted into evidence regarding Plaintiff's complete failure to perform the essential function of her job of settling cases.

Further, Plaintiff acknowledged that it was the responsibility of the attorneys in the Firm to proactively settle cases. Plaintiff, however, did not perform this responsibility. Plaintiff directed her paralegals to engage in settlement discussions with opposing counsel on behalf of clients, a function which Plaintiff admits was the responsibility of the attorney.  (Tr. pp. 255:17-256:22; 1840:9-1842:22; Tr. at 153:9-11).  Plaintiff also directed her paralegal, Ms. Larssen, to research and review Plaintiff's cases and select those that Ms. Larssen believed were ripe for settlement. (Tr. p. 255:21-25). Despite Ms. Gabo's testimony that Plaintiff was not assigned to any cases which

14

were ripe for settlement, a statement which was disproven by the documentary evidence submitted at trial, Ms. Gabo acknowledged that she would identify cases for Plaintiff that were ripe for settlement. The trial record is devoid of any evidence that proves that Plaintiff herself proactively pursed settlement of the cases to which she was assigned.

Finally, none of the attorneys who employed Plaintiff on a per diem basis testified that Plaintiff was either responsible for or involved in any settlement negotiations for them or their respective firms. Rather, the legal services provided by Plaintiff were solely limited to intermittent per diem legal services. Although Plaintiff provided general conclusory statements about her responsibilities in her current job, Plaintiff did not provide any testimony or evidence that she had successfully engaged in any settlement negotiations in her current position with American Transit Insurance Company.  (Tr. p. 217:1-25). Plaintiff did not prove at trial that she successfully settled cases during her employment with the Firm or at any time thereafter. No reasonable juror could conclude that Plaintiff performed or could perform this essential function of her job with the Firm.

### iii.    Client Communication

It is also an essential responsibility of all attorneys to maintain communication with clients and keep them informed about the status of their cases. The Firm demonstrated at trial that Plaintiff failed to appropriately communicate with clients and respond to client inquiries. Rather, Plaintiff would direct her paralegals to respond to client inquiries and telephone calls. (Tr. pp. 253:2-256:23; 274:22-275:20; 285:10-18; 293:24-25; 294:1-3; 316:2-7; 1831:6-1832:18; 1837:3-19).  As proven at trial, as a result of Plaintiff's failure to appropriately communicate with clients, several clients, including, but not limited to, Natalia Generalova, Azfar Khan, Laura Shvarts, Vitaliy Lyutyk, and Marina Zhernyakova, complained to Mr. Prakhin about Plaintiff.  In fact, Natalia Generalova, Marina Zhernyakova and Vitaliy Lyutyk all testified at trial about their dissatisfaction with and complaints about Plaintiff's lack of communication with them.

15

Specifically, Ms. Generalova testified that when Ms. Gabo was assigned to her case Ms. Gabo was responsive to Ms. Generalova's telephone calls and would answer any of her questions. After Ms. Gabo resigned from the Firm in 2018, Plaintiff was assigned to handle Ms. Generalova's case.  Ms. Generalova testified that Plaintiff failed to communicate with her about the case.  Ms. Generalova attempted to contact Plaintiff on numerous occasions. Plaintiff never returned any of Ms. Generalova's telephone calls, nor did Plaintiff ever contact Ms. Generalova about the status of her case. Frustrated with Plaintiff's lack of response, Ms. Generalova actually had a friend bring her to the Firm in October/November 2018 so that she could meet with Plaintiff in person. Ms. Generalova was again unable to speak with Plaintiff when she arrived at the Firm.  Desperate to have her questions answered, Ms. Generalova requested to meet with Mr. Prakhin while she was at the Firm.  Ms. Generalova explained Plaintiff's lack of communication with her to Mr. Prakhin. Ms. Generalova also testified that she was intent on withdrawing her case from the Firm due to Plaintiff's lack of communication. Mr. Prakhin apologized to Ms. Generalova for Plaintiff's lack of professionalism and promised that he would assist her in the future. (Tr. pp. 1519-1522). As a result of Mr. Prakhin's assurances, Ms. Generolova remains a client of the Firm.

