1

1
2                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
   - - - - - - - - - - - - - - - - X
                                    :
3    YELENA RUDERMAN,               :   19-CV-02987(MMH)
                                    :
4            Plaintiff,             :
                                    :
5                                   :   United States Courthouse
      -against-                     :   Brooklyn, New York
6                                   :
                                    :
7    LAW OFFICE OF YURIY            :   February 6, 2023
     PRAKHIN, P.C., et al.,         :   9:00 a.m.
8                                   :
             Defendants.            :
9  - - - - - - - - - - - - - - - - X

10        TRANSCRIPT OF CIVIL CAUSE FOR JURY SELECTION
            BEFORE THE HONORABLE MARCIA M. HENRY
11         UNITED STATES MAGISTRATE DISTRICT JUDGE

12

13                   A P P E A R A N C E S:

14

   For the Plaintiff:       FARUQI & FARUQI LLP
15                          685 Third Avenue
                            26th Floor
16                          New York, New York 10017
                            BY:  INNESSA MELAMED HUOT, ESQ.
17                               CAMILO MALCOLM X BURR, ESQ.
                                 ANNABEL RAE STANLEY, ESQ.
18

19                          TILTON BELDNER LLP
                            626 RXR Plaza
20                          Uniondale, New York 11556
                            BY:  JOSHUA S. BELDNER, ESQ.
21

22  For the Defendant:      BOND SCHOENECK & KING PLLC
   Law Office of            330 Madison Avenue
23  Yuriy Prakhin, P.C.     39th Floor
                            New York, New York 10017
24                          BY:  LOUIS P. DiLORENZO, ESQ.
                                 MARY ELLEN DONNELLY, ESQ.
25                               MALLORY CAMPBELL, ESQ.

*Proceedings*                                                              2

1                A P P E A R A N C E S: (Continued.)

2    For the Defendant:        LAW OFFICES OF ALAN J. RICH
     Yuriy Prakhin            250 West 57th Street
3                             Suite 1619
                              New York, New York 10107
4                             BY:  ALAN J. RICH, ESQ.

5
     Court Reporter:          DENISE PARISI, RPR, CRR
6                             Official Court Reporter
                              Telephone: (718) 613-2605
7                             E-mail:  DeniseParisi72@gmail.com

8    Proceedings recorded by computerized stenography.  Transcript
     produced by Computer-aided Transcription.
9

10                     *     *     *     *     *

11              (In open court.)

12              THE COURTROOM DEPUTY:  All rise.

13              THE COURT:  Good morning, everyone.  Please be

14   seated.

15              THE COURTROOM DEPUTY:  Civil cause for jury

16   selection, Docket Number 19-CV-2987, Yelena Ruderman versus

17   Law office of Yuriy Prakhin et al.

18              Counsel, starting with the plaintiff, please state

19   your appearances for the record.

20              MS. HUOT:  Good morning, Your Honor.

21              It's Innessa Huot from Faruqi & Faruqi for the

22   plaintiff.

23              THE COURT:  Good morning.

24              MR. BELDNER:  Good morning, Your Honor.

25              Josh Beldner for plaintiff.

*Proceedings*                                                    3

1          THE COURT:  Good morning.

2          MR. BURR:  Good morning, Your Honor.

3          My name is Camilo Burr, also for the plaintiff.

4          THE COURT:  Good morning.

5          MS. STANLEY:  Good morning, Your Honor.

6          Annabel Stanley, also for the plaintiff.

7          THE COURT:  Good morning.

8          MS. HUOT:  Your Honor, we have our paralegal Matthew

9   Gonzalez with us here today.

10          THE COURT:  Good morning.

11          MR. BELDNER:  As well as our client, Yelena

12   Ruderman.

13          Good morning, Your Honor.

14          THE COURT:  Good morning.

15          THE COURTROOM DEPUTY:  For defense, please state

16   your appearances.

17          MR. DiLORENZO:  Lou DiLorenzo from Bond Schoeneck &

18   King on behalf of the defendant law firm.

19          THE COURT:  Good morning.

20          MS. DONNELLY:  Good morning, Your Honor.

21          Mary Ellen Donnelly, Bond Schoeneck & King, on

22   behalf of the law firm.

23          THE COURT:  Good morning.

24          MR. RICH:  Good morning, Your Honor.

25          Alan J. Rich of the Law Firm of Alan J. Rich LLC for

*Proceedings*                                                               4

1    Yuriy Prakhin individually.

2             THE COURT:  Good morning.

3             Good morning, Your Honor.

4             MS. CAMPBELL:  Mallory Campbell on behalf of the

5    defendant firm form Bond, Schoeneck & King.

6             THE COURT:  Good morning.

7             MR. DiLORENZO:  Your Honor, we have our client with

8    us as well, Yuriy Prakhin.

9             THE COURT:  Good morning.

10            MR. DiLORENZO:  As well as Michael Kratchovil.

11            THE COURT:  K-R-A-T-C-H-O-V-I-L.

12            MS. DONNELLY:  Correct.

13            THE COURT:  I studied the list over the weekend.

14            Good morning.

15            Okay.  So we're on for jury selection today and I

16   have a few follow-up items from our conference last week.  I

17   think, to make things logistically easier, you all can stay

18   seated when you are speaking.  Just be sure that the green

19   light is on and speak into your microphones.  That may be the

20   easiest way for both the court reporter and for me to hear you

21   as you're speaking.

22            Conversely, if you don't want to be heard, make sure

23   your green light is not on and that will come into play more

24   when there are fewer people -- when the jurors are kind of

25   milling around and you are all talking amongst yourselves.

*Proceedings*                                                        5

1          Okay, so now that the clients are present, I want to

2   start by confirming that everyone still consents to me

3   selecting the jury today.

4          Ms. Huot?

5          MS. HUOT:  Yes, Your Honor.

6          THE COURT:  Mr. DiLorenzo?

7          MR. DiLORENZO:  Yes, Your Honor.

8          THE COURT:  Will each of you be taking the lead in

9   speaking?

10          MS. HUOT:  Yes, Your Honor.

11          MR. DiLORENZO:  I'm sorry, I couldn't hear you.

12          THE COURT:  Will you be taking the lead in speaking

13   today?  I just want to know who I should be asking questions

14   of.

15          MR. DiLORENZO:  Yes, Your Honor.

16          MR. RICH:  Your Honor, and I will be on behalf of

17   the defendant.

18          THE COURT:  That's right Mr. Rich.  Thank you.

19          Now that your clients are present, I am repeating

20   the instruction that there is to be no contact whatsoever with

21   any of the potential jurors; either now during the jury

22   selection process or for the duration of the trial.

23          You should have received sometime since Friday two

24   documents, the first is a summary, a two-page summary of the

25   voir dire questions that are going to be asked this morning,

*Proceedings*                                                        6

1   and also, a chart to help guide our peremptory challenges.  I

2   will return to that in a moment.

3           First, I want to clarify the procedure for

4   challenges for cause.  I reviewed the transcript of our

5   pretrial conference last week and I think there may have been

6   some confusion as to how the challenges for cause are going to

7   work.

8           So as a practical matter, we are going to put the

9   jurors into the box.  As you can see, the seats are numbered.

10  There should only be 15 seats, but we will get back to that in

11  a second.  And I am going to ask the questions and ask each

12  person to raise their hand if their answer is yes.  Some of

13  those questions may require some follow-up.

14          Noncontroversial follow-up are things like prior

15  jury service.  Perhaps more controversial -- and by

16  "controversial" I mean, the parties -- the juror may want to

17  discuss this in private -- is the nature of a lawsuit that

18  they may have been involved in.  There is also a question

19  about whether or not the juror or anyone close to them was

20  ever accused of or the subject of an investigation into

21  discrimination.  That may be something that is more

22  appropriate to discuss -- where is the sidebar?  Sidebar is

23  over here, right.

24          In terms of challenges for cause.  So, if we are

25  already up at sidebar and one or more jurors have already come

1   up to do follow-up, I will ask there, based on that question,

2   if there are challenges for cause, otherwise we are going to

3   save all the challenges until the end.

4          Does that make sense?

5          MR. RICH:  I couldn't hear, Judge.

6          THE COURT:  We are going to save the challenges

7   until the end.

8          MR. RICH:  Okay.

9          THE COURT:  So after I finish all of the cause

10   questions, I will call counsel up and ask if there are any

11   last challenges for cause because the 15 jurors at that point,

12   if there are more challenges, that's your 15, right?

13          Then I will ask the background questions and there

14   may be information that comes out in the background questions

15   that makes you want to further challenge them, which, again, I

16   will ask counsel at the conclusion of asking all these

17   questions.

18          But I think, Ms. Huot, I might have said in response

19   to your question whether or not you can just ask for a sidebar

20   at any time, I do not want to disrupt the flow of juror

21   questioning to do that.  You all will have ample opportunity

22   to advise me as to whether or not there are issues with

23   jurors.

24          Is everyone clear on this procedure?

25          MS. HUOT:  Yes, Your Honor.

1              THE COURT:  Mr. DiLorenzo?

2              MR. DiLORENZO:  Yes, Your Honor.

3              THE COURT:  Mr. Rich?

4              MR. RICH:  Yes, Your Honor.

5              THE COURT:  Okay.

6              All right.  Now, for the peremptory challenges.

7     We've gone through everything, you've gone through your 15 and

8     not it is time for the peremptories.

9              I did reserve decision on the question of additional

10    peremptory challenges for the defense and ultimately concluded

11    that those were not necessary, and I think I had said that at

12    first on Friday or whenever we had our conference, and then

13    you all provided argument.  I went back and looked at the

14    issue a little bit more closely and, ultimately, I do not

15    think that is necessary in this case.

16             First, the relevant statute gives me the discretion

17    to treat multiple defendants as a single party, and it was

18    raised that the parties that are here have been acting in

19    tandem throughout the duration of the case.

20             Mr. Prakhin you are the proprietor of the law firm

21    co-defendant and so, by virtue of your mutual interest, there

22    isn't any need for an additional peremptory challenge.  What

23    that also means, though, is that the plaintiff isn't getting

24    an additional challenge.  So we are conditioning with our

25    three and three, which means we only need to qualify 15, not

*Proceedings*                                                                 9

1    17 jurors.

2             So the chart that you received yesterday, or

3    Saturday, only includes 15, and in looking at that chart, the

4    way that that process will go is that we will do this up at

5    sidebar.  Plaintiff -- there's three rounds of challenges.

6    They should really be called strikes, not challenges, because

7    once you tell me you want these people off the jury, they are

8    not going to be on the jury; whereas the cause challenges,

9    those can be debatable and then I make a decision.

10             So in round one, plaintiff will go first with one

11   strike.  Defendants, plural, will go next.

12             In round two, the defense goes first with one strike

13   and then plaintiff.

14             And then in round three, plaintiff goes first and

15   defense, each with their last strikes.

16             Any questions about this process from the plaintiff?

17             MS. HUOT:  No, Your Honor.

18             THE COURT:  Mr. DiLorenzo?

19             MR. DiLORENZO:  No, Your Honor.

20             THE COURT:  Mr. Rich?

21             MR. RICH:  No, Your Honor.

22             THE COURT:  Now, as for the list of names and places

23   or organizations, rather, I know there have been a couple of

24   last-minute motions in limine regarding the preclusion of

25   testimony of a couple of witnesses or the use of witness

*Proceedings*                                                                    10

1   records related to those witnesses, specifically doctor Cinthi

2   Pillai and Dr. Falk, I believe.  I am still going to mention

3   their names because the names may come up during trial, and if

4   they don't, then they don't, but at least we will know if the

5   jurors know these parties.

6           Any objections to keeping these names on the list?

7           Ms. Huot?

8           MS. HUOT:  No, Your Honor.

9           THE COURT:  Mr. DiLorenzo?

10          MR. DiLORENZO:  No, Your Honor.

11          THE COURT:  Mr. Rich?

12          MR. RICH:  No, Your Honor.

13          THE COURT:  All right.

14          I also reserved decision on a couple of voir dire

15  questions that had been raised.

16          The first was -- these are both defense questions.

17  It was defendant's Question 37, which is on ECF document

18  number 169 at page 6, regarding the opinion of the defendant

19  law firm.  I am not going to include that question because I

20  think -- I actually think it will come up in the context of

21  whether or not people know this law firm, because I do have to

22  introduce the name of the law firm and if a juror knows and

23  says why they know, then we will learn their opinion.  I don't

24  know that it requires a separate question.

25          And then the second question was defendant's 38,

*Proceedings*                                                    11

1   which is again at document number 169 at page 7, about the

2   plaintiff being unable to prove her case and whether or not

3   you would be comfortable -- I am just not going to get into

4   that with the jurors.  I don't think it is necessary.  I

5   wouldn't normally ask a question like that and I don't see any

6   circumstances in this case that require it.

7           There is one other -- two other names and places

8   issues that I want to flag.

9           I know in the renewed Joint Pretrial Order, the

10  document number is escaping me right now, but it was the

11  second pretrial order that was entered here -- or filed by the

12  parties -- and I believe there was some objections to Igor

13  Shmunko, S-H-M-U-N-K-O, remaining as a witness:  Again, I'm

14  going to keep him on the list and Judge Amon will make her

15  rulings later today, but I prefer to keep them on just so that

16  we can ask the jurors if they know this person.

17          And then finally, there was one name, the

18  pronunciation of which was going to be checked for me, it's

19  Patricia -- I will spell it B-E-L-O-U-S, I think that was a

20  defense name.

21          MR. RICH:  Belous.

22          THE COURT:  Belous, okay.  Thank you.

23          Anything else from the plaintiff?

24          MS. HUOT:  Yes, Your Honor.

25          There was an individual named Sandra -- I believe I

*Proceedings*                                                          12

1   thought her last name was pronounced "Barone."  We believe it

2   may be "Beron."

3            THE COURT:  Beron?

4            MS. HUOT:  Yes, Your Honor.  Yes.

5            THE COURT:  We will get you a list of the names.

6            MS. HUOT:  Thank you, Your Honor.

7            THE COURT:  Anything else for plaintiff?

8            MS. HUOT:  That's it, Your Honor.

9            THE COURT:  Mr. DiLorenzo for the law firm?

10            MR. DiLORENZO:  No, Your Honor.

11            THE COURT:  And Mr. Rich for Mr. Prakhin.

12            MR. RICH:  No, Your Honor.

13            THE COURT:  Hang on a second, folks.

14            MS. HUOT:  Your Honor?

15            THE COURT:  Yes?

16            So we're going to be bringing up the jury in a

17   couple minutes.  Anything else before they come up.

18            MS. HUOT:  Is there --

19            MR. BELDNER:  Can we use the restroom?

20            THE COURT:  Quickly.  The jury is coming up now.

21   Anyone who needs to use the restroom, do it right now because

22   we're not taking any break.

23            For the record, nearly all of counsel has left.

24            (Pause in the proceedings.)

25            THE COURT:  Back on the record.

*Proceedings*                                                                    13

1           We have 43 veneer persons that have appeared.  We

2    originally asked for 45.  I would like to get started because

3    I don't think we are going to go through all of these jurors

4    and we need to get started because you are all starting

5    opening statements this afternoon.

6           Any objections?

7           MS. HUOT:  No, Your Honor.

8           MR. DiLORENZO:  No.

9           MS. HUOT:  I'm curious --

10          MR. BELDNER:  There's a button here, we didn't know

11   what that button did.

12          THE COURT:  Right.  So -- off the record.

13          (Discussion held off the record.)

14          THE COURT:  Back on the record.

15          We're now at 45, so all 45 veneer persons are coming

16   upstairs.

17          MR. BELDNER:  Thank you, Your Honor.

18          THE COURT:  Back off the record.

19          (Discussion held off the record.)

20          THE COURT:  We're back on the record.

21          So with respect to sidebar, are all eight lawyers

22   coming up here?

23          MS. HUOT:  Your Honor, from our side, it will just

24   be me and Mr. Beldner.

25          THE COURT:  Okay.

*Jury Selection*                                                          14

1           And Mr. DiLorenzo?

2           MR. DiLORENZO:  Your Honor, just myself, Mary Ellen,

3    and Mr. Rich.

4           THE COURT:  Okay.  Four.  That's fine.

5           (A recess in the proceedings was taken.)

6           (Prospective Jurors enter.)

7           THE COURT:  All rise.  Please be seated.

8           Good morning, everyone.

9           THE JURY:  Good morning.

10          THE COURT:  My name is Marcia Henry and I'm a United

11   States Magistrate Judge here in the Eastern District of

12   New York.  You are here today because we are about to select a

13   jury in a civil case.

14          Before we begin, I want to thank you for being here

15   today.  The contribution that each of you makes of your time

16   and effort is important to the judicial system.  In fact, jury

17   service is one of the most important contributions individuals

18   make to maintaining a fair and impartial system of justice in

19   our country.

20          Jury service is both a right and responsibility of

21   United States citizenship.  Our system of justice depends on

22   this.  All of us who participate are keenly aware of the

23   importance of an impartial, fair, and just trial.  We truly

24   appreciate your good citizenship and participation in this

25   regard.

1          Now, turning to today's proceedings, as I mentioned,

2    this is a civil case, United States District Judge Carol

3    Bagley Amon will preside over the trial.  The trial will begin

4    today and is expected to last until next Friday,

5    February 17th.

6          Let me introduce you to the parties in the case.

7          The plaintiff in this case is Yelena Ruderman, and

8    when I say each person's name, I am going to ask them to stand

9    and take their masks off.

10         Plaintiff's counsel are Innessa Huot, Annabel

11   Stanley, and Camilo Burr, all of the law firm Faruqi and

12   Faruqi LLP, as well as Joshua Beldner, of the law firm Tilton

13   Beldner, LLP.

14         Assisting them is Matthew Gonzalez.

15         The defendants in this case are the Law office of

16   Yuriy Prakhin and Mr. Yuriy Prakhin.

17         The Law Office of Yuriy Prakhin, P.C., is

18   represented by Louis DiLorenzo, Mary Ellen Donnelly, and

19   Mallory Campbell of the law firm Bond, Schoeneck, and King,

20   PLLC.

21         Assisting them is Michael Kratchovil.

22         Mr. Yuriy Prakhin is represented by Alan Rich of the

23   Law Office of Alan Rich LLC.

24         All parties are equals before the Court and are

25   entitled to equal consideration.  No party is entitled to

1    sympathy or favor.  It is important that the people who are

2    selected as jurors be confident that they can hear the

3    evidence neck and render their verdict fairly and impartially.

4    This means that they will base their verdict on the evidence

5    presented in this courtroom and not anything they may have

6    heard or read about outside the courtroom.

7            Let me explain a little bit more about what will

8    happen today.

9            The procedure that we are about to go through is

10   called voir dire, and it is a time-honored process.  The

11   reason for the voir dire process is to ensure a qualified,

12   fair, and impartial jury to both sides in this case.  When I

13   say "fair and impartial," I mean a jury which will decide the

14   case without fear, favor, prejudice, or passion.  It is a jury

15   which will render a verdict based solely on the evidence

16   presented at trial and the applicable law that is given to the

17   jury by the trial judge.

18           Now, a juror's qualifications and impartiality

19   cannot be assumed.  I have to ask questions of you as a group

20   and, sometimes, individually.  That inquiry is known as

21   voir dire.

22           To make this voir dire process meaningful, you are

23   required to answer my questions under oath, so I ask you to

24   please rise -- if you are able -- while my deputy administers

25   the oath.

1          THE COURTROOM DEPUTY:  Please, raise your right
2   hand.
3          (Jurors sworn.)
4          THE PROSPECTIVE JURORS:  I do.
5          THE COURTROOM DEPUTY:  You may be seated.
6          THE COURT:  Ladies and gentlemen, now that you've
7   taken the oath, it is very important for all of you to listen
8   to my questions very carefully.  You each have a duty to
9   listen carefully to my questions and to answer them as
10  honestly and as conscientiously and as completely as you can.
11          During this questioning process, if you think that
12  because of some experience that you have had in your life or
13  because of something you have heard or read that you could not
14  be fair and impartial -- that is, that you would be inclined
15  toward the plaintiff or the defendants regardless of what the
16  evidence showed -- it is your duty to tell me.  That is
17  because the parties have a right to a qualified, fair and
18  impartial jury.  In a few minutes, I will be asking you
19  questions about your experiences, your backgrounds and your
20  views.  Admittedly, at times this questioning process will be
21  tedious.  I do ask that you bear with me.  As I am sure you
22  can all appreciate, our task today is an important one.
23          You also may be concerned that some of the questions
24  will invade your privacy.  Please let me reassure you that is
25  not our purpose here today.  The purpose of the questions is

1   to ensure fairness and impartiality to both sides in the case.

2   Your answers will enable me to determine whether to excuse any

3   of you for cause and will allow the lawyers to use peremptory

4   challenges, which the law gives each party to use without

5   giving any reason at all.

6           Please understand that if you are excused, it is not

7   a reflection on you as a person.

8           Before we get into specific questions, let me say,

9   again, that we are all grateful for your presence here today

10  and for your willingness to serve as jurors.  Moving the jury

11  selection process along expeditiously will be my top priority.

12          I also do have a few instructions to govern our

13  selection process.

14          First, as potential jurors, you may not discuss this

15  case at all.  That includes discussing it with each other,

16  with your friends, with your family, with your co-workers,

17  with strangers you meet in the courthouse, the subway, or

18  anywhere else.  If someone asks, just say:  I have been

19  instructed by the judge not to discuss this case.