Mr. Lyutyk also testified about Plaintiff's failure to communicate with him regarding his pending case at the Firm. Mr. Lyutyk also testified that his case was first assigned to Ms. Gabo, who was responsive to his inquiries. When Ms. Gabo resigned from the Firm in 2018, Mr. Prakhin contacted Mr. Lyutyk and advised him that his case was now being handled by Plaintiff. After learning that Plaintiff had been assigned to handle his case, Mr. Lyutyk attempted to reach Plaintiff on numerous occasions between September 2018 and November 2018.  Mr. Lyutyk testified that he would leave messages for Plaintiff at the Firm asking about his case. Plaintiff never returned any of his telephone calls. When Mr. Lyutyk finally reached Plaintiff on the telephone, Plaintiff

was unable to provide him with any information about his case. In fact, Mr. Lyutyk testified that Plaintiff was rude towards him during the telephone call and gave the impression that she was annoyed that he had even called. Plaintiff did not apologize to Mr. Lyutyk for her lack of communication, nor did she inquire as to how Mr. Lyutyk was feeling or the status of his medical treatment.   Mr. Lyutyk was very upset about his interaction with Plaintiff and contacted Mr. Prakhin.  Mr. Lyutyk advised Mr. Prakhin about his unpleasant interaction with Plaintiff, stating that it was very different from his previous experience with Ms. Gabo. Mr. Lyutyk further stated that he expected the same level of response that he had received from Ms. Gabo.  Mr. Lyutyk also testified that he might have threatened Mr. Prakhin that he would seek legal representation elsewhere. (Tr. pp. 1415-1418). Mr. Prakhin reassured Mr. Lyutyk that his case would receive the attention it deserved, and Mr. Lyutyk remained a client of the Firm.

Ms. Zhernyakova also complained to Mr. Prakhin about Plaintiff's lack of communication. Ms. Zhernyakova's case was originally handled by Ms. Gabo. In September 2018, Mr. Prakhin contacted Ms. Zhernyakova and advised her that Ms. Gabo had resigned from the Firm and that Plaintiff would be handling her case.   In October 2018, Ms. Zhernyakova attempted to contact Plaintiff numerous times regarding the status of her case. Ms. Zhernyakova left several messages for Plaintiff at the Firm but never received any return telephone calls. Ms. Zhernyakova would also leave messages with the receptionist requesting that Plaintiff return her telephone calls. Again, Plaintiff did not respond to her calls. As a result of Plaintiff's failure to return any of her telephone calls, in November 2018, Ms. Zhernyakova decided that she would go to the Firm to meet with Plaintiff in person.  When Ms. Zhernyakova arrived at the Firm, she advised the receptionist that she was there to speak to Plaintiff.  Ms. Zhernyakova heard the receptionist use the interoffice line to advise Plaintiff that a client was waiting to speak with her. While waiting to meet with Plaintiff,

Ms. Zhernyakova witnessed Plaintiff in the hallway speaking on her cellular telephone. Ms. Zhernyakova observed Plaintiff walking back and forth on her cellular telephone several times. During that time, Plaintiff never acknowledged Ms. Zhernyakova's presence in the waiting area. Ms. Zhernyakova's waited to speak with Plaintiff for about 30 minutes. Ms. Zhernyakova's became exasperated and frustrated with Plaintiff's conduct and decided to leave the office. Ms. Zhernyakova testified that she "burst out crying" because she was in pain and was "particularly upset" that she could not reach her attorney. While Ms. Zhernyakova was leaving the office, she encountered Mr. Prakhin who immediately comforted Ms. Zhernyakova and brought her to his office. Ms. Zhernyakova advised Mr. Prakhin that she was very frustrated with Plaintiff's treatment of her and that she intended to seek representation from another law firm. Mr. Prakhin reassured Ms. Zhernyakova that he would take care of everything and that she could contact him directly about her case. Based upon Mr. Prakhin's representations, Ms. Zhernyakova remained a client of the Firm. (Tr. pp. 1468-1477) Three clients testified at trial and Mr. Prakhin identified another two clients who complained to him about Plaintiff's lack of communication. (Tr. pp. 485:4-24; 1409-1460; 1466-1513; 1514-1545). While Plaintiff attempted to dispute that she was the attorney assigned to those clients, both the documentary and testimonial evidence in this matter proved that she was in fact assigned to these clients. Three clients of the Firm, Natalia Generalova, Marina Zhernyakova and Vitaliy Lyutyk, voluntarily and without any benefit to themselves, testified at trial, under oath, that Plaintiff's conduct towards them was so egregious that each of them threatened to leave the Firm. No reasonable juror hearing such testimony could conclude that Plaintiff was performing the essential function of communicating with the clients to whom she was assigned while employed by the Firm.