20          Second, please do not conduct any outside research

21  on the internet or otherwise about this case or the applicable

22  law.  Do not use social media in connection with the jury

23  selection process or with this case.

24          Third, if you see the parties, the lawyers, or

25  anyone associated with them in the courthouse, please don't

1    communicate with them.  They will not communicate with you.

2    That's because I've already instructed them to avoid all

3    contact with members of the jury.  Please don't think they're

4    being rude if they don't come up to you and say hello in the

5    morning.  They are simply following my instruction to avoid

6    all contact with you.

7              Finally, I appreciate that you all are wearing your

8    masks, and I would ask you to keep them on during the course

9    of today's proceeding.

10             So, to start this voir dire process, we're going to

11   call 15 jurors to sit in the jury box, and my deputy will

12   direct you on where to go.  And I will state the numbers.

13   It's Juror Numbers 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13,

14   14, and 15.

15             Now, the 15 jurors who I've just called into the

16   jury box are our prospective jury panel.  Now, the rest of you

17   who are still sitting in the audience are here in reserve

18   because we may have to excuse some of the 15 prospective

19   jurors that were just called.  If that happens, then those of

20   you in the audience will be called up to replace any jurors

21   who are excused.

22             Now, in a minute, I am going to start asking

23   questions of the 15 jurors who are in the jury box.  Most of

24   these questions ask for a yes or no response.

25             However, it is important that everyone, all of you,

1   even those of you sitting in the back in the audience pay

2   close attention to the questions.  You should make a mental

3   note if your answer to any of the questions would be "yes."

4   The reason is because if any of the 15 jurors are excused,

5   then you may be called upon to replace that juror, and if that

6   happens, I am not going to repeat every question that I have

7   already asked at that point.  I am just going to ask you if

8   you have heard the previous questions and if you would have

9   answered yes to any of them.

10          Now, however, the questions are directed to the 15

11  of you sitting in the jury box, and if you are sitting in the

12  jury box and your answer to my question is a yes, then please

13  raise your hand.  Keep it raised until I call out your number

14  so I know we've acknowledged that you've answered.

15          If I have follow-up questions, I may ask you either

16  here in open court, or to come up to sidebar over here to

17  speak privately with the attorneys and me.

18          In addition, if there's something that you wish to

19  discuss privately, then you can also ask to come up to sidebar

20  and speak privately with me and the attorneys.

21          So let me start off with questions about who you

22  might know.  And I'm going to take my mask off and introduce

23  my staff so that you can also see what we look like.

24          As I mentioned, my name is Marcia Henry and I am a

25  magistrate judge here.  My courtroom deputy is Ricardo Castro.

*Jury Selection*                                                                   21

1          THE COURTROOM DEPUTY:  Good morning.

2          THE COURT:  My law clerks are can John Dao and Maria

3    Yousuf, and the first question is:  Does anyone know me or my

4    staff?

5          No hands are raised.

6          Next question:  The United States District Judge in

7    this case is Carol Bagley Amon.  Her courtroom deputy is

8    Tiffany Campbell.

9          Does anyone know either of them?  No hands raised.

10         Next question:  I've already introduced you to the

11   attorneys, the parties, and others associated with them.

12   Those are the people who stood and took their masks off.  Does

13   anyone know any of these people?

14         All right.  No hands are raised.

15         The next question requires a little bit of

16   explaining first, and that is what the case is about.

17         This case involves allegations of employment

18   discrimination.  Plaintiff, a former employee of The Law

19   Office of Yuriy Prakhin claims that defendants discriminated

20   against her.  Specifically, plaintiff claims that defendants

21   did not reasonably accommodate her alleged disability and

22   fired her because of her alleged disability.  Defendants deny

23   the allegations and assert that plaintiff was not

24   discriminated against.

25         The question is:  Has anyone heard anything about

1    this case before today?

2              No hands are raised.

3              The next question is:  If there's anything about the

4    allegations that I just described that makes you think it

5    would be difficult for you to be completely fair and

6    impartial?

7              No hands are raised.

8              Now, as I mentioned, the trial will start today,

9    this afternoon, and will last until next Friday,

10   February 17th.  The trial schedule will be daily starting at

11   9:30 a.m., ending at 5:00 p.m.  there will be a lunch break,

12   as well as breaks in the morning and the afternoon.

13             Now, a trial obviously creates inconvenience and

14   difficulties for everyone involved.

15             On the other hand, this is an extremely important

16   case to everyone involved.  Both sides seek a fair

17   cross-section of our community to consider the case.  That

18   includes people who work and people who are busy with other

19   important responsibilities.  Because of this, I cannot excuse

20   people simply because the length of the trial will be

21   inconvenient.  You are required to serve unless some truly

22   extraordinary or unavoidable situation or hardship prevents

23   it.

24             Now, on the good end of the spectrum, maybe you or

25   one of your adult children is getting married early next week.

*Jury Selection*                                                                 23

1   On the bad end of the spectrum, you might have a surgery

2   scheduled for next week.  Based on the standard I just

3   described, is there anyone who would find this trial's

4   schedule extremely burdensome?  Keep your hands high.

5          Number 7, 4 -- hang on, I'm going to call you.  If

6   you hear me call your number, you can put your hand down.  I

7   see 4, 6, 7, 8, 13, and 14.

8          Okay.  Starting with Juror 4, can you please come up

9   to sidebar?  And before we do that, I'm just going to ask

10  everyone to wait until the court reporter gets over to sidebar

11  before coming over.

12         Thank you very much.

13         (Continued on the following page.)

14

15

16

17

18

19

20

21

22

23

24

25

*Jury Selection*                                          24

1           (Sidebar held outside the presence of the jury.)

2           THE COURT:  Counsel, if you can be over here.

3   Juror is over here.  All right.

4           So there's a white noise machine so people can't

5   hear you.  What is it about the schedule?

6           THE PROSPECTIVE JUROR:  So I have two concerns.  I

7   sued for sexual harassment my employer in the past, a few

8   years ago.

9           THE COURT:  You're Mr. Kucher.

10          THE PROSPECTIVE JUROR:  So I don't know if that

11  would interfere with this case.  It sounds pretty --

12          THE COURT:  The question is whether or not the

13  trial schedule is a problem.

14          THE PROSPECTIVE JUROR:  I wanted to bring that up.

15          THE COURT:  It'll come up later.

16          THE PROSPECTIVE JUROR:  Then, I have a young child

17  that depends on me to take him to daycare, to school every

18  day.  I work as well but the baby is more my concern.  He's

19  two and a half years old.

20          THE COURT:  Two and a half years old.  Who is with

21  baby now?

22          THE PROSPECTIVE JUROR:  My wife and I both work.

23  She had to take him.

24          THE COURT:  What time is daycare drop-off?

25          THE PROSPECTIVE JUROR:  9:00 o'clock.

```
 1              THE COURT:  Where is it?

 2              THE PROSPECTIVE JUROR:  In Brooklyn.

 3              THE COURT:  Where?

 4              THE PROSPECTIVE JUROR:  Bay Parkway and 74th.

 5     It's called JCH.

 6              THE COURT:  Okay.  Do you think you would be able

 7     to make accommodations for drop-off if you were selected?

 8              THE PROSPECTIVE JUROR:  I would try, yes, I would

 9     try.

10              THE COURT:  Okay.

11              THE PROSPECTIVE JUROR:  I just wanted to bring

12     that up.

13              THE COURT:  I appreciate that, thank you so much.

14     You can have a seat.

15              No. 6.  Is this Mr. Michel.

16              THE PROSPECTIVE JUROR:  Dennis Michel.  Everyone

17     says it wrong.

18              THE COURT:  Tell me why the trial schedule is a

19     problem?

20              THE PROSPECTIVE JUROR:  So it's twofold.  One is I

21     was going to see an oral surgeon on Wednesday.  In early

22     December, I had a mugging situation happen where I was

23     attacked and my tooth chipped.  So, for me, I've been trying

24     to find consultation on seeing what's happening.  I think I

25     can cancel it but I just wanted to be transparent about
```

*Jury Selection*                                                              26

1    that.

2            And then, the second thing is, I manage a

3    marketing team for U.S. operations in my company and it

4    involves different offices.  I won't have anyone else to

5    oversee that for two weeks.  So that, again, not end of the

6    world I just want to be transparent about it.

7            THE COURT:  Sure.  Who is overseeing the team now?

8            THE PROSPECTIVE JUROR:  I have an intern person

9    assisting.  She's not qualified to manage a full team for

10   more than a day or two or a week, max.  Otherwise, I would

11   then have to figure out, you know, call my HR my department,

12   stuff like that.

13           THE COURT:  No problem.  I mean, to let you know

14   for the record your company is required under the law to let

15   you serve on jury duty.

16           THE PROSPECTIVE JUROR:  Yes, I totally understand.

17   I just know after hours it would be hard.

18           THE COURT:  So, you know, that --

19           THE PROSPECTIVE JUROR:  After hours, it would be

20   difficult managing, so that's it.  I just wanted to be

21   transparent about it.

22           THE COURT:  Okay.  Understood.  You can have a

23   seat.  Thank you so much.

24           Let me hear from Juror No. 7, please.  Thanks.

25           THE PROSPECTIVE JUROR:  Hello.

*Jury Selection*                                        27

1           THE COURT:  Ms. Hecht?

2           THE PROSPECTIVE JUROR:  Yes.

3           THE COURT:  Why is the trial schedule an issue?

4           THE PROSPECTIVE JUROR:  My husband is actually --

5           THE COURT:  Everyone has to hear you and no one

6    can hear you.

7           THE PROSPECTIVE JUROR:  My husband is actually

8    going away next week and I have a five-year-old and a

9    seven-year-old who actually, currently, has the stomach flu.

10   So we don't have any afterschool care when he's away.

11          THE COURT:  I see.  There was no issue with you

12   being here today?

13          THE PROSPECTIVE JUROR:  He stayed home today.

14          THE COURT:  Okay.  But he's traveling next week?

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  Okay.

17          THE PROSPECTIVE JUROR:  And he'll be out of town,

18   like, out of town.

19          THE COURT:  Okay.  Do you work?

20          THE PROSPECTIVE JUROR:  I do.  But I work from

21   home.  I'm full-time remote.

22          THE COURT:  Understood.  Thank you very much.

23   Have you been a seat.

24          No. 8, Ms. Deng.  Why is the trial schedule an

25   issue?

*Jury Selection*                                    28

1          THE PROSPECTIVE JUROR:  I meant to raise my hand

2    for the second question.

3          THE COURT:  I'm sorry.

4          THE PROSPECTIVE JUROR:  I want went to raise my

5    hand for the second question about the fairness.  About how

6    I can attend this trial.  Just to let you know.

7          THE COURT:  I'm sorry, what question?

8          THE PROSPECTIVE JUROR:  The second question,

9    sorry.

10         THE COURT:  About the allegations.

11         MS CAMPBELL:  Fairness.

12         THE PROSPECTIVE JUROR:  Whether I can be

13    impartial.

14         THE COURT:  Whether anything about the allegations

15    would prevent you from being fair and impartial.

16         THE PROSPECTIVE JUROR:  Yes.

17         THE COURT:  Okay.

18         THE PROSPECTIVE JUROR:  Based on what I heard, I'm

19    a researcher for long COVID disabilities, I work a lot in

20    hospitals and I work lot with people with disabilities.

21    I've been a volunteer in hospitals since high school, which

22    was about ten years ago, and I have a lot of pity as a

23    woman.  I've experienced workplace discrimination, I feel

24    like and I think that's a huge problem in workplaces.  I

25    don't think I can be impartial to be honest.

1          THE COURT:  Okay.  Well, this case doesn't involve

2     long COVID in any way, shape, nor is this a case of gender

3     discrimination so how would you that impact your ability to

4     be fair and impartial?

5          THE PROSPECTIVE JUROR:  I work a lot with people

6     with disabilities.  This woman was discriminated against she

7     claims because of her disability, right?

8          THE COURT:  Okay.

9          THE PROSPECTIVE JUROR:  With these people, I fed

10     them, I've looked after them in the hospital.

11          THE COURT:  Okay.  Thank you.  You can have a

12     seat.

13          Juror 13.

14          THE PROSPECTIVE JUROR:  Good morning.

15          THE COURT:  Ms. De Peralta.

16          THE PROSPECTIVE JUROR:  Yes.

17          THE COURT:  So why is the trial schedule an issue?

18          THE PROSPECTIVE JUROR:  I've been taking care of

19     my 101-year-old veteran father.  I only have the caretaker

20     until 3:00 o'clock and I am scared that he will fall.

21          THE COURT:  You typically take care of him during

22     the day?

23          THE PROSPECTIVE JUROR:  Yes.

24          THE COURT:  Do you work otherwise?

25          THE PROSPECTIVE JUROR:  I work from 7:00 to 3:00

*Jury Selection*                                              30

1   in the hospital and my travel time is only 14 minutes from

2   work to home so after that I take care of him.

3              THE COURT:  Okay.  And then someone else -- so

4   someone else takes care of him in the morning but then you

5   take over in the afternoon?

6              THE PROSPECTIVE JUROR:  Yes, I take over in the

7   afternoon until I leave for work again the next day.

8              THE COURT:  All right.  Thank you very much.  Have

9   you a seat.

10             Juror No. 14.

11             Good morning.  Jamie Yackow.

12             THE PROSPECTIVE JUROR:  Yes.

13             THE COURT:  Why would the trial schedule be an

14  issue?

15             THE PROSPECTIVE JUROR:  I'm a full-time

16  stay-at-home father.  I have two young kids that I'm a

17  full-time stay-at-home.

18             THE COURT:  Who is with them today?

19             THE PROSPECTIVE JUROR:  My wife is taking care of

20  the kids today.

21             THE COURT:  Okay.  And.

22             THE PROSPECTIVE JUROR:  She cancelled her work.

23             THE COURT:  So do you also work?

24             THE PROSPECTIVE JUROR:  I do.

25             THE COURT:  Okay.  What do you do?

*Jury Selection*                                          31

1           THE PROSPECTIVE JUROR:  I am a sole member of -- I

2    run my own company.

3           THE COURT:  What kind of company?

4           THE PROSPECTIVE JUROR:  Investments.  Investing.

5    Stock market, private investments.

6           THE COURT:  Okay.  So do you work at home or in an

7    office?

8           THE PROSPECTIVE JUROR:  I do.

9           THE COURT:  At home?

10          THE PROSPECTIVE JUROR:  Correct.

11          THE COURT:  So while you're working during the

12   day, are you also taking care of the, you said, two

13   children?

14          THE PROSPECTIVE JUROR:  Yes, I have a 18-month-old

15   who is home.  My wife works, she does speech pathology.  So

16   she's doing cases at various points of the day so we kind of

17   match the schedules together.  I try to do calls when she's

18   available.  My son takes a nap in the middle of the day so

19   that helps.  And I take my daughter who is four to and from

20   school every day.

21          THE COURT:  Okay.  What time is drop off.

22          THE PROSPECTIVE JUROR:  9:30 drop-off, 2:30

23   pick-up.

24          THE COURT:  Okay.  So today your wife is doing

25   drop-off and pick-up and taking care of the baby.

*Jury Selection*                                    32

1    THE PROSPECTIVE JUROR:  And we have somebody,

2  we're paying somebody for the day to come help her out.

3    THE COURT:  Okay.  All right.  Thank you very

4  much.  You can have a seat.

5    Juror No. 3.  Hi, Mr. Kim.

6    THE PROSPECTIVE JUROR:  Yes.

7    THE COURT:  Come closer.

8    THE PROSPECTIVE JUROR:  So my primary concern is

9  just I work in the accounting department and, unfortunately,

10  right now, currently, I'm in charge of doing a couple of

11  pension audits and we have our deliverables on the 15th.

12  And that also includes me having to have, like, constant

13  communication with the auditors.  So I did not realize this

14  would be 9:00 o'clock to 5:00 o'clock so time during the day

15  may impede giving guys a fair trial because I don't want to

16  be thinking about my work when I should be thinking about

17  the Court.

18    THE COURT:  First, who is taking care of this

19  audit today while you're here?

20    THE PROSPECTIVE JUROR:  Right now, it's in the

21  hands of the, like, the processes.  Once I prepare stuff, we

22  send it over to the auditors for comments.  So we're in the

23  process of waiting for comments.  But I'm in charge of

24  receiving comments, applying comments, and then continuing

25  to do the back and forth with the auditors.

1          THE COURT:  Okay.  And you said your deliverable

2     is the 15th.

3          THE PROSPECTIVE JUROR:  Yes.

4          THE COURT:  Okay.  I'm going to ask you to have a

5     seat.  But realize this is not the only trial for which a

6     jury is being selected and that there may be other trials

7     that are far longer.  So I just wanted to note that for you

8     but you can have a seat.  Okay.

9          THE PROSPECTIVE JUROR:  Okay.  Thank you.

10         THE COURT:  Let's go in order here.

11         MR. BURR:  Can we have a second to confer.

12         MR. BELDNER:  No.

13         MR. BURR:  Fine.

14         THE COURT:  So with respect to any objections to

15    excusing, certainly, Juror No. 4.

16         Do you object?

17         MR. DiLORENZO:  Yes.

18         MS CAMPBELL:  No.  Four?  Sorry.

19         We agree.

20         THE COURT:  Okay.  All right.  So then.

21         MR. BURR:  I couldn't hear.

22         THE COURT:  Does anyone object to excusing Juror

23    No. 4.

24         MR. BURR:  We would not object to excusing Juror

25    No. 4.

*Jury Selection*                                    34

1           THE COURT:  Because.

2           MR. BELDNER:  The first individual that was called

3  up.

4           THE COURT:  The who one has the daycare issue.

5           MR. BURR:  I believe that we're not asking about

6  the daycare issue.  If I remember correctly, he said that he

7  could make arrangements.  I don't believe that the

8  availability is the issue with that individual.

9           THE COURT:  Okay.  Fine.  I remember that Juror

10 No. 6 is the one who has the oral surgery appointment.

11          MR. BELDNER:  He said he could.

12          MS. STANLEY:  Is four gone?

13          THE COURT:  Yes.

14          MR. BURR:  We would object to the removal of

15 No. 4.

16          THE COURT:  Okay.  Well, I'm overruling your

17 objection based on his daycare issues.

18          So Juror No. 7 is also being excused.

19          Any issues with Juror No. 7 who has children at

20 home?

21          MR. BELDNER:  No objection.

22          MS. STANLEY:  No objection.

23          THE COURT:  Juror No. 8, any objections to

24 excusing her?

25          MS. STANLEY:  No.

*Jury Selection*                                                  35

1          MR. BURR:  On the basis --

2          THE COURT:  Is there any objection?

3          MR. BURR:  Yes, Your Honor.

4          THE COURT:  What's the objection?

5          MR. BURR:  Are we talking about --

6          THE COURT:  Juror No. 8.

7          MR. BURR:  She seems available.

8          THE COURT:  Based on what her answers, Ms. Huot, I

9    need you to follow me.  Based on the objection I am excusing

10   her.  I'm not waiting for question 25 to excuse her.

11         Any objection?

12         MR. BELDNER:  No objection.

13         THE COURT:  Thank you.  Juror No. 13

14   Ms. De Peralta who has the 101-year-old father.

15         MR. BELDNER:  No objection.

16         THE COURT:  Okay.  Then Juror No. 14 Ms. Yackow.

17         MR. BURR:  No objection.

18         MR. BELDNER:  No objection.

19         MS CAMPBELL:  No.

20         MR. BELDNER:  Six was the oral surgeon.  He said

21   he could move it.

22         THE COURT:  He's not.

23         MR. BELDNER:  No. 3.

24         MS. STANLEY:  Just it makes me feel very

25   uncomfortable when somebody says that they have something

*Jury Selection* 36

1  else that they potentially they're going to be focusing on.

2  I mean, it's just I know an audit is a potentially really

3  pressure-filled situation and --

4         THE COURT:  He appears to indicate that he doesn't

5  have anyone else to do it so on that basis I would excuse

6  him.

7         Any objection?

8         MS CAMPBELL:  No objection.

9         MR. BELDNER:  No objection.

10        THE COURT:  3, 4, 7, 8, 13 and 14.

11        MS CAMPBELL:  Yes.

12        THE COURT:  All right.

13        Stay right here.  Stay there.

14        (Sidebar discussion concludes.)

15        (In open court.)

16        THE COURT:  So the following jurors are excused.

17 Juror No. 3, 4, 7, 8, 13, and 14.  You're excused with the

18 Court's thanks please go back downstairs to the jury room

19 and let them know that you've been excused from

20 Judge Henry's trial selection.  You can leave the courtroom.

21        (The prospective jurors were excused by the

22 Court.)

23        THE COURT:  I'm going to ask the following jurors

24 to come up.

25        Juror No. 16, Moore, Juror No. 17 Mr. Fabich.

*Jury Selection*                                                37

1   Juror No. 18.  Juror No. 19.  Juror No. 20.  And No. 21.

2          Now, would any of you have answered yes to any of

3   the questions I asked so far?  Okay.  Keep your numbers up.

4          Who is this Juror No. 16, 17, and 21.  All right.

5   Why don't we start with No. 16.

6          (Sidebar held outside the presence of the jury.)