Finally, Plaintiff was not responsible for any of the cases on which she worked for Ms. Gabo, Mr. Lawlor or Mr. Levitsky.  Plaintiff did not have direct communication with the clients, nor was she responsible for updating those clients about the status of their cases. Even in the cases Plaintiff referred to Ms. Gabo, Plaintiff would simply convey Ms. Gabo's instructions to her relatives or explain process to them.  Ms. Gabo was fully in charge of and responsible for those cases. Plaintiff's testimony regarding her current employment as an associate in an insurance defense firm is devoid of any indication that Plaintiff is responsible for direct client contact and communication at the same level that is required of a plaintiff's attorney in a personal injury firm. Plaintiff did not prove at trial that she was responsive to the clients whose cases she handled. Plaintiff did not submit any evidence or testimony from any client disputing the complaints received by Mr. Prakhin regarding Plaintiff's lack of communication while employed by the Firm. No reasonable juror could conclude that Plaintiff performed this essential function of her job with the Firm.

### iv.   <u>Management of Cases and Oversight of Paralegals</u>

As an associate in the Firm, Plaintiff was required to manage her cases and perform the responsibilities of her position in a competent and professional manner. Plaintiff was also required to oversee and supervise all work performed by the paralegals who were assigned to assist her with her cases. Plaintiff failed to perform these essential functions of her position with the Firm.

During her tenure with the Firm in 2018, Plaintiff was unable to perform her duties as counsel at depositions.  Plaintiff was unable to review documents, pictures, or videos presented at depositions. (Tr. pp. 259:19-265:8; 270:22-273:21).  While employed with the Firm, Plaintiff appeared as counsel at a deposition during which surveillance footage was reviewed.  Rather than adjourning the deposition, Plaintiff "faked" her representation of the client.  "[T]hey have a surveillance video with our client in it, couldn't see shit at all, I couldn't even tell if that was our

19

client in it.  I'm faking it, like pretend like I know what's going on."  (Tr. pp. 260:2-19; **Exhibit YY** to Campbell Dec.). Plaintiff's conduct at the deposition not only violated her professional obligations as an attorney, but was an abuse of the trust and confidence placed in her by the clients. Plaintiff's conduct at that deposition demonstrated an appalling lack of judgment and disregard for her client.  Based upon this incident alone, no reasonable juror could find that Plaintiff effectively discharged her duties as an attorney, which was an essential function of her job at the Firm.

Plaintiff also assigned attorney work to her paralegals and failed to properly supervise the work performed by her paralegals. Ms. Larssen and Ms. Belous testified at trial that Plaintiff did not perform the majority of the responsibilities of her position as an associate with the Firm, but rather assigned those responsibilities to her paralegals to perform, which placed an undue burden on those paralegals and impacted their ability to perform their job responsibilities. Ms. Larssen testified that Plaintiff often assigned additional work to her that was outside the scope of her responsibilities. (Tr. pp. 1837:3-19). Ms. Larssen identified that Plaintiff would have her (1) draft summons and complaints; (2) draft motions for default judgment, discovery motions, motions to strike, opposition papers, and reply papers; (3) communicate with clients and opposing counsel and engage in settlement negotiations; (4) review deposition transcripts to determine what additional discovery was required to be requested in post-deposition document demands; (5) reviewed answers to determine if a Notice to Admit was required; and (7) review filings to determine appropriate legal deadlines. (Tr. pp. 1831:12-1832:17; 1837:3-19; 1839:18-1842:21; 1849:7-1850:10; 1861:6-1863:14; 1864:22-1869:7; 1886:19-1887:14). Ms. Larssen also testified that Plaintiff did not review her own mail, despite the expectation that she would do so. Rather, Plaintiff would request that Ms. Larssen review any mail that she received, determine what work needed to be completed, and distribute that work between herself and Ms. Belous. The additional

20

work Plaintiff assigned to Ms. Larssen prevented Ms. Larssen from efficiently and effectively completing her own paralegal duties.