7          THE PROSPECTIVE JUROR:  Good morning.  Good

8   morning, your Honor.

9          THE COURT:  You are Mr. Moore?

10         THE PROSPECTIVE JUROR:  Yes, ma'am.

11         THE COURT:  Tell me what you would have said yes

12  to.

13         THE PROSPECTIVE JUROR:  You asked a question about

14  having trouble being impartial.  So I've since changed

15  careers but I worked with people with disabilities for 11

16  and a half years, so I would find it difficult to -- I'd

17  probably be biased for the plaintiff.

18         THE COURT:  Okay.  All right.

19         THE PROSPECTIVE JUROR:  I'll do my best but, yeah,

20  I wanted to say that.

21         THE COURT:  Let me ask you this.  Would you be

22  able to objectively listen to evidence and then apply the

23  trial judge's instructions on the law?

24         THE PROSPECTIVE JUROR:  Yes, ma'am.  I work with

25  this in and I look at the facts as they are and look at all

*Jury Selection*                                    38

1    the evidence and make my best determination based on that.

2              THE COURT:  Okay.  I certainly understand that you

3    had past life experience but everyone has, right?

4              THE PROSPECTIVE JUROR:  Yes.  I felt it would be

5    remiss of me not to mention to given the subject matter of

6    the trial.

7              THE COURT:  Thank you very much.  You can have a

8    seat.

9              No. 17.

10             MS. STANLEY:  Your Honor, can we ask questions

11   when they come up here?

12             THE COURT:  Give me a second on that.

13             THE PROSPECTIVE JUROR:  It's just about the nature

14   of the case.  I'm a district supervisor and I deal with

15   employees and allegations of different types of harassment.

16   My job is to, basically, deal with people and honestly,

17   like, from my perspective 90, 95 percent of the case I have

18   to work to protect my company.  And I do not -- I have a

19   hard time.  I do this for seven years I'm a district

20   supervisor, and basically, let's say like this, okay, we are

21   not here for no reason but, okay, but very few of the cases

22   are like for real based upon my history.  Mostly it's just,

23   like, to share the wealth of the insurance companies.  And,

24   like, just, like, I don't feel like you will I can be

25   objective.  I have no problem to be here, it's just I dealt

*Jury Selection*                                                           39

1   with so many of them that I kind of know what this is about.

2   You guys look at the table right here, they look like they

3   don't eat for three days they hungry for that money and

4   they're going to go for it, okay?

5           THE COURT:  I appreciate your honesty but that's

6   what we're asking for.

7           THE PROSPECTIVE JUROR:  Yes, absolutely.

8           THE COURT:  And ultimately, though, as a juror,

9   your job is to listen to evidence in the case, right?

10          THE PROSPECTIVE JUROR:  Your Honor, I absolutely

11  agree but, I mean, my mind is pretty much set.  People who

12  come in, they come in not for any justice, they come in for

13  money because that's how the system is built especially in

14  the last couple of years and I know you try to do the best

15  you can in your situation as a judge and I respect your

16  efforts.  But to be honest --

17          THE COURT:  I'm not doing anything but picking a

18  jury, I understand.  You can have a seat.

19          THE PROSPECTIVE JUROR:  No problem.  Absolutely.

20  Have a good day.

21          MS. STANLEY:  He's acceptable, Judge.

22          THE COURT:  No. 21.

23          THE PROSPECTIVE JUROR:  Hello.  Good morning.

24          THE COURT:  I'm sorry, Mr. Pierre-Louis?

25          THE PROSPECTIVE JUROR:  Yes.

*Jury Selection*                                                40

1          THE COURT:  What would you have said yes to.

2          THE PROSPECTIVE JUROR:  Okay.  I live on Long

3    Island and I have an elderly mom that's not doing too well.

4          THE COURT:  Sorry to hear that.

5          THE PROSPECTIVE JUROR:  Yes, I have to be taking

6    care of her.  In case of any emergency, I have to be close

7    by to take her to the doctor or anything.

8          THE COURT:  Sure.  So does she have any doctors

9    appointments scheduled in the next two weeks?

10          THE PROSPECTIVE JUROR:  You know what, I'm not

11    sure.  But sometimes she, like, she's in and out of it.

12          THE COURT:  Do you work?

13          THE PROSPECTIVE JUROR:  Yes, I do.

14          THE COURT:  What do you do.

15          THE PROSPECTIVE JUROR:  I'm a truck driver.

16          THE COURT:  What's your typical work schedule?

17          THE PROSPECTIVE JUROR:  Well, it all depends.  I

18    work on Long Island.  Sometimes I just have one or two

19    deliveries on Long Island.  I get it work, like, 7:00,

20    8:00 o'clock and I'm off by 2:00 o'clock.

21          THE COURT:  Is that every day?

22          THE PROSPECTIVE JUROR:  Yes.

23          THE COURT:  Okay.  Who is with your mom today?

24          THE PROSPECTIVE JUROR:  She's by herself.

25          THE COURT:  She's by herself?

*Jury Selection*                                               41

1           THE PROSPECTIVE JUROR:  Yes.

2           THE COURT:  Is she typically by herself.

3           THE PROSPECTIVE JUROR:  Well, most of the time,

4    yes.

5           THE COURT:  Okay.  So she lives by herself?

6           THE PROSPECTIVE JUROR:  No, I live with her.

7           THE COURT:  You live with her?

8           THE PROSPECTIVE JUROR:  Yes.

9           THE COURT:  But most days you're not there and

10   she's by herself.

11          THE PROSPECTIVE JUROR:  During the week, I'm not

12   there but I'm close by in case of an emergency.

13          THE COURT:  Okay.  Because you're doing deliveries

14   in Long Island.

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  All right.  Thank you very much.  Have

17   you a seat.

18          Okay.  So of these three.  All right.

19          So with respect to Juror 16, Mr. Moore, any

20   challenges?

21          MR. BURR:  No, Your Honor.

22          MR. BELDNER:  No, Your Honor.

23          MR. DiLORENZO:  Your Honor, can we just confer for

24   two seconds?

25          THE COURT:  Okay.

*Jury Selection*                                            42

1          Counsel.

2          MR. DiLORENZO:  This is the gentleman with the

3    disability experience?

4          THE COURT:  Yes.

5          MR. DiLORENZO:  We'd ask that he be excused for

6    cause.

7          THE COURT:  Okay.  Based on --

8          MR. DiLORENZO:  Based on his statement that he

9    said although he'd try to do his best, he felt that he would

10   be biased.

11         THE COURT:  Okay.

12         MR. BELDNER:  Your Honor followed up and asked him

13   why he could be fair and impartial and I believe he answered

14   yes.

15         MS. STANLEY:  I would do my best.

16         MR. BURR:  I would apply the evidence based fairly

17   based on the judge's orders.

18         THE COURT:  So, for that reason, I'm denying the

19   challenge.

20         No. 17.

21         MR. BELDNER:  We would object to 17, your Honor.

22         THE COURT:  I am excusing him for cause.  He

23   essentially said that no matter what happens, he cannot

24   follow the judge's instructions to be impartial.

25         And Juror No. 21.

*Jury Selection*                                          43

1          MR. BELDNER:  Your Honor, I do have a concern in

2    that if he is that concerned about his elderly mother and

3    he's taking care of her and I think he should be excused.

4          MS CAMPBELL:  I also concur.  I have an elderly

5    mother on Long Island that has caused many problems in my

6    life.

7          THE COURT:  Seems to be a trend, yes.  I

8    understand.  Thank you.  Stay here.

9          So the following jurors are excused.  No. 17 and

10   No. 21.  With the Court's thanks you are excused.  Please go

11   back to the jury room and let them know that you've been

12   excused from Judge Henry's jury selection process.

13          (The prospective jurors were excused by the

14   Court.)

15          THE COURT:  So I believe next is No. 22

16   Ms. Melo Ercolino and No. 23 Ms. Morgan.

17          So, ladies, before either of you sit down would

18   you have said yes to any of the questions I asked?

19          Come on over.

20          So you are No. 22?

21          THE COURT:  Thank you.  Ms. Melo Ercolino.

22          THE PROSPECTIVE JUROR:  Yes.

23          THE COURT:  So which question would you have said

24   yes to?

25          THE PROSPECTIVE JUROR:  Well, this is a case of

*Jury Selection*                                               44

1   discrimination.  I recently got fired from my job.

2            THE COURT:  You recently were fired from your job?

3            THE PROSPECTIVE JUROR:  I got my job back.  I

4   didn't have to go to court or anything, but I felt it was

5   kind of discrimination for me because what I did was done by

6   others and they didn't treat me the same way.

7            THE COURT:  Okay.  Well, now, as certainly

8   understanding that you've had that experience and been able

9   to get your job back.  Would you be able to listen to the

10  evidence objectively in this case and follow the judge's

11  instructions on the law?

12           THE PROSPECTIVE JUROR:  I mean, yeah, I think so.

13           THE COURT:  Okay.

14           THE PROSPECTIVE JUROR:  But, you know, I mean, I

15  think I could be fair based on the evidence.

16           THE COURT:  Okay.

17           THE PROSPECTIVE JUROR:  But I don't know.  I mean,

18  sometimes I have my doubts but I do whatever you tell me to

19  do.  I try to follow.

20           THE COURT:  As a juror, you took the oath here to

21  answer these questions truthfully and I appreciate your

22  truthful responses.  If you were selected as a juror, you

23  would also take the oath essentially to do what I just said

24  which is objectively review evidence and follow the trial

25  judge's instructions on the law.

*Jury Selection*                                          45

1           Would you be able to do that?

2           THE PROSPECTIVE JUROR:  Yes.

3           THE COURT:  Have a seat.  My deputy will direct

4    you.

5           Juror No. 23.

6           THE PROSPECTIVE JUROR:  Hi.

7           THE COURT:  Hello.

8           THE PROSPECTIVE JUROR:  I have a doctor's

9    appointment scheduled on the 16th so next Thursday.  This

10   doctor tends to book out like three months in advance so it

11   would take me a long time to be able to reschedule to.

12          THE COURT:  Okay.  What type of doctor?

13          THE PROSPECTIVE JUROR:  Neurologist.

14          THE COURT:  A neurologist, okay.  When did you

15   make the appointment?

16          THE PROSPECTIVE JUROR:  Sorry.

17          THE COURT:  When did you make the appointment?

18          THE PROSPECTIVE JUROR:  November, I think is the

19   last time I had an appointment with her.

20          THE COURT:  Okay.  Have you previously seen this

21   doctor before?

22          THE PROSPECTIVE JUROR:  Yes.

23          THE COURT:  All right.  And you don't think you

24   can change it?

25          THE PROSPECTIVE JUROR:  Last time I had to

*Jury Selection*                                                46

1   reschedule, I had to push it out by at least a month.

2          THE COURT:  Okay.  Thank you.  I'm going to let

3   you have a seat.

4          THE PROSPECTIVE JUROR:  Thank you.

5          THE COURT:  Any challenges?

6          MR. BELDNER:  We don't have any challenges.

7          MR. DiLORENZO:  22, your Honor.

8          THE COURT:  Okay.  Yes.

9          MR. DiLORENZO:  The way she answered your

10  questions, she said she would do her best.  But she said, I

11  have my doubts.  I have my doubts, I mean, you know, when

12  you repeat it again to her I think it's a little bit

13  intimidating, she's obviously trying to please you.  But she

14  made it clear she would have her doubts about being able to

15  be fair and impartial despite the instructions.

16         THE COURT:  Well, when I explained to her that her

17  oath today was to be honest which she said she was and her

18  juror oath to listen to the evidence and apply the law she

19  said that she could do that.

20         MS. STANLEY:  And she followed that by saying, but

21  I'll try to follow it.  She had a but at the end of every

22  time she was asked and I think what she's saying --

23         THE COURT:  I think she's intimidated by the six

24  people staring at her but I hear you.  I'm overruling your

25  objection.

*Jury Selection*                                              47

1           MR. BURR:  With respect to No. 23, she mentioned

2     she had an appointment on the 16th.

3           THE COURT:  Yes.

4           MR. BURR:  That's probably -- we'll be done before

5     then.  I just wanted to flag that.

6           THE COURT:  I wasn't going to excuse her.

7           MR. BELDNER:  We have no objection.

8           MS. STANLEY:  I don't think she should be seated.

9     She's not going to get another appointment for three months.

10    I think that's a real hardship.

11          MR. DiLORENZO:  That's the problem.  She's going

12    to have to cancel it now is the problem.

13          THE COURT:  What I would want her to do is go out

14    since we're not -- if we had a break, I would want her to go

15    and see if she can reschedule it.  I think we'll keep her

16    for now.  And then, at some point, we can see if she can

17    reschedule it.  But if you think we're telling them next

18    Friday because we should tell them that but if you think

19    you'll be done.

20          MR. DiLORENZO:  She'll have to move it before

21    then, but I don't think --

22          MR. BURR:  Your Honor, the closing --

23          THE COURT:  Yes, let me bring her back up here.

24          Juror No. 23, please come back up.

25          So when is your appointment again?

*Jury Selection*                                                        48

1              THE PROSPECTIVE JUROR:  The 16th.

2              THE COURT:  At what time?

3              THE PROSPECTIVE JUROR:  11:00 a.m., I believe.

4              THE COURT:  Okay.  Is there any way for you to --

5     if you were -- we were to take a break to check.

6              THE PROSPECTIVE JUROR:  I can call the office.

7              THE COURT:  Okay.  We're going to keep going and

8     then when we get to a breaking point you can check.

9              THE PROSPECTIVE JUROR:  Thank you.

10             THE COURT:  All right.  Anything else?

11             MR. BURR:  No, Your Honor.  So neither of these

12    people are being released.

13             Okay.  Let's continue.

14             (Sidebar discussion concludes.)

15             (In open court.)

16             THE COURT:  All right.  We're going to continue.

17             The next question is whether there is anyone who

18    has difficulty speaking, reading, or understanding English?

19             No hands are raised.

20             Next question:  Does anyone have a physical or

21    other issue that would make it difficult for you to sit as a

22    juror in this case?  For example, a hearing loss, a need to

23    take specific types of medication or other issues related to

24    same.

25             No. 18, do you want to come up.

*Jury Selection*                                    49

1           (Sidebar held outside the presence of the jury.)

2           THE COURT:  Mr. Pilosov?

3           THE PROSPECTIVE JUROR:  Yes.

4           THE COURT:  Tell me the issue.

5           THE PROSPECTIVE JUROR:  I have hearing aids,

6   that's number one.  That's my issue with the hearing.  Then

7   I have a scheduled surgery on March 15th to resolve my

8   hemorrhoids, therefore, it's a little tough to sit all eight

9   hours like with a long --

10          THE COURT:  Okay.

11          THE PROSPECTIVE JUROR:  Sitting.

12          THE COURT:  Okay.  Are you currently working?

13          THE PROSPECTIVE JUROR:  I am.

14          THE COURT:  I am a scenic artist, I paint scenery.

15          Okay.  That's a job that requires standing?

16          THE PROSPECTIVE JUROR:  Standing.  No sitting at

17  all, yes.

18          THE COURT:  Okay.  Understand.  Thank you very

19  much.  You can have a seat.

20          THE PROSPECTIVE JUROR:  Okay.

21          THE COURT:  Any objections to excusing this juror?

22          MR. BURR:  No.

23          MS. STANLEY:  No pun intended.

24          THE COURT:  There is no objection, he'll be

25  excused.  Stay there.

*Jury Selection*                                    50

1          The next juror we're calling up is Juror No. 24.

2     Ms. Nicoletti.

3          Before you sit down, would you have said yes to

4     any of my questions?

5               THE PROSPECTIVE JUROR:  Yes.

6               THE COURT:  Come on over.

7          Hello.

8               THE PROSPECTIVE JUROR:  Hi.

9               THE COURT:  Yes.  Tell me what you would have said

10    yes to.

11              THE PROSPECTIVE JUROR:  I have an ailing mother.

12    My father just died a couple months ago.

13              THE COURT:  I'm sorry.

14              THE PROSPECTIVE JUROR:  My mother is not well and

15    she's got doctors appointments next week.  I hate to have

16    her change the appointments to go.  And also I do have to

17    tell you my husband, 25 years ago, was arrested and spent

18    18 months on a federal offense so I would have an issue.

19              MS. STANLEY:  I couldn't hear you.

20              THE PROSPECTIVE JUROR:  My husband, 25 years ago,

21    was arrested for a federal offense and he served 18 months

22    in federal jail.  So I don't know, I just wanted to let you

23    know.

24              THE COURT:  First, I appreciate you letting me

25    know that.  I'm sorry about your husband.  This is not a

1   criminal case, this has nothing to do with anything having

2   to do with criminal charges?

3                THE PROSPECTIVE JUROR:  Okay.

4                THE COURT:  But going back to your mom, are

5   you -- who is with your mom today?

6                THE PROSPECTIVE JUROR:  My mother, nobody.  She's

7   by herself because we all have to work.

8                THE COURT:  Sure.  And who, typically, takes her

9   to her doctors appointments?

10               THE PROSPECTIVE JUROR:  It's a toss up.  If I

11  can't go, my sister will go.

12               THE COURT:  Okay.  How many appointments does she

13  have next week?

14               THE PROSPECTIVE JUROR:  I have an appointment for

15  myself and she has an appointment for herself on the 16th.

16               THE COURT:  Okay.  All right.  Would your sister

17  be able to take her to her appointment?

18               THE PROSPECTIVE JUROR:  I don't know.

19               THE COURT:  Okay.  But it's a possibility?

20               THE PROSPECTIVE JUROR:  Possible.  She works full

21  time, she's taking her on the 15th or something.  She's

22  taking her on her appointment for the 15th.  She has to go

23  for a CAT scan and I'm taking her to the doctor on the 16th.

24               THE COURT:  I see.  You have your own appointment

25  as well?

*Jury Selection*                                              52

1           THE PROSPECTIVE JUROR:  On the 17th.

2           THE COURT:  That's towards the end, I understand

3    this.  Okay.

4           And is there anyone else besides you and your

5    sister to take her to her appointment?

6           THE PROSPECTIVE JUROR:  No.  I have a brother who

7    lives in Florida.

8           THE COURT:  Okay.  Understood.  All right.  I'm

9    going to have you step back over here.

10          THE PROSPECTIVE JUROR:  Okay.  Thank you.

11          THE COURT:  Counsel.

12          MR. BURR:  No objection.

13          MR. DiLORENZO:  No objection.  You can excuse her

14   as far as I'm concerned.

15          MR. BELDNER:  I have no problem.

16          MR. DiLORENZO:  I don't think she wants to be

17   here.

18          THE COURT:  That's another issue.

19          Juror No. 24, you're excused with the Court's

20   thanks.  If you could please turn to the Central Jury Room.

21   Let them know you've been excused from Judge Henry's jury

22   selection.

23          Next person I'm going to call is Juror 25,

24   Ms. Harris.

25          Ms. Harris, would you have said yes to any of my

1    questions?

2              THE PROSPECTIVE JUROR:  No.

3              THE COURT:  Counsel, have a seat.

4              (In open court.)

5              THE COURT:  Okay.  The next question, actually,

6    the next few questions relate to several fundamental legal

7    principles that apply to this case, which is a civil case,

8    in any civil case.  And it requires a little bit of

9    explaining before I get to the actual question.

10              So, first, this is a civil case which is to be

11   decided by a standard of proof known as preponderance of the

12   evidence.  The burden of proof is on the plaintiff.  This is

13   different from what you may have heard about in a criminal

14   case where the standard of proof is beyond a reasonable

15   doubt.  In other words, there's just two different

16   standards, and in this one, for this case, is a

17   preponderance.

18              Does anyone, excuse me, is there anyone who does

19   not understand or who cannot accept the fact that there is a

20   different standard for a civil case than there is for a

21   criminal case?

22              No hands are raised.

23              Next:  During trial, you will hear testimony from

24   witnesses with all sorts of backgrounds.  You must judge the

25   credibility of each one based on his or her own testimony,

1    not on any assumptions about them based on who they are or

2    what they do.

3              Is there anyone who is unable to or unwilling to

4    accept and apply this rule of law.

5              No hands raised.

6              Next.  The role of the jury is to decide the

7    facts.  The judge does not play any role in your

8    determination of facts.  What the judge does is to instruct

9    you on the law.  You will apply the facts as you find them

10   to the law that the judge instructs you on and your

11   conclusion will be your verdict.  You must apply the law as

12   instructed regardless of your personal opinion as to what

13   the law is or should be?

14             Does anyone or would anyone have any difficulty

15   doing this?

16             No hands raised.

17             Next:  In reaching a verdict, you are to wait

18   until all the evidence has been presented and the Court has

19   instructed you as to the law to be applied before you make

20   up your mind about any fact or issue in the case.

21             Is there anyone who does not understand this rule

22   of law who cannot accept it?

23             No hands raised.

24             (Continued on the next page.)

25

Jury Selection                                    55

1    (continuing.)

2             THE COURT:   Next:   You must decide this case without

3    being influenced by sympathy or bias.   You must return a

4    verdict on the fact and the law putting sympathy aside.

5             Is there anyone who does not under this rule of law

6    or who can't accept it?

7             No hands raised.

8             Now I am going to read a list of persons and

9    organizations whose names you may hear during trial and there

10   are quite a few names on the list.