Patricia Belous, the other attorney assigned to work with Plaintiff, also testified that Plaintiff would often assign attorney work to be completed by her paralegals, which work impacted her ability to perform her actual paralegal responsibilities.

Both Ms. Larssen and Ms. Belous testified that despite the fact that Plaintiff was required to supervise their work, she did not do so. (Tr. pp. 1787:2-20; 1788:4-1789:10; 1836:25-1837:19). Plaintiff repeatedly failed to review the legal documents drafted by Ms. Larssen and Ms. Belous, causing the documents to pile up in Plaintiff's office. (Tr. pp. 1786:1-22; 1787:2-20; 1788:25-1790:14; 1831:12-1832:6; 1866:14-22). Ms. Belous complained to Mr. Prakhin about Plaintiff's failure to review the litigation documents, which prevented such documents from being served in a timely manner. ( Tr. pp. 1788:25-1790:14).

Ms. Larssen testified that as soon as Gil Zohar joined the Firm, she no longer had to perform attorney tasks, their work was promptly and thoroughly reviewed and they received clear direction in the performance of their job responsibilities. (Tr. pp. 1870: 4-15). Based upon the undisputed testimony of both Ms. Larssen and Ms. Belous, it is clear that Plaintiff was not effectively managing her cases or supervising the paralegals who were assigned to work with her, which was an essential responsibility of her position as an associate with the Firm.

Finally, Plaintiff was not responsible for managing a caseload or overseeing any paralegals in the per diem work she performed for Ms. Gabo, Mr. Lawlor or Mr. Levitsky. Plaintiff simply conducted or defended depositions as assigned. As a per diem attorney, Plaintiff did not work with nor was she responsible for overseeing any paralegals. Plaintiff's testimony regarding her current employment as an associate in an insurance defense firm also does not prove that Plaintiff is

21

responsible for overseeing the work of paralegals in her current employment.  Plaintiff testified that there are paralegals with whom she works but did not state that she had any paralegals specifically assigned to her or that she was responsible for overseeing their work.  (Tr. 217: 13-22).  Plaintiff did not prove at trial that she successfully managed her caseload while employed by the Firm or properly supervised the work of the paralegals. No reasonable juror could conclude that Plaintiff performed this essential function of her job with the Firm.

The evidence offered by the Firm at trial demonstrated its business judgment about the essential functions of the associate position.  The evidence and testimony at trial plainly established that Plaintiff was not performing those essential functions at the time that her employment with the Firm was terminated. The evidence and testimony at trial also did not demonstrate that Plaintiff has performed those essential functions at any time after the termination of her employment with the Firm.  While Plaintiff somehow equates performing per diem legal services with a full-time associate position in a personal injury firm, the evidence at trial illustrates that those two positions are vastly different. At the time of Plaintiff's termination of employment with the Firm, Plaintiff was not a qualified individual with a disability and could not perform the essential responsibilities of her position as a full-time associate, with or without a reasonable accommodation.  The jury's finding to the contrary is against the great weight of the evidence and must be reversed.

### 3.    No Reasonable Juror Could Have Found Sufficient Evidence to Establish a Failure to Accommodate Claim

Under the ADA, the NYSHRL and the NYCHRL, a plaintiff must prove a failure to accommodate claim by showing by a preponderance of the evidence that Plaintiff: (1) suffers from a qualifying disability; (2) Plaintiff requested a reasonable accommodation; (3) Plaintiff was otherwise qualified to perform the essential functions of the job with a reasonable accommodation; and (4) the Firm refused to make such accommodations.  *See Lazzari v. N.Y.C. Dep't of Parks &*

22

*Recreation*, 751 Fed. Appx. 100, 102 (2d Cir. 2018); *see also Pimental v. Citibank, N.A.*, 811 N.Y.S.2d 381 (1st Dep't 2006).  The jury found that the Firm denied Plaintiff a reasonable accommodation.  Such verdict is plainly erroneous and the Firm is entitled to judgment as a matter of law.