11            When I have finished reading the list, please raise

12   your hand if you know or have heard of any of these persons:

13            Irene Raskin

14            Irene Gabo

15            Sandra Beron

16            William Lawlor

17            Nicholas Serlin

18            Steven Korytny

19            Erica Larssen

20            Patricia Belous

21            Peter Coates

22            Alexander Pusachev

23            Dr. Anna Shostak

24            Dr. Martin Falk

25            Dr. Elchine Gajiev

1      Svetlana Scoll

2      Dmitry Levitsky

3      Dr. Cinthi Pillai

4      Gil Zohar

5      Natalia Generalova

6      Vitaliy Lyutyk

7      Marina Zhernyakova

8      Jack Grossman

9      David Hernandez

10     Johathan Shalom

11     Karine Bogoraz

12     Olga Kravetz

13     Igor Shmunko

14     Tatyana Ruderman

15     John Manessis

16     Tommy Sgouras

17     Christina Guaneri

18     Dr. Mark Moster

19     Dr. Scott Brodie

20     Dr. Vaidehi Dedania

21     Dr. Jeffrey Odel

22     Dr. John Guy

23     Afzar Khan

24     Laura Shvarts

25     American Transit Insurance Company

VB        OCR        CRR

Jury Selection                                                57

1          Law Office of Svetlana Scoll

2          Putney, Twombly, Hall & Hirson LLP

3          If you have heard of or know any of these persons or

4    organizations, please raise your hand.

5          All right, no hands are raised.

6          Next question:  Have any of you taken any courses in

7    the law, attended law school or work for a lawyer, law firm, a

8    judge or at a courthouse?

9          Juror 6 and 19.  Okay.  Do you have the microphone

10   ready?

11         Hi.  Good morning.

12         Excuse me.  This is Juror Number 6.

13         And which is it, courses in the law or?

14         THE PROSPECTIVE JUROR:  So, in my undergraduate

15   career, I took prelaw, took the LSATs, was going to go to law

16   school, worked for a politician and then deviated to

17   marketing.

18         THE COURT:  Okay, no problem.

19         Your legal training was some time ago, and it was in

20   your undergraduate years?

21         THE PROSPECTIVE JUROR:  Yeah, so it was in 2008,

22   2009.

23         THE COURT:  Okay.

24         Would you be able to put aside anything that you

25   learned as part of your legal training in undergrad and

                          VB      OCR      CRR

Jury Selection                                    58

1    instead follow the instructions of law that the trial judge is

2    going to give you?

3              THE PROSPECTIVE JUROR:  Yes.

4              THE COURT:  Number 19.

5              THE PROSPECTIVE JUROR:  Good morning, Judge.

6         I currently work for a law firm.

7              THE COURT:  Okay, what type of law firm?

8              THE PROSPECTIVE JUROR:  Debevoise Plimpton, a large

9    law firm.

10             THE COURT:  Okay.

11             THE PROSPECTIVE JUROR:  So multi practice.

12             THE COURT:  Hold on, sir.  I need you to listen to

13   the questions and then tell me the answers.

14        You work for Debevoise.

15        Are you an attorney there?

16             THE PROSPECTIVE JUROR:  No, I'm not.

17             THE COURT:  Okay, what is your role there?

18             THE PROSPECTIVE JUROR:  I'm an associate director,

19   technology support.

20             THE COURT:  Okay.

21             THE PROSPECTIVE JUROR:  So I work in the IS

22   department.

23             THE COURT:  Okay.

24        So you do not at all practice or have any

25   interaction --

Jury Selection                              59

1          THE PROSPECTIVE JUROR:  I have interaction with the

2     attorneys.  I don't practice law --

3          THE COURT:  Okay.

4          THE PROSPECTIVE JUROR:  -- like I used to before I

5     was working in IS.

6          THE COURT:  Hold on.  Hold on.

7          In your current role, do the attorneys talk about

8     their cases?

9          THE PROSPECTIVE JUROR:  In passing.  Not always.

10         THE COURT:  Okay.

11         Any substantive legal discussion in those cases?

12         THE PROSPECTIVE JUROR:  Not that I, not that I can,

13    not that I can tell, no.

14         THE COURT:  Okay.

15         And you said that you -- so you had previously

16    attended law school.

17         THE PROSPECTIVE JUROR:  No, I never attended law

18    school.  I worked as a legal assistant for a while many years

19    ago.

20         THE COURT:  Okay.

21         In what type of environment?

22         THE PROSPECTIVE JUROR:  In a law firm.

23         THE COURT:  What type of law firm?

24         THE PROSPECTIVE JUROR:  I worked at large law firm.

25         THE COURT:  What type of practice?

Jury Selection                                                60

1          THE PROSPECTIVE JUROR:  Litigation.

2          THE COURT:  What type of litigation?

3          THE PROSPECTIVE JUROR:  God, civil, commercial.  I

4   don't remember exactly offhand.  It's been so many years, but

5   I did it in the past.

6          THE COURT:  Okay.

7          Whether in your past role or your current role,

8   would you be able to put aside anything that you had learned

9   about the law in those roles and, instead, focus on the law as

10  instructed by the trial judge here?

11         THE PROSPECTIVE JUROR:  I believe I can, yes.

12         THE COURT:  Okay.  Thank you.

13         Anyone else?  Juror -- I can't see your number, sir.

14         THE PROSPECTIVE JUROR:  11.

15         THE COURT:  Juror 11.

16         THE PROSPECTIVE JUROR:  I just had a couple --

17         THE COURT:  Hang on, sir.  Hang on.

18         Juror 11 is Mr. Sherry, okay.

19         So, you currently work in a law firm or other legal

20  environment?

21         THE PROSPECTIVE JUROR:  No, I just had a couple of

22  classes in college -- during college studies.

23         THE COURT:  Okay.

24         What type of law was that?

25         THE PROSPECTIVE JUROR:  I think it was a general law

Jury Selection                                      61

1  and a global.

2           THE COURT:  Okay.

3           Would you be able to put aside anything that you

4  learned in those classes and follow the trial judge's

5  instructions on the law?

6           THE PROSPECTIVE JUROR:  Yes.

7           THE COURT:  Anyone else?

8           Next question:  Does anyone have an immediate family

9  member or close friend who is a lawyer or paralegal, or who

10 works for a lawyer, a law firm, a judge or at a courthouse?

11          Now, before you raise your hand, let me define what

12 I mean by an "immediate family member."  An immediate family

13 member means a parent, child, sibling, a member of your

14 household, or someone of a similarly close relationship to

15 you.  And when I say a "close friend," I mean a friend whose

16 relationship to you is similar to that of an immediate family

17 member.  I am not talking about your thousand friends on

18 Facebook or your thousand Instagram followers.

19          So, based on those definitions, does anyone have an

20 immediate family member or close friend who is a lawyer or

21 paralegal?

22          Number 6, in order -- 1, 6 -- sorry.  I'm sorry,

23 ma'am.

24          You are juror 25?

25          THE PROSPECTIVE JUROR:  Yes.

```
                        Jury Selection                    62

1              THE COURT:  Yes, okay.

2              And Number 12?

3              I got you Number 6.

4              Anyone else?  Okay.

5              Juror Number 1.

6              THE PROSPECTIVE JUROR:  Yes, my oldest daughter is a

7    paralegal at Counsel Press.

8              THE COURT:  Counsel Press?

9              THE PROSPECTIVE JUROR:  Mm-hmm.  It's the Appellate

10   Court.

11             THE COURT:  Appellate Court, understood.

12             Anything that she's talked about in her cases about

13   the law that would prevent you from following the trial

14   judge's instructions of law?

15             THE PROSPECTIVE JUROR:  No.

16             THE COURT:  Okay, thank you.

17             Number 6?

18             THE PROSPECTIVE JUROR:  My little sister's in law

19   school, and she's a legal secretary as well.

20             THE COURT:  Okay.

21             What type of -- where does she work?

22             THE PROSPECTIVE JUROR:  She, she works on

23   Long Island.  I don't know the firm name, but she is in Touro.

24             THE COURT:  Okay.

25             But you said she works at a law firm.
```

Jury Selection                                    63

1          THE PROSPECTIVE JUROR:  As a legal secretary.

2          THE COURT:  Okay.

3          Anything about her discussions of the law with you

4    that would prevent you from following the trial judge's

5    instructions on the law?

6          THE PROSPECTIVE JUROR:  I don't think so.

7          THE COURT:  Number 25.

8          Hello.

9          THE PROSPECTIVE JUROR:  My niece is a lawyer.

10         THE COURT:  Okay.

11         Do you know what kind of lawyer?

12         THE PROSPECTIVE JUROR:  I really don't know what

13   kind of lawyer, but she's a lawyer, in the Bronx.

14         THE COURT:  Okay.

15         Any discussions about the law and her cases that

16   would prevent you from following the trial judge's

17   instructions here?

18         THE PROSPECTIVE JUROR:  No.

19         THE COURT:  And Number 12.

20         Hello.  This is Conti?

21         THE PROSPECTIVE JUROR:  Yes.  Good morning, Judge.

22         My mother is a retired attorney.  She practiced for

23   over 40 years of private practice as well as for the State of

24   California in access and fairness.

25         THE COURT:  Okay.

VB          OCR          CRR

1           THE PROSPECTIVE JUROR:  One of my closest friends is

2      a medical malpractice attorney as well.  She litigates.  And

3      my godmother is a judge in California for Gloria Rhynes.

4           THE COURT:  Okay.

5           You said your godmother?

6           THE PROSPECTIVE JUROR:  Yes.

7           THE COURT:  Do you know what -- any specific type of

8      court?

9           THE PROSPECTIVE JUROR:  I don't remember, to be

10     honest.  We don't speak about her cases, so --

11          THE COURT:  Okay.

12          THE PROSPECTIVE JUROR:  -- next question.

13          THE COURT:  Well, yes.  The next question being:

14     Any discussions with your mom or your -- I believe it was your

15     godmother and your aunt.

16          THE PROSPECTIVE JUROR:  No, my best friend.

17          THE COURT:  Your best friend, excuse me.

18          Any discussions about their cases or the law in

19     their cases that would prevent you from following the trial

20     judge's instructions here?

21          THE PROSPECTIVE JUROR:  No.

22          THE COURT:  Thank you.

23          Anyone else?

24          Okay.  The next question is whether any of you have

25     ever served on a jury or a Grand Jury?  If your answer is yes,

Jury Selection                                          65

1   you have to raise your hand.  I can't process any other

2   responses.

3            All right, Number 1 -- keep your hand raised until I

4   call your number.

5            Number 1, 25, 19.  Is that Number 9?  Thank you.

6   And 11.  Okay.  All right.

7            Juror Number 1, I'm going to start with you.  I'm

8   going to ask similar questions to everyone, but I will say

9   them for each person.

10           How many times have you been a juror?

11           THE PROSPECTIVE JUROR:  Once.

12           THE COURT:  Was it a jury or a Grand Jury?

13           THE PROSPECTIVE JUROR:  It was a jury.

14           THE COURT:  Federal or State?

15           THE PROSPECTIVE JUROR:  State.

16           THE COURT:  And was it a civil case or criminal?

17           THE PROSPECTIVE JUROR:  Criminal.

18           THE COURT:  Okay.

19           Without telling us what the verdict was, was that

20   jury able to reach a verdict?

21           THE PROSPECTIVE JUROR:  Yes.

22           THE COURT:  Number 25.  Okay.

23           How many times?

24           THE PROSPECTIVE JUROR:  Been like twice.  The first

25   time --

Jury Selection                                                    66

1          THE COURT:  Hang on, hang on.

2          So twice?

3          THE PROSPECTIVE JUROR:  Twice.

4          THE COURT:  Okay.

5          And was it a jury or a Grand Jury?

6          THE PROSPECTIVE JUROR:  Grand Jury.

7          THE COURT:  Grand Jury?

8          THE PROSPECTIVE JUROR:  Yeah.

9          THE COURT:  For both?

10         THE PROSPECTIVE JUROR:  Yeah.

11         THE COURT:  Federal or State?

12         THE PROSPECTIVE JUROR:  State.

13         THE COURT:  State, okay.

14         And that's where you have to come in and listen to

15  evidence in criminal cases?

16         THE PROSPECTIVE JUROR:  Sure.

17         THE COURT:  Okay.  Thank you very much.

18         THE PROSPECTIVE JUROR:  You're welcome.

19         THE COURT:  Number 19.

20         How many times have you been a juror?

21         THE PROSPECTIVE JUROR:  Once.

22         THE COURT:  Grand Jury or jury why?

23         THE PROSPECTIVE JUROR:  Jury.

24         THE COURT:  Federal or State?

25         THE PROSPECTIVE JUROR:  State.

Jury Selection                                           67

1          THE COURT:  Criminal or civil?

2          THE PROSPECTIVE JUROR:  Civil.

3          THE COURT:  Okay.

4          Without telling us what the verdict was, was that

5     jury able to come to a verdict?

6          THE PROSPECTIVE JUROR:  No.

7          THE COURT:  Okay.

8          Number 9.  Hello.

9          THE PROSPECTIVE JUROR:  Good morning.

10          THE COURT:  Good morning.

11          Ms. Lewis?

12          THE PROSPECTIVE JUROR:  Yes.

13          THE COURT:  All right.

14          How many times have you been a juror?

15          THE PROSPECTIVE JUROR:  Grand Jury.  Once.

16          THE COURT:  Once, okay.

17          And was that State or Federal?

18          THE PROSPECTIVE JUROR:  State.

19          THE COURT:  Okay, thank you very much.

20          Number 11.

21          Okay, how many times have you been a juror?

22          THE PROSPECTIVE JUROR:  Once.

23          THE COURT:  Grand Jury or juror?

24          THE PROSPECTIVE JUROR:  Grand Jury.

25          THE COURT:  Grand Jury?

Jury Selection                                                    68

1          THE PROSPECTIVE JUROR:  Grand Jury.

2          THE COURT:  Okay.

3          Federal or State?

4          THE PROSPECTIVE JUROR:  State.

5          THE COURT:  Thank you.

6          Anyone else for prior jury service?  Okay.

7          The next question is:  If not already discussed,

8    have you, your immediate family members or your close friends

9    ever participated in a lawsuit in any capacity?  For example,

10   as a party to a lawsuit or as a witness in a lawsuit?

11         No hands are raised.

12         Next question:  Some of the evidence in this case

13   may include written or spoken Russian.  Do any of you speak or

14   understand Russian?

15         No hands raised.

16         Next question:  Are you, an immediate family member

17   or a close friend currently employed in a supervisory position

18   in their work place?

19         Number 6, 19, 11 and -- is it number 20?

20         THE PROSPECTIVE JUROR:  20.

21         THE COURT:  Thank you, sir.  All right.

22         Mr. Michel, Number 6.

23         Can he have the microphone, please?  Okay.

24         And who is it that is employed in the supervisory

25   position?

Jury Selection                                              69

1          THE PROSPECTIVE JUROR:  Me.

2          THE COURT:  You.  Okay, yes, that's right.

3          And how long have you been in a supervisory role?

4          THE PROSPECTIVE JUROR:  Two years.

5          THE COURT:  All right, thank you very much.

6          Number 19?

7          THE PROSPECTIVE JUROR:  It is in the supervisory

8    role.

9          THE COURT:  I understand.

10         How long?

11         THE PROSPECTIVE JUROR:  I've been in this particular

12   position in a supervisory role for a little -- close to seven

13   years.

14         THE COURT:  Okay.  Thank you very much.

15         Number 11.

16         THE PROSPECTIVE JUROR:  It's me.

17         THE COURT:  Okay.

18         And how long have you been in that role?

19         THE PROSPECTIVE JUROR:  Fifteen years.

20         THE COURT:  Okay.

21         And if you hadn't previously said, what is the role?

22         THE PROSPECTIVE JUROR:  As a quality manager.

23         THE COURT:  Quality manager, okay.  Thank you.

24         Number 20.

25         This is Mr. Acampora.

                    VB        OCR       CRR

Jury Selection                                    70

1          THE PROSPECTIVE JUROR:  It's me, I'm a supervisor of

2    carpenters for about five months now.

3          THE COURT:  At carpenters?  At an organization?  Or

4    the union?

5          THE PROSPECTIVE JUROR:  New York City Housing

6    Authority.

7          THE COURT:  Oh, NYCHA.

8          Okay, anyone else?

9          THE PROSPECTIVE JUROR:  I didn't explain the role.

10         THE COURT:  Oh, I'm sorry.

11         THE PROSPECTIVE JUROR:  I just --

12         THE COURT:  This is Juror 6.  Thank you.

13         THE PROSPECTIVE JUROR:  So, in my role, I run our

14    U.S. operations and marketing.

15         THE COURT:  Yes, I think you had previously

16    mentioned that.

17         THE PROSPECTIVE JUROR:  I don't know how to do this.

18         THE COURT:  That's okay.  Okay.  Court reporters are

19    steadily reporting everything that gets said, don't worry.

20         Next question:  Have you, an immediate family member

21    or a close friend ever owned or operated a business?

22         Is that Number 23?  Okay.  Thank you.  We've got a

23    couple hands.

24         Number 19, 12, and 20, and 23.  Okay.

25         Number 19.

VB        OCR        CRR

Jury Selection                                    71

1            THE PROSPECTIVE JUROR:  My wife currently has her

2    own design business, graphic design business.

3            THE COURT:  Okay.

4            Is she a solo practitioner or does she have

5    employees?

6            THE PROSPECTIVE JUROR:  Solo practitioner.

7            THE COURT:  Solo practitioner, thank you.

8            Number 12.

9            THE PROSPECTIVE JUROR:  For about five years my dad

10   owned his own janitorial service where he employed two other

11   workers.

12           THE COURT:  Okay.  Thank you very much.

13           Number 20.

14           THE PROSPECTIVE JUROR:  My brother owns a civil

15   engineering company.

16           THE COURT:  Who is it?

17           THE PROSPECTIVE JUROR:  My brother.

18           THE COURT:  Your brother, okay.

19           And is he working solo or does he have employees?

20           THE PROSPECTIVE JUROR:  Solo.  Solo.

21           THE COURT:  Solo?  Thank you.

22           Anyone else?  Just your brother, okay.

23           Number 23.

24           THE PROSPECTIVE JUROR:  Hi.  My sister owns a hair

25   and nail salon.

Jury Selection                                    72

1          THE COURT:  And does she have employees?

2          THE PROSPECTIVE JUROR:  She has four to five

3     employees.

4          THE COURT:  Okay.  Thank you.

5          Next question.

6          Oh, we are not going to need a microphone for this

7     one.

8          Have you, an immediate family member or a close

9     friend ever filed a formal complaint with the Equal Employment

10    Opportunity Commission or a similar agency regarding

11    discrimination in the workplace?

12         No hands raised.

13         Next question:  Have you, an immediate family member

14    or close friend ever been the victim of or witness to

15    disability discrimination in the workplace?

16         No hands raised.

17         Next question:  Have you, your immediate family

18    member or a close friend ever been accused of disability

19    discrimination in the workplace or been the subject of an

20    investigation involving allegations of disability

21    discrimination in the workplace?

22         No hands raised.  All right.

23         Now that I have asked the other questions, is there

24    any other reason why you could not sit on this jury and render

25    a fair and impartial verdict based on the evidence presented

VB        OCR        CRR

Side-Bar                                73

1   at trial and the trial judge's instructions on the law?

2              No hands are raised.

3              I am just going to have a brief discussion with

4   Counsel at side-bar for a moment, if you will give me a couple

5   of minutes.

6              And, in fact, does anyone need a restroom break?

7   Oh, wow, yes, all the hands came up.

8              Why don't we take a ten-minute restroom break,

9   please.  Come back here in exactly ten minutes.

10             For those jurors in the box, come back to the exact

11  same seats that you were in.  Everyone else can come back to

12  any other seat.

13             Thank you.  All rise.

14             (Prospective jurors exit.)

15             (Side-bar conference held on the record out of the

16  hearing of the jury.)

17             (Side-bar.)

18             THE COURT:  So, look, I am about to ask them the

19  background questions, so are there any follow-ups for

20  challenge, the questions I have asked previously?

21             Is there any follow-up that you want to ask of

22  anyone?

23             MR. RICH:  It was a general question.  When you

24  asked, Your Honor, did you something...  I think the question

25  was did you come to a verdict in that case?  And somebody

```
                          Side-Bar                          74
```

1   raised their hand and said no.

2          And I would wonder, I, I would ask if you could ask

3   if the case went to the jury.  Because if they didn't come to

4   a verdict after the case went to the jury and they couldn't

5   come to a decision, there's a different dynamic as in maybe

6   they settled the case and it didn't go to the jury.

7          THE COURT:  I would note that typically they would

8   tell me if it settled, but I will ask the question.

9          MR. RICH:  With regard to -- oh, I'm sorry.

10  Ms. Melo Ercolino.

11         THE COURT:  What number is she?

12         MR. RICH:  Number 22.

13         THE COURT:  Yes, she is sitting in seat number four.

14         MR. RICH:  Yes.

15         I would feel more comfortable if we could just

16  inquire of her whether she might, you know, because she was

17  ambiguous.

18         THE COURT:  This is the person who indicated that

19  she had been fired and she thought that others were doing the

20  same thing she had been doing, but also hadn't been fired.