### i.    The Firm Discharged its Duty to Provide Plaintiff <br> with a Reasonable Accommodation

Plaintiff failed to prove that the Firm did not accommodate her because the Firm provided Plaintiff with numerous accommodations. Plaintiff, Ms. Gabo, Ms. Larssen, Ms. Raskin and Ms. Beron all acknowledged that the Firm possessed magnifying sheets and magnifying glasses for use by the attorneys and others within the Firm and that Plaintiff used those assistive devices. (Tr. pp. 564:24-565:2; 636:8-15; 641:20-24; 1714:12-20; 1768:6-9; 1853:15-23).  Plaintiff specifically acknowledged that she utilized the Firm's magnifying glass.  (Tr. pp. 242:9-17,. 456:18-457:2; 461:15-21; 1714:23-1715:10). The Firm provided Plaintiff with magnifying devices to assist her in the performance of her job responsibilities. (Tr. pp. 452:1-7, 1714:16-17). Plaintiff utilized the Firm's magnifying devices throughout her employment with the Firm. It was not until November 2018, that Plaintiff ordered additional magnifying devices from Amazon. (Plaintiff's Tr. Ex. 15, 16). Plaintiff never submitted any invoice to the Firm seeking reimbursement for her purchase of those magnifying glasses. (**Exhibit TT** of Campbell Dec.) The Firm also authorized Plaintiff to upload computer software on her computer as long as it did not conflict with the Firm's software. (Tr. p. 1715:1-7).

The Firm also provided Plaintiff with unpaid leaves of absence as a reasonable accommodation.  It is well-established that a leave of absence constitutes a reasonable accommodation. *Vangas v. Montefiore Med. Ctr.*, 6 F. Supp. 3d 400, 413 (S.D.N.Y. 2014); *see e.g. Ciullo v. Yellow Book, USA, Inc.*, 2012 WL 2676080, at *11 (E.D.N.Y. 2012).  Indeed, Plaintiff

has not and cannot identify a single day where a request for time off from work to attend a medical appointment was denied. The Firm granted Plaintiff time off to attend medical appointments despite the fact the Plaintiff never submitted any medical documentation in support of such requests for leave as required under the Employee Handbook and requested by the Firm. The Firm also offered Plaintiff a disability leave of absence, which accommodation was rejected by Plaintiff. Plaintiff refused this accommodation, claiming that she was not disabled. Plaintiff's outright rejection of this proposed reasonable accommodation does not establish a claim against Defendants for failure to engage in the interactive process or failure to accommodate. *See Romanello v. Intesa Sanpaolo S.P.A*., 97 A.D.3d 449, 451, 949 N.Y.S.2d 345, 349 (1st Dep't 2012), *aff'd as modified*, 22 N.Y.3d 881 (2013). The evidence at trial established that the Firm offered Plaintiff numerous accommodations. An employer is not required to provide every accommodation an employee requests. *Kemer v. Johnson*, 990 F.Supp. 677, 686 (S.D.N.Y. 1995). To find that the Firm failed to accommodate Plaintiff is against the weight of the evidence introduced at trial.

Plaintiff also failed to make a reasonable good faith effort to engage in the interactive process with the Firm. A party that "fails to communicate, or withholds important information solely within the knowledge of that party, can be found to have obstructed the [interactive] process in bad faith." *Thompson v. City of New York*, No. 98 Civ. 4725 (GBD), 2002 WL 31760219 (S.D.N.Y. Dec. 9, 2002) (citing *Jackan v. N.Y.S. Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000)). Plaintiff did not provide the Firm with sufficient information about her medical condition. The Firm cannot be held liable for failing "to provide a reasonable accommodation if the plaintiff fails to provide the information necessary to assess the request for an accommodation in the first place." *Frantti v. New York*, 414 F. Supp. 3d 257, 288 (N.D.N.Y. 2019), *aff'd sub nom*., 2021 WL 864706 (2d Cir. Mar. 9, 2021). It was Plaintiff's responsibility to prove the necessary medical

24

documentation to the Firm. *Thompson,* ,  2002 WL 31760219, at *8.  An employer cannot be held liable for failing to provide a reasonable accommodation where an employee obstructs the interactive process. *Durick v. N.Y.C. Dept. of Educ.*, 202 F. Supp. 3d 277, 290 (E.D.N.Y. 2016). Plaintiff obstructed the interactive process when she failed to provide documentation to the Firm regarding her medical condition or any reasonable accommodations that would enable her to perform the essential functions of her job. Plaintiff admits that she did not provide the Firm with any documentation regarding her purchase of any assistive devices, including any receipts for reimbursement. As a result of Plaintiff's failure to make a reasonable effort to communicate with the Firm, Plaintiff did not prove a claim for failure to accommodate against the Firm.