21         MR. RICH:  Right.

22         THE COURT:  Okay.

23         MS. HUOT:  And she was rehired.

24         THE COURT:  Right.

25         MR. RICH:  You know, she kind of answered on both

Side-Bar                                          75

1   sides of the fence and I would ask if Your Honor could inquire

2   or if I can inquire:  Once you are impaneled, you have to be

3   sure that you can be fair through the entire process.  If

4   you're, you know, if her answer is she can be, that's fine.

5   If -- but, I, the way she expressed it, it sounded like she

6   would have these percolating feelings that she might say I can

7   start that way, but it might percolate up.

8           THE COURT:  Well, this is the person who I did not

9   excuse based on her earlier answer and I think her follow-up

10  questions are sufficient.  I am not asking her any more

11  questions about it.

12          MR. RICH:  Okay.

13          THE COURT:  Because she said she could be fair and

14  impartial if she took the oath as a juror and that is what we

15  need.

16          MR. RICH:  She ended that with a "but."

17          THE COURT:  I don't think that she was "butting"

18  because she was unsure.  I think she was butting because she

19  was nervous about standing up here with all of you.  Not that

20  you are an intimidating crowd, but if you are a juror, I can

21  see where that would fall into line.

22          In any event, besides asking Number 19 about the no

23  verdict, are there any other follow-ups before we get to the

24  get to background questions?

25          ALL:  No, Your Honor.

1          THE COURT:  All right.

2          Then you have got five minutes to go to the

3     bathroom.  That really means three.

4          Thank you.

5          (Side-bar end.)

6          (Pause in the proceedings.)

7          (In open court.)

8          THE COURT:  Are all Counsel present?

9          And are all the jurors back?  Are our jurors in the

10    box?

11         THE COURTROOM DEPUTY:  Yes.

12         THE COURT:  All right.

13         I do have a follow-up question.  Juror 19.

14         THE PROSPECTIVE JUROR:  Yes.

15         THE COURT:  Can we have the microphone for this one,

16    please?  Thanks.  Okay.

17         You said you had previously been a juror in a civil

18    case.

19         THE PROSPECTIVE JUROR:  In a civil case.

20         THE COURT:  In State court.

21         THE PROSPECTIVE JUROR:  State court, yes.

22         THE COURT:  Okay.

23         Did the jury actually get to deliberate?

24         THE PROSPECTIVE JUROR:  No.

25         THE COURT:  Did the case settle?

Jury Selection                                                77

1              THE PROSPECTIVE JUROR:  Mistrial.

2              THE COURT:  Okay.

3              All right, ladies and gentlemen.  I am going to now

4     ask you a series of questions, and again for those in the

5     audience, still keep listening, but for this one we are going

6     to use the microphone because I am going to be speaking to

7     each of you.

8              So let's start with Number 1, Ms. Johnson-Williams.

9              You live in Brooklyn?

10             THE PROSPECTIVE JUROR:  Yes.

11             THE COURT:  What part of Brooklyn?

12             THE PROSPECTIVE JUROR:  Brownsville.

13             THE COURT:  How long have you lived there?

14             THE PROSPECTIVE JUROR:  Sixty-three years.

15             THE COURT:  Do you own or rent?

16             THE PROSPECTIVE JUROR:  Rent.

17             THE COURT:  How far did you go in school?

18             THE PROSPECTIVE JUROR:  Two years college.

19             THE COURT:  What did you study?

20             THE PROSPECTIVE JUROR:  Computer science.

21             THE COURT:  Are you currently working?

22             THE PROSPECTIVE JUROR:  Yes, I am.

23             THE COURT:  What do you do?

24             THE PROSPECTIVE JUROR:  I am a contract analyst.

25             THE COURT:  Who do you work for?

1          THE PROSPECTIVE JUROR:  New York City Department For

2    the Aging.

3          THE COURT:  How long have you been doing that?

4          THE PROSPECTIVE JUROR:  Oh, I been at DFA for ten

5    years.

6          THE COURT:  Ten years?

7          THE PROSPECTIVE JUROR:  Yes.

8          THE COURT:  DFA is the acronym?

9          THE PROSPECTIVE JUROR:  Yes.

10         THE COURT:  Okay.

11         Are you married or do you have a domestic partner?

12         THE PROSPECTIVE JUROR:  No, I'm widowed.

13         THE COURT:  My condolences.

14         What did your husband -- was he working?

15         THE PROSPECTIVE JUROR:  Yes, post office.

16         THE COURT:  Post office.

17         THE PROSPECTIVE JUROR:  Yes.

18         THE COURT:  Do you have any children over the age

19   of 18?

20         THE PROSPECTIVE JUROR:  Yes.

21         THE COURT:  How many?

22         THE PROSPECTIVE JUROR:  Three.

23         THE COURT:  Okay.

24         How old are they?

25         THE PROSPECTIVE JUROR:  25, 40, 45.

```
                         Jury Selection                    79

 1              THE COURT:  Are they working?

 2              THE PROSPECTIVE JUROR:  Yes.

 3              THE COURT:  What does the 25-year-old do?

 4              THE PROSPECTIVE JUROR:  25-year-old is a TSA officer

 5      at JFK airport.

 6              THE COURT:  You said TSA?

 7              THE PROSPECTIVE JUROR:  Mm-hmm.

 8              THE COURT:  And the 40-year-old?

 9              THE PROSPECTIVE JUROR:  40-year-old works at MCU.

10              THE COURT:  The credit union?

11              THE PROSPECTIVE JUROR:  Yes.

12              THE COURT:  Okay.

13              And what does the 45-yearold do?

14              THE PROSPECTIVE JUROR:  45-year-old is a senior

15      paralegal at Counsel Press.

16              THE COURT:  That's the paralegal that you were

17      talking about earlier?

18              THE PROSPECTIVE JUROR:  Yes.

19              THE COURT:  Okay.

20              Is it the -- I keep calling them by their ages, is

21      it your son or daughter who --

22              THE PROSPECTIVE JUROR:  All daughters.

23              THE COURT:  Okay.

24              Your daughter who works at MCU, do you know what she

25      does there?
```

```
                         Jury Selection                    80

 1              THE PROSPECTIVE JUROR:  She's a loan -- a loan

 2   officer.

 3              THE COURT:  Loan officer, okay.

 4              Any other adults in your household?

 5              THE PROSPECTIVE JUROR:  No.

 6              THE COURT:  Any hobbies or activities you pursue in

 7   your spare time?

 8              THE PROSPECTIVE JUROR:  I'm very heavily into my

 9   church.  I'm the president of an organization there.

10              THE COURT:  All right.

11              Where do you usually get your news?

12              THE PROSPECTIVE JUROR:  Channel 12.

13              THE COURT:  Any social media platforms that you use

14   regularly?

15              THE PROSPECTIVE JUROR:  No.

16              THE COURT:  Any TV, radio or streaming services,

17   programs, that you like to watch?

18              THE PROSPECTIVE JUROR:  Yes.

19              THE COURT:  Which ones?

20              THE PROSPECTIVE JUROR:  General Hospital and all the

21   Housewives.

22              THE COURT:  I get wonderful television

23   recommendations from jury selections, may I add, ladies and

24   gentlemen.

25              And the final question is:  If you were selected as
```

1    a juror in this case, you would have to do two things:  First,

2    keep an open mind until all of the evidence and arguments have

3    been presented.  And then second, decide the case fairly and

4    impartially based on the evidence presented at trial and the

5    trial judge's instructions on the law.

6              Would you be able to do that?

7              THE PROSPECTIVE JUROR:  Yes.

8              THE COURT:  All right.  Thank you.

9              You can pass the microphone down to Juror Number 2.

10             Ms. Garcia?

11             THE PROSPECTIVE JUROR:  Yes.

12             THE COURT:  You live in Queens?

13             THE PROSPECTIVE JUROR:  Yes.

14             THE COURT:  What part of Queens?

15             THE PROSPECTIVE JUROR:  Glendale.

16             THE COURT:  How long have you lived there?

17             THE PROSPECTIVE JUROR:  About five years.

18             THE COURT:  Five?

19             THE PROSPECTIVE JUROR:  Yes.

20             THE COURT:  Do you own or rent?

21             THE PROSPECTIVE JUROR:  I own.

22             THE COURT:  How far did you go in school?

23             THE PROSPECTIVE JUROR:  High school.

24             THE COURT:  Are you currently working?

25             THE PROSPECTIVE JUROR:  Yes.

1           THE COURT:  Where do you work?

2           THE PROSPECTIVE JUROR:  With the New York City

3    Department of Environmental Protection.

4           THE COURT:  What do you do there?

5           THE PROSPECTIVE JUROR:  I -- building clerk.

6           THE COURT:  Building clerk?

7           THE PROSPECTIVE JUROR:  Yes.

8           THE COURT:  How long have you been doing that?

9           THE PROSPECTIVE JUROR:  About 27 years.

10          THE COURT:  Are you married or do you have a

11   domestic partner?

12          THE PROSPECTIVE JUROR:  I'm, I'm in the process of a

13   divorce right now.

14          THE COURT:  My apologies.

15          And what does your soon-to-be-ex do?  If you know.

16          THE PROSPECTIVE JUROR:  I don't know.

17          THE COURT:  Understood.

18          Do you have any children over the age of 18?

19          THE PROSPECTIVE JUROR:  Yes, two.

20          THE COURT:  What are their ages?

21          THE PROSPECTIVE JUROR:  29 and 33.

22          THE COURT:  What does the 29-year-old do?

23          THE PROSPECTIVE JUROR:  She's a dog groomer.

24          THE COURT:  A dog groomer.

25          And the 33-year-old?

Jury Selection                                          83

1            THE PROSPECTIVE JUROR:  I'm not sure.

2            THE COURT:  Okay.

3            Any other adults in your household?

4            THE PROSPECTIVE JUROR:  No.

5            THE COURT:  Any hobbies or activities that you

6    pursue in your spare time?

7            THE PROSPECTIVE JUROR:  I am currently trying to

8    join the church, also, to become a member.

9            THE COURT:  Okay.

10           Where do you usually get your news?

11           THE PROSPECTIVE JUROR:  The little TV that I watch,

12   from Channel 7.

13           THE COURT:  Channel 7?

14           THE PROSPECTIVE JUROR:  Yes.

15           THE COURT:  Any social media platforms that you use

16   regularly?

17           THE PROSPECTIVE JUROR:  No.

18           THE COURT:  Any TV, radio or streaming services

19   programs that you like?

20           THE PROSPECTIVE JUROR:  I like to browse through

21   YouTube a lot.  Nothing specifically.

22           THE COURT:  Okay.

23           And you heard my last question, the last time:  The

24   two things that the juror has to do is keeping an open mind

25   until all of the evidence is presented and arguments are

VB        OCR        CRR

Jury Selection                                                84

1    presented and then, deciding fairly and impartially based on

2    that evidence ant the trial judge's instructions on the law.

3              Would you be able to do that?

4              THE PROSPECTIVE JUROR:  Yes.

5              THE COURT:  Thank you.

6              Juror 16.

7              THE PROSPECTIVE JUROR:  Yes.

8              THE COURT:  You live in Brooklyn?

9              THE PROSPECTIVE JUROR:  Yes, that's correct.

10             THE COURT:  What part of Brooklyn?

11             THE PROSPECTIVE JUROR:  Flatbush.

12             THE COURT:  How long have you lived there?

13             THE PROSPECTIVE JUROR:  Just about three years.

14             THE COURT:  Do you own or rent?

15             THE PROSPECTIVE JUROR:  I rent.

16             THE COURT:  Where did you live before that?

17             THE PROSPECTIVE JUROR:  I lived in Bay Ridge prior

18   to that, in Brooklyn, for nine years.

19             THE COURT:  Okay.

20             Renting or owning?

21             THE PROSPECTIVE JUROR:  Renting.

22             THE COURT:  How far did you go in school?

23             THE PROSPECTIVE JUROR:  I have a BFA, a bachelors

24   degree.

25             THE COURT:  Okay.

Jury Selection                                         85

1          And what specifically did you study?

2          THE PROSPECTIVE JUROR:  Theater.  Theater arts.

3          THE COURT:  Computer?

4          THE PROSPECTIVE JUROR:  Theater arts.

5          THE COURT:  Sorry.

6          THE PROSPECTIVE JUROR:  That's okay.

7          THE COURT:  Are you currently working?

8          THE PROSPECTIVE JUROR:  Yes, I'm a software

9   engineer.

10          THE COURT:  For what company?

11          THE PROSPECTIVE JUROR:  A company called

12  Browserstack.  One word.

13          THE COURT:  Browserstack.

14          How long have you been there?

15          THE PROSPECTIVE JUROR:  Just three months.  I

16  recently started.

17          THE COURT:  Okay.

18          And what were you doing before that?

19          THE PROSPECTIVE JUROR:  Prior to that I was

20  unemployed for a few months, finishing a, an alternative

21  education program to transition to software engineering.

22          Before that, for eleven-and-a-half years, I worked

23  at a nonprofit that provided services to adults with

24  developmental disabilities.

25          THE COURT:  Okay.

VB        OCR        CRR

Jury Selection                                    86

1          Do you have any children over the age of 18?

2          THE PROSPECTIVE JUROR:  No.

3          THE COURT:  Are you married or do you have a

4    domestic partner?

5          THE PROSPECTIVE JUROR:  No.

6          THE COURT:  Do you live with any other adults?

7          THE PROSPECTIVE JUROR:  No.  I live alone.

8          THE COURT:  Any hobbies or interests that you pursue

9    in your spare time?

10         THE PROSPECTIVE JUROR:  Yeah, I enjoy playing board

11   games with my friends and, you know, just chatting.

12         THE COURT:  Okay.

13         Where do you usually get your news?

14         THE PROSPECTIVE JUROR:  I try to consume news from

15   different sources online, as well as The New York Times.

16         THE COURT:  Any specific online sources?

17         THE PROSPECTIVE JUROR:  One I like is VOX.  I'll

18   also -- I know you're asking about social media, I read things

19   on Reddit, a lot, I don't make posts usually, but I'm a user.

20         THE COURT:  Okay.

21         And besides Reddit, any other social media platforms

22   that you use regularly?

23         THE PROSPECTIVE JUROR:  No.

24         THE COURT:  Any TV, radio or streaming services

25   programs that you like?

VB       OCR       CRR

Jury Selection                                      87

1            THE PROSPECTIVE JUROR:  Yeah, I watch a lot of

2     different things.  Right now I'm watching The Last of Us on

3     HBO Max.  Great show.

4            THE COURT:  All right.

5            And my final question is the two requirements for a

6     juror being:  Keeping an open mind until the evidence and

7     arguments are presented and then deciding the case fairly and

8     impartially based only on the evidence presented and then the

9     law as the trial judge instructs you.

10           Would you be able to do that?

11           THE PROSPECTIVE JUROR:  Yes.

12           THE COURT:  All right.

13           Next, Juror 22.

14           You live in Long Island?

15           THE PROSPECTIVE JUROR:  Yes.

16           THE COURT:  Where?

17           THE PROSPECTIVE JUROR:  Syosset.

18           THE COURT:  Just the town.

19           THE PROSPECTIVE JUROR:  Sorry.

20           THE COURT:  It's all right.

21           Syosset.  How long have you lived in Syosset?

22           THE PROSPECTIVE JUROR:  Twenty-three years.

23           THE COURT:  Do you own or rent?

24           THE PROSPECTIVE JUROR:  Own.

25           THE COURT:  How far did you go in school?

Jury Selection                                   88

1          THE PROSPECTIVE JUROR:  I have an associate's degree
2    in travel and tourism.
3          THE COURT:  In travel and tourism?
4          THE PROSPECTIVE JUROR:  Yes.
5          THE COURT:  All right.
6          You previously told us that you were working.  Who
7    do you work for?
8          THE PROSPECTIVE JUROR:  I work for American Airlines
9    at La Guardia.
10          THE COURT:  And what do you do there?
11          THE PROSPECTIVE JUROR:  Customer service agent.
12          THE COURT:  Customer service?
13          THE PROSPECTIVE JUROR:  Mm-hmm.
14          THE COURT:  Are you married or do you have a
15    domestic partner?
16          THE PROSPECTIVE JUROR:  I'm married.
17          THE COURT:  Does your spouse work?
18          THE PROSPECTIVE JUROR:  He's a retired lieutenant
19    From the Fire Department of New York.
20          THE COURT:  All right.
21          Do you have any children over the age of 18?
22          THE PROSPECTIVE JUROR:  No.
23          THE COURT:  Any other adults in your household
24    besides yourself?
25          THE PROSPECTIVE JUROR:  My husband and I.

```
                          Jury Selection                    89

 1            THE COURT:  Okay.

 2            Any hobbies activities or interests that you pursue

 3   in your spare time?

 4            THE PROSPECTIVE JUROR:  I love traveling.  Dining.

 5   Spend time with my friends and family.

 6            THE COURT:  Sure.

 7            Where do you usually get your news?

 8            THE PROSPECTIVE JUROR:  I really don't watch much

 9   news.

10            THE COURT:  Okay.

11            THE PROSPECTIVE JUROR:  Everything's bad all the

12   time.

13            THE COURT:  Any social media platforms that you use

14   regularly?

15            THE PROSPECTIVE JUROR:  Sometimes Facebook,

16   Instagram.

17            THE COURT:  And any TV, radio or streaming services

18   programs that you like?

19            THE PROSPECTIVE JUROR:  Sometimes I go Netflix.

20            THE COURT:  Netflix.

21            Any particular types of shows?

22            THE PROSPECTIVE JUROR:  I like reality TV shows and

23   sometimes I watch documentaries.

24            THE COURT:  Okay.

25            And the last question is:  The two things that a
```

1   juror has to do is keeping an open mind until the evidence and

2   arguments have been presented and then deciding the case

3   fairly and impartially based only on evidence presented at the

4   trial and the law as the trial judge explains it to you.

5           Would you be able to do that?

6           THE PROSPECTIVE JUROR:  Yes.

7           THE COURT:  Okay.  Thank you very much.

8           Pass the mic down.  Juror Number 5.

9           THE PROSPECTIVE JUROR:  Yes.

10          THE COURT:  Okay.

11          You live in Brooklyn?

12          THE PROSPECTIVE JUROR:  Yes.

13          THE COURT:  What part of Brooklyn?

14          THE PROSPECTIVE JUROR:  Midwood.

15          THE COURT:  Midwood?

16          THE PROSPECTIVE JUROR:  Mm-hmm.

17          THE COURT:  How long have you live there had?

18          THE PROSPECTIVE JUROR:  Year-and-a-half.

19          THE COURT:  Do you own or rent?

20          THE PROSPECTIVE JUROR:  Own.

21          THE COURT:  Where did you live before that?

22          THE PROSPECTIVE JUROR:  In Astoria.

23          THE COURT:  Astoria.

24          Were you owning or renting there?

25          THE PROSPECTIVE JUROR:  I lived with my parents, but

Jury Selection                              91

1   they rented.

2            THE COURT:  How far did you go in school?

3            THE PROSPECTIVE JUROR:  Masters.

4            THE COURT:  Okay.

5        Tell me what your masters is in and then what your

6   under-grad is in.

7            THE PROSPECTIVE JUROR:  Masters was in higher

8   education administration and the bachelors was in real estate

9   and communication.

10            THE COURT:  Are you currently working?

11            THE PROSPECTIVE JUROR:  Yes.

12            THE COURT:  Who do you work for?

13            THE PROSPECTIVE JUROR:  I work for one of the CUNY

14   schools.

15            THE COURT:  Okay.

16        What do you do?

17            THE PROSPECTIVE JUROR:  I'm a career advisor.

18            THE COURT:  How long have you been doing that?

19            THE PROSPECTIVE JUROR:  Within CUNY, ten years.

20            THE COURT:  Okay.

21        Are you married or do you have a domestic partner?

22            THE PROSPECTIVE JUROR:  Married.

23            THE COURT:  Does your spouse work?

24            THE PROSPECTIVE JUROR:  Yes.

25            THE COURT:  What does your spouse do?

Jury Selection                                    92

1              THE PROSPECTIVE JUROR:  They're a mental health

2    counselor.

3              THE COURT:  Any children over the age of 18?

4              THE PROSPECTIVE JUROR:  No.

5              THE COURT:  Any other adults in your household?

6              THE PROSPECTIVE JUROR:  No.

7              THE COURT:  Any hobbies, interests, hobbies or

8    interests that you that you pursue in your spare time?

9              THE PROSPECTIVE JUROR:  I also enjoy board games,

10   but I also enjoy art and art museums.

11             THE COURT:  Art and art museums.

12             Where do you get your news?

13             THE PROSPECTIVE JUROR:  NY1.

14             THE COURT:  Any social media platforms that you use

15   regularly?

16             THE PROSPECTIVE JUROR:  Instagram.

17             THE COURT:  What TV, radio or streaming services

18   programs do you like?

19             THE PROSPECTIVE JUROR:  Right now, also watching The

20   Last of Us, but usually Netflix or Disney Plus.

21             THE COURT:  Okay.

22             Any particular types of shows on either?

23             THE PROSPECTIVE JUROR:  No.  Just try to watch

24   usually whatever is like on the top ten on Netflix.  Nothing

25   too specific.

1          THE COURT:  Okay.

2          The last question being the jurors' duties:  One, to

3     keep an open mind until all of the evidence and arguments are

4     presented and then, decide the case fairly and impartially

5     based on the evidence presented and the trial judge's

6     instructions on the law.