The Firm's Employee Handbook also explicitly provides that an "employee who requires an accommodation in order to perform the essential functions of the job should contact YURIY PRAKHIN ESQ or his or her duly authorized designee and request such an accommodation, and confirm such a request in writing." (**Exhibit ZZ** to Campbell Dec.). Plaintiff acknowledged that she never submitted any written requests for an accommodation nor provided the Firm with any medical documentation regarding her medical condition or any accommodation that would enable her to perform the essential functions of her job.  Instead, Plaintiff repeatedly informed the Firm that she was not disabled.  Plaintiff failed to prove any failure to accommodate claim against the Firm. Accordingly, the Firm is entitled to judgment as a matter of law on Plaintiff's failure to accommodate claims.

   **ii.**  **No Reasonable Juror Could Find that Plaintiff Requested that the Firm Purchase Any Assistive Device**

Plaintiff's testimony at trial regarding her alleged request that the Firm purchase assistive devices for her is directly contradicted by her sworn statement to the EEOC and the documentary evidence submitted at trial. Plaintiff claimed at trial that she requested that the Firm purchase for

her (1) a magnifying sheet; (2) a lighted magnifying glass; (3) OrCam glasses; (4) Dragon software; and (5) JAWS software. (Tr. Tr. pp. 127:18-24; 129:13-17; 130:18-22; 135:13-14; 136:21-137:6). However, in Plaintiff's March 16, 2019 sworn statement to the EEOC, she states:

> 30.    I subsequently purchased, at my own expense, OrCam glasses and JAWS, a screen reading software.
>
> 31.    I also paid out-of-pocket for additional transportation costs, such as cab fares, that I required as I was learning to adapt to life with LHON.
>
> 32.    Not once did I ask the Firm to foot the bill as I explored new accommodations that would make working with LHON easier for me.
>
> 33.    Moreover, Respondents later became aware that I had purchased these devices, yet never offered to cover their cost or otherwise accommodate me.

(**Exhibit TT** to Campbell Dec.). Plaintiff's testimony at trial directly contradicts Plaintiff's sworn statement in her EEOC Charge. The Firm's subsequent knowledge of Plaintiff's purchase of exploratory assistive devices is insufficient to constitute a request for a reasonable accommodation. *See Khalil v. Pratt Inst.*, 16-CV-6731 (JFB)(SIL), 2017 WL 8813136 (E.D.N.Y. Dec. 11, 2017), *report and recommendation adopted,* 2018 WL 705306 (E.D.N.Y. Feb. 2, 2018).

Further, Plaintiff presented no documentary evidence that she ever requested such accommodations from the Firm, nor did she ever submit any receipts to the Firm for reimbursement. Rather, the documentary evidence at trial proves that the only individuals with whom Plaintiff ever discussed specific assistive devices were Ms. Gabo and Ms. Larssen. Plaintiff discussed the OrCam glasses with Ms. Gabo after her physician suggested that they might be helpful. (Tr. pp. 552:12-553:4). In fact, Ms. Gabo started a GoFundMe page for Plaintiff to purchase those glasses. (Tr. p. 1857:6-12). Ms. Raskin testified that Plaintiff advised her that she was looking into special glasses to help her. (Tr. p. 1715:11-16). Plaintiff's comment to Ms. Raskin

is insufficient to constitute a request for an accommodation. Plaintiff simply stated that she was "looking into" special glasses.  Plaintiff did not provide specific information to Ms. Raskin regarding those glasses, nor did she ever submit any invoice to Ms. Raskin for reimbursement for those glasses. Accordingly, a passing comment to Ms. Raskin does not constitute a request for an accommodation.

Finally, Plaintiff only discussed with Ms. Larssen the fact that the Firm was in possession of the Dragon dictation software. (Tr. pp. 1854:51, 855:8; **Exhibit YY** to Campbell Dec. at 14). Plaintiff did advise the Firm that she wished to install the JAWS software on her computer. Plaintiff's notification to the Firm that she wished to install software on the computer does not constitute a request that the Firm purchase the software for her.  As acknowledged in the EEOC charge, Plaintiff did not request that the Firm purchase the software, she was simply requesting permission to install the software on the computer.  (Tr. pp. 238:3-16; 456:18-25; 463:9-11; **Exhibit TT** to Campbell Dec.). The Firm permitted Plaintiff to install the JAWS software on her computer and Plaintiff did in fact install such software. Ms. Larssen assisted Plaintiff in setting up the Jaws software on her computer. Ms. Larssen observed Plaintiff using the Jaws software on her computer. (Tr. pp. 1854:1-25, 1855:1-6). Based upon Plaintiff's prior sworn statements and the documents and testimony at trial, Plaintiff did not prove that the Firm failed to provide any assistive devices actually requested by her.  Plaintiff did not prove a failure to accommodate claim against the Firm.