7          Would you be able to do that?

8          THE PROSPECTIVE JUROR:  Yes.

9          THE COURT:  All right.  You can pass the mic over.

10         This is Juror 6.

11         You live in Queens?

12         THE PROSPECTIVE JUROR:  Yes.

13         THE COURT:  What part of Queens?

14         THE PROSPECTIVE JUROR:  Long Island City.

15         THE COURT:  Okay.

16         How long have you lived there?

17         THE PROSPECTIVE JUROR:  Four years.

18         THE COURT:  Own or rent?

19         THE PROSPECTIVE JUROR:  Rent.

20         THE COURT:  How far did you go in school?

21         THE PROSPECTIVE JUROR:  Bachelors degree.

22         THE COURT:  What did you study?

23         THE PROSPECTIVE JUROR:  Political Science and

24     international relations.

25         THE COURT:  I believe you told us where you're

1    working.

2            Can you tell me how long you have been doing that?

3    Just remind me.

4            THE PROSPECTIVE JUROR:  In the industry, I've been

5    11 years.  At the current company, over two.

6            THE COURT:  Two, okay.

7            Are you married, do you have a domestic partner?

8            THE PROSPECTIVE JUROR:  I'm married.

9            THE COURT:  Does your spouse work?

10           THE PROSPECTIVE JUROR:  Yes.

11           THE COURT:  What type of work does your spouse do?

12           THE PROSPECTIVE JUROR:  A Federal agency.

13   Specifically, FEMA.  I don't know if that's...

14           THE COURT:  I was going to ask which agency.  Okay,

15   no problem.

16           What kind of work at FEMA?

17           THE PROSPECTIVE JUROR:  He's a strategist.

18           THE COURT:  Strategist, okay.

19           Any children over the age of 18?

20           THE PROSPECTIVE JUROR:  No.

21           THE COURT:  Any other adults in your household?

22           THE PROSPECTIVE JUROR:  No.

23           THE COURT:  Any hobbies or interests in your spare

24   time?

25           THE PROSPECTIVE JUROR:  I read a lot.

Jury Selection                                        95

1           THE COURT:  Any particular types of reading?

2           THE PROSPECTIVE JUROR:  Fiction.

3           THE COURT:  Where do you usually get your news?

4           THE PROSPECTIVE JUROR:  I don't watch the news, but

5    I read it on CNN, and BBC.

6           THE COURT:  Online.

7           THE PROSPECTIVE JUROR:  Yes, online.

8           THE COURT:  Understood.

9           Any social media platforms that you use regularly?

10          THE PROSPECTIVE JUROR:  I use Instagram a lot.

11          THE COURT:  What TV, radio or streaming services

12   programs do you like?

13          THE PROSPECTIVE JUROR:  I watch like, every

14   streaming service, but specifically, anything thriller or

15   reality TV will catch my interest more.

16          THE COURT:  Okay.

17

18          (Continued on following page.)

19

20

21

22

23

24

25

*Jury Selection*                                                              96

1   (Continuing.)

2            THE COURT:  Last question is the juror roles

3   question.  One, to keep an open mind until all evidence and

4   arguments have been presented; and then, second, decide the

5   case fairly and impartially based only on the evidence at

6   trial and the instructions of law that the trial judge will

7   give.

8            Are you able to do that?

9            THE PROSPECTIVE JUROR:  Yes.

10           THE COURT:  Let's pass the microphone over to

11  Juror 25.

12           Hello and good afternoon.

13           You currently live in Brooklyn?

14           THE PROSPECTIVE JUROR:  Yes.

15           THE COURT:  What part of Brooklyn?

16           THE PROSPECTIVE JUROR:  That's Kings Highway.

17           THE COURT:  What neighborhood is that.

18           THE PROSPECTIVE JUROR:  How far up Kings Highway?

19           THE PROSPECTIVE JUROR:  Between East 96th and

20  96th --

21           THE COURT:  Okay.  Kings Highway in around East

22  96th, okay.

23           How long have you lived there?

24           THE PROSPECTIVE JUROR:  More than -- more than

25  25 years.

1          THE COURT:  Do you own or rent?

2          THE PROSPECTIVE JUROR:  I rent.

3          THE COURT:  How far did you go in school?

4          THE PROSPECTIVE JUROR:  Seventh grade.

5          THE COURT:  Seventh?

6          THE PROSPECTIVE JUROR:  High school.

7          THE COURT:  Are you currently working?

8          THE PROSPECTIVE JUROR:  I'm retired right now.

9          THE COURT:  What did you do before you retired?

10         THE PROSPECTIVE JUROR:  I was working in the

11   hospital, New York Methodist Hospital.

12         THE COURT:  Working in Methodist Hospital?

13         THE PROSPECTIVE JUROR:  Yes.

14         THE COURT:  What were you doing at Methodist?

15         THE PROSPECTIVE JUROR:  Dietician department.

16         THE COURT:  Sanitation?

17         THE PROSPECTIVE JUROR:  Dietician.  Dietician.

18         (Court reporter requested clarification.)

19         THE COURT:  Salutation.  Like, the greeters.

20         How long were you doing that?

21         THE PROSPECTIVE JUROR:  I stayed there for 25 years.

22         THE COURT:  Just one second off the record.

23         (Discussion held off the record.)

24         THE COURT:  Are you married, or do you have a

25   domestic partner?

*Jury Selection*                                                      98

1           THE PROSPECTIVE JUROR:  I'm single.

2           THE COURT:  Any children over age 18?

3           THE PROSPECTIVE JUROR:  I have two -- two sons.

4           THE COURT:  Two?

5           THE PROSPECTIVE JUROR:  Yes.

6           THE COURT:  How old are they?

7           THE PROSPECTIVE JUROR:  The older one is 47.

8           THE COURT:  And the younger?

9           THE PROSPECTIVE JUROR:  And the younger is 37.

10          THE COURT:  Thirty-seven, okay.

11          Are they both working?

12          THE PROSPECTIVE JUROR:  The smaller one is working.

13    The other one is out on unemployment.

14          THE COURT:  Okay.  The 37-year-old, what does the

15    37-year-old do?

16          THE PROSPECTIVE JUROR:  He work for Hollywood.

17          THE COURT:  He works for?

18          THE PROSPECTIVE JUROR:  Hollywood.

19          THE COURT:  Holly Boo?

20          THE PROSPECTIVE JUROR:  California, Hollywood, at a

21    movie studio.

22          THE COURT:  Oh, Hollywood.  You said at a movie

23    studio?

24          THE PROSPECTIVE JUROR:  Yes.

25          THE COURT:  Okay.  And the older one is not working?

*Jury Selection*                                                              99

1          THE PROSPECTIVE JUROR:  Not right now?

2          THE COURT:  Okay.  Was he working before?

3          THE PROSPECTIVE JUROR:  Yes, he was.

4          THE COURT:  What was he doing?

5          THE PROSPECTIVE JUROR:  He was working in Macy's

6    department.

7          THE COURT:  Do you live with any other adults?

8          THE PROSPECTIVE JUROR:  No, just my son.  My oldest

9    son.

10         THE COURT:  Your oldest son?

11         THE PROSPECTIVE JUROR:  Yes.

12         THE COURT:  Any hobbies or interests that you pursue

13   in your spare time?

14         THE PROSPECTIVE JUROR:  Church.

15         THE COURT:  Church?

16         THE PROSPECTIVE JUROR:  Yes.

17         THE COURT:  And where do you usually get your news?

18         THE PROSPECTIVE JUROR:  I get my news -- sometime I

19   get it from 47 -- Channel 47.

20         THE COURT:  Telemundo?

21         THE PROSPECTIVE JUROR:  Telemundo.

22         THE COURT:  Okay.

23         Any social media platforms that you use regularly?

24         THE PROSPECTIVE JUROR:  Not quite, just service --

25   look is the service.

1           THE COURT:  Okay.  Understood.

2           Any -- well, similar question.  Any TV, radio, or

3    streaming services programs that you like?

4           THE PROSPECTIVE JUROR:  Yes, Joel Osteen.

5           THE COURT:  Joel Osteen, okay.

6           Now, this is the last question, which has to do with

7    the role of a juror.

8           A juror is required to keep an open mind until all

9    of the evidence and arguments are presented and then decide

10   the case fairly and impartially based only on the evidence

11   presented at trial and the law as the trial judge explains it

12   to you.

13          Would you be able to do those two things?

14          THE PROSPECTIVE JUROR:  Yes, I will.

15          THE COURT:  Juror Number 19.

16          Good afternoon again.

17          THE PROSPECTIVE JUROR:  Good afternoon.

18          THE COURT:  You live in Queens?

19          THE PROSPECTIVE JUROR:  Yes, I do.

20          THE COURT:  What part of Queens?

21          THE PROSPECTIVE JUROR:  Forest Hills.

22          THE COURT:  How long have you lived there?

23          THE PROSPECTIVE JUROR:  Almost 11 years.

24          THE COURT:  Do you own or rent?

25          THE PROSPECTIVE JUROR:  Own.

*Jury Selection*                                                              101

1         THE COURT:  And you may have mentioned how far you

2    went in school before, but tell me --

3         THE PROSPECTIVE JUROR:  I didn't, actually.  I

4    did -- I got my master's.  So I got my bachelor's in political

5    science and my master's in liberal arts with a concentration

6    in philosophy.

7         THE COURT:  Okay.  The master's was in which?

8         THE PROSPECTIVE JUROR:  Liberal arts?

9         THE COURT:  Liberal arts?

10        THE PROSPECTIVE JUROR:  Yes.

11        THE COURT:  With an emphasis in?

12        THE PROSPECTIVE JUROR:  Philosophy.

13        THE COURT:  Thank you.

14        And you've talked about your employment already

15        THE PROSPECTIVE JUROR:  Yes.

16        THE COURT:  And how long have you been at the firm?

17        THE PROSPECTIVE JUROR:  I've been at the firm --

18   this will be my seventeenth year?

19        THE PROSPECTIVE JUROR:  Yeah.

20        THE COURT:  Are you married, or do you have a

21   domestic partner?

22        THE PROSPECTIVE JUROR:  Married.

23        THE COURT:  Oh, your wife has the design business.

24        THE PROSPECTIVE JUROR:  Correct.

25        THE COURT:  Any children over the age of 18?

1          THE PROSPECTIVE JUROR:  No.

2          THE COURT:  Any other adults in your household

3     besides your spouse?

4          THE PROSPECTIVE JUROR:  Nope.

5          THE COURT:  Any hobbies or interests you pursue in

6     your spare time?

7          THE PROSPECTIVE JUROR:  Sure.  Video games, music,

8     watching stuff on streaming, which, you know -- great stuff

9     that I like, but...

10          THE COURT:  Let me jump to that question since you

11     are mentioning it.

12          THE PROSPECTIVE JUROR:  Sure.

13          THE COURT:  What do you like to watch on

14     streaming?

15          THE PROSPECTIVE JUROR:  *The Last of Us*, which is

16     right now --

17          THE COURT:  *The Last of Us?*  It's a popular show.

18          THE PROSPECTIVE JUROR:  Yeah, pretty much anything

19     on Netflix -- not anything, but dramas, sci-fi, stuff on

20     Disney Plus, Star Wars, so -- that's pretty much it.

21          THE COURT:  Where do you usually get your news?

22          THE PROSPECTIVE JUROR:  CNN -- online, and on

23     television -- as well as reading *The New York Times*.

24          THE COURT:  Any social media platforms you use

25     regularly?

1            THE PROSPECTIVE JUROR:  Not regularly, but I -- I

2    dabble in Facebook.

3            THE COURT:  And then the last question relating to a

4    juror's duties, which is, first, to keep an open mind until

5    all of the evidence and arguments have been presented; and

6    then, second, decide the case fairly and impartially based

7    only on the evidence presented and the law as the trial judge

8    instructs you.

9            Would you be able to do that?

10           THE PROSPECTIVE JUROR:  Yes, I would.

11           THE COURT:  Okay.  Juror Number 9, good afternoon.

12           THE PROSPECTIVE JUROR:  Good afternoon.

13           THE COURT:  And you live in Brooklyn?

14           THE PROSPECTIVE JUROR:  In Brooklyn.

15           THE COURT:  What part?

16           THE PROSPECTIVE JUROR:  In Flatbush.

17           THE COURT:  How long have you lived there?

18           THE PROSPECTIVE JUROR:  Thirty-eight years.

19           THE COURT:  Do you own or rent?

20           THE PROSPECTIVE JUROR:  I rent.

21           THE COURT:  How far did you go in school?

22           THE PROSPECTIVE JUROR:  I have a bachelor's degree

23   in liberal arts with concentration of in human services.

24           THE COURT:  And are you currently working?

25           THE PROSPECTIVE JUROR:  I am.

1            THE COURT:  What do you do?

2            THE PROSPECTIVE JUROR:  I work -- I'm an office

3    assistant with SUNY Empire State College.

4            THE COURT:  And how long have you been there?

5            THE PROSPECTIVE JUROR:  Four years.

6            THE COURT:  Did you say four?

7            THE PROSPECTIVE JUROR:  Yes.

8            THE COURT:  Are you married or do you have a

9    domestic partner?

10           THE PROSPECTIVE JUROR:  I am divorced.

11           THE COURT:  What did your ex do, if you know?

12           THE PROSPECTIVE JUROR:  He's a retired police

13   officer with the New York City Police Department.

14           THE COURT:  Any children over the age of 18?

15           THE PROSPECTIVE JUROR:  Yes.

16           THE COURT:  How many?

17           THE PROSPECTIVE JUROR:  I have two.

18           THE COURT:  What are their ages?

19           THE PROSPECTIVE JUROR:  He is 32 and she is 36.

20           THE COURT:  Okay.  And what does your son do?

21           THE PROSPECTIVE JUROR:  He works at Amazon.

22           THE COURT:  Do you know what he does there?

23           THE PROSPECTIVE JUROR:  He's a stocker.

24           THE COURT:  Okay.

25           And your daughter?

1          THE PROSPECTIVE JUROR:  She works for the New York

2   City Police Department.  She's a civilian there.  She's a

3   supervisor.

4          THE COURT:  Do you know what division or department

5   she supervises?

6          THE PROSPECTIVE JUROR:  She works in personnel.

7          THE COURT:  Personnel?

8          THE PROSPECTIVE JUROR:  Yes.

9          THE COURT:  Any other adults that live in your

10  household?

11         THE PROSPECTIVE JUROR:  No.

12         THE COURT:  Any hobbies or interests you pursue in

13  your spare time?

14         THE PROSPECTIVE JUROR:  I do a lot of reading.

15         THE COURT:  Any specific type of reading?

16         THE PROSPECTIVE JUROR:  John Grisham and James

17  Patterson.  Love them.

18         THE COURT:  Where do you get your news sources?

19         THE PROSPECTIVE JUROR:  On Channel 2 in the morning

20  when I'm getting dressed for work.

21         THE COURT:  Any social media platforms you use

22  regularly?

23         THE PROSPECTIVE JUROR:  None.

24         THE COURT:  Any TV, radio, or streaming services

25  programs that you like?

1          THE PROSPECTIVE JUROR:  I like Gordon Ramsay, the

2   cooking show, the competitions, and *Project Runway*.

3          THE COURT:  And the last question has to do with the

4   juror's duties, which is, one, to keep an open mind until all

5   of the evidence and arguments have been presented; and then,

6   second, decide the case fairly and impartially based only on

7   the evidence presented at trial and the law as the trial judge

8   explains it to you.

9          THE PROSPECTIVE JUROR:  Yes.

10         THE COURT:  Can you do that?

11         THE PROSPECTIVE JUROR:  Yes.

12         THE COURT:  Juror 10.

13         THE PROSPECTIVE JUROR:  Hello.

14         THE COURT:  Good afternoon.

15         THE PROSPECTIVE JUROR:  Hi.

16         THE COURT:  You live where?

17         THE PROSPECTIVE JUROR:  Freeport, Long Island.

18         THE COURT:  In Long Island.

19   How long have you lived there?

20         THE PROSPECTIVE JUROR:  Twenty-four years.

21         THE COURT:  Do you own or rent?

22         THE PROSPECTIVE JUROR:  Rent.

23         THE COURT:  And how far did you go in school?

24         THE PROSPECTIVE JUROR:  I'm currently in grad

25   school.

*Jury Selection*                                                                107

1         THE COURT:  What type of grad school?

2         THE PROSPECTIVE JUROR:  Social work.

3         THE COURT:  And what was your undergrad degree in?

4         THE PROSPECTIVE JUROR:  Social work.

5         THE COURT:  You said you're in school.  Are you

6    currently working?

7         THE PROSPECTIVE JUROR:  Yes.

8         THE COURT:  Where do you do?

9         THE PROSPECTIVE JUROR:  I work for a nonprofit

10   agency for mental health housing.

11        THE COURT:  How long have you been doing that?

12        THE PROSPECTIVE JUROR:  For two years.

13        THE COURT:  And are you married, or do you have a

14   domestic partner?

15        THE PROSPECTIVE JUROR:  No.

16        THE COURT:  Any children over age 18?

17        THE PROSPECTIVE JUROR:  No.

18        THE COURT:  Any other adults in your -- that live in

19   your household?

20        THE PROSPECTIVE JUROR:  Yeah.  My mom and my step

21   dad.

22        THE COURT:  Are they working?

23        THE PROSPECTIVE JUROR:  Yes.

24        THE COURT:  What does your mom do?

25        THE PROSPECTIVE JUROR:  My mom's -- she cleans

*Jury Selection*                                                                108

1    houses and she -- she's like a home health aide.

2             THE COURT:  Okay.  And what about your step dad?

3             THE PROSPECTIVE JUROR:  Construction, I think, or

4    landscaping.

5             THE COURT:  Landscaping?

6             THE PROSPECTIVE JUROR:  Yeah.

7             THE COURT:  Okay.

8             Any hobbies or interests that you pursue in your

9    spare time?

10            THE PROSPECTIVE JUROR:  I like to run, play

11   volleyball, and lacrosse.

12            THE COURT:  Run, volleyball, and lacrosse, you said?

13            THE PROSPECTIVE JUROR:  Yeah.

14            THE COURT:  Where do you usually get your news?

15            THE PROSPECTIVE JUROR:  I don't really watch the

16   news.

17            THE COURT:  Sorry?

18            THE PROSPECTIVE JUROR:  I don't really watch the

19   news.

20            THE COURT:  Okay.

21            Any social media platforms that you use regularly?

22            THE PROSPECTIVE JUROR:  Yeah.  Instagram, Facebook,

23   TikTok.

24            THE COURT:  And any TV, radio, or streaming services

25   programs that you like?

1          THE PROSPECTIVE JUROR:  Hulu.  I like to watch

2    *Hell's Kitchen*, *Survivor*, or *High Q*.

3          THE COURT:  And the last question has to do with the

4    juror's duties which is, first, to keep an open mind until all

5    of the evidence and arguments have been presented at trial,

6    and then decide the case fairly and impartially based only on

7    the evidence presented at trial and the instructions of law

8    that the trial judge will give to you.

9          Are you able to do those things?

10         THE PROSPECTIVE JUROR:  Yes.

11         THE COURT:  Thank you.

12         Can you pass the mic over?

13         Juror Number 11.

14         You live in Long Island?

15         THE PROSPECTIVE JUROR:  Yes.

16         THE COURT:  Where?

17         THE PROSPECTIVE JUROR:  Massapequa.

18         THE COURT:  And how long have you lived there?

19         THE PROSPECTIVE JUROR:  Twenty years.

20         THE COURT:  Do you own or rent?

21         THE PROSPECTIVE JUROR:  Rent.

22         THE COURT:  How far did you go in school?

23         THE PROSPECTIVE JUROR:  Bachelor's degree.

24         THE COURT:  What was your degree in?

25         THE PROSPECTIVE JUROR:  Business management.

*Jury Selection*                                                           110

1          THE COURT:  And you mentioned that you are doing --

2          THE PROSPECTIVE JUROR:  Quality assurance.

3          THE COURT:  You said for 15 years.

4          THE PROSPECTIVE JUROR:  Fifteen years as a manager.

5          THE COURT:  As a manager, I'm sorry.

6          How long have you been in your current role?

7          THE PROSPECTIVE JUROR:  Fifteen years.

8          THE COURT:  And who specifically do you work for?

9          THE PROSPECTIVE JUROR:  American Region

10   Pharmaceutical Company.

11          THE COURT:  Are you married or do you have a

12   domestic partner?

13          THE PROSPECTIVE JUROR:  No.

14          THE COURT:  Any children over the age 18?

15          THE PROSPECTIVE JUROR:  No.

16          THE COURT:  Any other adults in your household?

17          THE PROSPECTIVE JUROR:  No.

18          THE COURT:  Any hobbies or interests that you pursue

19   in your spare time?

20          THE PROSPECTIVE JUROR:  Art and movies.

21          THE COURT:  Sorry?

22          THE PROSPECTIVE JUROR:  Art and movies.

23          THE COURT:  Where do you usually get your news?

24          THE PROSPECTIVE JUROR:  Just network news.

25          THE COURT:  Which networks?

*Jury Selection*                                                        111

1          THE PROSPECTIVE JUROR:   Network news:  4, 7, 2.

2          THE COURT:   Channels 4, 7, and 2?

3          THE PROSPECTIVE JUROR:   Channels 4, 7, and 2, yeah.

4          THE COURT:   Any social media platforms that you use

5    regularly?