### iii.    Plaintiff Failed to Demonstrate that She Could Have Been Reasonably Accommodated

It was Plaintiff's burden to prove there was a reasonable accommodation available at the time her employment was terminated that would have enabled her to perform the essential functions of the job. A failure to accommodate claim fails if the plaintiff does not prove the

existence of an accommodation beyond mere speculation. *See Jackan v. New York State Dep't of Labor*, 205 F.3d 562, 567 (2d Cir. 2000). It is not enough for a plaintiff to pose a series of speculative accommodations. Rather, at trial, the plaintiff must prove that an actual reasonable accommodation existed at the time of the adverse action and that the employer's failure to engage in the interactive process deprived her of the reasonable accommodation. *See Suvada v. Gordon Flesch Co.*, No. 11 C 07892, 2013 WL 5166213, at *8 (N.D. Ill, Sept. 13, 2013).

Plaintiff failed to prove at trial that any actual accommodation existed at the time of her termination that would have enabled her to perform the essential functions of the job. Rather, each and every accommodation explored by Plaintiff during her tenure with the Firm did not assist Plaintiff in performing the essential functions of the job. Ultimately, Plaintiff ceased using all of her "experimental" devices since they did not enable her to perform the essential functions of her job as an associate with the Firm. Since Plaintiff did not identify a reasonable accommodation that would have enabled her to do her job, Plaintiff cannot prove a failure to accommodate claim. *Whalen v. City of Syracuse*, No. 5:11-CV-0784 (LEK/TWD), 2014 WL 3529976, at *6-7 (N.D.N.Y. July 5, 2014). Accordingly, the Firm is entitled to judgement as a matter of law with respect to Plaintiff's failure to accommodate claim.

Ultimately, after Plaintiff determined that the OrCam glasses and the JAWS software did not enable her to perform the essential functions of her position, Plaintiff determined that the most reasonable accommodation for her was to have the paralegals continue to perform the essential functions of her job. (Tr. pp. 1789:2-10; 1831:6-1832:17; 1837:3-19; 1849:7-1850:10; 1862:16-1863:14; 1866:1-22; 1887:4-14; **Exhibit AAA** to Campbell Dec.). Removing an essential function of the job is not a reasonable accommodation under applicable law. *See Disanto v. McGraw-Hill, Inc.*, 220 F.3d 61, 64-65 (2d Cir. 2000). Rather, "if [an employee] can't perform the essential

functions of [her] job, absent assigning those duties to someone else…[,] [she] cannot be reasonably accommodated as a matter of law." *Bell v. Hercules Liftboat Co., LLC*, 524 Fed.Appx. 64, 69 (5th Cir. 2013). Since there was no identifiable reasonable accommodation that would have enabled Plaintiff to perform the essential functions of her job, Plaintiff was not a qualified individual with a disability.  The jury's finding to the contrary is against the great weight of evidence and the Firm is entitled to judgment as a matter of law.

**B.      The Firm Proved that it Terminated Plaintiff's Employment
          for Legitimate, Non-Discriminatory Reasons**

Even if Plaintiff was able to prove a *prima facie* claim of discrimination, the Firm proved legitimate business reasons for the termination of Plaintiff's employment. Unsatisfactory job performance is a legitimate, non-discriminatory reason to terminate an employee.  *Fall v. N.Y.S. United Teachers*, 289 Fed. Appx. 419, 421 (2d Cir. 2008); *Macropoulous v. Metro. Life Ins. Co.*, 15 Civ. 6096 (ER), 2018 WL 1508564, at *9 (S.D.N.Y. 2018) (holding that frequent lateness to work and inaccurate or late work product each constituted "a legitimate, non-discriminatory reason for an employee's dismissal").  Plaintiff's employment was terminated based on her inability to perform the essential functions of the job. Plaintiff failed to:  (1) maintain consistent attendance at work; (2) proactively settle cases; (3) timely respond to or communicate with clients; and (4) manage her caseload and supervise the work perfomed by the paralegals.  The Firm proved that Plaintiff's employment was lawfully terminated for unsatisfactory job performance.