6          THE PROSPECTIVE JUROR:   Nothing particularly, no.

7          THE COURT:   Any TV, radio or streaming services

8    programs that you like?

9          THE PROSPECTIVE JUROR:   Nothing in particular.

10         THE COURT:   Okay.

11         The last question relates to a juror's duties which

12   is, one, to keep an open mind until all the evidence and

13   arguments have been presented; and then, second, decide the

14   case fairly and impartially based only on the evidence

15   presented at trial and the law as the trial judge explains it

16   to you.

17         Can you do those things?

18         THE PROSPECTIVE JUROR:   Yes.

19         THE COURT:   Thank you.

20         Juror 12.

21         You live in Brooklyn?

22         THE PROSPECTIVE JUROR:   Yes.

23         THE COURT:   What part of Brooklyn?

24         THE PROSPECTIVE JUROR:   Prospect Lefferts Gardens.

25         THE COURT:   How long have you lived there?

1          THE PROSPECTIVE JUROR:  Coming up on two years.

2          THE COURT:  Do you own or rent?

3          THE PROSPECTIVE JUROR:  Own.

4          THE COURT:  And where did you live before that?

5          THE PROSPECTIVE JUROR:  Clinton Hill.

6          THE COURT:  How long did you live there?

7          THE PROSPECTIVE JUROR:  Almost five years.

8          THE COURT:  And how far did you go in school?

9          THE PROSPECTIVE JUROR:  I have a bachelor's in

10    psychology with a concentration in management and

11    organization.

12         THE COURT:  And are you currently working?

13         THE PROSPECTIVE JUROR:  Yes.

14         THE COURT:  Who do you work for?

15         THE PROSPECTIVE JUROR:  Google.

16         THE COURT:  What do you do there?

17         THE PROSPECTIVE JUROR:  I'm head of black media

18    communications.

19         THE COURT:  And how long have you been doing that?

20         THE PROSPECTIVE JUROR:  It will be ten years in

21    August.

22         THE COURT:  Are you married, or do you have a

23    domestic partner?

24         THE PROSPECTIVE JUROR:  No.

25         THE COURT:  Any children over age 18?

1          THE PROSPECTIVE JUROR:  No.

2          THE COURT:  Any other adults in your household?

3          THE PROSPECTIVE JUROR:  No.

4          THE COURT:  Any hobbies, interests -- excuse me --

5   hobbies or interests that you pursue in your spare time?

6          THE PROSPECTIVE JUROR:  Yes, I'm an avid reader of

7   fiction.  I also enjoy playing tennis and working out and

8   going to restaurants with friends.

9          THE COURT:  Where do you usually get your news?

10          THE PROSPECTIVE JUROR:  I'm in communications, so

11   everywhere from *New York Times*, *Wall Street Journal*, MSNBC,

12   CNN, Axios, *TechCrunch*, *The Verge*.

13          THE COURT:  Understood.

14          Any social media platforms that you use regularly?

15          THE PROSPECTIVE JUROR:  Yes.  Instagram personally,

16   and Twitter for professional reasons.

17          THE COURT:  Any TV, radio, or streaming services

18   programs that you like?

19          THE PROSPECTIVE JUROR:  Yeah, cooking shows like *The*

20   *Lost Kitchen* on HBO.  I'm also a big fan of *Abbott Elementary*

21   on ABC.

22          THE COURT:  Understood.

23          Last question relating to a juror's duties.

24          The first being to keep an open mind until all

25   evidence and arguments have been presented; and then, second,

1  deciding the case fairly and impartially based only on the

2  evidence presented at trial and the instructions of law that

3  the trial judge would give you.

4          Would you be able to do those two things?

5          THE PROSPECTIVE JUROR:  Yes.

6          THE COURT:  Okay.  Thank you.

7          Juror Number 20.

8          You live in --

9          THE PROSPECTIVE JUROR:  Long Island, East Rockaway.

10         THE COURT:  How long have you lived there?

11         THE PROSPECTIVE JUROR:  Fifty-three years.

12         THE COURT:  And do you own or rent?

13         THE PROSPECTIVE JUROR:  I own.

14         THE COURT:  How far did you go in school?

15         THE PROSPECTIVE JUROR:  I have an associate's

16 degree.

17         THE COURT:  And what's your degree in?

18         THE PROSPECTIVE JUROR:  Liberal arts.

19         THE COURT:  Are you -- you work at NYCHA?

20         THE PROSPECTIVE JUROR:  Yes.

21         THE COURT:  How long have you worked there?

22         THE PROSPECTIVE JUROR:  Almost 30 years.

23         THE COURT:  Are you married or have a domestic

24 partner?

25         THE PROSPECTIVE JUROR:  Married.

*Jury Selection*                                                        115

1              THE COURT:  And is your spouse working?

2              THE PROSPECTIVE JUROR:  Yes.

3              THE COURT:  What does your spouse do?

4              THE PROSPECTIVE JUROR:  She's a teacher aide at an

5       elementary school.

6              THE COURT:  Teacher's aide?

7              THE PROSPECTIVE JUROR:  Yes.

8              THE COURT:  Any children over the age of 18?

9              THE PROSPECTIVE JUROR:  Four.

10             THE COURT:  All right.  Tell me their ages.

11             THE PROSPECTIVE JUROR:  Twenty-four, 22, and twin

12      19s.

13             THE COURT:  I'm sorry?

14             THE PROSPECTIVE JUROR:  Twin 19-year-olds.

15             THE COURT:  Oh, two 19-year-olds.  I'm sorry.

16             THE PROSPECTIVE JUROR:  Mm-hmm.

17             THE COURT:  Let's go in order from youngest to

18      oldest.

19             So the 19-year-olds --

20             THE PROSPECTIVE JUROR:  They're both in school.

21             THE COURT:  Do you know what they're studying?

22             THE PROSPECTIVE JUROR:  Nicole wants to be an

23      esthetician.

24             THE COURT:  An esthetician, okay.

25             THE PROSPECTIVE JUROR:  Yeah.

1        And my son is liberal arts right now, but he's going

2   to be doing something in September after he completes two

3   years at Nassau.

4             THE COURT:  Okay.  Do you know what --

5             THE PROSPECTIVE JUROR: I don't know exactly.

6             THE COURT:  That's okay.

7             Why don't we go up to the 22-year-old after that.

8             THE PROSPECTIVE JUROR:  She is a hairstylist.

9             THE COURT:  Okay.

10            And the 24-year-old?

11            THE PROSPECTIVE JUROR:  Personal trainer.

12            THE COURT:  Okay.

13            Any adults other than you and your spouse in your

14  home?

15            THE PROSPECTIVE JUROR:  No.

16            THE COURT:  Any hobbies or interests that you pursue

17  in your spare time?

18            THE PROSPECTIVE JUROR:  Woodworking and carpentry

19  and cooking, I guess.

20            THE COURT:  Where do you usually get your news?

21            THE PROSPECTIVE JUROR:  Just 1010 WINS when I'm in

22  the car.

23            THE COURT:  Any social media platforms that you use

24  regularly?

25            THE PROSPECTIVE JUROR:  Occasionally Facebook.

*Jury Selection*                                                          117

1          THE COURT:  Any TV, radio, or streaming services

2     programs that you like?

3          THE PROSPECTIVE JUROR:  Nothing regularly.

4          THE COURT:  Okay.  Any particular types of shows?

5          THE PROSPECTIVE JUROR:  I'm sorry?

6          THE COURT:  Any particular types of shows, even if

7     it's nothing specific?

8          THE PROSPECTIVE JUROR:  *Everybody Loves Raymond*.

9     Just...

10         THE COURT:  No pressure.  No pressure.

11         The last question has to do with a juror's duties.

12    First, to keep an open mind until all of the evidence and

13    arguments have been presented; and then, second, decide the

14    case fairly and impartially based only on the evidence

15    presented at trial and the law as the trial judge explains it

16    to you.

17         Would you be able to do those things?

18         THE PROSPECTIVE JUROR:  Yes.

19         THE COURT:  Thank you.

20         Pass the mic over to Juror Number 23.

21         You live in Brooklyn?

22         THE PROSPECTIVE JUROR:  Yes.

23         THE COURT:  Where in Brooklyn?

24         THE PROSPECTIVE JUROR:  Crown Heights.

25         THE COURT:  How long have you lived there?

*Jury Selection*                                                118

1          THE PROSPECTIVE JUROR:  Going on three years.

2          THE COURT:  And do you own or rent?

3          THE PROSPECTIVE JUROR:  Rent.

4          THE COURT:  Where were you living before that?

5          THE PROSPECTIVE JUROR:  Williamsburg.

6          THE COURT:  How long did you live there?

7          THE PROSPECTIVE JUROR:  About two years.

8          THE COURT:  Owning or renting?

9          THE PROSPECTIVE JUROR:  Renting.

10         THE COURT:  How far did you go in school?

11         THE PROSPECTIVE JUROR:  I have a bachelor's.

12         THE COURT:  What's your degree in?

13         THE PROSPECTIVE JUROR:  Film and media studies, and

14   also psychology.

15         THE COURT:  And are you currently working?

16         THE PROSPECTIVE JUROR:  Yes.

17         THE COURT:  What do you do?

18         THE PROSPECTIVE JUROR:  I'm a server.

19         THE COURT:  Where?

20         THE PROSPECTIVE JUROR:  At a new restaurant in

21   Williamsburg, K'Far Brooklyn.  It's in the Hoxton Hotel.

22         THE COURT:  How long have you been doing that?

23         THE PROSPECTIVE JUROR:  Three months.

24         THE COURT:  What were you doing before that?

25         THE PROSPECTIVE JUROR:  I was working for the post

*Jury Selection*                                                          119

1    office.

2            THE COURT:  And are you married, or do you have a

3    domestic partner?

4            THE PROSPECTIVE JUROR:  Neither.

5            THE COURT:  Any children over the age of 18?

6            THE PROSPECTIVE JUROR:  No.

7            THE COURT:  Do you live with any other adults?

8            THE PROSPECTIVE JUROR:  I live with my boyfriend.

9            THE COURT:  Is he working?

10           THE PROSPECTIVE JUROR:  He is.

11           THE COURT:  What does he do?

12           THE PROSPECTIVE JUROR:  He is a line cook and a

13   busser at a restaurant in Williamsburg.

14           THE COURT:  Any hobbies or interests that you pursue

15   in your spare time?

16           THE PROSPECTIVE JUROR:  I read a lot, I like to eat

17   a lot, and I help with cat rescue.

18           THE COURT:  Did you say cats?

19           THE PROSPECTIVE JUROR:  Yeah.

20           THE COURT:  Any particular types of reading?

21           THE PROSPECTIVE JUROR:  Fiction, suspense, thriller

22   stuff.

23           THE COURT:  Where do you usually get your news?

24           THE PROSPECTIVE JUROR:  I also don't really watch

25   the news, but I do use Twitter, so if I see something on

1   there, I will investigate further.

2           THE COURT:  Okay.  Besides Twitter, any other social

3   media platforms?

4           THE PROSPECTIVE JUROR:  Instagram, You Tube,

5   Facebook.

6           THE COURT:  Any TV, radio, or streaming services

7   programs that you like?

8           THE PROSPECTIVE JUROR:  I recently watched *Only*

9   *Murders in the Building* on Hulu.  That was great.  I'm

10  re-watching *The Office* for like the millionth time.  I like

11  true crime stuff a lot.

12          THE COURT:  The last question has to do with a

13  juror's duties, which is, first, to keep an open mind until

14  all of the evidence and arguments have been presented; and

15  then, second, decide the case, fairly and impartially based

16  only on the evidence presented at trial and the instructions

17  of law from the trial judge.

18          Would you be able to do that?

19          THE PROSPECTIVE JUROR:  Yes.

20          THE COURT:  Okay.  And you can pass the mic over.

21          And this is Juror 15?

22          THE PROSPECTIVE JUROR:  Mm-hmm.

23          THE COURT:  And you live in Queens?

24          THE PROSPECTIVE JUROR:  Yes.

25          THE COURT:  What part of Queens?

*Jury Selection*                                                         121

1          THE PROSPECTIVE JUROR:  Laurelton.

2          THE COURT:  How long have you lived there?

3          THE PROSPECTIVE JUROR:  Three years now.

4          THE COURT:  Did you say three?

5          THE PROSPECTIVE JUROR:  Mm-hmm.

6          THE COURT:  Owning or renting?

7          THE PROSPECTIVE JUROR:  Rent.

8          THE COURT:  Where did you live before that?

9          THE PROSPECTIVE JUROR:  I lived in Richmond Hill

10   for, like, 20 years.

11          THE COURT:  Owning or renting?

12          THE PROSPECTIVE JUROR:  Rent.

13          THE COURT:  How far did you go in school?

14          THE PROSPECTIVE JUROR:  I have a bachelor's in human

15   biology.

16          THE COURT:  And are you currently working?

17          THE PROSPECTIVE JUROR:  Yes.

18          THE COURT:  Where do you work?

19          THE PROSPECTIVE JUROR:  I work at

20   New York-Presbyterian.

21          THE COURT:  What do you do there?

22          THE PROSPECTIVE JUROR:  I'm an ultrasound tech.

23          THE COURT:  How long have you been doing that?

24          THE PROSPECTIVE JUROR:  About two years now.

25          THE COURT:  What were you doing before that?

1              THE PROSPECTIVE JUROR:  I was a student.

2              THE COURT:  Okay.  And are you married or do you

3     have a domestic partner?

4              THE PROSPECTIVE JUROR:  No.

5              THE COURT:  Any children over the age of 18?

6              THE PROSPECTIVE JUROR:  No.

7              THE COURT:  Any other adults that live in your

8     household?

9              THE PROSPECTIVE JUROR:  No.

10             THE COURT:  Any hobbies or interests that you pursue

11    in your spare time?

12             THE PROSPECTIVE JUROR:  Probably just puzzles,

13    binge-watching stuff.

14             THE COURT:  Puzzles and binge-watching?

15             THE PROSPECTIVE JUROR:  Mm-hmm.

16             THE COURT:  What do you like to binge watch?

17             THE PROSPECTIVE JUROR:  Super natural shows,

18    hospital related shows, drama shows, anything.

19             THE COURT:  Where do you usually get your news?

20             THE PROSPECTIVE JUROR:  I don't read or watch the

21    news either.

22             THE COURT:  Okay.  Any social media platforms that

23    you use regularly?

24             THE PROSPECTIVE JUROR:  Just Facebook sometimes.

25             THE COURT:  Facebook, okay.

1          And you talked about the types of shows.

2          Any particular shows you like to watch?

3          THE PROSPECTIVE JUROR:  I like *Grey's Anatomy*,

4    *Vampire Diary*.

5          THE COURT:  The last question has to do with the

6    juror's duties, which is, first, to keep an open mind until

7    all evidence and arguments have been presented; and then,

8    second, decide the case fairly and impartially based only on

9    the evidence presented at trial and the law that the trial

10   judge explains to you.

11         Would you be able to do those two things?

12         THE PROSPECTIVE JUROR:  Yes.

13         THE COURT:  All right.  Thank you very much.

14         Ladies and gentlemen, I'm just going to speak with

15   counsel at sidebar for a moment.  Just hang tight.

16         Thank you.

17         Counsel?

18         (Sidebar.)

19         (The following took place on the record outside the

20   presence of the prospective jurors.)

21         MS. HUOT:  Is this the part where we do the

22   peremptory challenges?

23         THE COURT:  First I want to know if there's follow

24   up.

25         MS. HUOT:  Can we just confer for a second?

1          THE COURT:  I just need counsel to come up.

2          Okay, so here we are.

3          So, first, are there any follow-up questions for any

4    juror?  Let me just start with plaintiff.

5          Any follow-up questions for any juror?

6          MS. HUOT:  We just need a second.

7          MS. DONNELLY:  I do.  I have one follow-up question.

8          THE COURT:  Hold on.

9          Counsel?

10         MS. HUOT:  No follow-up questions.

11         THE COURT:  Mr. Rich?

12         MR. RICH:  No questions.

13         THE COURT:  For the defendant law firm?

14         MS. HUOT:  I only have one for Juror Number 16.  He

15   worked at a not-for-profit for -- I think he said 11 and a

16   half years.

17         THE COURT:  Yes.

18         MS. DONNELLY:  I would just like to know which

19   not-for-profit.

20         THE COURT:  Which one or what type of work he did?

21         MS. DONNELLY:  Which one.  Because we represent a

22   lot of not-for-profits, and for at least two of them, their

23   annual training is a videotape of me.

24         THE COURT:  Oh, well, then --

25         MR. DiLORENZO:  Sexual harassment.

*Sidebar*                                                                125

1          THE COURT:  Okay.  Other than that?

2          MR. DiLORENZO:  If we get the name, we can make

3    sure.

4          THE COURT:  Okay.

5          MR. DiLORENZO:  We don't have any others.

6          THE COURT:  Okay.

7          Also, Juror 20, Mr. Acampora, who apparently went to

8    the bathroom, but he urgently wanted to call my deputy to the

9    side to to say that he forgot to mention that his brother is a

10   court officer in response to the question of whether or not a

11   family member works for the court.  So I'm happy to bring him

12   up so he can tell me this important answer, but I don't think

13   it makes any difference.

14         MR. BELDNER:  That's fine.

15         THE COURT:  We'll make the record.  So the follow-up

16   is for 16 and 20.

17         MS. DONNELLY:  Yes.

18         THE COURT:  Stay there.

19         (Sidebar conference ends.)

20         (In open court.)

21         THE COURT:  Hi, so I just have a couple follow-up

22   questions.  The first was for Juror 16, can you just tell me

23   the name of the non-profit?

24         THE PROSPECTIVE JUROR:  Job Path.

25         THE COURT:  Job Path?

*Sidebar*                                                                126

1          THE PROSPECTIVE JUROR:  Yeah, like a path to a job.

2          THE COURT:  Makes perfect sense.

3          And Juror 20, can you come up for a second, please?

4          THE COURT:  Was that one of your nonprofits?

5          MS. DONNELLY:  No.

6          (Sidebar.)

7          (The following took place on the record outside the

8    presence of the prospective jurors.)

9          THE COURT:  Hello, sir.  So I think you wanted to

10   tell my deputy earlier about an answer to a question you might

11   have missed.

12         THE PROSPECTIVE JUROR:  Right.  You asked a question

13   of everybody as far as their role in a court or --

14         THE COURT:  Yes.

15         THE PROSPECTIVE JUROR:  I didn't know if it

16   pertained at the time.  My brother is a court officer on 110

17   Livingston Street.

18         THE COURT:  Okay.

19         THE PROSPECTIVE JUROR:  That's all.

20         THE COURT:  Okay.  No problem.

21         Thank you for telling us that.

22         (The prospective juror leaves.)

23         THE COURT:  Anything else for anyone else?

24         MR. BELDNER:  No.

25         MR. RICH:  No questions.

1          THE COURT:  Any questions or any follow-up?

2          Okay.  What I'm going to do now is actually excuse

3   everyone in the audience because we don't need them; right?

4          MS. DONNELLY:  I think we gave one of the jurors an

5   opportunity to make a phone call.

6          THE COURT:  Oh, Juror 23.  Sorry.  Hang on.

7          (Sidebar conference ends.)

8          (In open court.)

9          THE COURT:  Juror 23, can you please come up?

10          (Sidebar.)

11          (The following took place on the record outside the

12   presence of the prospective jurors.)

13          THE COURT:  Hi?

14          THE PROSPECTIVE JUROR:  Hi.

15          THE COURT:  Were you able to check on that

16   appointment?

17          THE PROSPECTIVE JUROR:  I wasn't.  I don't have

18   my -- I realized after I said it I don't have access to my

19   phone right now.

20          THE COURT:  I understand.  All right.  No problem.

21   You can have a seat.

22          THE PROSPECTIVE JUROR:  Thank you.

23          (Prospective juror leaves.)

24          MR. RICH:  Judge?

25          THE COURT:  Mr. Rich.

1           MR. RICH:  This is not really a question, but there

2    was one person, I couldn't really understand them.  Now, maybe

3    it's my hearing in part, but --

4           THE COURT:  Who was it?

5           MS. HUOT:  I think I also had trouble.

6           MR. RICH:  I think she's -- Number 25.  She had a

7    very strong Spanish accent, I think it is.

8           MS. HUOT:  Yes, same person.

9           MR. RICH:  My family is half Spanish, I speak

10   Spanish, but I had difficulty understanding her.

11          THE COURT:  Well --

12          MR. RICH:  So my question would kind of be if she

13   were deliberating whether everybody would understand her.

14          THE COURT:  Well, after -- well, I understood her.

15   I understood her after some clarifications, but I think in a

16   group setting of a deliberation, she doesn't seem to have a

17   problem talking with others because, as I understand, she

18   worked in a hospital doing salutation work.

19          MS. HUOT:  I thought it was dietician.

20          MR. RICH:  And I thought it was sanitation.

21          MR. BELDNER:  I thought it was dietician where they

22   prepare food.

23          MR. RICH:  Maybe we can ask.

24          THE COURT:  Hold on.  Let's ask.

25          (Sidebar conference ends.)

1          (In open court.)

2          THE COURT:  Juror 25?  You can stay there, I just

3     wanted to confirm, what was the work that you were doing at

4     the hospital?