The evidence at trial demonstrated  that Plaintiff was unable to perform the responsibilities of her position, with or without a reasonable accommodation. Plaintiff failed to regularly and predictably report for work. (Exhibit UU to Campbell Dec.). Plaintiff did not prove at trial that the issues with her attendance would resolve going forward. Rather, in Plaintiff's conversations with Ms. Larssen, she specifically indicated that she was pursuing experimental treatments for her

vision, none of which were offered in New York. (Exhibit YY to Campbell Dec.). Plaintiff did not proactively settle cases. (Exhibit NN to Campbell Dec.).  Plaintiff did not respond to clients in a timely and professional manner. Three of those clients, Natalia Generalova, Marina Zhernyakova and Vitaliy Lyutyk, testified at trial regarding their complaints to Mr. Prakhin and their intention to withdraw their cases from the Firm as a result of Plaintiff's unprofessional conduct. Complaints of dissatisfaction from clients constitute a legitimate, non-discriminatory reason for the termination of an employee's employment. *See, e.g., House v. Wackenhut Servs*., No. 10 Civ. 9476 (CM) (FM), 2012 WL 4017334 (S.D.N.Y. Aug. 20, 2012) (finding that performance issues and customer complaint were legitimate reasons for terminating plaintiff) (collecting cases); *Young v. Nassau Univ. Med. Ctr.*, No. 10-cv-00649 (JFB) (ARL), 2011 WL 6748500 (E.D.N.Y. Dec. 22, 2011); *Bronzini v. Classic Sec. LLC*, Nos. 07 Civ. 11104(HB), 08 Civ. 475(HB), 2009 WL 102140 (S.D.N.Y. Jan. 15, 2009). The Firm proved at trial that Plaintiff was not adequately performing and did not perform the essential responsibilities of her position, with or without a reasonable accommodation. The Firm had legitimate, non-discriminatory reasons for the termination of Plaintiff's employment. No reasonable jury could find otherwise.

**POINT III**

**<u>PLAINTIFF IS NOT ENTITLED TO PUNITIVE DAMAGES</u>**

Punitive damages should only be awarded where a defendants' "actions amount to willful or wanton negligence, or recklessness, or where there is a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard."   *Chauca v. Abraham*, 30 N.Y.3d 325, 328-29 (N.Y. 2017)(internal quotes omitted). Punitive damages may only be awarded for "exceptional misconduct which transgresses mere negligence." *Id.* Plaintiff did not present any evidence of exceptional misconduct sufficient to warrant punitive damages. The Firm provided Plaintiff with reasonable accommodations, including leaves of absences as requested.  Despite

30

such accommodations, Plaintiff failed to perform the essential functions of her position with the Firm. The Firm received numerous complaints from clients regarding Plaintiff's lack of professionalism. As a result of Plaintiff's inability to perform her job responsibilities, the Firm terminated Plaintiff's employment based on legitimate, non-discriminatory reasons. The Firm's conduct simply does not rise to the level of willful and wanton conduct warranting punitive damages. Federal and New York courts routinely vacate such awards where they are unsupported by the record. *See, e.g. Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d. 224, 227 (2d Cir 2000). In light of the evidence presented at trial, Plaintiff did not demonstrate that the Firm acted  in a manner sufficient to  warrant punitive damages.  Accordingly, the jury's award of punitive damages must be vacated.

## **CONCLUSION**

For the foregoing reasons, the Firm is entitled to judgment as a matter of law as to all of Plaintiff's claims and the jury's award of punitive damages vacated.

Dated:   New York, New York      **BOND SCHOENECK & KING, PLLC**
        March 24, 2023

                               /s/    MED
                               Mary Ellen Donnelly, Esq.
                               Louis P. DiLorenzo, Esq.
                               Mallory A. Campbell, Esq.
                               600 Third Avenue, 22nd Floor
                               New York, New York 10016
                               Telephone: (646) 253-2300

                               *Attorneys for Defendant Law Office of*
                               *Yuriy Prakhin, P.C.*

31