5          THE PROSPECTIVE JUROR:  Dietician.

6          THE COURT:  Dietician?

7          THE PROSPECTIVE JUROR:  Dietician.

8          THE COURT:  Thank you.

9          (Sidebar.)

10          (The following took place on the record outside the

11    presence of the prospective jurors.)

12          THE COURT:  So, two things, she was very clear just

13    now because, number two, she took her mask off, so this might

14    be a mask situation, and I don't think that they are required

15    to masks while they're deliberating, so I think the concern

16    that you raised might be alleviated by the fact that she

17    doesn't have to talk through her mask.

18          MR. RICH:  Can I ask you this?  Would you be able to

19    bring her up to ask any question you like just to --

20          THE COURT:  No.

21          MR. RICH:  They didn't understand her either.

22          THE COURT:  But when she took her mask down and

23    spoke loudly, everyone heard her.  But for that one phrasing,

24    she was fairly coherent in that I was able to go through all

25    of these questions with her.  I think that she would be

1   understood by others and she would also understand others

2   because she's clearly been able to follow along with the

3   questions I've been asking.  So, no, I'm not going to bring

4   her back for that.

5           Anything else on anyone else?  Otherwise, this is

6   your group for your peremptory challenges.  So any other

7   follow-up questions?

8           MR. RICH:  Can we confer on peremptories --

9           MS. DONNELLY:  We're not there yet.

10          THE COURT:  We're not there yet.  This is your

11  group.

12          Do you have any other questions for any of these

13  people?

14          MR. BELDNER:  No, Your Honor.

15          MR. RICH:  No, Your Honor.

16          THE COURT:  Does anyone object to excusing the

17  audience?

18          MS. DONNELLY:  So we are going to keep the juror

19  with the conflict, with the appointment?

20          THE COURT:  Look, she hasn't been able to check, but

21  at this point I don't see a reason to excuse her.  She didn't

22  say:  It's an unchangeable appointment that I couldn't get out

23  of.

24          We're going to -- I suggest that you all just hang

25  out up here, I'm going to excuse everyone in the audience and

*Sidebar*                                                                                      131

1    in the meantime, chat amongst yourselves about your peremptory

2    challenges.

3              ALL:  Thank you.

4              (Sidebar conference ends.)

5

6              (Continued on following page.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1            (In open court.)

2            THE COURT:  All right, ladies and gentlemen, so what

3    we're going to do now is the attorneys are going to be

4    conferring here.  In the meantime, I am going to excuse some

5    of the jurors and that would be the jurors actually who are --

6    who have not yet been called into the jury box, so I believe

7    that starts with Juror Number 26.  Juror 26 here, because

8    Juror 25 is already in the jury box.

9            So everyone from Juror Number 26 up can leave, and I

10   can read the numbers just in case there is any confusion.

11           Numbers:  26, 27, 28, 29, 30, 31, 32, 33, 34, 35,

12   36, 37, 38, 39, 40, 41, 42, 43, 44, and 45.  You are all

13   excused with the Court's thanks.

14           I do need you to return to the central jury room to

15   let them know that you have been excused.  Thank you all very

16   much.

17           (Prospective jurors excused.)

18           THE COURT:  We will let the remaining jurors exit

19   first.

20           All right.  I would like to see counsel at sidebar,

21   please.

22           (Sidebar.)

23           (Continued on following page.)

24

25

1          (The following took place on the record outside the

2     presence of the prospective jurors.)

3          THE COURT:  Is everyone here?

4          So, Counsel, can you just repeat what you said?

5          MR. DiLORENZO:  Sure, Your Honor, there's a case --

6     we have a current case for Job Path, Juror 16, works there,

7     it's a discrimination case.  Mallory Campbell is one of the

8     three attorneys that's appeared in that case.

9          THE COURT:  Okay.

10         MR. DiLORENZO:  The other two are Jessica Moller and

11    Jane Sovern -- not Jane Sovern, Monica Barrett.

12         THE COURT:  I see.

13         MS. HUOT:  Your Honor, he worked for them a long

14    time ago and defense counsel --

15         THE COURT:  Hang on.  One at a time.

16         MS. HUOT:  He currently works as a software engineer

17    for Browserstack, then he was unemployed while finishing a

18    program for a deferred education, but before then he worked

19    for a nonprofit providing -- that nonprofit that you had

20    mentioned.  I could not catch the name.

21         THE COURT:  Job Path.  He said "path to a job."

22    That's why I remember.

23         MS. HUOT:  And counsel explained that their law firm

24    represents that individual -- that company.  We have no

25    objection to that.

*Jury Selection*                                                    134

1             THE COURT:  Okay.

2             Let me just confirm his current employment because I

3      think what Ms. Huot said is actually correct.  If we're

4      talking about juror -- which juror?

5             MS. HUOT:  16.

6             MS. DONNELLY:  16.  I believe he said he was at his

7      current job for three months and unemployed for a little bit

8      because he made the transition and worked at Job Path for

9      11-and-a-half years.

10            THE COURT:  So he does not currently work for Job

11     Path.

12            MS. DONNELLY:  Correct.

13            MR. BELDNER:  Your Honor, if I may, we can ask if

14     he's aware of any lawsuit -- any discrimination law suit.

15            THE COURT:  Let me bring him up.  This is 16, yes?

16            MS. DONNELLY:  Sixteen.

17            (Sidebar conference ends.)

18

19            (Continued on following page.)

20

21

22

23

24

25

*Proceedings*                                                                    135

1              (In open court.)

2              THE COURT:  Juror Number 16, can you just come up

3    for a second, please.

4              (Sidebar.)

5              (Continued on following page.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Proceedings*                                                      136

1              (The following took place on the record outside the

2    presence of the prospective jurors.)

3              THE COURT:  Hi there.

4              THE PROSPECTIVE JUROR:  Hello.

5              THE COURT:  I just want to clarify your current and

6    former work history.

7              THE PROSPECTIVE JUROR:  Sure.

8              THE COURT:  So you are currently a software

9    engineer.

10             THE PROSPECTIVE JUROR:  That's correct.

11             THE COURT:  You have been doing that for three

12   months.

13             THE PROSPECTIVE JUROR:  Correct.

14             THE COURT:  You said you were in transition training

15   before that.

16             I guess to transition to software engineering?

17             THE PROSPECTIVE JUROR:  Yes, that's correct.

18             THE COURT:  How long were you doing that?

19             THE PROSPECTIVE JUROR:  So I was -- I was doing that

20   full-time for about six months.  I started April last year.

21   Part of that I was studying that part-time while working

22   full-time at the nonprofit at Job Path.

23             THE COURT:  Okay.

24             When you did stop working at job job?

25             THE PROSPECTIVE JUROR:  April of last year.

*Proceedings*                                                    137

1          THE COURT:  In April of 2021?

2          THE PROSPECTIVE JUROR:  Yes, ma'am --

3          MR. DiLORENZO:  2022?

4          THE PROSPECTIVE JUROR:  Sorry, 2022.

5          THE COURT:  Thank you, Mr. DiLorenzo, that's a very

6   important clarification.

7          And so how long were you working at Job Path?

8          THE PROSPECTIVE JUROR 11-and-a-half years.

9          THE COURT:  What were you doing there during that

10  time?

11         THE PROSPECTIVE JUROR:  So I had a couple different

12  roles.  My first year I was working there part-time with

13  individuals themselves.  The rest of my time there I kind of

14  had two roles, that I split.  One of them, which I had the

15  longest, was working with individuals in an employment

16  capacity, so I helped individuals with disabilities

17  maintaining -- obtain and maintain jobs.  We used a model

18  called customized employment.

19         THE COURT:  Okay.  So you were mainly doing

20  client-basing services?

21         THE PROSPECTIVE JUROR:  For the first, like, half or

22  so, yeah.

23         THE COURT:  Okay.

24         What about the second half?

25         THE PROSPECTIVE JUROR:  Later on I moved into a more

*Proceedings*                                                     138

1    supervisory capacity.  I was supervising people who were

2    working client-basing in the same kind of roles.  I also

3    started doing --

4              THE COURT:  I know that it's very nerve-racking to

5    stand here with seven people standing here and hanging onto

6    your every word.

7              THE PROSPECTIVE JUROR:  I appreciate that,

8    Your Honor.

9              THE COURT:  You are doing a great job.

10             THE PROSPECTIVE JUROR:  Thank you, Your Honor.

11             THE COURT:  But the court reporters fingers are

12   moving as quickly as possible.

13             THE PROSPECTIVE JUROR:  I appreciate your work.

14             THE COURT:  Take two deep breaths.

15             So you were supervising others who were doing

16   client-basing services?

17             THE PROSPECTIVE JUROR:  Correct.

18             THE COURT:  Okay.

19             And during that time, were you privy to information

20   regarding any HR issues or any charges of discrimination or

21   any lawsuits of that nature?

22             THE PROSPECTIVE JUROR:  I'm not aware of any

23   lawsuits.  They would occasionally -- I was privy to

24   information like for any of the 300 individuals to whom we

25   provided services in an employment capacity.  One of my duties

*Proceedings*                                                           139

1    at that time was to -- I sometimes did myself and also

2    supervised an individual with a disability himself, who

3    entered employment information into a New York statistic

4    database called NYESS -- N-Y-E-S-S, the New York Employment

5    Services System.

6           There's also one individual, that was -- it might

7    not pertain to your question because this was when I was

8    client-basing.  There was one individual to whom I provided

9    services who was about to be hired and then all of a sudden

10   was not and we sort of suspected discrimination, but there was

11   nothing -- like, we didn't wish to pursue a charge or anything

12   like that, so we let it go, but that was an upsetting

13   situation for him and for, you know, myself and some other

14   people that we worked with.

15          THE COURT:  Okay.  Now, a couple of follow-ups

16   there.

17          So, first, were you aware of any, I guess, lawsuits

18   involving your actual company?  Not so much the clients and

19   their employers, but anything involving your company,

20   involving Job Path?

21          THE PROSPECTIVE JUROR:  No, not at all.

22          THE COURT:  Okay.

23          And, actually, that was the only follow-up.  I'm

24   going to have you step, not quite to your seat, but on the

25   other side of that Plexiglas for a second.

*Proceedings*                                                          140

1              THE PROSPECTIVE JUROR:  Sure.

2              (The prospective juror steps away.)

3              THE COURT:  Okay, so first question is any follow-up

4    based on that?

5              MS. HUOT:  No, Your Honor.

6              MR. RICH:  I would be curious as to what was the

7    range of people with disabilities that he was working for or

8    with.

9              THE COURT:  What do you mean?

10             MR. RICH:  I mean, were these people with mental

11   disabilities, were they physical disabilities, were they deaf,

12   were they blind or other types of disabilities?

13             MR. BELDNER:  Why is that relevant to the conflict

14   of --

15             THE COURT:  The question to your follow-up about his

16   answers relating to the potential conflict.

17             MR. RICH:  Not on that.

18

19             (Continued on following page.)

20

21

22

23

24

25

Side-Bar                                                    141

1    (Continuing)

2              (Side-bar.)

3              THE COURT:  Mr. DiLorenzo?

4              MR. DiLORENZO:  No, Your Honor.  Not on that.

5              THE COURT:  Ms. Donnelly?

6              MS. DONNELLY:  No.

7              THE COURT:  All right, nothing else on the conflict.

8              Does anyone have any objection to keeping this juror

9    on the grounds that there is no conflict because he has zero

10   knowledge of any lawsuits involving discrimination relating to

11   job path?

12             MS. HUOT:  No objection, Your Honor.

13             THE COURT:  Mr. Rich?  Just based solely on that.

14   Because we brought him up here to ask him follow-up on the

15   conflict.

16             MR. RICH:  Right.  Well, he did.

17             THE COURT:  Yes.

18             MR. RICH:  But then when he revealed --

19             THE COURT:  Any questions for the conflict?  Any

20   objections to keeping him based on that?

21             MR. RICH:  Not on the conflict.

22             THE COURT:  Any objections?

23             MR. DiLORENZO:  No, Your Honor.

24             MS. DONNELLY:  No, Your Honor.

25             THE COURT:  I think we're fine.

```
                        Side-Bar                      142
```

1        Now, you want to ask him a follow-up question on the

2   range of disabilities for his clients.

3        MR. RICH:  Correct.

4        THE COURT:  All right, I will ask him that.  Fine.

5        Any other follow-up for anyone else, though?

6        MR. RICH:  Your Honor, you asked him only as to job

7   path.  But he may be aware of disputes -- he has these clients

8   which are employers and the fact that he has these, you know,

9   these employers, the fact that it's not specifically that

10  there might not be a claim specifically against job path

11  doesn't mean that, you know -- there could be, if he's got 300

12  people who are, you know, people with disabilities, there

13  could be other...

14       THE COURT:  What is the question you want me to ask

15  him?

16       MR. RICH:  Are you aware of any other -- are you

17  aware of any claims of discrimination against any of the

18  employers who he serviced.

19       THE COURT:  But he said two.  He mentioned two

20  specific clients where he thought that there were issues, but

21  ultimately no claims were pursued.

22       So what else do you want me to ask on that front?

23       MR. RICH:  That's all.

24       THE COURT:  Okay, fair and fine.

25       (Prospective Juror present at side-bar.)

```
                        Side-Bar                    143
```

1           THE COURT:  Final question.

2           THE PROSPECTIVE JUROR:  Mm-hmm.

3           THE COURT:  The job path clients, what types of

4      disabilities did they have?

5           THE PROSPECTIVE JUROR:  All developmental.

6           THE COURT:  Developmental.

7           THE PROSPECTIVE JUROR:  Yeah.  I can list those, if

8      that's helpful.

9           THE COURT:  No, thank you.  All developmental.

10          Thank you very much and you can be seated.

11          THE PROSPECTIVE JUROR:  Thank you.

12          (Prospective Juror leaves sidebar.)

13          THE COURT:  I am going to ask each party if they

14     have any follow-up questions for anyone else.

15          For plaintiff?

16          MS. HUOT:  No, Your Honor.

17          THE COURT:  For Mr. Prakhin?

18          MR. RICH:  No, Your Honor.

19          THE COURT:  For the law firm?

20          MR. DiLORENZO:  No, Your Honor.

21          THE COURT:  Okay.

22          So, time.  We are doing peremptories.

23          MR. DiLORENZO:  Your Honor, can we just confer?

24          THE COURT:  It is time.  This is why we have all

25     been here.

```
                         Side-Bar                        144
```

1           MR. DiLORENZO:  I just need to talk to make sure we

2    agree.

3           THE COURT:  Two minutes.  Two minutes.

4           But do not go anywhere.

5           (Side-bar end.)

6           (In open court.)

7           THE COURT:  All right, ladies and gentlemen, if you

8    just give us a couple more minutes, we should be wrapping up

9    in the next five to seven minutes, all right?  Thank you for

10   your patience.

11          Does any juror have to use the restroom?  No?  Okay.

12          (Pause in the proceedings.)

13          (Side-bar conference held on the record out of the

14   hearing of the jury.)

15          (Side-bar.)

16          THE COURT:  Counsel?

17          Okay, come on folks.  All right.

18          So here is how we are going to do this.  I am going

19   to turn to each person when it is their turn and ask who they

20   are striking, okay?  You do not have to go in numerical order,

21   as you know.  So if you want to strike one, five and seven,

22   you can say seven first, then five and then one, whatever

23   order.  You are only stuck with the people in the box.

24          So starting with plaintiff, what's your first

25   strike?

```
                        Side-Bar                      145

 1            MS. HUOT:  Individual number 20, Acampora.  Just
 2   want to confirm the number.  Yes.
 3            I wonder who you'll strike.
 4            THE COURT:  Ms. Huot, stop.
 5            All right, for the Defense?
 6            MR. DiLORENZO:  Number 16.  One-six.
 7            THE COURT:  16, okay.
 8            Okay.  So, the Defense goes again.
 9            MR. DiLORENZO:  Our next one is number ten.
10            THE COURT:  Ten.
11            MR. DiLORENZO:  Ten.
12            THE COURT:  Ten, okay.
13            Now for plaintiff?
14            MS. HUOT:  Number 11.
15            THE COURT:  11?
16            MS. HUOT:  Yes.
17            THE COURT:  So folks, did you hear that?
18            MS. DONNELLY:  Number 11?
19            THE COURT:  Yes.  All right.
20            And then plaintiff gets one more.
21            MS. HUOT:  Number 19.
22            THE COURT:  19?
23            MS. HUOT:  Yes.
24            (Pause in the proceedings.)
25            THE COURT:  Counsel?
```

```
                    Side-Bar                        146

1          MR. RICH:  23, Judge.

2          THE COURT:  All right.  23.  Okay.

3          Folks, let me just confirm who is gone.  We have:

4          Number 20 Mr. Acampora;

5          Juror 16 Mr. Moore;

6          Juror 10 Ms. Sanchez Tovar;

7          Number 11 is Mr. Sherry;

8          19 is Mr. Raniets, and;

9          23, I think is Ms. Morgan.

10         Okay?

11         MR. RICH:  Judge, can you read that one more time?

12         THE COURT:  Sure.

13         It's 20, 16, 10, 11, 19, and 23.

14         So that means here is who is left:  Number 1, 2, 22,

15  5, 6, 25, 9, 12, 15.

16         MR. BELDNER:  Is that 15, one-five?

17         THE COURT:  Yes.  I will read that one more time.

18         What you have left is numbers:  1, 22, 2 --

19         MR. RICH:  Hold on, Judge.  22.  Then 2?

20         THE COURT:  2, 5, 6, 25, 9, 12, and 15.

21         So that is your jury.

22         Is the jury acceptable to plaintiff?

23         MS. HUOT:  Yes, Your Honor.

24         MR. BELDNER:  Yes, Your Honor.

25         THE COURT:  Is the jury acceptable to the defendant
```

```
                        Jury Selection                      147
```

1    law firm?

2              MR. DiLORENZO:  Yes, Your Honor.

3              THE COURT:  Mr. Rich, is the jury acceptable to

4    Mr. Prakhin?

5              MR. RICH:  Yes.

6              THE COURT:  All right.

7              I am going to excuse the excused jurors.

8              Any motions?

9              ALL:  No.

10              THE COURT:  Anything else from anyone else?

11              Hearing none, let's continue.

12              ALL:  Thank you, Your Honor.

13              (Side-bar end.)

14              (In open court.)

15              THE COURT:  All right, ladies and gentlemen, thank

16    you so much for your patience.

17              What I am going to do is announce the numbers for

18    the jurors who have been excused.  So, just wait until all the

19    numbers are called before moving, I would appreciate it.

20              Juror 10, 11, 16, 19, 20, and 23.  So, you are all

21    excused, the numbers I just called, with the Court's thanks.

22              If the remaining jurors could remain in their seats

23    while the excused jurors leave, I would appreciate it.  Thank

24    you all very much, please return to the central jury room and

25    let them know you have been excused.

Jury Selection                                                      148

1              (Excused jurors exit.)

2              THE COURT:  All right.

3              So, ladies and gentlemen, you are the jury.

4              Is the jury acceptable at that plaintiff?

5              MS. HUOT:  Yes, Your Honor.

6              THE COURT:  Is the jury acceptable to the defendant

7    law firm?

8              MR. DiLORENZO:  Yes, Your Honor.

9              THE COURT:  Is the jury acceptable to Defendant

10   Mr. Prakhin?

11             MR. RICH:  Yes, Your Honor.

12             THE COURT:  Okay.

13             So, ladies and gentlemen, what we are going to do

14   now is, I am just going to ask you all to shift seats.  This

15   is going to be your jury order.

16             So, Juror Number 22, you can move over to seat

17   number three.

18             Juror Number 5, you can move over to seat four.

19             Number 6, can you move over to five.

20             Number 25, can you move over to seat six, at the

21   end.  All the way at the end.  You can come down.  You can go

22   through the other door, yes.  Watch your step with the cord.

23             Number 9, you can go to seat seven.

24             Number 12, can you go over to seat eight.

25             And number 15, can you go down to seat nine.

Proceedings                                          149

1          All right, ladies and gentlemen, that completes the

2     jury selection process.  Judge Amon's deputy will be here

3     momentarily to -- my deputy will be bringing you back to the

4     jury room, at which time you will be speaking with

5     Judge Amon's deputy.  Thank you all very much for your

6     attentiveness.  I'd ask everyone to please rise while the jury

7     exits the courtroom.

8               (Jury exits courtroom.)

9               THE COURT:  All right, please be seated.

10              Anything else for plaintiff?

11              MS. HUOT:  No, Your Honor.

12              THE COURT:  For defendant law firm?

13              MR. DiLORENZO:  No, Your Honor.

14              THE COURT:  For Mr. Prakhin individually?

15              MR. RICH:  No, Your Honor.

16              THE COURT:  All right, everyone.

17              Thank you all very much and good luck with the

18    trial.

19              ALL:  Thank you, Your Honor.

20              THE COURT:  I suspect that Judge Amon will be

21    reconvening you this afternoon, but I am sure her deputy will

22    be telling you that in a moment.

23              I would count on having your openings this

24    afternoon.  I also understand that she wants to have a -- some

25    sort of pre-trial conference before that to discuss some of

Proceedings                                    150

1   the pending motions, but all of that will be happening, I

2   would imagine, sometime this afternoon.  Perhaps 1:30 at the

3   earliest.  But her deputy will come and talk to you.

4           ALL:  Thank you, Judge.

5

6           (Jury Selection concluded.)

7

8                         ooo0ooo

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25